UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC., | ) | No.: 1:06-cv-00492-S-LDA |
| Plaintiff, | ) | |
| v. | ) | |
| GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P. and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(5) AND, IN THE ALTERNATIVE, TO STAY THE ACTION BY DEFENDANTS THE GOLDMAN SACHS GROUP, INC., GERRY CARDINALE, ROB GHEEWALLA , AND JACK DALY**

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 4

ARGUMENT ..... 10

I. **THE COMPLAINT MUST BE DISMISSED AS TO THE INDIVIDUAL DEFENDANTS FOR INSUFFICIENT SERVICE OF PROCESS** ..... 11

II. **THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION** ..... 13

A. No General Jurisdiction ..... 14

B. No Specific Jurisdiction ..... 15

1. The Defendants' Contacts With Rhode Island Are Not Related To Plaintiff's Claims ..... 15

2. The Defendants Have Not Purposefully Availed Themselves of Rhode Island Law ..... 17

3. The Exercise Of Jurisdiction Over The Defendants Is Not Reasonable. ..... 18

III. **THE COURT SHOULD ALTERNATIVELY STAY THIS ACTION UNTIL RESOLUTION OF PENDING DELAWARE ACTIONS** ..... 21

CONCLUSION ..... 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barreto-Rosa v. Varona-Mendez*,
470 F.3d 42 (1st Cir. 2006)............................................................ 23 n.17

*Barrett v. Lombardi*,
239 F.3d 23 (1st Cir. 2001)............................................................ 14 n.9

*Blair v. City of Worcester*,
2006 U.S. Dist. LEXIS 12533 (D. Mass. Mar. 13, 2006) ................................ 12

*Boateng v. Inter Am. Univ. of P.R.*,
188 F.R.D. 26 (D.P.R. 1999).............................................................. 12 n.7

*Boit v. Gar-Tec Products*,
967 F.2d 671 (1st Cir. 1992)............................................................. 13

*Bond Leather Co., Inc. v. Q. T. Shoe Mfg. Co., Inc.*,
764 F.2d 928 (1st Cir. 1985)............................................................ 16 n.11

*Brian Jackson & Co. v. Eximias Pharma. Corp.*,
248 F. Supp. 2d 31 (D.R.I. 2003) ...................................................... 15

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) ........................................................................ 22 n.16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........................................................... 17, 18 n.12, 19

*Burns v. Watler*,
931 F.2d 140 (1st Cir. 1991)............................................................. 25

*Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik GmbH*,
295 F.3d 59 (1st Cir. 2002)................................................................ 15

*Celta Agencies, Inc. v. Denizciliksanayi Ve Ticaret, A.S.*,
269 F. Supp. 2d 1 (D.P.R. 2003) ........................................................ 13

*Centronics Data Computer Corp. v. Merkle-Korff Indus.*,
503 F. Supp. 168 (D.N.H. 1980) ........................................................ 22

*Cesario v. Bergquist*,
2006 U.S. Dist. LEXIS 10141 (D.R.I. Mar. 10, 2006) .................................. 7 n.4

*Colorado River Water Conserv. Dist. v. United States*,
424 U.S. 800 (1976) .......................................................................... *passim*

*Congdon v. Jacobson*,
131 F.R.D. 35 (D.R.I. 1990) .......................................................................... 13

*Cruz v. Melecio*,
204 F.3d 14 (1st Cir. 2000) ........................................................ 22 n.16, 23 n.17

*Currie v. Group Ins. Comm'n*,
290 F.3d 1 (1st Cir. 2002) ................................................................ 23 n. 17

*Curtis 1000, Inc. v. Suess*,
24 F.3d 841 (7th Cir. 1994) .......................................................................... 27

*In re Daboul*,
82 B.R. 657 (Bankr. D. Mass. 1987) ........................................................ 12 n. 8

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole*,
290 F.3d 42 (1st Cir. 2002) .............................................................. 13, 15, 20

*Donatelli v. Nat'l Hockey League*,
893 F.2d 459 (1st Cir. 1990) .............................................................. 19, 20, 21

*Donatelli v. UnumProvident Corp.*,
324 F. Supp. 2d 153, 156-67 (D. Me. 2004) .............................................. 6 n.2

*Elbalah v. Republic Ins. Co.*,
879 F. Supp. 3 (D.R.I. 1995) .......................................................................... 20

*Escabi v. Puerto Rico*,
2003 U.S. Dist. LEXIS 26367 (D.P.R. Feb. 20, 2003) ................................ 22 n.15

*Escude Cruz v. Ortho Pharma. Corp.*,
619 F.2d 902 (1st Cir. 1980) ........................................................ 13, 16 n.10

*First Union Nat'l Bank v. Margo Farms Del Caribe*,
875 F. Supp. 73 (D.P.R. 1995) ................................................................ 25, 26

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
46 F.3d 138 (1st Cir. 1995) ........ 13

*Fumero-Vidal v. First Fed. Sav. Bank*,
788 F. Supp. 1275 (D.P.R. 1992) ........ 24, 24 n.18

*Gifford v. Bruce Strumpf, Inc.*,
1997 U.S. Dist. LEXIS 11876 (D. Me. Aug. 7, 1997) ........ 17

*Glen Oaks Util., Inc. v. City of Houston*,
280 F.2d 330 (5th Cir. 1960) ........ 23 n.17, 23

*Goldhammer v. Dunkin' Donuts, Inc.*,
59 F. Supp. 2d 248 (D. Mass. 1999) ........ 25

*Gonzalez v. Cruz*,
926 F.2d 1 (1st Cir. 1991) ........ 24

*Gray v. St. Martin's Press, Inc.*,
929 F. Supp. 40 (D.N.H. 1996) ........ 19

*Greene v. Rhode Island*,
398 F.3d 45 (1st Cir. 2005) ........ 7 n.4

*Hanson v. Denckla*,
357 U.S. 235 (1958) ........ 17

*Harlow v. Children's Hosp.*,
432 F.3d 50 (1st Cir. 2005) ........ 14, 17

*Howard v. Klynveld Peat Marwick Goerdeler*,
977 F. Supp. 654 (S.D.N.Y. 1997) ........ 12 n.8

*Huertas-Laboy v. Rodriguez-Gonzalez*,
1991 U.S. App. LEXIS 10778 (1st Cir. May 3, 1991) ........ 11, 12

*Jet Wine & Spirits, Inc. v. Bacardi & Co.*,
298 F.3d 1 (1st Cir. 2002) ........ 13

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ........ 14 n.9

*Lak, Inc. v. Deer Creek Enters.*,
885 F.2d 1293 (6th Cir. 1989) .......... 18 n.12

*Lavender-Cabellero v. Dep't. of Cons. Affairs of City of New York*,
458 F. Supp. 213 (S.D.N.Y. 1978) .......... 11 n.7

*Lopez v. Cordero*,
659 F. Supp. 889 (D.P.R. 1987) .......... 11 n.7

*Lopez v. Municip. of Dorado*,
979 F.2d 885 (1st Cir. 1992) .......... 11

*Louisiana Power & Light v. City of Thibodaux*,
360 U.S. 25 (1959) .......... 22 n.16

*M&I Eastpoint Tech., Inc. v. Mid-Medical Bank*,
2000 U.S. Dist. LEXIS 1146 (D.N.H. Jan. 28, 2000) .......... 19, 20

*Melia v. Les Grands Chais de France*,
135 F.R.D. 28 (D.R.I. 1990) .......... 12

*Microfibres, Inc. v. Squires Hightech Corp.*,
2006 U.S. Dist. LEXIS 7914 (D.R.I. Jan. 13, 2006) .......... 21

*Microfibres v. McDevitt-Askew*,
20 F. Supp. 2d 316 (D.R.I. 1998) .......... 18

*Morel v. Estate of John J. Davidson*,
148 F. Supp. 2d 161 (D.R.I. 2001) .......... 14 n.9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 23, 24

*Nicholas v. Buchanan*,
806 F.2d 305 (1st Cir. 1986) .......... 16 n.11

*Noonan v. Winston Co.*,
135 F.3d 85 (1st 1998) .......... 14

*Nowak v. Tak How Invest.*,
94 F.3d 708 (1st Cir. 1996) .......... 19

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.*,
196 F.3d 284 (1st Cir. 1999)........ 15

