3.2.2 Dividends. (a) The holders of Series B Preferred Stock shall be entitled, subject in all cases to the prior rights of the holders of the Series C Preferred Stock and only after the holders of the Series C Preferred Stock have received all amounts and dividends to which they are then entitled under the terms of the Series C Preferred Stock, on a pari passu basis with the holders of Series A Preferred Stock, and in preference to the holders of any shares of Junior Stock, to receive on each share of Series B Preferred Stock, out of funds legally available therefor, cumulative cash dividends payable at the rate of 8% per annum on the Preferred Amount Per Series B Share (as defined in Section 3.2.5(b) below). Holders of Series B Preferred Stock shall receive payment of dividends with respect to shares of Series B Preferred Stock only if, as, and when such payment of such dividends is declared by the Board of Directors, except as specified below upon the occurrence of a Liquidation Event. Such dividends will be calculated and compounded annually in arrears on December 31 of each year in respect of the prior twelve-month period (prorated on a daily basis for partial periods). Such dividends shall commence to accrue on each share of Series B Preferred Stock from the date of issuance thereof whether or not declared by the Board of Directors and whether or not there are profits, surplus or other funds of the Corporation legally available for the payment of dividends, and shall continue to accrue until the Series B Liquidation Preference (as defined in Section 3.2.5 below) with respect to such share is paid in full in cash or until the conversion of the Series B Preferred Stock in accordance with Section 3.2.6 (such dividends being referred to as the "Series B Preferred Dividends"). To the extent the Corporation has assets legally available therefor and the Board of Directors has not declared the payment of nor has the Corporation paid the dividends pursuant to this Section 3.2.2, Series B Preferred Dividends shall be due and payable with respect to each share of Series B Preferred Stock upon the occurrence of a Liquidation Event in accordance with Section 3.2.5. Series B Preferred Dividends and Series A Preferred Dividends paid in cash in an amount less than the total amount of such dividends at the time accumulated and payable on all outstanding shares of Series B Preferred Stock and Series A Preferred Stock shall be allocated on a pari passu basis among holders of Series B Preferred Stock and holders of Series A Preferred Stock pro rata in accordance with the relative amount of Series B Preferred Dividends and Series A Preferred Dividends accrued on the Series B Preferred Stock and Series A Preferred Stock, respectively, held by such holders. At any time when shares of Series B Preferred Stock are outstanding and the Series B Preferred Dividends have not been paid in full in cash, no dividend whatsoever shall be paid or declared, and no distribution shall be made, on any share of Junior Stock and no monies shall be paid into or set aside or made available for a sinking or other analogous fund for the purchase, redemption or acquisition thereof, except such purchase, redemption or acquisition is permitted when approved by holders of a majority of the outstanding Series B Preferred Stock, voting as a separate series; provided, however, that the Corporation may purchase, redeem or acquire shares of Common Stock and Common Stock Equivalents (as defined in Section 3.4 below) issued to employees, officers or

directors of, or consultants or other service providers to, the Corporation pursuant to equity incentive plans or other arrangements approved by the Board of Directors.

(b) Notwithstanding anything in this Section 3.2.2 to the contrary, upon the conversion of shares of Series B Preferred Stock into Common Stock in accordance with Section 3.2.6, all accumulated and unpaid Series B Preferred Dividends shall be canceled with respect to such shares of Series B Preferred Stock that have been converted.

(c) All numbers relating to the calculation of dividends pursuant to this Section 3.2.2 shall be equitably adjusted to reflect any stock split, stock dividend, combination, reorganization, recapitalization, reclassification or other similar event involving Series B Preferred Stock or Common Stock.

(d) The holder of each share of Series B Preferred Stock shall be entitled to receive the dividends declared by the Board of Directors; provided, however, that, in addition to the Series B Preferred Dividends, the holder of each share of Series B Preferred Stock shall be entitled to receive dividends per share of Series B Preferred Stock equal to the dividends per share a holder of shares of Common Stock into which a share of Series B Preferred Stock is convertible pursuant to the provisions of Section 3.2.6 would be entitled to, at the record date for the determination of stockholders entitled to such dividends, or, if no such record date is established, at the date such dividend is declared.

3.2.3 Voting Rights. (a) In addition to any voting rights provided by law or set forth elsewhere in this Certificate of Incorporation, the holders of shares of Series B Preferred Stock shall be entitled to vote on all matters, and with respect to any matter shall be entitled to the number of votes per share of Series B Preferred Stock equal to the number of shares of Common Stock into which a share of Series B Preferred Stock is convertible pursuant to the provisions of Section 3.2.6, at the record date for the determination of the stockholders entitled to vote on such matter, or, if no such record date is established, at the date such vote is taken or any written consent of stockholders is solicited. Except as required by law, or as otherwise provided in this Certificate of Incorporation, the holders of shares of Series B Preferred Stock, Series A Preferred Stock, Series C Preferred Stock and Common Stock shall vote together as a single class and series and not as separate classes or series.

(b) Series B Directors. Holders of Series B Preferred Stock shall not be entitled to elect, as a separate series, any persons to the Board of Directors.

3.2.4 Reacquired Shares. Any shares of Series B Preferred Stock converted, purchased or otherwise acquired by the Corporation in any manner

whatsoever shall be retired and canceled promptly after the acquisition thereof. None of such shares of Series B Preferred Stock shall be reissued by the Corporation.