*In re President of Harvard College*,
149 F.2d 69 (1st Cir. 1945)........ 22 n.17

*Puerto Rico Int'l Airlines Inc. v. Recio*,
520 F.2d 1342 (1st Cir. 1975)........ 22

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ........ 22 n.16

*Ramirez v. Skeete*,
671 F. Supp. 892 (D.P.R. 1987) ........ 22 n.15

*Rey v. Classic Cars*,
762 F. Supp. 421 (D. Mass. 1991)........ 26

*Richardson v. Ingram Corp.*,
374 F.2d 502 (3d Cir. 1967) ........ 12 n.8

*Rio Grande Cmty. Health Ctr, v. Rullan*,
397 F.3d 56 (1st Cir. 2005)........ 23

*Rivera-Feliciano v. Acevedo-Vila*,
438 F.3d 50 (1st Cir. 2006)........ 24 n.18

*Rojas-Hernandez v. Puerto Rico Elec. Power Auth.*,
925 F.2d 492 (1st Cir. 1991)........ 25

*Rossi v. Gemma*,
2006 U.S. Dist. LEXIS 44441 (D.R.I. Jan. 13, 2006) ........ 23

*Sandstrom v. Chemlawn Corp.*,
904 F.2d 83 (1st Cir. 1990)........ 14 n.9

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995)........ *passim*

*Scarlatelli v. Swarovski Optik N. Am., Ltd.*,
2006 U.S. Dist. LEXIS 63823 (D.R.I. June 26, 2006) ........ 17

*Scritchfield v. Paolo*,
274 F. Supp. 2d 163 (D.R.I. 2003) .......... 7 n.4

*Shallel v. Elson*,
1999 WL 33957906 (S.D. Fla. Apr. 12, 1999) .......... 27

*Teamsters Local Pension Trust Fund v. IBP, Inc.*,
123 F. Supp. 2d 514 (D.S.D. 2000) .......... 26

*Ticketmaster-New York v. Alioto*,
26 F.3d 201 (1st Cir. 1994) .......... 16

*United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
987 F.2d 39 (1st Cir. 1993) .......... 5 n.2

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992) .......... 16, 19, 19 n.13

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*,
915 F.2d 7 (1st Cir. 1990) .......... 16, 26, 27

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*,
947 F.2d 529 (1st Cir. 1991) .......... 16, 22 n.15, 27

*West v. Paige*,
835 F. Supp. 20 (D. Me. 1993) .......... 11 n. 7

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .......... 21

*Young v. Lepone*,
305 F.3d 1 (1st Cir. 2002) .......... 20 n.14

**STATE CASES**

*Ben's Marine Sales v. Sleek Craft Boats*,
502 A.2d 808 (R.I. 1985) .......... 13

*North Am. Catholic Educ. Programming Found., Inc., v. Gheewalla*,
2006 WL 2588971 (Del. Ch. Sept. 1, 2006) .......... 8, 9, 9 n.5

## FEDERAL RULES

Fed. R. Civ. P. 4 (e) .......... 11

Fed. R. Civ. P. 12(b)(2) .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 3 n. 1

Fed. R. Civ. P. 45 .......... 20

Fed. R. Civ. P. 45(b)(2) .......... 26

## STATE STATUTES AND RULES

R.I. Gen. Laws §9-5-33 .......... 13

10 Del. C. § 3114 .......... 36

R.I. R.C.P. 4(f)(1) .......... 12

Defendants The Goldman Sachs Group, Inc. ("GS Group"), Gerry Cardinale, Rob Gheewalla, and Jack Daly submit this memorandum of law in support of their Motion to Dismiss the Complaint (the "Complaint" or "Compl.") Pursuant To Rules 12(b)(2) and 12(b)(5) And, In The Alternative, To Stay The Action.

## INTRODUCTION

In March 2001, Plaintiff North American Catholic Educational Programming Foundation ("NACEPF") and six other institutions (the "Alliance") that owned the rights to certain airwave frequencies over which data could be transmitted via wireless communication ("spectrum") entered into a "Master Agreement" with a company known as Clearwire Holdings, Inc. ("Clearwire") to lease that spectrum to Clearwire under certain terms and conditions. Two years later, the market for this spectrum essentially collapsed due to a number of factors including the bankruptcy of MCI/Worldcom, a major purchaser of spectrum. In light of these market conditions, all the Alliance members, except plaintiff, consensually unwound their deal with Clearwire. NACEPF took a different path – namely to repeatedly sue various people and entities – culminating in the complaint now pending in this Court.

First, NACEPF sued Clearwire in Delaware Superior Court for breach of the Master Agreement. Several months after it commenced that breach of contract action against Clearwire, NACEPF inexplicably withdrew that claim, only to replace it the next day with a suit in Delaware Superior Court against Messrs. Daly, Cardinale, and Gheewalla (who are also defendants here). NACEPF's Delaware suit claimed that those individuals – who all work for an affiliate of GS Group and also sat on the Board of Clearwire after Goldman Sachs made an investment in Clearwire – defrauded plaintiff into entering into the Master Agreement and then breached fiduciary duties that they, as Clearwire directors, allegedly owed to NACEPF as a

creditor of Clearwire (and for other wrongs including a claim of tortious interference). After the Delaware Superior Court dismissed the case on jurisdictional grounds, NACEPF re-filed the same case in the Delaware Court of Chancery. When the defendants moved to dismiss the Delaware Chancery court suit on, among other grounds, that they as Clearwire directors owed no fiduciary duties to NACEPF – who chose to sue solely in its capacity as a creditor of Clearwire – NACEPF opposed the motion by claiming that for years, and certainly by the summer of 2003, Clearwire was insolvent. In September 2006, the Delaware Chancery Court dismissed NACEPF's complaint finding defendants owed no duties directly to NACEPF (which dismissal NACEPF has appealed to the Delaware Supreme Court).

In August 2006, while awaiting the decision of the Delaware Chancery Court on NACEPF's pending action, NACEPF's Delaware counsel brought another action in Delaware Chancery Court on behalf of a different named plaintiff, but nominally on behalf of all Clearwire shareholders (which would include NACEPF). This action asserts – in stark contrast to NACEPF's Delaware allegations – that not only was Clearwire not insolvent in the summer of 2003, but indeed that it had considerable value that it had allegedly hidden from its stockholders in connection with a financing transaction Clearwire completed in August 2003. NACEPF's Delaware counsel's case names as defendants: Clearwire, all of seven of its directors (including the three individuals sued in the instant case), and several Goldman Sachs related entities (most of which are also defendants in this suit).

Three months later, in November 2006, and while it was briefing its appeal to the Delaware Supreme Court, NACEPF filed this action in the District of Rhode Island – a state with no connection to the claims or the defendants. This action, with slight cosmetic changes, simply reiterates the claims NACEPF made earlier in its Delaware Chancery action (which the Delaware

Court dismissed finding defendants owed no duty to NACEPF) and tacks on – almost verbatim – the inconsistent claims relating to the August 2003 financing which its Delaware lawyers had three months previously asserted in Delaware Chancery Court purportedly on behalf of all Clearwire shareholders.

While NACEPF's claims fail on their merits[1], NACEPF should not be permitted to drag the same defendants through multiple litigations, in multiple fora, simply to hedge its bets against its Delaware action and avoid having to reconcile its inconsistent claims before one court. This complaint – simply the latest episode in NACEPF's scorched earth litigation strategy – ignores important procedural safeguards and, without even reaching the merits (or lack thereof), should be dismissed on the following grounds:

- *First*, it has not even purported to serve two of the corporate defendants.
- *Second*, its attempted service on all three individuals by delivering the summons to CT Corp. is infirm, as CT Corp. has not been appointed as agent to accept service for these individuals; and its second attempt by certified mail on the individuals is also inadequate.
- *Third*, while NACEPF claims specific jurisdiction over the individuals, it has alleged absolutely no contacts with Rhode Island regarding the acts alleged in the complaint. Indeed, the only contact at all claimed to have occurred in this state is a single meeting with one defendant after the events allegedly giving rise to plaintiff's new claims in an attempt to settle the parties' dispute. As a matter of

---

1 Simultaneously herewith GS Group and the Individual Defendants have filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Should the Court rule in defendants' favor on any grounds asserted herein, there is no need to consider that 12(b)(6) motion.

well settled law this can not form the basis of personal jurisdiction even as to this one individual.