3.2.5 Liquidation, Dissolution or Winding Up.

(a) Series B Liquidation Preference. Upon any Liquidation Event each holder of Series B Preferred Stock shall be entitled to be paid in cash or immediately available funds with respect to each share of Series B Preferred Stock out of the assets of the Corporation available for distribution to stockholders, whether such assets are capital, surplus or earnings, subject in all cases to the prior rights of the holders of the Series C Preferred Stock and only after the holders of the Series C Preferred Stock have received all amounts to which they are then entitled under the terms of the Series C Preferred Stock, on a pari passu basis with Series A Preferred Stock, and in preference to, and before any amount shall be paid or distributed to the holders of Junior Stock, an amount in cash of immediately available funds equal to the greater of (A) the Preferred Amount Per Series B Share, plus any accrued but unpaid dividends to which such holder of outstanding shares of Series B Preferred Stock is then entitled pursuant to Section 3.2.2 hereof (such sum as to each share of Series B Preferred Stock being referred to as the "Series B Liquidation Preference" of such share) and (B) the amount each such holder of Series B Preferred Stock would have been entitled to receive if all outstanding shares of Series B Preferred Stock and Series A Preferred Stock had been converted into Common Stock in accordance with Section 3.2.6 (in the case of Series B Preferred Stock) and Section 3.1.6 (in the case of Series A Preferred Stock) immediately prior to such Liquidation Event (the "Series B Conversion Amount"). For the avoidance of doubt, this Section 3.2.5 shall apply with respect to any Liquidation Event or deemed Liquidation Event notwithstanding that such Liquidation Event or deemed Liquidation Event is an Organic Change. In addition, a merger or consolidation of the Corporation into or with any other Person or Persons (other than a direct or indirect wholly owned subsidiary of the Corporation), as well as the sale of all or substantially all of the stock of the Corporation, shall also be deemed a Liquidation Event and upon such an event, holders of Series B Preferred Stock will receive an amount equal to the Series B Liquidation Preference; provided, however, that the Series B Liquidation Preference paid in connection with such merger, consolidation or sale of all or substantially all of the stock of the Corporation must consist of Acceptable Consideration, and if the consideration offered to be paid as the Series B Liquidation Preference is not Acceptable Consideration, such other form of consideration must be approved by the holders of a majority of the then outstanding shares of Series A Preferred Stock, Series B Preferred Stock and Series C Preferred Stock, voting as a single class; provided, further, that if immediately prior to such merger, consolidation or sale of all or substantially all of the stock of the Corporation the holders of a majority of the shares of Series B Preferred Stock then outstanding vote to deem such merger,

consolidation or sale of all or substantially all of the stock of the Corporation not to be a Liquidation Event, then (i) each holder of Series B Preferred Stock shall thereafter have the right to acquire and receive, in lieu of or in addition to (as the case may be) the shares of Common Stock immediately theretofore acquirable and receivable upon the conversion of such holder's Series B Preferred Stock, such shares of stock, securities or assets as such holder would have received in connection with such merger, consolidation or sale of all or substantially all of the stock of the Corporation if such holder had converted its Series B Preferred Stock immediately prior to such merger, consolidation or sale of all or substantially all of the stock of the Corporation; or (ii) if Series B Preferred Stock is to remain outstanding following such merger, consolidation or sale of all or substantially all of the stock of the Corporation, the provisions of Section 3.2.6(i) shall apply. If upon any Liquidation Event, after the payment of any amounts payable with respect to the issued and outstanding Series C Preferred Stock, the amounts payable with respect to the issued and outstanding Series A Preferred Stock and Series B Preferred Stock are not paid in full, the amounts available for distribution shall be distributed ratably among the holders of Series A Preferred Stock and Series B Preferred Stock on a pari passu basis in accordance with the relative Series A Liquidation Preference of the Series A Preferred Stock and Series B Liquidation Preference of the Series B Preferred Stock held by such holders, and the holders of Junior Stock shall in no event be entitled to participate in the distribution of any assets of the Corporation in respect of their ownership thereof.

(b) "Preferred Amount Per Series B Share" shall mean, with respect to each share of Series B Preferred Stock, $1.50.

(c) Notice of Liquidation Event. Written notice of a Liquidation Event stating a payment date, the amount of the Series B Liquidation Preference and Series B Conversion Amount, and the place where said Series B Liquidation Preference or Series B Conversion Amount shall be payable, shall be delivered in person, mailed by certified or registered mail, return receipt requested, or sent by telecopier or telex, not less than twenty (20) days prior to the payment date stated therein, to the holders of record of shares of Series B Preferred Stock, such notice to be addressed to each such holder at its address as shown by the records of the Corporation.

3.2.6 Conversion of Series B Preferred Stock.

(a) Optional Conversion. Subject to the provision for adjustment set forth below, each share of Series B Preferred Stock shall be convertible, at the option of the holder thereof at any time and from time to time after the date hereof, into a number of shares of Common Stock equal to the then effective Series B Conversion Ratio (as defined in Section 3.4 below).

(b) Mandatory Conversion. Subject to the provision for adjustment set forth below, each share of Series B Preferred Stock shall be

automatically (without any action on the part of the holder thereof or of the Corporation) converted into a number of shares of Common Stock at the Series B Conversion Ratio upon the occurrence of a Mandatory Conversion Event.

(c) Conversion Procedure.

(i) Conversion of Series B Preferred Stock pursuant to Section 3.2.6(a) may be effected by any holder thereof upon the surrender to the Corporation at the offices of the Corporation, or at the office of any Transfer Agent of the certificates representing Series B Preferred Stock to be converted, accompanied by a written notice (a "Series B Conversion Notice") stating that such holder elects to convert all or, a specified portion of such Series B Preferred Stock in accordance with the provisions of this Section 3.2.6 and specifying the name or names in which such holder wishes the certificate or certificates for shares of Common Stock to be issued. The Corporation shall pay any issue and transfer taxes that may be payable in respect of any issue or delivery of shares of Common Stock on conversion of Series B Preferred Stock pursuant hereto. As promptly as practicable, and in any event within five business days after the surrender of such certificates representing Series B Preferred Stock and the receipt of the Series B Conversion Notice relating thereto, the Corporation shall deliver or cause to be delivered (1) certificates representing the number of validly issued, fully paid and nonassessable shares of Common Stock to which the holder of Series B Preferred Stock being converted shall be entitled and (2) if less than all of the shares represented by the surrendered certificates are being converted, a new certificate representing the number of shares of Series B Preferred Stock which remains outstanding upon such partial conversion. Such conversion shall be deemed to have been made at the close of business on the date of the giving of such Series B Conversion Notice or such later date and time as may be specified in such Series B Conversion Notice so that the rights of the holder thereof as to Series B Preferred Stock being converted shall cease as of such close of business or such later date and time except for the right to receive shares of Common Stock in accordance herewith, and the person entitled to receive the shares of Common Stock shall be treated for all purposes as having become the record holder of such shares of Common Stock as of such close of business or such later date and time.