- *Fourth*, as for GS Group, the Court should decline jurisdiction on equitable grounds.

In the alternative, this case should be stayed in favor of the Delaware litigations. This Court simply is not the proper forum to resolve this dispute. Accordingly, the Court may, in its discretion, abstain from adjudicating the merits of these claims, and stay this suit pending resolution of the various Delaware actions – including NACEPF's appeal of the Delaware Chancery Court's dismissal of its related lawsuit. Indeed, such an action would be wholly appropriate under the settled principles which strongly encourage a stay in these circumstances – i.e., when related and overlapping actions are pending in the trial and appellate state courts of the state whose law governs.

## STATEMENT OF FACTS

The Parties

Plaintiff NACEPF is a Rhode Island Corporation, which holds FCC-issued licenses to a certain radio wave spectrum, used by various educational entities, known as "Instruction Television Fixed Service" ("ITFS") spectrum. Compl. ¶¶ 24, 26. In 2000, NACEPF and six other educational licensees of ITFS joined together to form the ITFS Spectrum Development Alliance, Inc. (the "Alliance"). Compl. ¶ 1. Plaintiff also owns preferred shares in Clearwire, which amounted to approximately 1% of the outstanding stock of Clearwire on or about August 15, 2003. Compl. ¶ 4.

GS Group is a Delaware Corporation with its principal place of business in New York. GS Capital Partners III, L.P. (registered in Delaware) and GS Capital Partners III (Offshore),

L.P. (registered in the Cayman Islands) are investment partnerships affiliated with GS Group. Goldman, Sachs & Co. Verwaltungs GmbH (registered in Germany) is the nominee of GS Capital Partners III (Germany), L.P., an investment partnership affiliated with GS Group. Collectively, these investment entities will be referred to herein as the "Goldman Shareholder Defendants." In or about March 2001, the Goldman Shareholder Defendants collectively invested approximately $47 million and became stockholders in Clearwire. Compl. ¶¶ 8, 12(a). Clearwire (which is not named as a defendant) was a Delaware corporation, headquartered in Dallas, Texas, formed in connection with the March 2001 financing.

Defendants Gerry Cardinale, Rob Gheewalla, and Jack Daly (the "Individual Defendants") are all residents of the State of New York and, in the case of Mr. Gheewalla, England also, and are employed by affiliates of GS Group in New York and London. Cardinale Decl. ¶¶ 3,4; Gheewalla Decl. ¶¶ 3,4; Daly Decl. ¶¶ 3,4; Compl. ¶ 9. The Individual Defendants were involved in the Goldman Shareholder Defendants' efforts to finance Clearwire and, in or about March 2001, each became a director of Clearwire. Compl. ¶¶ 5-7. Together, the Individual Defendants constituted a minority of Clearwire's Board of Directors. Compl. ¶ 12.

<u>Background to Plaintiff's Claims</u>

In March 2001, in connection with the initial equity financing of Clearwire, the Alliance and Clearwire entered into a Master Use and Royalty Agreement (the "Master Agreement") for use of ITFS spectrum. Compl. ¶ 26. None of the defendants was a party to the Master Agreement. The Individual Defendants were not directors of Clearwire at the time the Master Agreement was negotiated, approved, or executed. Messrs. Cardinale, Gheewalla, and Daly

became directors of Clearwire immediately after execution of the Master Agreement. Cardinale Decl. ¶ 8; Daly Decl.¶ 8; Gheewalla Decl. ¶ 8.[2]

The Master Agreement called for Clearwire to make certain payments to Alliance members in exchange for the right to lease ITFS, under specified circumstances, from Alliance members. In April and May 2003, and following a dramatic decline in the value of Spectrum caused by, *inter alia*, the collapse of MCI/WorldCom, Clearwire and all Alliance members other than NACEPF consensually terminated participation under the Master Agreement. Compl. ¶ 42. NACEPF does not allege, either here or in the Delaware litigation, that Clearwire ever breached the Master Agreement.

In August 2003, in an effort to raise additional capital to enable it to either continue operations or pursue a strategic transaction, Clearwire offered its current shareholders, including NACEPF, the opportunity to purchase a new series of preferred stock (the "C" Series) on a pro-rata basis, commensurate with their current holdings (the "Preemptive Rights Offer" or "'C Round Financing"). Compl. ¶ 46. During this time, many Clearwire shareholders, but not plaintiff, chose to participate in the Offer.

Several months later, on November 14, 2003, Clearwire entered into a strategic transaction with Flux U.S. Corp ("Flux"), a company owned by Craig McCaw (the "Strategic Sale"). Compl. ¶ 56. As part of the transaction, Clearwire sold its shares of stock in two of its wholly owned subsidiaries in exchange for cash and stock in Flux, which was subsequently

---

2 The facts set forth in the Affidavits of the Individual Defendants relate to the issue of personal jurisdiction over the defendants and are, accordingly, properly cognizable by the Court under Fed. R. Civ. P. 12(b)(2). *See United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir. 1993) (where personal jurisdiction is challenged, "plaintiff must go beyond the pleadings and make affirmative proof of jurisdiction"); *Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 156-67 (D. Me. 2004) ("When determining whether the plaintiff has made the requisite *prima facie* showing [of jurisdiction], the court considers the pleadings, affidavits, and exhibits filed by the parties.").

renamed Clearwire. *Id.* At present, Clearwire continues to hold the Flux stock it received in the Strategic Sale. Compl. ¶ 56.

Prior Related Actions

Less than a week after Clearwire announced the Flux deal, on November 20, 2003,[3] NACEPF filed a declaratory judgment action against Clearwire in the Superior Court of Delaware alleging a breach of the Master Agreement. *North Am. Catholic Educ. Programming Found., Inc. v. Clearwire Holdings, Inc.*, C.A. No. 03C-11-172 (RRC) (Del. Super. Ct. filed Nov. 20, 2003) (attached hereto as Exh. A).[4] For reasons known only to plaintiff, on February 12, 2004, it voluntarily dismissed that action. *North Am. Catholic Educ. Programming Found., Inc. v. Clearwire Holdings, Inc.*, C.A. No. 03C-11-172 (RRC) (attached hereto as Exh. B).

On the same day plaintiff dismissed its complaint against Clearwire, February 12, 2004, it filed a second action in the Superior Court of Delaware, not against Clearwire or any of its management, but solely against Messrs. Gheewalla, Cardinale, and Daly (the Individual Defendants in this action) as outside Clearwire directors. *North Am. Catholic Educ. Programming Found., Inc. v. Ghewalla, et al.*, C.A. No. 04C-02-157 (MMJ) (Del. Super. Ct. filed Feb. 12, 2004) (attached hereto as Exh. C). That complaint, in which NACEPF purported to sue solely in its capacity as a "creditor" – not a "shareholder" – of Clearwire, alleged the same substantive claims that are alleged in this Action relating to the Master Agreement (but did not

---

3 The complaint was dated November 19, 2003, but filed the next day.

4 True and correct copies of the relevant pleadings, briefs and opinions in connection with the NACEPF Delaware Action and the Stritzinger Action are attached hereto as Exhibits A - G. Each of these is a public record, susceptible to judicial notice, which may be considered on a motion to dismiss. *Greene v. Rhode Island*, 398 F.3d 45, 48 (1st Cir. 2005) (in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b), a court may consider "not only the complaint but also matters merely incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment"); *Scritchfield v. Paolo*, 274 F. Supp. 2d 163, 166 (D.R.I. 2003) (the court may consider public documents); *Cesario v. Bergquist*, 2006 U.S. Dist. LEXIS 10141 (D.R.I. Mar. 10, 2006) (considering prior court decisions).

contain any allegations relating to the C Round Financing). Following motion practice, the Superior Court of Delaware entered an order, which dismissed the breach of fiduciary duty claim for lack of subject matter jurisdiction; dismissed the remaining two claims as per plaintiff's agreement to withdraw them; and permitted NACEPF to re-file the action in the Delaware Court of Chancery. *See North Am. Catholic Educ. Programming Found., Inc., v. Gheewalla et al.*, C.A. No. 04 C-02-157 (MMJ) (Del. Super. Ct. Feb. 22, 2005) (attached hereto as Exh. D(1)).