(ii) On the Mandatory Conversion Date, the holders of shares of the Series B Preferred Stock shall surrender the certificates evidencing such shares at the office of the Corporation or of its transfer agent for shares of the Common

Stock. The Corporation shall then issue and deliver to each such holder a certificate or certificates for the number of shares of the Common Stock into which the shares of the Series B Preferred Stock surrendered were converted on the Mandatory Conversion Date. Such conversion shall be deemed to have occurred as of the Mandatory Conversion Date, whether or not the certificates evidencing such shares are surrendered to the Corporation or its transfer agent for shares of the Common Stock, so that the rights of the holder thereof as to Series B Preferred Stock which have been converted shall cease as of the Mandatory Conversion Date, except for the right to receive shares of Common Stock in accordance herewith, and the person entitled to receive the shares of Common Stock shall be treated for all purposes as having become the record holder of such shares of Common Stock as of the Mandatory Conversion Date. The Corporation shall pay any issue and transfer taxes that may be payable in respect of any issue or delivery of shares of Common Stock on mandatory conversion of Series B Preferred Stock pursuant to Section 3.2.6(b). Notwithstanding the foregoing, however, the Corporation shall not be obligated to issue certificates evidencing the shares of the Common Stock issuable upon such conversion unless certificates evidencing the shares of the Series B Preferred Stock which have been converted are either delivered to the Corporation or any such transfer agent or the holder notifies the Corporation or any such transfer agent that such certificates have been lost, stolen or destroyed, and delivers, or causes to be delivered, to and for the benefit of the Corporation, in the discretion of the Board of Directors, a surety bond or other financial accommodation satisfactory to the Corporation, or executes an agreement to indemnify the Corporation satisfactory to the Corporation from any loss incurred by it in connection therewith.

(iii) The Corporation shall at all times reserve and keep available for issuance upon the conversion of Series B Preferred Stock, free from any preemptive rights, such number of its authorized but unissued shares of Common Stock as will from time to time be necessary to permit the conversion of all outstanding shares of Series B Preferred Stock into shares of Common Stock, and shall take all action required to increase the authorized number of shares of Common Stock if necessary to permit the conversion of all outstanding shares of Series B Preferred Stock. The Corporation shall take all actions as may be necessary to assure that all such shares of Common Stock may be so issued without violation of any applicable law (including, without limitation, applicable federal and state securities laws) or

governmental regulation or any requirements of any domestic securities exchange upon which shares of Common Stock may be listed (except for official notice of issuance which shall be immediately delivered by the Corporation upon each such issuance).

(iv) The Corporation shall not close its books against the transfer of Series B Preferred Stock or of Common Stock issued or issuable upon conversion of Series B Preferred Stock in any manner that interferes with the timely conversion of Series B Preferred Stock. The Corporation shall assist and cooperate with any holder of shares of Series B Preferred Stock required to make any governmental filings or obtain any governmental approval prior to or in connection with any conversion of such shares hereunder (including, without limitation, making any filings required to be made by the Corporation).

(v) If the shares of Common Stock issuable by reason of such conversion of Series B Preferred Stock are convertible into or exchangeable for any other stock or securities of the Corporation, the Corporation shall, at the converting holder's option, upon surrender of shares of Series B Preferred Stock to be converted by such holder as provided above together with any notice, statement or payment required to effect such conversion or exchange of Common Stock, deliver to such holder, or as otherwise specified by such holder, a certificate or certificates representing the stock or securities into which the shares of Common Stock issuable by reason of such conversion are so convertible or exchangeable, registered in such name or names and in such denomination or denominations as such holder has specified.

(d) <u>Adjustments Upon Changes in Capitalization</u>.

(i) Except with respect to Excluded Securities, in case the Corporation shall issue any shares of Common Stock or Common Stock Equivalents after the date the first share of Series B Preferred Stock is issued (the "<u>Series B Issue Date</u>") at a price per share (or having a conversion or exercise price per share) less than the Preferred Amount Per Series B Share, in each such case the Series B Conversion Ratio shall be appropriately adjusted to equal the Preferred Amount Per Series B Share divided by the price per share or the exercise or conversion price per share as applicable, at which the shares of Common Stock or Common Stock Equivalents were issued. An adjustment made pursuant to this subparagraph (i) shall be made on the next business day

following the date on which any such issuance is made and shall be effective retroactively to the close of business on the date of such issuance. For purposes of this subparagraph (i), the consideration receivable by the Corporation in connection with the issuance of additional shares of Common Stock or of Common Stock Equivalents shall be deemed to be equal to (X) in the case the consideration received by the Corporation is cash, the sum of the aggregate purchase price, excluding any amounts paid or receivable for accrued interest or accrued dividends (before deduction of underwriting discounts or commissions and expenses payable to third parties, if any), of all such Common Stock and/or Common Stock Equivalents plus the minimum aggregate amount, if any, payable upon conversion, exchange or exercise of any such Common Stock Equivalents, and (Y) in the case the consideration received by the Corporation is other than cash, the fair market value of the consideration received by the Corporation as determined by the good faith judgment of the Board of Directors. The issuance or reissuance of any shares of Common Stock (whether treasury shares or newly issued shares) pursuant to a dividend or distribution on, or subdivision, combination or reclassification of, the outstanding shares of Common Stock shall not be deemed to constitute an issuance of Common Stock or Common Stock Equivalents by the Corporation to which this subparagraph (i) applies. Upon the expiration or termination of any unconverted, unexchanged or unexercised Common Stock Equivalents for which an adjustment has been made pursuant to this subparagraph (i), the adjustments shall forthwith be reversed to effect such Series B Conversion Ratio as would have been in effect at the time of such expiration or termination had such Common Stock Equivalents, to the extent outstanding immediately prior to such expiration or termination, never been issued.

(ii) If the purchase price provided for in any Common Stock Equivalents, the additional consideration, if any, payable upon the conversion or exchange of any Common Stock Equivalents, or the rate at which any Common Stock Equivalents are convertible into or exchangeable for Common Stock, shall change at any time, the Series B Conversion Ratio in effect at the time of such change shall be readjusted to the Series B Conversion Ratio which would have been in effect at such time had such Common Stock Equivalents still outstanding provided for such changed purchase price, additional consideration or changed conversion rate, as the case may be, at the time initially granted, issued or sold.

(iii) If the Corporation shall set a record date for the holders of its Common Stock for the purpose of entitling them to receive a dividend or other distribution and shall thereafter, and before such dividend or distribution is paid or delivered to stockholders entitled thereto, legally abandon its plan to pay or deliver such dividend or distribution, then no adjustment in the Series B Conversion Ratio then in effect shall be made by reason of the taking of such record, and any such adjustment previously made as a result of the taking of such record shall be reversed.

(e) As used in this Section 3.2.6, the term "Common Stock" shall mean and include the Corporation's authorized Common Stock as existing on the date of filing this Certificate of Incorporation, and shall also include any capital stock of any class of the Corporation thereafter authorized which shall neither be limited to a fixed sum or percentage in respect of the rights of the holders thereof to participate in dividends nor be entitled to a preference in the distribution of assets upon the Liquidation of the Corporation, provided that the shares of Common Stock receivable upon conversion of shares of Series B Preferred Stock shall include only shares designated as Common Stock of the Corporation on the date of filing of this instrument, or in case of any reorganization or reclassification of the outstanding shares thereof, the stock, securities or assets to be issued in exchange for such Common Stock pursuant thereto.