On June 24, 2005 – approximately four months later – NACEPF re-filed its complaint in the Delaware Court of Chancery. *North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla et al.*, C.A. No. 1456-N (Del. Ch., filed June 24, 2005) (the "NACEPF Delaware Action") (attached hereto as Exh. D). Defendants moved to dismiss the complaint on several grounds and briefing on that motion was completed on December 9, 2005.

While plaintiff was awaiting the Court of Chancery's decision on the motion to dismiss the NACEPF Delaware Action, certain other Clearwire shareholders (represented by Morris, James, Hitchens and Williams LLP – the same law firm representing NACEPF in each of the aforementioned Delaware actions) commenced an action in the Delaware Court of Chancery naming the same defendants sued in this action as well as Clearwire and several members of its management (the "Stritzinger Action"). *Stritzinger v. Clearwire*, C.A. No. 2337-N (Del. Ch. filed Aug. 11, 2006) ("Stritzinger Compl.") (attached hereto as Exh. F). The complaint in *Stritzinger* – which purports to be on behalf of <u>all</u> Clearwire shareholders (*Id.* at ¶ 55) and names as defendants the people and entities sued here along with Clearwire and its other directors and officers – contained a series of allegations substantively identical to those asserted by NACEPF here relating to the C Round Financing (but not related to the Master Agreement). *Id.*

Shortly thereafter, on September 1, 2006, the Court of Chancery dismissed the complaint in the NACEPF Delaware Action, holding that although NACEPF had sufficiently alleged that Clearwire was either in the zone of insolvency or, at times, actually insolvent, the claims must nonetheless be dismissed because: (1) a plaintiff cannot bring a direct claim for breach of fiduciary duty against a director of a company that is only in the zone of insolvency; and (2) the complaint did not contain sufficient well-pled factual allegations establishing a direct claim for breach of fiduciary duty against the Defendants. *North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 2006 WL 2588971 at *1 (Del. Ch. Sept. 1, 2006) (attached hereto as Exh. E).[5] On September 26, 2006, NACEPF filed an appeal in the Delaware Supreme Court. Briefing in connection with the appeal has been completed, and the parties await a ruling from the court.

<u>The Present Action</u>

On November 15, 2006, with its appeal of the Court of Chancery's decision in the NACEPF Delaware Action still being briefed, plaintiff filed the present action again naming Messrs. Gheewalla, Cardinale and Daly as defendants along with GS Group and the Goldman Shareholder Defendants.[6] In the present action, plaintiff asserts substantially the same claims in connection with the Master Agreement that it asserted in the NACEPF Delaware Action:

---

5 Having dismissed the fiduciary duty claim, the Delaware Court further held that there was no jurisdiction over the defendants with respect to the remaining two counts. *North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,* 2006 WL 2588971, at *1 (Del. Ch. Sept. 1, 2006). As discussed above, in the NACEPF Delaware Action, NACEPF had sued solely in its capacity as a "creditor" of Clearwire and had premised jurisdiction over the defendants exclusively on 10 Del. C. § 3114, the long-arm statute conferring jurisdiction over non-resident directors for violations of duties imposed on them by virtue of their status as fiduciaries. However, because the breach of fiduciary duty claim had been dismissed, and no other basis for jurisdiction over the defendants had been alleged, the court held that it had no jurisdiction over the defendants with respect to the remaining claims. *Id.* Why NACEPF did not bring claims in Delaware as a shareholder, as it does here, is wholly inexplicable.

6 The complaint was dated November 14, 2006, but was filed the next day.

fraudulent inducement (Count I) and interference with a business opportunity (Counts III and IV). However, having lost in Delaware on its breach of fiduciary duty claim, plaintiff has nominally, but not substantively, changed this claim to one for fraud (Count II) (Counts I-IV are collectively referred to as the "Master Agreement Claims"), although they carefully now avoid referring to Clearwire as "insolvent." Plaintiff also asserts entirely inconsistent claims in connection with the C Round Financing (here claiming Clearwire had great undisclosed value while in Delaware arguing Clearwire was insolvent), which, along with the underlying allegations, appear to be copied almost verbatim from the complaint in *Stritzinger v. Clearwire*. Compare Compl. ¶¶ 47-58, 81-99 (Counts V-VIII) with Stritzinger Compl. ¶¶ 27-38, 39-56 (Counts V-VIII are collectively referred to as the "C Round Financing Claims"). Again, while this is inexplicably duplicative and vexatious as a litigation matter, it is not surprising — NACEPF's Delaware counsel is also the counsel for plaintiffs in the Stritzinger case.

On November 22, 2006, GS Group and the Individual Defendants were served in this action via Federal Express delivery of a copy of the summons and complaint to Corporation Trust Company ("CT Corp.") at its Providence, Rhode Island location. CT Corp. is the registered agent for GS Group in Delaware. Subsequently, additional copies of the summons and complaint were delivered via certified mail to Messrs. Cardinale, Daly, and Gheewalla at their place of employment in New York.

## ARGUMENT

As set forth herein, this action should be dismissed for insufficient service of process as to the Individual Defendants (*infra* Section I) and for lack of personal jurisdiction as to all defendants that have been properly served (*infra* Section II). If not dismissed on jurisdictional

grounds, a stay of this action is warranted in light of duplicative actions currently pending in Delaware Court of Chancery (*infra*, Section III).

## I. THE COMPLAINT MUST BE DISMISSED AS TO THE INDIVIDUAL DEFENDANTS FOR INSUFFICIENT SERVICE OF PROCESS

Pursuant to Federal Rule of Civil Procedure 12(b)(5), the complaint must be dismissed as to the Individual Defendants because plaintiff cannot establish that these defendants have properly been served pursuant to Fed. R. Civ. P. 4(e). *See Lopez v. Municip. of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992) (plaintiff bears the burden to establish proper service of process). Fed. R. Civ. P. 4(e) provides that service may be effected either: (1) "pursuant to the law of the state in which the district court is located . . ." or (2) "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Plaintiff has not served the Individual Defendants by any authorized method.

Plaintiff first attempted to serve GS Group and the Individual Defendants through CT Corp. in Providence, Rhode Island. As noted on each summons, CT Corp. is the "Registered Agent for [The] Goldman Sachs Group, Inc." (The summonses are attached hereto at Exh. H). None of the Individual Defendants authorized CT Corp. or GS Group to accept service on his behalf; indeed, none are even employed by GS Group. Cardinale Decl. ¶¶ 3, 10; Gheewalla Decl. ¶¶ 3, 10; Daly Decl. ¶¶ 3, 10. Accordingly, such service cannot constitute proper service as to the Individual Defendants.[7] *See Huertas-Laboy v. Rodriguez-Gonzalez*, 1991 U.S. App.

---

7 *See West v. Paige*, 835 F. Supp. 20, 22 (D. Me. 1993) (service upon a secretary at defendant's place of employment did not satisfy requirements for service upon the individual); *Lensel Lopez v. Cordero*, 659 F.Supp. 889 (D.P.R. 1987) (same); *Lavender-Cabellero v. Dep't. of Cons. Affairs of City of New York*, 458

LEXIS 10778, at *10 n.4 (1st Cir. May 3, 1991) ("The agent's acceptance of service, or his own statement as to his authority, is insufficient, standing alone, to establish authorization to receive process."); *Blair v. City of Worcester*, 2006 U.S. Dist. LEXIS 12533, at *14 (D. Mass. Mar. 13, 2006) (similar); 4A Wright & Miller, Federal Practice and Procedure Civ. 3d §1097 (similar).

Plaintiff later sent copies of the summons and complaint to the individual defendants at the New York offices of non-party Goldman, Sachs & Co., Inc., via certified mail. This service is also infirm. The Federal Rules of Civil Procedure do not permit service by certified mail and Rhode Island state law provides for service by certified mail only if the defendant is otherwise subject to personal jurisdiction in Rhode Island. R.I. R.C.P. 4(f)(1). As discussed in Section II hereof, NACEPF does not meet this requirement.