(f) The Corporation will at no time close its transfer books against the transfer of any Series B Preferred Stock, or of any shares of Common Stock issued or issuable upon the conversion of any shares of such Series B Preferred Stock, except as may otherwise be required to comply with applicable securities laws.

(g) The Corporation will not, by amendment of its Certificate of Incorporation or through any reorganization, recapitalization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Corporation, but will at all times in good faith assist in the carrying out of all the provisions of this Section 3.2.6 and in the taking of all such action as may be necessary or appropriate in order to protect the conversion rights of the holders of Series B Preferred Stock against impairment.

(h) If the Corporation at any time (i) pays any dividend, or makes any distribution, on the outstanding shares of Common Stock in shares of Common Stock without payment of any consideration by the holders of Common Stock, (ii) subdivides (by any stock split, stock divided, recapitalization or otherwise) the outstanding shares of Common Stock, or (iii) combines (by reverse stock split or otherwise) the outstanding shares of Common Stock into a

smaller number of shares, then, and in each such case, the Series B Conversion Ratio in effect immediately prior to such event or the record date therefor, whichever is earlier, shall be adjusted so that the holder of any shares of Series B Preferred Stock thereafter convertible into Common Stock pursuant to this Section 3.2.6 shall be entitled to receive the number of shares of Common Stock which such holder would have owned or have been entitled to receive after the happening of any of the events described above, had such shares of Series B Preferred Stock been converted into Common Stock immediately prior to the happening of such event or the record date therefor, whichever is earlier.

(i) Prior to the consummation of any Organic Change, the Corporation shall make appropriate provisions (in form and substance satisfactory to the holders of a majority of the Series B Preferred Stock then outstanding) to ensure that each of the holders of Series B Preferred Stock shall thereafter have the right to acquire and receive, in lieu of or in addition to (as the case may be) the shares of Common Stock immediately theretofore acquirable and receivable upon the conversion of such holder's Series B Preferred Stock, such shares of stock, securities or assets as such holder would have received in connection with such Organic Change if such holder had converted its Series B Preferred Stock immediately prior to such Organic Change. In each such case, the Corporation shall also make appropriate provisions (in form and substance satisfactory to the holders of a majority of the Series B Preferred Stock then outstanding) to ensure that the provisions of this Section 3.2.6 shall thereafter be applicable to the Series B Preferred Stock. The Corporation shall not effect any such Organic Change, unless prior to the consummation thereof, the successor corporation or other entity (if other than the Corporation) resulting from such Organic Change or the corporation or other entity purchasing assets pursuant to such Organic Change provides in its organizational documents (in form reasonably satisfactory to the holders of a majority of the Series B Preferred Stock then outstanding), the obligation to deliver to each such holder such shares of stock, securities or assets as, in accordance with the foregoing provisions, such holder may be entitled to acquire.

(j) If any recapitalization, conversion or exchange of shares or any other change in the Corporation's capitalization structure, or any other event occurs of the type contemplated by the provisions of this Section 3.2.6 but in any such case, which is not expressly provided for by the provisions of this Section 3.2.6 (including, without limitation, the granting of stock appreciation rights, phantom stock rights or other rights with equity features), then the Board of Directors shall make an appropriate adjustment in the Series B Conversion Ratio so as to protect the rights of the holders of Series B Preferred Stock; provided that no such adjustment shall decrease the number of shares of Common Stock issuable upon conversion of any share of Series B Preferred Stock.

3.2.7 Reports as to Adjustment. (a) Upon any adjustment of the Series B Conversion Ratio then in effect pursuant to the provisions of

Section 3.2.6, then, and in each such case, the Corporation shall promptly deliver to the Transfer Agent of Series B Preferred Stock and the Common Stock and to each of the holders of Series B Preferred Stock and the Common Stock, a certificate signed by the President or a Vice President and by the Treasurer or an Assistant Treasurer or the Secretary or an Assistant Secretary of the Corporation setting forth in reasonable detail the event requiring the adjustment, the method by which such adjustment was calculated and the Series B Conversion Ratio then in effect following such adjustment. Where appropriate, such notice to holders of Series B Preferred Stock may be given in advance.

(b) The Corporation shall also give written notice to the holders of Series B Preferred Stock at least twenty (20) days prior to the date on which any Organic Change takes place.

3.2.8 Protection of Rights. Any registered holder of Series B Preferred Stock may proceed to protect and enforce its rights with any and all remedies available at law or in equity.

3.2.9 Protective Provisions. So long as shares of Series B Preferred Stock are outstanding, the Corporation shall not without first obtaining the approval (by vote or written consent, as provided by law) of the holders of at least a majority of the then outstanding shares of Series B Preferred Stock:

(a) alter or change the rights, preferences or privileges of the shares of Series B Preferred Stock or otherwise amend the Certificate of Incorporation (including, without limitation, this Third Amended and Restated Certificate of Incorporation), including, in either case, whether by merger, consolidation or otherwise, so as to affect adversely the shares of Series B Preferred Stock;

(b) change the authorized number of shares of Series B Preferred Stock; or

(c) create or designate, or authorize the issuance of, any new class or series of stock (1) ranking senior or having a preference over, or being on a parity with, Series B Preferred Stock with respect to dividends or upon Liquidation, (2) having rights similar to any rights of Series B Preferred Stock under Section 3.2.3 or Section 3.2.6 or (3) convertible into or exercisable or exchangeable for any such class or series of stock.

3.3 Series C Preferred.

3.3.1 Designation and Number. The designation of Preferred Stock created by this Section 3.3 shall be a Series of Preferred Stock to be known as "Series C Preferred Stock." The number of shares constituting Series C

Preferred Stock that the Corporation shall be authorized to issue shall be 7,000,000.