Plaintiff's failure to effect proper service on the Individual Defendants mandates the dismissal of all claims against them. *Melia v. Les Grands Chais de France*, 135 F.R.D. 28, 38 (D.R.I. 1990) ("defendants' motion to dismiss must be granted because plaintiff has failed to perfect service of process upon the defendant . . . in the manner required by Rhode Island law").[8]

---

F.Supp. 213, 216 (S.D.N.Y. 1978) (leaving summons with a fellow employee without any authorization was insufficient service of process); *Boateng v. Inter Am. Univ. of P.R.*, 188 F.R.D. 26, 28 (D.P.R. 1999) (professors who were named as defendants in unlawful discrimination action were not properly served by leaving copy of summons and complaint with chancellor of university for which they worked, given complete lack of evidence that chancellor had been appointed to receive service on their behalf); *see also* 4A Wright & Miller, Federal Practice and Procedure Civ. 3d § 1096 ("[S]ervice of the summons at the defendant's place of employment or business will not qualify" as sufficient service of process under Rule 4(e)(2)) (collecting cases).

8 Although the Court has "broad discretion to dismiss the action or retain the case but quash the service that has been made on the defendant," since the Court does not have personal jurisdiction over the Individual Defendants (*see infra* Section II), and the complaint suffers from numerous other deficiencies, it would serve no purpose to grant plaintiff another opportunity to effect proper service. *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 660 n.3 (S.D.N.Y. 1997) (dismissing action where there was insufficient service of process, a lack of personal jurisdiction and a pending duplicative action); *In re Daboul*, 82 B.R. 657 (Bankr. D. Mass. 1987); *Richardson v. Ingram Corp.*, 374 F.2d 502, 503 (3d Cir. 1967) (upholding dismissal for lack of service where there had been no showing "that there was a reasonable prospect that service by alternative means could be effected in the near future"). If, however, the Court declines to dismiss the complaint, this motion should be treated, in the alternative, as a motion to quash the service.

## II. THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Nor may personal jurisdiction over the individual defendants be obtained even if they are properly served. Once a defendant asserts a lack of personal jurisdiction, "it becomes plaintiff's burden to prove the necessary facts to establish that defendant is indeed amenable to judicial proceedings in this forum." *See Celta Agencies, Inc. v. Denizciliksanayi Ve Ticaret, A.S.*, 269 F. Supp. 2d 1, 2 (D.P.R. 2003) (citing *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 7 (1st Cir. 2002) and *Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42, 50 (1st Cir. 2002)). To make even a *prima facie* showing of personal jurisdiction, "[the plaintiff] must produce evidence to support [its] jurisdictional allegation"; it "cannot rely on unsupported allegations in [the] pleadings." *Boit v. Gar-Tec Products*, 967 F.2d 671, 675-76 (1st Cir. 1992); *see also Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995) (the plaintiff "is obliged to adduce evidence of specific facts."). Moreover, plaintiff "must establish an independent basis for asserting long-arm jurisdiction" over each of the Individual Defendants; "generally, jurisdiction over the individual officers of a corporation may *not* be based merely on jurisdiction over the corporation." *Escude Cruz v. Ortho Pharma. Corp.*, 619 F.2d 902, 906 (1st Cir. 1980) (emphasis added).

Rhode Island's long-arm statute, on which plaintiff relies as the basis for jurisdiction over all defendants (Compl. ¶ 16), provides for jurisdiction coextensive with the limits of federal due process. R.I. Gen. Laws §9-5-33; *see also Congdon v. Jacobson*, 131 F.R.D. 35, 36 (D.R.I. 1990); *Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808, 809 (R.I. 1985). Jurisdiction may be general or specific. Here, plaintiff appears to claim general jurisdiction as to GS Group and the Goldman Shareholder Defendants, and specific jurisdiction over all defendants.

## A. No General Jurisdiction

For general jurisdiction to exist, due process requires that (1) "the defendant must have continuous and systematic contacts with the state," (2) "the defendant's contacts with the state must be purposeful," and (3) "the exercise of jurisdiction must be reasonable under the circumstances." *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). Each of these three requirements must be separately satisfied. *See Noonan v. Winston Co.*, 135 F.3d 85, 89 (1[st] Cir. 1998).

Plaintiff does not purport to allege that this Court has general jurisdiction over the Individual Defendants (nor would the factual allegations of the complaint support such a claim), and it has served the Goldman Shareholder Defendants.[9] As reflected above, GS Group does have a registered agent for service of process within the State of Rhode Island. See Compl. ¶ 17. Nonetheless, as an equitable matter, this Court should still decline to exercise jurisdiction over GS Group since the exercise of personal jurisdiction would be unreasonable under existing First Circuit precedent, as discussed *infra* at 18-21.

---

9 Only one of the Goldman Shareholder Defendants, Goldman Sachs Capital Partners III, L.P., has been served (by delivery to its registered agent in New York) but its time to answer does not expire until January 29, 2007. The other Goldman Shareholder Defendants have not yet been served. Nonetheless, in the interest of comprehensive disposition of this litigation, we note briefly that the complaint contains a single conclusory allegation that the Goldman Shareholder Defendants maintained "continuous and systematic" contacts with Rhode Island – an allegation which is belied by plaintiff's inability to effect service of process on any of these defendants in Rhode Island. The complaint does not allege that any of the Goldman Shareholder Defendants is registered in Rhode Island or maintains an office or mailing address in Rhode Island and, therefore, fails to establish general jurisdiction over these defendants. *See, e.g., Morel v. Estate of John J. Davidson*, 148 F. Supp. 2d 161 (D.R.I. 2001) (finding no general jurisdiction where contact was lacking "in several key areas" since defendant did not have an office, other property, a mailing address or a phone number in Rhode Island); *Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 88-89 (1st Cir. 1990) (contacts must "exist in sufficient abundance"). Moreover, jurisdiction over the Goldman Shareholder Defendants cannot be predicated on jurisdiction over GS Group. *See Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) ("Nor will the fact that the transferee is beneficially owned or controlled by a person or entity who does business in the forum state suffice to tip the jurisdictional balance") (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary")). Lastly, there are no facts plead even asserting that the Goldman Shareholder Defendants took any actions in Rhode Island so as to establish specific jurisdiction. All they are alleged to have done is to be shareholders of Clearwire — a Delaware corporation headquartered in Texas.

### B. No Specific Jurisdiction

The First Circuit employs a three-part inquiry to determine whether due process allows the exercise of specific jurisdiction over a defendant: (1) the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities, (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, and (3) the exercise of jurisdiction must be reasonable. *Sawtelle v. Farrell*, 70 F.3d 1381, 1388-1389 (1st Cir. 1995); *accord Brian Jackson & Co. v. Eximias Pharm. Corp.*, 248 F. Supp. 2d 31, 35-36 (D.R.I. 2003). Each of these requirements must be separately met. *See Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik GmbH*, 295 F.3d 59, 63 (1st Cir. 2002). Plaintiff has established none of them.

#### 1. The Defendants' Contacts With Rhode Island Are Not Related To Plaintiff's Claims

Due Process requires that "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 61 (1st Cir. 2002). To determine whether the element of relatedness is satisfied, the Court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999).

Here there are <u>no</u> jurisdictionally relevant contacts even alleged. Setting aside a gratuitous string of legally irrelevant conclusory allegations, plaintiff identifies only one instance of any defendant engaging in activity at all within Rhode Island.[10] The Complaint alleges that

---

10 In a futile attempt to establish jurisdiction, plaintiff alleges: Gheewalla and Cardinale "directed substantial contacts toward NACEPF in Rhode Island related to the allegations set forth herein" (Compl. ¶ 5, 6); "Daly participated in numerous correspondences and communications directed toward NACEPF in Rhode Island related to the allegations set forth herein" (Compl. ¶ 7); "the fraudulent and tortious conduct alleged herein was either directed toward NACEPF in Rhode Island, occurred in Rhode Island and [sic] caused injury to

Daly participated in a single meeting in Rhode Island in Spring 2003 "whereby Daly attempted to induce NACEPF to settle its claims under the Master Agreement" (Compl. ¶ 7).[11] This contact is woefully insufficient for at least three reasons.