3.3.2 Dividends. (a) The holders of Series C Preferred Stock shall be entitled prior to and preference to the holders of any shares of Junior Stock, to receive on each share of Series C Preferred Stock, out of funds legally available therefor, cumulative cash dividends payable at the rate of 8% per annum on the Preferred Amount Per Series C Share (as defined in Section 3.3.5(b) below). Holders of Series C Preferred Stock shall receive payment of dividends with respect to shares of Series C Preferred Stock only if, as, and when such payment of such dividends is declared by the Board of Directors, except as specified below upon the occurrence of any Liquidation Event. Such dividends will be calculated and compounded annually in arrears on December 31 of each year in respect of the prior twelve-month period (prorated on a daily basis for partial periods). Such dividends shall commence to accrue on each share of Series C Preferred Stock from the date of issuance thereof whether or not declared by the Board of Directors and whether or not there are profits, surplus or other funds of the Corporation legally available for the payment of dividends, and shall continue to accrue until the Series C Liquidation Preference (as defined in Section 3.3.5(a) below) with respect to such share is paid in full in cash or until the conversion of the Series C Preferred Stock in accordance with Section 3.3.6 (such dividends being referred to as the "Series C Preferred Dividends"). To the extent the Corporation has assets legally available therefor and the Board of Directors has not declared the payment of nor has the Corporation paid the dividends pursuant to this Section 3.3.2, Series C Preferred Dividends shall be due and payable with respect to each share of Series C Preferred Stock upon the occurrence of any Liquidation Event in accordance with Section 3.3.5. Series C Preferred Dividends paid in cash in an amount less than the total amount of such dividends at the time accumulated and payable on all outstanding shares of Series C Preferred Stock shall be allocated on a pari passu basis among holders of Series C Preferred Stock pro rata in accordance with the relative amount of Series C Preferred Dividends accrued on the Series C Preferred Stock held by such holders. At any time when shares of Series C Preferred Stock are outstanding no dividend whatsoever shall be paid or declared, and no distribution shall be made, on any share of Junior Stock and no monies shall be paid into or set aside or made available for a sinking or other analogous fund for the purchase, redemption or acquisition thereof, except such purchase, redemption or acquisition is permitted when approved by holders of a majority of the outstanding Series C Preferred Stock, voting as a separate series; provided, however, that the Corporation may purchase, redeem or acquire shares of Common Stock and Common Stock Equivalents issued to employees, officers or directors of, or consultants or other service providers to, the Corporation pursuant to equity incentive plans or other arrangements approved by the Board of Directors.

(b) All numbers relating to the calculation of dividends pursuant to this Section 3.3.2 shall be equitably adjusted to reflect any stock split, stock dividend, combination, reorganization, recapitalization, reclassification or other similar event involving Series C Preferred Stock.

3.3.3 Voting Rights. In addition to any voting rights provided by law or set forth elsewhere in this Certificate of Incorporation, the holders of shares of Series C Preferred Stock shall be entitled to vote on all matters, and with respect to any matter shall be entitled to two votes per share of Series C Preferred Stock, (as adjusted to reflect any stock split, stock dividend, combination, reorganization, recapitalization, reclassification or other similar event involving shares of Common Stock or Series C Preferred Stock). Except as required by law, or as otherwise provided in this Certificate of Incorporation, the holders of shares of Series A Preferred Stock, Series B Preferred Stock, Series C Preferred Stock and Common Stock shall vote together as a single class and series and not as separate classes or series.

3.3.4 Reacquired Shares. Any shares of Series C Preferred Stock converted, purchased or otherwise acquired by the Corporation in any manner whatsoever shall be retired and canceled promptly after the acquisition thereof. None of such shares of Series C Preferred Stock shall be reissued by the Corporation.

3.3.5 Liquidation, Dissolution or Winding Up.

(a) Series C Liquidation Preference. Upon any Liquidation Event, each holder of Series C Preferred Stock shall be entitled to be paid with respect to each share of Series C Preferred Stock out of the assets of the Corporation available for distribution to stockholders, whether such assets are capital, surplus or earnings, prior to and in preference to, and before any amount shall be paid or distributed to the holders of any Junior Stock, an amount in the applicable form of consideration equal to (i)(A) the Preferred Amount Per Series C Share, plus (B) any accrued but unpaid dividends to which such holder of outstanding shares of Series C Preferred Stock is then entitled pursuant to Section 3.3.2 hereof, multiplied by (ii) two (2) (such aggregate amount as to each share of Series C Preferred Stock being referred to as the "Series C Liquidation Preference" of such share). In addition, a merger or consolidation of the Corporation into or with any other Person or Persons (other than a direct or indirect wholly owned subsidiary of the Corporation), as well as the sale of all or substantially all of the stock of the Corporation, shall also be deemed a Liquidation Event and upon such an event, holders of Series C Preferred Stock will receive an amount equal to the Series C Liquidation Preference; provided, however, that the Series C Liquidation Preference paid in connection with such merger, consolidation or sale of all or substantially all of the stock of the Corporation must consist of Acceptable Consideration, and if the consideration offered to be paid as the Series C Liquidation Preference is not Acceptable

Consideration, such other form of consideration must be approved by the holders of a majority of the then outstanding shares of Series A Preferred Stock, Series B Preferred Stock and Series C Preferred Stock, voting as a single class. If upon any Liquidation Event, the amounts payable with respect to the issued and outstanding Series C Preferred Stock are not paid in full, the amounts available for distribution shall be distributed ratably among the holders of Series C Preferred Stock on a pari passu basis in accordance with the Series C Liquidation Preference of the Series C Preferred Stock held by such holders, and the holders of Junior Stock shall in no event be entitled to participate in the distribution of any assets of the Corporation in respect of their ownership thereof.

(b) "Preferred Amount Per Series C Share" shall mean, with respect to each share of Series C Preferred Stock, $1.00.

(c) Notice of Liquidation Event. Written notice of a Liquidation Event stating a payment date, the amount of the Series C Liquidation Preference, and the place where said Series C Liquidation Preference shall be payable, shall be delivered in person, mailed by certified or registered mail, return receipt requested, or sent by telecopier or telex (with confirmatory copy sent by alternative means within three days), not less than twenty (20) days prior to the payment date stated therein, to the holders of record of shares of Series C Preferred Stock, such notice to be addressed to each such holder at its address as shown by the records of the Corporation.

3.3.6 Conversion of Series C Preferred Stock

(a) Mandatory Conversion. Subject to the provision for adjustment set forth below, upon the occurrence of an applicable Mandatory Conversion Event each share of Series C Preferred Stock shall be automatically (without any action on the part of the holder thereof or of the Corporation) converted into a number of shares of New Stock equal to (i) the Series C Liquidation Preference divided by (ii) the price per share of the New Stock.