(1) Plaintiff's claims in connection with the Master Agreement all arise out of events that took place years before this meeting. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts (Villa Marina I)*, 915 F.2d 7, 10 (1st Cir. 1990) ("A finding of jurisdiction must rest on a 'showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury'").

(2) Any alleged injury simply cannot have been caused by a settlement discussion, which was intended to resolve the very dispute at issue (and would be inadmissible under Fed. R. Evid. 408). *United Elec. Workers*, 960 F.2d at 1089 ("the defendant's in-state conduct must form an 'important, or at least material, element of proof' in the plaintiff's case").

(3) There is no allegation that this meeting was in any way connected to the C Round Financing out of which Counts V - VIII of plaintiff's complaint arise. As a matter of law, this cannot form the basis for jurisdiction. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994) (relatedness requirement "ensures that the element of

---

NACEPF in Rhode Island" (Compl. ¶ 14); "Defendants have deliberately engaged in significant activities with the State of Rhode Island and have continuing obligations to NACEPF in Rhode Island" (Compl ¶ 15); "Each of the Defendants, by virtue of their activities within the state, have the necessary and minimum contacts with the State of Rhode Island . . ." (Compl. ¶ 16). Such allegations carry no weight in the jurisdictional analysis. *See Escude Cruz*, 619 F.2d at 908 ("conclusory allegations are insufficient to show personal participation on the part of [the defendant] in any conduct that harmed the plaintiff").

11 The complaint also alleges that Cardinale, on behalf of GS Group, sent a memo to the Alliance (Compl. ¶ 31). The complaint does not specifically allege that the memo was sent to Rhode Island and, in any event, the First Circuit has repeatedly held that "mail and telephone calls are not enough to establish purposeful availment." *Sawtelle*, 70 F.3d 1381, 1391 (1st Cir. 1995); *see also Nicholas v. Buchanan*, 806 F.2d 305, 306 (1st Cir. 1986) (noting that district court dismissed a complaint for lack of jurisdiction where plaintiff alleged that the contacts between him and the defendant, a Texas resident, took place "inter-state via telephone communications from Rhode Island to Texas and Texas to Rhode Island, and via U.S. mail between the said two points"); *Bond Leather Co., Inc. v. Q. T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 932-35 (1st Cir. 1985) (defendant corporation had insufficient contacts with forum state to satisfy due process even though it had mailed four letters to forum state, had received at least one telephone call from the forum plaintiff, and had guaranteed the forum plaintiff payment for goods sold to another corporation). Accordingly, Cardinale cannot be subject to jurisdiction in Rhode Island on the basis of this memo.

causation remains in the forefront of the due process investigation"); *Sawtelle*, 70 F.3d at 1390 (relatedness focuses "on the nexus between a plaintiff's claim and the defendant's contacts with the forum").

### 2. The Defendants Have Not Purposefully Availed Themselves of Rhode Island Law

A defendant purposefully avails himself of a forum only where there is "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Harlow*, 432 F.3d at 58 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (similar). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Sawtelle*, 70 F.3d at 1391 (noting that jurisdiction cannot be based on "random, isolated, or fortuitous" contacts) (citing *Burger King*, 471 U.S. at 482).

Plaintiff has not alleged any action by defendants invoking the benefits of Rhode Island law. Certainly, the one specified contact — Mr. Daly's attempt to settle matters — does not qualify. "The fact that [a defendant] . . . negotiate[s] settlement discussions in [the forum state]... does not establish that the Defendants reasonably should anticipate being sued [in that state] at the time [the underlying cause of action arose]." *Gifford v. Bruce Strumpf, Inc.*, 1997 U.S. Dist. LEXIS 11876, at *3-4 (D. Me. Aug. 7, 1997) (noting that to exercise jurisdiction on that basis "clearly would have a chilling effect on pre-suit settlement of claims"), *aff'd*, 141 F.3d 1149 (1st Cir. 1998).

Furthermore, Mr. Daly did not attend this meeting in order to create a relationship with plaintiff or the state of Rhode Island such that this contact should be considered voluntary. *See Scarlatelli v. Swarovski Optik N. Am., Ltd.*, 2006 U.S. Dist. LEXIS 63823, at *15-16 (D.R.I. June 26, 2006) ("To demonstrate purposeful availment, the plaintiff must proffer 'evidence that the

defendant actually reached out to the plaintiff's state of residence to create a relationship — say, by solicitation . . .'"); *Microfibres v. McDevitt-Askew*, 20 F. Supp. 2d 316, 321 (D.R.I. 1998) ("To satisfy the purposeful availment requirement, there must be a voluntary decision by the defendant to inject itself into the local economy as a market participant"). Mr. Daly's meeting with plaintiff was a consequence of the relationship between Clearwire and plaintiff, which was established before Daly became a director of Clearwire and certainly long before the settlement meeting in Rhode Island took place. Moreover, this meeting was not an attempt to "create a relationship" with a Rhode Island entity; it was the exact opposite — an attempt to sever any ties. Since Mr. Daly's contact was unrelated to the present action and does not constitute purposeful availment of the privileges and benefits of Rhode Island[12] and no other contacts with Rhode Island are alleged, it would be unconstitutional to subject any defendant to jurisdiction here.

### 3. The Exercise Of Jurisdiction Over The Defendants Is Not Reasonable

There is nothing "reasonable" about requiring non-resident defendants, who have had little or no contact with Rhode Island, to appear before this Court in Rhode Island to defend themselves on Delaware claims, which they are already litigating in Delaware. The First Circuit has enumerated the following five "Gestalt factors" to be considered in determining the fairness and reasonableness of asserting personal jurisdiction: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective

---

12 There is likewise no alleged attempt by anyone to invoke the benefits or protections of Rhode Island's laws. To the contrary, it is uncontroverted that the Master Agreement is governed by Delaware law. *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1295 (6th Cir. 1989) ("essential showing" that plaintiff "purposefully availed itself of the benefits and protections of Michigan law . . . is not helped by the fact that the parties chose to have the contract governed by the law of Florida, rather than the law of Michigan") (citing *Burger King*, 471 U.S. at 482 ("Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has "purposefully invoked the benefits and protections of a State's laws" for jurisdictional purposes")).

resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.[13] *Nowak v. Tak How Invest.*, 94 F.3d 708, 717 (1st Cir. 1996) (citing *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)); *see also Burger King Corp.*, 471 U.S. at 477. Each of these factors weighs against exercising jurisdiction over the defendants, including GS Group, in Rhode Island.

<u>The Defendant's Burden Of Appearing</u>: It is unduly burdensome to require the defendants to appear in both Rhode Island and Delaware (neither of which is their home state) to defend themselves repeatedly in connection with disputes involving the same subject matter. This is particularly apt here where defendants have already prevailed in Delaware and are now defending that victory on appeal before the Delaware Supreme Court. *M&I Eastpoint Tech., Inc. v. Mid-Med Bank*, 2000 U.S. Dist. LEXIS 1146, at *30 (D.N.H. Jan. 28, 2000) (noting that duplicate parallel litigation creates additional burdens and costs for the parties and their counsel); *cf. Gray v. St. Martin's Press, Inc.*, 929 F. Supp. 40, 49-50 (D.N.H. 1996) (goal of single publication rule in libel cases is to "protect[] defendants from the burden of defending multiple suits").

<u>Rhode Island's Interest In The Dispute</u>: Rhode Island has a minimal, if any, interest in adjudicating this dispute, which neither arises out of any Rhode Island activity nor implicates Rhode Island law.[14] *See Sawtelle*, 70 F.3d at 1395; *Donatelli v. Nat'l Hockey League*, 893 F.2d

---

13 Since the minimum contacts requirement is not met with respect to the Individual Defendants, the Court need not reach the question of "reasonableness" as to these defendants. *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992) ("The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled"). Notwithstanding, as discussed herein, the exercise of jurisdiction over any of the defendants, including GS Group, would be unreasonable and should be declined by the Court.