(b) Conversion Procedure. Upon the Mandatory Conversion Date, the holders of shares of the Series C Preferred Stock shall surrender the certificates evidencing such shares at the office of the Corporation or of its transfer agent for shares of the New Stock. The Corporation shall then issue and deliver to each such holder a certificate or certificates for the number of shares of the New Stock into which the shares of the Series C Preferred Stock surrendered were converted on the Mandatory Conversion Date. Such conversion shall be deemed to have occurred as of the Mandatory Conversion Date, whether or not the certificates evidencing such shares are surrendered to the Corporation or its transfer agent for shares of the New Stock, so that the rights of the holder thereof as to Series C Preferred Stock which have been converted shall cease as of the Mandatory Conversion Date, except for the right to receive shares of New Stock in accordance herewith, and the person entitled to receive the shares of New

Stock shall be treated for all purposes as having become the record holder of such shares of New Stock as of the Mandatory Conversion Date. The Corporation shall pay any issue and transfer taxes that may be payable in respect of any issue or delivery of shares of New Stock on mandatory conversion of Series C Preferred Stock pursuant to Section 3.3.6(a). Notwithstanding the foregoing, however, the Corporation shall not be obligated to issue certificates evidencing the shares of the New Stock issuable upon such conversion unless certificates evidencing the shares of the Series C Preferred Stock which have been converted are either delivered to the Corporation or any such transfer agent or the holder notifies the Corporation or any such transfer agent that such certificates have been lost, stolen or destroyed, and delivers, or causes to be delivered, to and for the benefit of the Corporation, in the discretion of the Board of Directors, a surety bond or other financial accommodation satisfactory to the Corporation, or executes an agreement to indemnify the Corporation satisfactory to the Corporation from any loss incurred by it in connection therewith.

(c) The Corporation will at no time close its transfer books against the transfer of any Series C Preferred Stock, except as may otherwise be required to comply with applicable securities laws.

(d) The Corporation will not, by amendment of its Certificate of Incorporation or through any reorganization, recapitalization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Corporation, but will at all times in good faith assist in the carrying out of all the provisions of this Section 3.3.6 and in the taking of all such action as may be necessary or appropriate in order to protect the conversion rights of the holders of Series C Preferred Stock against impairment.

3.3.7 Protection of Rights. Any registered holder of Series C Preferred Stock may proceed to protect and enforce its rights with any and all remedies available at law or in equity.

3.3.8 Protective Provisions. So long as shares of Series C Preferred Stock are outstanding, the Corporation shall not without first obtaining the approval (by vote or written consent, as provided by law) of the holders of at least a majority of the then outstanding shares of Series C Preferred Stock:

(a) alter or change the rights, preferences or privileges of the shares of Series C Preferred Stock or otherwise amend the Certificate of Incorporation (including, without limitation, this Fourth Amended and Restated Certificate of Incorporation), including, in either case, whether by merger, consolidation or otherwise, so as to affect adversely the shares of Series C Preferred Stock;

(b) change the authorized number of shares of Series C Preferred Stock; or

(c) create or designate, or authorize the issuance of, any new class or Series of stock (1) ranking senior or having a preference over, or being on a parity with, Series C Preferred Stock with respect to dividends or upon Liquidation, (2) having rights similar to any rights of Series C Preferred Stock under Section 3.3.3, Section 3.3.5 or Section 3.3.6 or (3) convertible into or exercisable or exchangeable for any such class or Series of stock.

3.4 Definitions.

"Acceptable Consideration" has the meaning set forth in Section 3.1.5(a).

"Certificate of Incorporation" shall mean this document, as amended.

"Common Stock" shall mean shares of Common Stock, par value $0.01 per share, of the Corporation.

"Common Stock Equivalent" shall mean securities convertible into, or exchangeable or exercisable for, shares of Common Stock and options, warrants and rights to acquire such securities.

"Corporation" has the meaning set forth in the introductory paragraph.

"Excluded Securities" shall mean (A) shares of Common Stock issued or issuable upon conversion of the Series A Preferred Stock; (B) shares of Common Stock issued or issuable upon conversion of the Series B Preferred Stock; (C) shares of Common Stock issued or issuable upon conversion into or exercise or exchange for any securities outstanding on the applicable issue date; (D) shares of Common Stock or Common Stock Equivalents issued or issuable by the Corporation to Heidrick & Struggles Inc. ("Heidrick"), pursuant to (i) the warrant issued by the Corporation to Heidrick and (ii) Heidrick's right to invest up to $1,000,000 in either (1) any class or Series of preferred stock that is either convertible into or exchangeable for Common Stock in any future equity round or (2) an initial public offering of the Corporation, all pursuant to a letter agreement, dated August 2001, between the Corporation and Heidrick; (E) stock options and shares of Common Stock issued pursuant to a stock option plan, stock purchase plan or similar plan duly adopted by the Board for management and/or employees; (F) any capital stock issued as a stock dividend or upon any stock split or other subdivision or combination of shares of the Corporation's capital stock; (G) any shares of Series A Preferred Stock issued under the Master Royalty and Use Agreement (as amended from time to time, the "Master Agreement"), dated as of March 13, 2001, among the Corporation, ITFS Spectrum Development Alliance, Inc., North American Catholic Educational Programming Foundation, Inc., Hispanic Information and Telecommunications Network, Inc., Instructional Telecommunications Corporation, Portland Regional Educational Telecommunications Corporation, Denver

Area Educational Telecommunications Consortium, Inc., Chicago Instructional Technology Foundation, Inc., and Twin Cities Schools' Telecommunications Group, Inc., and any Common Stock issued or issuable upon conversion of Series A Preferred Stock issued under the Master Agreement; (H) any shares of Common Stock or Preferred Stock issued in settlement of any claims under the Master Agreement made against the Corporation by a party to the Master Agreement, provided, however, that any such shares shall only be issued following Board of Directors approval of the specific issuance; or (I) shares of New Stock issued upon the conversion of Series C Preferred Stock as provided in Section 3.3.6(a).

"GCL" has the meaning given in Article III.

"Junior Stock" shall mean : (i) with respect to the Series A Preferred Stock, any capital stock of the Corporation ranking junior (either as to dividends or upon Liquidation) to the Series A Preferred Stock, including without limitation the Common Stock; (ii) with respect to the Series B Preferred Stock, any capital stock of the Corporation ranking junior (either as to dividends or upon Liquidation) to the Series B Preferred Stock, including without limitation the Common Stock; and (iii) with respect to the Series C Preferred Stock, any capital stock of the Corporation ranking junior (either as to dividends or upon Liquidation) to the Series C Preferred Stock, including without limitation the Series A Preferred Stock, Series B Preferred Stock and the Common Stock.

"Liquidation" or "Liquidation Event" shall mean (i) any liquidation (complete or partial), dissolution or winding up of the Corporation, whether voluntary or involuntary or (ii) a single transaction or series of transactions, whether or not such transactions are related, pursuant to which a Person or Persons (other than a wholly owned subsidiary of the Corporation) acquire all or substantially all of the Corporation's assets determined on a consolidated basis.

"Mandatory Conversion Date" shall mean the date and time of the occurrence of a Mandatory Conversion Event.

"Mandatory Conversion Event" shall mean (i) with respect to the Series A Preferred Stock and Series B Preferred Stock, the consummation of a Qualified IPO and (ii) with respect to the Series C Preferred Stock, the issuance of New Stock.