14 As plaintiff acknowledged in the NACEPF Delaware Action, Delaware law governs the Master Agreement Claims. *See* Exh. G (NACEPF Del. Ch. Ans. Br.) at 30-44 (asserting Delaware law in support of its fraudulent inducement and tortious interference claims). Furthermore, since claims that concern the obligations and rights of directors and shareholders of Delaware corporations are most appropriately

459, 472 (1st Cir. 1990); *cf. Daynard*, 290 F.3d at 62 (forum state's interest weighs in favor of exercising jurisdiction where forum state law governs the dispute).

Plaintiff's Interest In Obtaining Convenient And Effective Relief: Many key non-party witnesses – including Clearwire, its officers, and directors – are located more than 100 miles from this district and are, therefore, outside the subpoena power of this Court. *See* Fed. R. Civ. P. 45. Unable to secure crucial live-witness testimony, a Rhode Island court is not a convenient or effective forum for this action. *See Elbalah v. Republic Ins. Co.*, 879 F. Supp. 3, 5 (D.R.I. 1995) (Rhode Island was *forum non conveniens* where plaintiff was in Rhode Island but witnesses were in New York and not subject to the Court's subpoena power).

The Judicial System's Interest In Obtaining The Most Effective Resolution Of The Controversy: As discussed in detail below (*infra* Section III), plaintiff already has identical claims pending on appeal before the Delaware Supreme Court and its counsel has commenced another suit in Delaware Court of Chancery, purportedly on behalf of all Clearwire shareholders, involving the other issues raised here. Allowing plaintiff to proceed here could result in conflicting decisions and, at a minimum, would result in an unnecessary duplication of effort by the courts. *M&I Eastpoint Tech., Inc.*, 2000 U.S. Dist. LEXIS 1146, at *30 ("[d]uplicate parallel litigation would mean a duplication of effort by the courts"). Accordingly, this factor weighs also against the exercise of jurisdiction here. *See Daynard v. Ness, Motley, Loadholt, Richardson, & Pooley, P.A.*, 290 F.3d 42, 62-63 (1st Cir. 2002) ("efficient administration of justice favors jurisdiction in Massachusetts, where this action is already proceeding against the…defendants").

---

governed by Delaware law, Delaware law also governs the C Round Financing Claims. *See Young v. Lepone*, 305 F.3d 1, 13 (1st Cir. 2002) ("courts generally refer to the law of the state of incorporation, rather than the law of the forum state, to determine the duties of corporate directors").

The Common Interests Of All Sovereigns In Promoting Substantive Social Policies: "As a fundamental social policy, it is desirable that the court which is most concerned with a controversy . . . should adjudicate the dispute." *Microfibres, Inc. v. Squires Hightech Corp.*, 2006 U.S. Dist. LEXIS 7914 (D.R.I. Jan. 13, 2006). This dispute involves New York defendants, claims governed by Delaware law, arises out of the parties' relationship with Clearwire – a Delaware corporation headquartered in Texas, and involves no activity in Rhode Island. The court most concerned with this controversy is undoubtedly not the U.S. District Court in Rhode Island. While declining jurisdiction would not threaten Rhode Island's sovereignty, "asserting jurisdiction in this case would seem to constitute a reaching-out 'beyond the limits imposed' by the state's status as a 'coequal sovereign[] in a federal system.'" *Donatelli,* 893 F.2d at 472 ("Rhode Island's sovereignty is not threatened [where] apart from a generalized concern for the rights of its own domiciliaries, the state has no real interest in adjudicating the controversy") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Given the unreasonableness of requiring the defendants to defend themselves in both Rhode Island and in Delaware on the same claims (all arising under Delaware law), particularly in light of the paucity of contacts with Rhode Island, the exercise of jurisdiction over the Individual Defendants and GS Group in this forum does not comport with constitutional due process. Therefore, the complaint should be dismissed.

## III. THE COURT SHOULD ALTERNATIVELY STAY THIS ACTION UNTIL RESOLUTION OF PENDING DELAWARE ACTIONS

Even if this Court does not dismiss this case on jurisdictional grounds, it should abstain from exercising its jurisdiction. Where, as here, a federal action involving purely questions of state law is duplicative of a pending state court action, "considerations of '[w]ise judicial

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" favor staying the federal action until the state action is resolved. *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-18 (1976). The present action arises out of the same facts and asserts essentially the same claims that have been previously asserted in the Delaware Court of Chancery, in part, in the NACEPF Delaware Action and, in part, in the Stritzinger Action (collectively, the "Pending Delaware Actions").[15] Accordingly, should the Court decline to dismiss the complaint, the action should be stayed until final resolution of one or both of the Pending Delaware Actions.[16]

The propriety of a stay is a decision that is committed to the "carefully considered judgment" of the district court. *Centronics Data Computer Corp. v. Merkle-Korff Indus.*, 503 F. Supp. 168, 170 (D.N.H. 1980); *see also Puerto Rico Int'l Airlines Inc. v. Recio*, 520 F.2d 1342, 1345 (1st Cir. 1975) (similar). The First Circuit has repeatedly recognized the presence of the "exceptional circumstances" required for federal abstention in circumstances similar to those at issue here – where a plaintiff, having been unsuccessful in state court, filed a federal action while

---

15 The fact that neither of the Pending Delaware Actions is, on its own, perfectly identical to the present case, does not preclude this court from staying this action pending the resolution of one or both of those actions. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts (Villa Marina II)*, 947 F.2d 529, 533 (1st Cir. 1991) ("perfect identity of issues is not a prerequisite for dismissal") (citations omitted); *Escabi v. Puerto Rico*, 2003 U.S. Dist. LEXIS 26367 (D.P.R. Feb. 20, 2003) ("Neither does this lack full identity [of the parties] preclude abstention under *Colorado River*.") (citation omitted); *Ramirez v. Skeete*, 671 F. Supp. 892, 893 (D.P.R. 1987) ("nowhere in *Colorado River* is identity of the parties or issues required to trigger its doctrine") (citation omitted).

16 Alternatively, abstention may be appropriate under other abstention doctrines such as those set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) or *Louisiana Power & Light v. City of Thibodaux*, 360 U.S. 25, 3 L. Ed. 2d 1058, 79 S. Ct. 1070 (1959) and their progeny. *See also Cruz v. Melecio*, 204 F.3d 14, 23 (1st Cir. 2000) ("the various strains of abstention-related doctrines are not Procrustean taxonomies, but, rather, concepts that reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.") (internal quotations omitted). For a detailed overview of the evolution of and distinction between the varied federal abstention doctrines, see *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) (citations omitted).

the state action was still on appeal.[17] Here, a stay is particularly appropriate given the added complication of the Stritzinger Action – also pending in Delaware state court against the same defendants, brought by plaintiff's Delaware lawyers, raising precisely the same claims raised here (indeed, plaintiff's C Round Financing claims are nearly a carbon copy of the Stritzinger complaint and even asserts (Compl. at ¶ 57) that the Stritzinger Action inspired this action ).

The Supreme Court has advised that, in determining whether it is appropriate to stay a federal action in light of a concurrent state action, a federal court should consider the following factors: (1) the court first assuming jurisdiction over property (a res) may exercise that jurisdiction to the exclusion of other courts; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source-of-law, *i.e.* whether state or federal law governs the dispute; (6) adequacy of the state court proceeding to protect the rights of the party filing in federal court. *See Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-26 (1983). The First Circuit also recognizes two supplementary factors: (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal and jurisdiction. *See Rossi v. Gemma*, 2006 U.S. Dist. LEXIS 44441, at *52 (D.R.I. Jan. 13, 2006) (citing *Rio Grande Cmty. Health Ctr, v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005)). The analysis is very case specific, and "the weight to be given to any

---

17 *See, e.g., Melecio*, 204 F.3d at 23 (where plaintiff-appellants "waited to file suit in federal court until after the Puerto Rico Court of First Instance had entered a final judgment adverse to their interests, [t]heir timing raises the discomfiting specter of forum-shopping") (citing *Glen Oaks Utils., Inc. v. City of Houston*, 280 F.2d 330, 331-32 (5th Cir. 1960) (similar); (*comparing In re President of Harvard College*, 149 F.2d 69, 72-73 (1st Cir. 1945) (holding stay improper absent a state court judgment, but suggesting that an opposite result would inhere if a state court judgment had been rendered and was pending on appeal in the state system)); *Barreto-Rosa v. Varona-Mendez*, 470 F.3d 42, 42 n.1 (1st Cir. 2006) (noting that district court reasoned that abstention was proper in order to "avoid duplicative litigation and because the local court case may decide the outcome of the instant case"); *see also Currie v. Group Ins. Comm'n*, 290 F.3d 1, 11 (1st Cir. 2002) (listing decisions granting abstention under *Colorado River* where state proceeding was already on appeal).

one factor may vary greatly from case to case." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16; *see also Colorado River* 424 U.S. at 818-19 ("No one factor is necessarily determinative").[18]

Applying the Colorado River factors here, complications certain to result from piecemeal litigation, the undeniable inconvenience of trying these claims in Rhode Island, and the complex questions of Delaware law all provide compelling justifications for staying this action.