"New Stock" shall mean any class or series of Preferred Stock authorized and issued after the date hereof in an arm's-length equity financing transaction. In addition, if any class or series of Common Stock is authorized and issued after the date hereof in an arm's length equity financing transaction, holders of a majority of the then outstanding shares of Series C Preferred Stock, voting as a series, shall, upon written notice to the Corporation on or prior to such issuance, have the right to deem such Common Stock as New Stock for all purposes of this Certificate of Incorporation, including, without limitation, the definition of "Mandatory Conversion Event" and Section 3.3.6.

"Organic Change" means any recapitalization, reorganization, reclassification, consolidation, merger, sale of all or substantially all of the Corporation's stock or assets to another Person or other transaction which is effected in such a manner that holders of Common Stock are entitled to receive (either directly or upon subsequent liquidation) stock, securities or assets with respect to or in exchange for Common Stock.

"Person" shall mean any individual, firm, corporation, partnership or other entity, and shall include any successor (by merger or otherwise) of such entity.

"Preferred Amount Per Series A Share" has the meaning set forth in Section 3.1.5(b).

"Preferred Amount Per Series B Share" has the meaning set forth in Section 3.2.5(b).

"Preferred Amount Per Series C Share" has the meaning set forth on Section 3.3.5(b).

"Preferred Stock" has the meaning set forth in Section 1.

"Qualified IPO" means a bona fide, firm commitment, underwritten public offering of Common Stock, other than an offering exclusively related to securities under an employee stock option plan, pursuant to an effective registration statement under the Securities Act of 1933, as amended, (i) resulting in at least $50,000,000 of gross proceeds to the Corporation, and (ii) reflecting a per share offering price of at least $3.50 per share of Common Stock (as appropriately adjusted for stock splits, reverse stock splits, stock dividends, recapitalizations, reorganizations or other similar events).

"Reclassification" has the meaning set forth in Section 3.2.1.

"Series A Conversion Amount" has the meaning set forth in Section 3.1.5.

"Series A Conversion Notice" has the meaning set forth in Section 3.1.6(c).

"Series A Conversion Ratio," determined as of any date, shall equal the number of shares of Common Stock into which one share of Series A Preferred Stock is convertible pursuant to Section 3.1.6. The Series A Conversion Ratio shall initially equal one and shall be subject to adjustment as provided in Section 3.1.6(d)(i).

"Series A Director" has the meaning set forth in Section 3.1.3(b).

"Series A Issue Date" has the meaning given in Section 3.1.6(d).

"Series A Liquidation Preference" has the meaning given in Section 3.1.5.

"Series A Preferred Dividends" shall have the meaning set forth in Section 3.1.2(a).

"Series A Preferred Stock" has the meaning given in Section 3.1.1.

"Series B Conversion Amount" has the meaning set forth in Section 3.2.5.

"Series B Conversion Notice" has the meaning set forth in Section 3.2.6(c).

"Series B Conversion Ratio" determined as of any date, shall equal the number of shares of Common Stock into which one share of Series B Preferred Stock is convertible pursuant to Section 3.2.6. The Series B Conversion Ratio initially shall equal one and shall be subject to adjustment as provided in Section 3.2.6(d).

"Series B Issue Date" has the meaning given in Section 3.2.6(d)(i).

"Series B Liquidation Preference" has the meaning given in Section 3.2.5.

"Series B Preferred Dividends" shall have the meaning set forth in Section 3.2.2(a).

"Series B Preferred Stock" has the meaning given in Section 3.2.1.

"Series C Preferred Dividends" shall have the meaning set forth in Section 3.3.2.

"Series C Liquidation Preference" shall have the meaning set forth in Section 3.3.5(a).

"Series C Preferred Stock" has the meaning set forth in Section 3.3.1.

"Stockholders Agreement" has the meaning given in Section 3.1.3(b)(iii)(A).

"Tie-breaking Power" has the meaning given in Section 3.1.3(b)(iii)(A).

"Transfer Agent" has the meaning set forth in Section 3.1.6(c).

3.5 Notices. Unless otherwise expressly specified or permitted by the terms hereof, all notices, requests, demands, consents and other communications hereunder shall be in writing and shall be delivered by hand or shall be sent by telex or telecopy (with a confirmatory copy sent by a different means within three business days of such notice), to the following addresses:

Clearwire Holdings Inc.
19111 North Dallas Parkway
Suite 200
Dallas, Texas 75287
Telecopy: (469) 737-7644
Attention: James A. Kirkland, Esq.

or at such other address as may have been furnished in writing by the Corporation to the holders of the shares of Series A Preferred Stock and the Series B Preferred Stock.

Whenever any notice is required to be given hereunder, such notice shall be deemed given and such requirement satisfied only when such notice is delivered or, if sent by telex or telecopier, when received, unless otherwise expressly specified or permitted by the terms hereof.

ARTICLE V

The number of directors constituting the Board of Directors shall be as specified in the bylaws.

ARTICLE VI

1. Indemnification of Directors and Officers. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director or officer of the Corporation, or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. For purposes of this Article VI, any person who, pursuant to a provision in this Third Amended and Restated Certificate of Incorporation, exercises or performs any of the powers or duties conferred or imposed upon the Board of Directors of the Corporation shall be entitled to all the benefits conferred upon directors and officers of the Corporation (including without limitation, the right to indemnification and advancement of expenses) set forth in this Article VI.

2. Derivative Actions. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director or officer of the Corporation, or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, provided that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court of Chancery of the State of Delaware or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

3. Indemnification in Certain Cases. To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections 1 and 2 of this Article VI, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

4. Procedure. Any indemnification under Sections 1 and 2 of this Article VI (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in such Sections 1 and 2. Such determination shall be made (a) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (b) if such a quorum is not obtainable, or, even if obtainable a quorum of disinterested directors so direct, by independent legal counsel in a written opinion, or (c) by the stockholders.

5. Advances for Expenses. Expenses incurred in defending a civil or criminal action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director, officer, employee or agent to repay such amount if it shall be ultimately determined that he is not entitled to be indemnified by the Corporation as authorized in this Article VI.

6. Rights Not-Exclusive. The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this Article VI shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any law, bylaw, agreement, vote of

stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

7. Insurance. The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article VI.

8. Definition of Corporation. For the purposes of this Article VI, references to "the Corporation" include all constituent corporations absorbed in a consolidation or merger as well as the resulting or surviving corporation so that any person who is or was a director or officer of such a constituent corporation or is or was serving at the request of such constituent corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise shall stand in the same position under the provisions of this Article VI with respect to the resulting or surviving corporation as he would if he had served the resulting or surviving corporation in the same capacity.