Piecemeal Litigation: "Concern with piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora." *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991). Here, if the court were to proceed and rule on this action, there is no practical benefit since the Stritzinger Action would proceed nonetheless – at least as to Clearwire and its officers who are named in that action (as well as the Individual Defendants who are not subject to jurisdiction here and the Goldman Shareholder Defendants, at least two of which plaintiff has not even tried to serve in this case). *Fumero-Vidal v. First Fed. Sav. Bank*, 788 F. Supp. 1275, 1281 (D.P.R. 1992) (explaining problems of proceeding in federal court included fact that judgment in federal court would not be *res judicata* in Superior Court with respect to a counterclaim). Moreover, if the ruling in this action with respect to the C Round Financing were inconsistent with the ruling in the Stritzinger Action, it would be difficult to determine the effect on the preferences of the Series C Preferred Stock in the event of a liquidation of Clearwire. Of course, that NACEPF has asserted diametrically opposed factual scenarios — in Delaware that Clearwire was insolvent in August 2003; and in this Court that Clearwire had great value that it hid from its shareholders when it

---

18 Factors 1 (jurisdiction over a res) and 8 (removal policy) are not pertinent here and do not shift the balance in either direction. That one or more factors are inapplicable does not preclude a finding that a stay is appropriate here. *See, e.g., Rivera-Feliciano v. Acevedo-Vila*, 438 F.3d 50, 62 (1st Cir. 2006) (holding that abstention was appropriate even though no res was involved and both the federal and Puerto Rico forums were equally convenient); *accord Fumero-Vidal v. First Fed. Sav. Bank*, 788 F. Supp. 1275, 1281 (D.P.R. 1992) ("We note that we have not relied on factors one and two, and do not discuss them, because they are inapplicable").

did the C Round Financing in August 2003 — does not mean it should be able to litigate in two fora. To the contrary, it should be called to explain in one court how it reconciles these divergent positions.

Similar problems arise with respect to the Master Agreement Claims. If the decision in the NACEPF Delaware Action is reversed (as NACEPF is currently urging), that action will proceed against Messrs Cardinale, Gheewalla and Daly in the Delaware Court of Chancery, and the present action will proceed against those defendants and GS Group (assuming nothing is dismissed on personal jurisdiction grounds), creating a real risk of inconsistent results. *See Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 254 (D. Mass. 1999) ("simultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments"). Defendants would be severely prejudiced. Beyond the obvious risk of differing interpretations of facts or law, there is a more serious risk that, without a stay, plaintiff would have the opportunity to try the same claims twice, and perhaps terminate either litigation if it does not appear to be proceeding favorably. Essentially, dual litigations would provide plaintiff the opportunity for very informed forum-shopping. The preference for preventing such litigation gamesmanship and avoiding piecemeal litigation weighs heavily in favor of abstention. *See Rojas-Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st Cir. 1991) (The First Circuit has given "most weight to this factor where piecemeal litigation would severely prejudice one of the parties.") (citations omitted); *Goldhammer*, 59 F. Supp. 2d at 254.

Inconvenience of the Federal Forum: "Consideration of this factor entails, by necessity, a comparison between the problems which the federal forum will experience as opposed to the problems encountered by the state forum." *First Union Nat'l Bank v. Margo Farms Del Caribe*, 875 F. Supp. 73, 78 (D.P.R. 1995); citing *Burns v. Watler*, 931 F.2d 140, 147 (1st Cir. 1991)

(noting that concern is with the "physical proximity of the federal forum to the evidence and witnesses"). As discussed above (*supra* at 20) there is no evidence that Clearwire or any of its management would be subject to the subpoena power of this Court. *See* Fed. R. Civ. P. 45(b)(2). In contrast, Clearwire is a Delaware Corporation whose officers are subject to jurisdiction in Delaware in suits alleging breaches of their duty to Clearwire's shareholders (see 10 Del. C. § 3114 ) and several of its former officers are named as defendants in the Stritzinger Action. Exh. F. Consequently, the Delaware courts will have ready access to Clearwire documents and to the live testimony of the people who were instrumental in the operations and strategic business decisions at issue, whereas this Court likely will not. This factor, therefore, weighs in favor of staying this action. *Margo Farms Del Caribe*, 875 F. Supp. at 78 (inconvenience to the federal forum supports granting a stay where the majority of witnesses resided outside the forum).

The Source-Of-Law: Where, as here, plaintiff's claims arise under Delaware state law and present several "complex questions of state law that would best be resolved by a state court" this factor weighs heavily in favor of staying the action. *Villa Marina I*, 915 F.2d at 15 (citations omitted); *see also Rey v. Classic Cars*, 762 F. Supp. 421, 426 (D. Mass. 1991) (granting abstention where state law provides the rule of decision for five of six counts asserted by the plaintiff). Indeed, courts have repeatedly recognized that abstention is particularly appropriate in matters, such as this one, involving issues of Delaware corporate law. *See Teamsters Local Pension Trust Fund v. IBP, Inc.*, 123 F. Supp. 2d 514 (D.S.D. 2000) (when there was a parallel litigation pending in Delaware Chancery Court, the court found there was "no question" that claim relating to matters of corporate governance should be held in Delaware since Delaware law governed the claims at issue and because the Delaware Chancery Court "through its daily interpretation of that law, has earned a reputation for its 'expertise concerning corporate

governance'") (citing *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 948 (7th Cir. 1994)); *Shallel v. Elson,* 1999 WL 33957906, at *6 (S.D. Fla. Apr. 12, 1999) (similar).

The Remaining Factors: Consideration of the remaining factors provides even further support for a stay. Because both of the Pending Delaware Actions were commenced prior to the present action, consideration of which court first obtained jurisdiction weighs in favor of issuing a stay. In fact, the present action was commenced in response to an adverse ruling in the NACEPF Delaware action – the reactive nature of the federal action adds further justification for a stay. *See Villa Marina I*, 915 F.2d at 15 ("if [the plaintiff] went to federal court solely in reaction to its failure in the Commonwealth court, that fact should be held against it in the *Colorado River* balance"). Finally, each of plaintiff's claims could be brought in state court, hence, this factor does not shift the balance of the factors. *See Villa Marina II*, 947 F.2d at 536 ("the fact that the claims brought in the federal lawsuit also could be brought in state court . . . [indicates] that dismissal – if affirmatively warranted based on other factors – would not prejudice the federal court plaintiff").

## CONCLUSION

For the forgoing reasons, the defendants respectfully request that all claims asserted against them in this action be dismissed.

Respectfully submitted,

January 16, 2007

**THE GOLDMAN SACHS GROUP, INC., GERRY CARDINALE, ROB GHEEWALLA and JACK DALY,**

By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
Wayne F. Dennison, *pro hac vice*
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main Street
Providence, RI 02903
401.276.2600
401.276.2601 Facsimile
bjl@brownrudnick.com
*Attorneys for Defendants*

OF COUNSEL:
Douglas H. Flaum
Lara Turcik
Elizabeth A. Walsh
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980
(212) 859-8000

543697.7

**CERTIFICATION**

I hereby certify that, on the 16th day of January, 2007, this document was electronically filed and that it is available for viewing and downloading from the Court's ECF system by the following Filing Users:

Matthew T. Oliverio
Christine M. Curley
Oliverio & Marcaccio LLP
55 Dorrance Street
Suite 400
Providence, RI 02903

/s/ Brian J. Lamoureux

# 50226124 v1 - LAMOURBJ - 024607/1432