9. Survival of Rights. The indemnification and advancement of expenses provided by, or granted pursuant to this Article VI shall continue as to a person who has ceased to be a director or officer and shall inure to the benefit of the heirs, executors and administrators of such a person. No subsequent amendment of this Article VI shall diminish the rights hereunder of any director or officer with respect to any action taken or claim made prior to such amendment.

ARTICLE VII

No director of the Corporation shall be liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, provided that this provision does not eliminate the liability of a director (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the GCL or (iv) for any transaction from which the director derived an improper personal benefit. For purposes of the prior sentence, the term "damages" shall, to the extent permitted by law, include without limitation, any judgment, fine, amount paid in settlement, penalty, punitive damages, excise or other tax assessed with respect to an employee benefit plan, or expense of any nature (including, without limitation, counsel fees and disbursements). Each person who serves as a director of the Corporation while this Article VII is in effect shall be deemed to be doing so in reliance on the provisions of this Article VII, and neither the amendment or repeal of this Article VII, nor the adoption of any provision of this Third Amended and Restated Certificate of Incorporation inconsistent with this Article VII, shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for, arising out of, based upon, or in connection with any acts or omissions of such director occurring

prior to such amendment, repeal, or adoption of an inconsistent provision. The provisions of this Article VII are cumulative and shall be in addition to and independent of any and all other limitations on or eliminations of the liabilities of directors of the Corporation, as such, whether such limitations or eliminations arise under or are created by any law, rule, regulation, bylaw, agreement, vote of stockholders or disinterested directors, or otherwise. If the GCL is hereafter amended to permit further elimination or limitation of the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the GCL as so amended. Any repeal or modification of this Article VII by the stockholders of the Corporation or otherwise shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification. For purposes of this Article VII, all references to a director shall also be deemed to refer to any person or persons, if any, who, pursuant to a provision of this Third Amended and Restated Certificate of Incorporation, exercise or perform any of the powers or duties otherwise conferred or imposed upon the Board of Directors of the Corporation.

## ARTICLE VIII

1. In furtherance and not in limitation of the power conferred upon the Board of Directors by law, the Board of Directors shall have the power to make, adopt, alter, amend and repeal from time to time bylaws of this Corporation, subject to the right of the stockholders entitled to vote with respect thereto to alter and repeal bylaws made by the Board of Directors.

2. The books of this Corporation may (subject to any statutory requirements) be kept outside the State of Delaware as may be designated by the Board of Directors or in the bylaws of this Corporation.

3. If at any time this Corporation shall have a class of stock registered pursuant to the provisions of the Securities Exchange Act of 1934, for so long as such class is so registered, any action by the stockholders of such class must be taken at an annual or special meeting of stockholders and may not be taken by written consent.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Clearwire Holdings Inc. has caused this Third Amended and Restated Certificate of Incorporation to be signed and attested by its duly authorized officers, this [___]th day of August, 2003.

CLEARWIRE HOLDINGS INC.

_______________________________

[_______________________]

# EXHIBIT 2

Schedule 1.1—List of Investors

| Investor | Series C $ Amount | Shares of Series C Preferred Stock |
|---|---|---|
| Bridge Street Special Opportunities Fund 2000, L.P. | $ 14,690 | 161,590 |
| Brenan, Mathew | $ 413 | 4,543 |
| Buckman, Kevin C. | $ 300 | 3,300 |
| Burkett, Steven L. | $ 14 | 154 |
| Convergent Investors VI, LP | $ 7,938 | 87,318 |
| Crady, Debbie | $ 918 | 10,098 |
| DeEmedio, Thomas L. & Cynthia R. | $ 579 | 6,369 |
| Denver Area Educational Telecommunications Corporation | $6,500 | 71,500 |
| Deyo, Ronnie | $ 14 | 154 |
| Edgewater Private Equity Fund IV, LP | $ 22,259 | 244,849 |
| Geist, Edward J. | $ 309 | 309 |
| Geist, Edward, J. Jr. | $ 309 | 309 |
| Geist, Rudolph J. | $ 4,323 | 4,323 |
| Goldman, Sachs & Co. Verwaltungs GmbH | $ 11,551 | 127,061 |
| GS Capital Partners III Offshore, L.P. | $ 68,785 | 756,635 |
| GS Capital Partners III, L.P. | $ 250,207 | 2,752,277 |
| Hispanic Information and Telecommunications Network, Inc. | $ 30,285 | 333,135 |
| Hulick, Peter R. & Mary J. | $ 1,235 | 1,235 |

| | | |
|---|---|---|
| Instructional Telecommunications Foundation, Inc. | $ 20,000 | 220,000 |
| JMM PHLP, LTD. | $ 9,116 | 100,276 |
| Lacey, James J. & Carole | $ 100 | 1,100 |
| LAP Clearwire Holdings, LLC | $ 99,352 | 1,092,872 |
| Leininger, James R. | $ 2,598 | 28,578 |
| Mahoney, B. William | $ 413 | 4,543 |
| Mansour, George Jr. | $ 103 | 1,133 |
| Mansour, John A. | $ 144 | 1,584 |
| Mansour, Marshall D. | $ 413 | 4,543 |
| Mansour, Michael, MD | $ 413 | 4,543 |
| Mansour, Phil | $ 538 | 5,918 |
| Mansour, Sam, MD | $ 743 | 8,173 |
| Mansour, Steven P. | $ 144 | 1,584 |
| Michaels, Alan H. & Mary P.S. | $ 247 | 247 |
| Michaels, Steven J. & Margaret J. | $ 1,235 | 1,235 |
| Priestley, Bobby N. & Donna P. | $ 444 | |
| Priestley, Bill & Jody | $ 266 | 266 |
| Stone Street Fund 2000, L.P. | $ 22,036 | 242,396 |
| Stritzinger, James R. Revocable Trust | $ 877 | 877 |
| Stritzinger, Jennifer L. (Custodian For Allaire P. Strizinger) | $ 64 | 704 |
| Stritzinger, Jennifer L. (Custodian for Olivia G. Stritzinger) | $64 | 704 |
| Stritzinger, William R. | $ 4,941 | 4,941 |
| Tomasino, Joseph A. | $ 3,145 | 34,595 |

| | | |
|---|---|---|
| Twin Cities Schools Telecommunications Group, Inc. | $ 10,000 | 110,000 |
| Wright, Kathleen | $ 918 | 10,098 |
| Z Start I, L.P. | $ 446 | 4,906 |
| **Total** | $ 599,389 | 6,451,419 |