UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC., | ) | No.: 1:06-cv-00492-S-LDA |
| Plaintiff, | ) | |
| v. | ) | |
| GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P. and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BY DEFENDANTS THE GOLDMAN SACHS GROUP, INC., GERRY CARDINALE, ROB GHEEWALLA, AND JACK DALY**

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 10

**I. EACH OF PLAINTIFF'S CLAIMS IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS** .......... 10

A. All Claims Are Subject To The Applicable Delaware Limitations Period .......... 11

B. This Action Was Commenced After The Three-Year Limitations Period Expired .......... 12

**II. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM** .......... 14

A. Absolutely No Claim Is Alleged Against GS Group .......... 15

B. Plaintiff Fails To Plead Its Claims With Particularity .......... 16

C. The Master Agreement Claims Fail .......... 18

1. Plaintiff Has Not Pled The Elements Of Fraudulent Inducement or Fraud (Counts I and II) .......... 18

(a) Plaintiff Fails To Allege The Elements Of Its Fraudulent Inducement Claim .......... 18

(b) Plaintiff Fails To Allege The Elements Of Its Fraud Claim .......... 20

2. Plaintiff Has Not Pled The Elements Of Interference With A Prospective Business Opportunity (Counts III and IV) .......... 22

(a) Plaintiff Has Not Pled Any Interference With An Opportunity To Convey Licenses .......... 22

(b) Plaintiff Has Not Pled Any Interference With An Opportunity To Acquire Additional Spectrum .......... 24

3. Counts I-IV Fail For The Independent Reason That Plaintiff Has Not Alleged Any Basis For Holding Defendants Personally Liable For Any Interference By Clearwire ............................26

D. Plaintiff's C Round Financing Claims Fail..........................................................27

1. Plaintiff Fails To State A Claim For Fraud Or Negligent Misrepresentation (Count VIII) ..............................................................28

2. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duties Of Loyalty And Care (Count V) .....................................................................34

3. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Of Disclosure (Count VI).....................................................................37

4. Plaintiff Fails To State A Claim For Unjust Enrichment (Count VII)......38

CONCLUSION.........................................................................................................................39

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F.3d 21 (1st Cir. 2004) ........ 15, 17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........ 37 n.24

*Berliner v. Lotus Dev. Corp.*,
783 F. Supp. 708 (D. Mass. 1982) ........ 29

*Burke v. Jacoby*,
981 F.2d 1372 (2d Cir. 1992) ........ 21

*Carley Distrib. Corp. v. First Nat'l Bank, N.A.*,
1993 U.S. App. LEXIS 31380 (1st Cir. Dec. 2, 1993) ........ 22

*Cesario v. Bergquist*,
2006 U.S. Dist. LEXIS 10141 (D.R.I. Mar. 10, 2006) ........ 7 n.4, 15

*Chongris v. Bd. of Appeals*,
811 F.2d 36 (1st Cir. 1987) ........ 35 n.20

*In re Computervision Corp. Sec. Litig.*,
869 F. Supp. 56 (D. Mass. 1994) ........ 15 n.11

*Dartmouth Rev. v. Dartmouth Coll.*,
889 F.2d 13 (1st Cir. 1989) ........ 14

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ........ 29

*Educadores Puertorriquenos en Accion v. Hernandez*,
367 F.3d 61 (1st Cir. 2004) ........ 14

*First Commodity Traders, Inc. v. Heinold Commodities*,
591 F. Supp. 812 (N.D. Ill. 1984) ........ 11 n.7

*Greene v. Rhode Island*,
289 F. Supp. 2d 5 (D.R.I. 2003) ........ 10

*Greene v. Rhode Island*,
398 F.3d 45 (1st Cir. 2005) ........ 5 n.1, 5 n.2, 7 n.4

*Gross v. Summa Four*,
93 F.3d 987, 991-92 (1st Cir. 1996) ....................29, 31

*Guilbeault v. R.J. Reynolds Tobacco Co.*,
84 F. Supp. 2d 263 (D.R.I. 2000) ....................17

*Haft v. Eastland Fin. Corp.*,
755 F. Supp. 1123 (D.R.I. 1991)....................15, 16, 18, 21

*Hasbro, Inc. v. Mikohn Gaming Corp.*,
2006 WL 2035501 (D.R.I. July 18, 2006) ....................11

*Hayduk v. Lanna*,
775 F.2d 441 (1st Cir. 1985)....................15 n.11, 16

*J.A. Moore Constr. Co. v. Sussex Assoc. Ltd. P'ship*,
688 F. Supp. 982 (D. Del. 1988)....................19

*Liberty Media Corp. v. Vivendit Universal, S.A.*,
2004 U.S. Dist LEXIS 7015 (S.D.N.Y. Apr. 21, 2004)....................21 n.13

*Local Union 42 v. Absolute Envtl. Services, Inc.*,
814 F. Supp. 392 (D. Del. 1993)....................26

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*,
5 F. Supp. 2d 238 (D. Del. 1998)....................23, 25

*McIntosh v. Antonino*,
71 F.3d 29 (1st Cir. 1995)....................13

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................21 n.13

*Montaup Elec. Co. v. Ohio Brass Corp.*,
561 F. Supp. 740 (D.R.I. 1983)....................10

*Olick v. Kearney*,
451 F. Supp. 812 (N.D. Ill. 1984) ....................11 n.7

*Owl Fumigating Corp. v. California Cyanide Co.*,
24 F.2d 718 (D. Del. 1928)....................26 n.15

*Platten v. HG Bermuda Exempted Ltd.*,
437 F.3d 118 (1st Cir. 2006)....................11

*Riccio v. Ford Motor Credit Co.*,
238 F.R.D. 44 (D. Mass. 2006)....35 n.20

*Rohm and Haas Co. v. Capuano*,
301 F. Supp. 2d 156 (D.R.I. 2004)....10, 14

*Rosen v. Textron, Inc.*,
321 F. Supp. 2d 308 (D.R.I. 2004)....31

*Scritchfield v. Paolo*,
274 F. Supp. 2d 163 (D.R.I. 2003)....7 n.4

*Sekuk Global Enters. v. KVH Indus.*,
2005 U.S. Dist. LEXIS 16628 (D.R.I. Aug. 11, 2005)....16

*Soto-Negron v. Taber Partners I*,
339 F.3d 35 (1st Cir. 2003)....35 n.20

*Suna v. Bailey Corp.*,
107 F.3d 64 (1st Cir. 1997)....31

*Toner v. Allstate Ins. Co.*,
821 F. Supp. 276 (D. Del. 1993)....15 n.11

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.3d 220 (1st Cir. 2004)....14

*Young v. Lepone*,
305 F.3d 1 (1st Cir. 2002)....5 n.2, 11

*In re Zangrilli*,
1 B.R. 717, 720 (Bankr. D.R.I. 1979)....29

**STATE CASES**

*Abry Partners V, L.P., v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)....11 n.7

*Albert v. Alex Brown Mgmt. Servs., Inc.*,
2005 WL 2130607 (Del. Ch. Aug. 26, 2005)....12, 29 n.17, 38

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984)....34

*Bakerman v. Sidney Frank Importing Co., Inc.*,
2006 WL 2987020 (Del. Ch. Oct. 10, 2006)....27, 38

*Bershad v. Curtiss-Wright Corp.*,
535 A.2d 840 (Del. 1987) ....................................................................................31

*Carrow v. Arnold*,
2006 Del. Ch. LEXIS 191 (Del. Ch. Oct. 31, 2006)..............................................20

*Cede & Co. v. Technicolor*,
634 A.2d 345, 360 (Del. 1993) ..............................................................................24

*Crescent/Machine I Partners, L.P. v. Turner*,
846 A.2d 963 (Del. Ch. 2000)................................................................................34

*Cribb v. Augustyn*,
696 A.2d 285 (R.I. 1997) .......................................................................................11

*DeBonaventura v. Nationwide Mutual Insurance Co.*,
419 A.2d 942 (Del. Ch. 1980)...................................................................22, 23, 25

*DeBonaventura v. Nationwide Mutual Insurance Co.*,
428 A.2d 1151 (Del. 1981) .....................................................................................24

*In re Dean Witter Partnership Litigation*,
1998 Del. Ch. LEXIS 133 (Del. Ch. July 17, 1998).........................................12 n.9

*Dionisi v. DeCampli*,
1995 Del. Ch. LEXIS 88 (Del. Ch. June 28, 1995) ................................................22

*E.I. Du Pont de Nemours & Co. v. Florida Evergreen Foliage*,
744 A.2d 457, 462 (Del. 1999) ..............................................................................28

*Fike v. Ruger*, 754 A.2d 254 (Del. Ch. 1999).......................................................12 n.8

*In re Fuqua Industrial, Inc.*,
2005 Del. Ch. LEXIS 60 (Del. Ch. May 6, 2005) ...................................................32

*Gilbert v. El Paso Co.*,
1988 Del. Ch. LEXIS 150 (Del. Ch. Nov. 21, 1988)...................................23, 26, 36

*Gilbert v. El Paso Co.*,
490 A.2d 1050, 1058 (Del. Ch. 1984) ....................................................................27

*Goldman v. Pogo.com Inc.*,
2002 Del. Ch. LEXIS 71 (Del. Ch. June 14, 2002) .................................................26

*Grand Ventures, Inc. v. Paoli's Restaurant, Inc.*,
1996 Del. Super. LEXIS 3 (Del. Super. Ct. Jan. 4 1996) ....................26

*In re Gtech Holdings Corp. Securities Litigation*,
1995 WL 500414 (D.R.I. Mar. 16, 1995) ....................15, 16

*H-M Wexford LLC*,
832 A.2d at 144 ....................19

*Hoang v. E*trade Group*,
784 N.E.2d 151, 156-57 (Ohio Ct. App. 2003) ....................32

*Homan v. Turoczy*,
2005 Del. Ch. LEXIS 121 (Del. Ch. Aug. 12, 2005) ....................32

*ID Biomedical Corp. v. TM Technologies, Inc.*,
1995 WL. 130743 (Del. Ch. Mar. 16, 1995) ....................39

*Iotex Communications v. Defries*,
1998 WL. 914265 (Del. Ch. Dec. 21, 1998) ....................29 n.17

*Khoury Factory Outlets, Inc. v. Snyder*,
1996 WL. 74725 (Del. Ch. Jan. 8, 1996) ....................38

*Krahmer v. Christie's Inc.*,
903 A.2d 773 (Del. Ch. 2006) ....................12

*Krim v. ProNet, Inc.*,
744 A.2d 523 (Del. Ch. 1999) ....................31

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ....................37

*McBurney v. GM Card*,
869 A.2d 586 (R.I. 2005) ....................11 n.7

*McMillan v. Intercargo Corp.*,
768 A.2d 492 (Del. Ch. 2000) ....................37

*Merck v. SmithKline Beecham Pharms. Co.*,
1999 Del. Ch. LEXIS 242 (Del. Ch. Aug. 5, 1999) ....................12 n.8

*Metro. Communication Corp. BVI v. Adv. Mobilecomm Technologies, Inc.*,
854 A.2d 121 (Del. Ch. 2004) ....................33

*Middlebrook v. Ayers*,
2004 Del. Super. LEXIS 179 (Del. Super. Ct. June 9, 2004) ....................................12

*In re MONY Group, Inc. Shareholders Litigation*,
852 A.2d 9 (Del. Ch. 2004)....................................................................................31

*Nebenzahl v. Miller*,
1996 Del. Ch. LEXIS 113 (Del. Ch. Aug. 26, 1996)..................................................34

*Noerr v. Greenwood*,
1997 WL. 419633 (Del. Ch. July 16, 1997)..............................................................29

*North Am. Catholic Educ. Programming Found., Inc., v. Gheewalla*,
2006 WL. 2588971 (Del. Ch. Sept. 1, 2006) ..................................................*passim*

*Nye v. University of Delaware*,
897 A.2d 768 (Del. 2006) ..........................................................................................27

*Nye Odorless Incinerator Corp. v. Felton*,
162 A. 504 (Del. Super. Ct. 1931) ............................................................................28

*Omnicare, Inc. v. NCS Healthcare, Inc.*,
818 A.2d 914 (Del. 2003) ..........................................................................................34

*Progressive International Corp. v. E.I. Du Pont de Nemours & Co.*,
2002 Del. Ch. LEXIS 91 (Del. Ch. July 9, 2002)........................................................19

*Republic of Pan. v. America Tobacco Co.*,
2006 Del. Super. LEXIS 268 (Del. Super. Ct. June 23, 2006) ..................................38

*Rosser v. New Valley Corp.*,
2000 WL 1206677 (Del. Ch. Aug. 15, 2000) ...................................................37 n.24

*Sanders v. Devine*,
1997 WL 599539 (Del. Ch. Sept. 24, 1997) .......................................30 n.18, 33

*Shearin v. E.F. Hutton Group, Inc.*,
652 A.2d 578 (Del. Ch. 1994)......................................................................................27

*Sinclair Oil Corp. v. Levien*,
280 A.2d 717 (Del. 1971) ..........................................................................................36

*SmithKline Beecham Pharma Co. v. Merck & Co., Inc.*,
766 A.2d 442 (Del. 2000) ....................................................................................12 n.8

*Solomon v. Pathe Communications*,
1995 Del. Ch. LEXIS 46 (Del. Ch. Apr. 21, 1995) ............................................36 n.22

*Solow v. Aspect Resources, LLC*,
2004 WL 2694916 (Del. Ch. Oct. 19, 2004) ................................12 n.8, 18, 21, 23, 25

*Stenmark v. Bank of Am. Corp.*,
2006 WL 2474871 (D.R.I. Aug. 24, 2006)..........................................................35 n.20

*Steinman v. Levine*,
2002 Del. Ch. LEXIS 132 (Del. Ch. Nov. 27, 2002)..........................................36 n.22

*Stephenson v. Capano Development, Inc.*,
462 A.2d 1069 (Del. 1983) ........................................................................................28

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP*,
906 A.2d 168 (Del. Ch. 2006).................................................................28 n.16, 33

*Unisuper, Ltd. v. News Corp.*,
2005 WL 3529317 (Del. Ch. Dec. 20, 2005)............................................................33

*Unocal Corp. v. Mesa Petroleum Co.*,
493 A.2d 946 (Del. 1985) ..........................................................................................24

*VGS, Inc. v. Castiel*,
2003 WL 723285 (Del. Ch. Feb. 28, 2003) ........................................................11 n.7

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999).................................................................................27

*In re Walt Disney Co. Derivative Litig.*,
731 A.2d 342 (Del. Ch. 1998)...................................................................................37

*Wit Capital Group, Inc. v. Benning, Sr.*,
897 A.2d 172 (Del. 2006) ..........................................................................................33

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b) ...................................................................................... *passim*

**STATE STATUTES**

10 Del. C. § 3114 ..............................................................................................9 n.5

10 Del. C. § 8106 ..................................................................................................12

Defendants The Goldman Sachs Group, Inc. ("GS Group"), Gerry Cardinale, Rob Gheewalla, and Jack Daly submit this memorandum of law in support of their Motion to Dismiss the Complaint (the "Complaint or "Compl.") Pursuant To Rule 12(b)(6).

## INTRODUCTION

In March 2001, Plaintiff North American Catholic Educational Programming Foundation ("NACEPF") and six other institutions (the "Alliance") that owned the rights to certain airwave frequencies over which data could be transmitted via wireless communication ("spectrum") entered into a "Master Agreement" with a company known as Clearwire Holdings, Inc. ("Clearwire") to lease that spectrum to Clearwire under certain terms and conditions. Clearwire was funded primarily through a March 2001 investment by the Goldman Shareholder Defendants (defined below) (GS Group was not an investor and has no apparent connection to the facts and circumstances underlying this lawsuit). Messrs. Gheewalla, Cardinale and Daly (the "Individual Defendants"), all employees of Goldman Sachs & Co. or its affiliates, sat on the board of Clearwire after the Goldman Shareholder Defendants made their investment in Clearwire.

By the spring of 2003, the market for this spectrum essentially collapsed due to a number of factors including the bankruptcy of MCI/Worldcom, a major purchaser of spectrum. In light of these market conditions, all the Alliance members other than plaintiff consensually terminated their relationship with Clearwire. At this time, Clearwire was seeking additional capital or a strategic transaction and, in August 2003, offered shareholders the opportunity to participate in a "C Round Financing" by purchasing preferred shares of Series C stock. While other shareholders participated in this offer, plaintiff did not. In November 2003, Clearwire agreed to a strategic transaction with Flux U.S. Corp. Days later, NACEPF filed the first of its litany of complaints arising in connection with the Master Agreement that it brought in the courts of

Delaware (where Clearwire is incorporated). After receiving an adverse decision from the Chancery Court of Delaware in the last of these suits, NACEPF filed the instant action.

In this latest installment, filed years after the underlying events, NACEPF asserts an array of untimely claims which are wholly inconsistent with one another, unsupported by any factual allegations and, at times, utterly incomprehensible. The Court need not reach the merits of this twisted jumble, because it lacks proper jurisdiction over these defendants, as set forth in defendants' separate Motion To Dismiss For Insufficient Service And Lack Of Personal Jurisdiction Pursuant To Federal Rules Of Civil Procedure 12(b)(2) And 12(b)(5) And, In The Alternative To Stay The Action. But, should the Court be inclined to address the merits, each of NACEPF's claims must be dismissed on the following grounds:

(1) All of plaintiff's claims are time barred. As plaintiff has itself asserted in its prior Delaware lawsuits, this dispute arises under and is governed by Delaware Law. The applicable Delaware Statute of Limitations for all the causes of action asserted here is three years and thus every cause of action must have accrued before November 15, 2003. None of the claims meet this test: the claims related to the Master Agreement between NACEPF and Clearwire all concern actions in 2001 (when the Master Agreement was signed) or 2002 (when the alleged fraud occurred) through February 2003 (when the latest alleged act of tortious interference is claimed to have occurred); the claims related to Clearwire's 2003 financing all accrued no later than August 27, 2003 when the financing closed. None of these events occurred within three years of the complaint's filing on November 15, 2006.

(2) All the causes of action fail to state a claim. On the merits, each of NACEPF's claims fares no better. Contrary to the requirements of Rule 9(b), there is not a single well-pleaded allegation that any defendant uttered an untrue statement or did anything that caused any harm whatsoever to NACEPF. Likewise, and as set forth in detail below, not one of plaintiff's eight causes of action comes close to alleging – even in an impermissible conclusory matter – its necessary elements. If NACEPF has a dispute, it is with Clearwire, with whom it contracted five years ago, and whose 2003 Offer to convert its shares NACEPF rejected. For reasons known only to it, NACEPF – which initially brought suit against Clearwire in Delaware – chose in early 2004 to voluntarily dismiss its action against Clearwire. It must live with that tactical (albeit ill-conceived) choice and can not simply keep asserting trumped up suits against Messrs. Daly, Cardinale and Gheewalla, and their employer's affiliates.

## STATEMENT OF FACTS

The Parties

Plaintiff NACEPF is a Rhode Island Corporation, which holds FCC-issued licenses to certain radio wave spectrum, used by various educational entities, known as "Instruction Television Fixed Service" ("ITFS") spectrum. Compl. ¶¶ 24, 26. In 2000, NACEPF and six other educational licensees of ITFS joined together to form the ITFS Spectrum Development Alliance, Inc. (the "Alliance"). Compl. ¶ 1. Plaintiff also owns Preferred Shares in Clearwire, which amounted to approximately 1% of the outstanding stock of Clearwire on or about August 15, 2003. Compl. ¶ 4.

GS Group is a Delaware corporation with its principal place of business in New York. GS Capital Partners III, L.P. (registered in Delaware) and GS Capital Partners III (Offshore),

L.P. (registered in the Cayman Islands) are investment partnerships affiliated with GS Group. Goldman, Sachs & Co. Verwaltungs GmbH (registered in Germany) is the nominee of GS Capital Partners III (Germany), L.P. an investment partnership affiliated with GS Group. Collectively these investment entities will be referred to herein as the "Goldman Shareholder Defendants." In or about March 2001, the Goldman Shareholder Defendants collectively invested approximately $47 million and became stockholders in Clearwire. Compl. ¶¶ 8, 12(a). Clearwire (which is not named as a defendant) is a Delaware corporation, headquartered in Dallas, Texas, formed in connection with the March 2001 financing. GS Group, for its part, has no connection whatsoever with the events alleged in the complaint.

Defendants Gerry Cardinale, Rob Gheewalla, and Jack Daly (the "Individual Defendants") were at all relevant times residents of the State of New York and, in the case of Mr. Gheewalla, England also, and are employed by affiliates of GS Group in New York and London. Compl. ¶ 9. The Individual Defendants were involved in Goldman Shareholder Defendants' efforts to finance Clearwire and, in or about March 2001, each became a director of Clearwire. Compl. ¶¶ 5-7. Together, the Individual Defendants constituted a minority of Clearwire's Board of Directors. Compl. ¶ 12.

<u>The Master Agreement</u>

In March 2001, in connection with the initial equity financing of Clearwire, the Alliance and Clearwire entered into a Master Use and Royalty Agreement (the "Master Agreement") for use of ITFS spectrum. Compl. ¶ 26. None of the defendants was a party to the Master Agreement. The Individual Defendants were not directors of Clearwire at the time the Master Agreement was negotiated, approved or executed. Messrs. Cardinale, Gheewalla and Daly became directors of Clearwire, immediately *after* execution of the Master Agreement.

The Master Agreement, which is attached to the January 12, 2007 Declaration of Jimmy M. Mansour at Exh. C, called for Clearwire to make certain payments to Alliance members in exchange for the right to lease ITFS, under specified circumstances, from Alliance members.[1] In April and May 2003, and following a dramatic decline in the value of spectrum caused by, *inter alia*, the collapse of MCI/WorldCom, Clearwire and all Alliance members other than NACEPF consensually terminated participation under the Master Agreement. Compl. ¶ 42.

The "C Round" Financing

In Spring 2003, Clearwire began efforts to raise additional capital to enable it to either continue operations or pursue a strategic transaction. Compl. ¶ 46. On August 15, 2003, having failed to secure additional capital from an outside investor, Clearwire sent a letter to its shareholders (the "August 15th Letter") offering them the opportunity to purchase convertible notes (the "Original Offer"). Compl. ¶ 49; Mansour Decl., Exh. D. The August 15th Letter advised shareholders that the financing would "provide [Clearwire] with additional time to pursue a new round of financing and to pursue other strategic alternatives, **which may include a sale or merger of the Corporation**." Mansour Decl., Exh. D at 1 (emphasis added).[2]

Within days, Clearwire became aware that certain shareholders were prohibited from participating in the Original Offer under various state law restrictions. In a subsequent letter

---

1 The Master Agreement is incorporated by reference into the complaint. E.g., Compl. ¶ 29, 43, 73. The Mansour Declaration also attaches the Third and Fourth Amended Certificates of Incorporation of Clearwire, as filed with the Secretary of State of the State of Delaware, (Exhs. A & B) as well as, the August 15th Letter and August 20th Letter (Exhs. D & E) (referenced in paragraphs 49 and 50 of the Complaint) which are discussed *infra* at 6, 30-32. Each of these exhibits may be considered on a motion to dismiss. *Greene v. Rhode Island*, 398 F.3d 45, 48 (1st Cir. 2005) (in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b), a court may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment").

2 The Court may properly review this letter and the August 20th Letter discussed below on a motion to dismiss. *See Greene*, 398 F.3d at 48; *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) (letters from management referenced in the complaint were properly considered on motion to dismiss).

dated August 20, 2003, which is referenced in the Complaint at ¶ 50 and is attached to the Mansour Decl. as Exh. E (the "August 20th Letter"), Clearwire terminated the Original Offer and, in its place, offered shareholders the opportunity to purchase a new series of preferred stock (the "C" Series) on a pro-rata basis, commensurate with their current holdings (the "Preemptive Rights Offer" or ""C Round Financing"). In the August 20th Letter, Clearwire again advised the shareholders that it would use the proceeds from this round of financing "to fund [Clearwire's] continued operations pending completion of the new financing round or a possible strategic transaction, **which may include a sale of the Corporation.**" In this letter however, Clearwire went even further, advising its shareholders – including NACEPF – that it "is **currently engaged in discussions with third parties** regarding either a new financing round or **a strategic transaction which could result in the acquisition of the Corporation.**" Mansour Decl., Exh. E at 1, 2 (emphasis added). The Preemptive Rights Offer remained open through August 27, 2003. During this time, many Clearwire shareholders, but not plaintiff, chose to participate in the Offer.

Several months later, on November 14, 2003, Clearwire entered into a strategic transaction with Flux U.S. Corp ("Flux"), a company owned by Craig McCaw (the "Strategic Sale" or "Flux Deal"). Compl. ¶ 56. As part of the transaction, Clearwire sold its shares of stock in two of its wholly owned subsidiaries in exchange for cash and stock in Flux, which was subsequently renamed Clearwire. *Id.* At present, Clearwire continues to hold the Flux stock it received in the Strategic Sale. Compl. ¶ 56.

Plaintiff's Prolix Prior Litigation

Less than a week after Clearwire announced the Flux Deal, on November 20, 2003,[3] NACEPF filed a declaratory judgment action against Clearwire in the Superior Court of Delaware alleging a breach of the Master Agreement. *North Am. Catholic Educ. Programming Found., Inc. v. Clearwire Holdings, Inc.*, C.A. No. 03C-11-172 (RRC) (Del. Super. Ct. filed Nov. 20, 2003) (attached hereto as Exh. A).[4] For reasons known only to plaintiff, on February 12, 2004, it voluntarily dismissed this action. *North Am. Catholic Edu. Programming Found., Inc. v. Clearwire Holdings, Inc.*, C.A. No. 03C-11-172 (RRC) (attached hereto as Exh. B).

On the same day plaintiff dismissed its complaint against Clearwire, it filed a second action in the Superior Court of Delaware, not against Clearwire or any of its management, but solely against Messrs. Gheewalla, Cardinale, and Daly (the Individual Defendants in this action) as outside directors of Clearwire. *North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, et al.*, C.A. No. 04C-02-157 (MMJ) (Del. Super. filed Feb. 12, 2004) (attached hereto at Exh. C). That complaint, in which NACEPF purported to sue solely in its capacity as a "creditor" – not a "shareholder" – of Clearwire, alleged the same claims that it asserts in this Action relating to the Master Agreement (but did not contain any allegations relating to the C Round Financing). Following motion practice, the Superior Court of Delaware entered an order, which dismissed the breach of fiduciary duty claim for lack of subject matter jurisdiction;

---

3 The complaint was dated November 19, 2003, but filed the next day.

4 A true and correct copy of each of the relevant pleadings, briefs and opinions in connection with the NACEPF Delaware Action and the Stritzinger Action is attached hereto at Exhibits A - G. Each of these is a public record, susceptible to judicial notice, which may be considered on a motion to dismiss. *See Greene*, 398 F.3d at 48; *see also Cesario v. Bergquist*, 2006 U.S. Dist. LEXIS 10141 (D.R.I. Mar. 10, 2006) (considering prior court decisions); *Scritchfield v. Paolo,* 274 F. Supp. 2d 163, 166 (D.R.I. 2003) (the court may consider public documents).

dismissed the remaining two claims as per plaintiff's agreement to withdraw them; and permitted NACEPF to re-file the action in the Delaware Court of Chancery. *See North Am. Catholic Educ. Programming Found., Inc., v. Gheewalla et al.,* C.A. No. 04 C-02-157 (MMJ) (Del. Super. Ct. Feb. 22, 2005) (attached hereto as Exh. D(1)).

On June 24, 2005 – approximately four months later – NACEPF refiled its complaint in the Delaware Court of Chancery. *North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, et al.*, C.A. No. 1456-N (Del. Ch., filed June 24, 2005) (the "NACEPF Delaware Action") (attached hereto at Exh. D). Defendants moved to dismiss the complaint on several grounds and briefing on that motion was completed on December 9, 2005.

While plaintiff was awaiting the Court of Chancery's decision on the motion to dismiss the NACEPF Delaware Action, certain other Clearwire shareholders (represented by Morris, James, Hitchens and Williams LLP – the same law firm representing NACEPF in each of the aforementioned Delaware actions) commenced an action in the Delaware Court of Chancery naming the same defendants sued in this action as well as Clearwire and several members of its management (the "Stritzinger Action"). *Stritzinger v. Clearwire*, C.A. No. 2337-N (Del. Ch., filed Aug. 11, 2006) ("Stritzinger Compl.") (attached hereto as Exh. F). The complaint in *Stritzinger* – which purports to be on behalf of all Clearwire shareholders (Stritzinger Compl. ¶ 55) and names as defendants the people and entities sued here along with Clearwire and its other directors and officers – contained a series of allegations substantively identical to those asserted by NACEPF here relating to the C Round Financing (but not related to the Master Agreement). *Id.*

Shortly thereafter, on September 1, 2006, the Court of Chancery dismissed the complaint in the NACEPF Delaware Action, holding that although NACEPF had sufficiently alleged that

Clearwire was either in the zone of insolvency or, at times, actually insolvent, the claims must nonetheless be dismissed because (1) a plaintiff cannot bring a direct claim for breach of fiduciary duty against a director of a company that is only in the zone of insolvency and (2) the complaint did not contain sufficient well-pled factual allegations establishing a direct claim for breach of fiduciary duty against the Defendants. *NACEPF v. Gheewalla*, 2006 WL 2588971 at *1.[5] On September 26, 2006, NACEPF filed an appeal in the Delaware Supreme Court. Briefing in connection with the appeal has been completed, and the parties await a ruling from the court.

<u>The Present Action</u>

On November 15, 2006, with its appeal of the Court of Chancery's decision in the NACEPF Delaware Action still being briefed, plaintiff filed the present action again naming Messrs. Gheewalla, Cardinale and Daly as defendants along with GS Group and the Goldman Shareholder Defendants.[6] In the present action, plaintiff asserts substantially the same claims in connection with the Master Agreement that it asserted in the NACEPF Delaware Action: fraudulent inducement (Count I) and interference with a business opportunity (Counts III and IV). However, having lost in Delaware on its breach of fiduciary duty claim, plaintiff has nominally, but not substantively, changed this claim to one for fraud (Count II) (Counts I-IV are

---

5 Having dismissed the fiduciary duty claim on the merits, the Delaware Court further held that there was no jurisdiction over the defendants with respect to the remaining two counts. *North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,* 2006 WL 2588971, at *1 (Del. Ch. Sept. 1, 2006). As discussed above, in the NACEPF Delaware Action, NACEPF had sued solely in its capacity as a "creditor" of Clearwire and had premised jurisdiction over the defendants exclusively on 10 Del. C. § 3114, the long-arm statute conferring jurisdiction over non-resident directors for violations of duties imposed on them by virtue of their status as fiduciaries. However, because the breach of fiduciary duty claim had been dismissed, and no other basis for jurisdiction over the defendants had been alleged, the court held that it had no jurisdiction over the defendants with respect to the remaining claims. *Id.* Why NACEPF did not bring claims in Delaware as a shareholder, as it does here, is wholly inexplicable.

6 The complaint was dated November 14, 2006, but was filed the next day. The Goldman Shareholder Defendants have not yet been served (or in one case, was not timely served) and thus do not join in this motion.

collectively referred to as the "Master Agreement Claims"). Plaintiff also asserts entirely inconsistent claims in connection with the C Round Financing (here claiming Clearwire had great undisclosed value while in Delaware arguing Clearwire was insolvent), which, along with the underlying allegations, appear to be copied almost verbatim from the complaint in *Stritzinger v. Clearwire*. Compare Compl. ¶¶ 47-58, 81-99 (Counts V-VIII) with Stritzinger Compl. ¶¶ 27-38, 39-56 (Counts V-VIII are collectively referred to as the "C Round Financing Claims"). Again, while this is inexplicably duplicative and vexatious as a litigation matter, it is not surprising — NACEPF's Delaware counsel is also the counsel for plaintiffs in the Stritzinger case.

## ARGUMENT

Plaintiff's complaint is fatally flawed in numerous respects. As set forth herein, this action must be dismissed pursuant to Rule 12(b)(6) as all claims were untimely brought (infra Section I). Moreover, dismissal is also warranted due to plaintiff's failure to state a claim upon which relief may be granted and, with respect to the claims sounding in fraud, for failure to comply with the pleading requirements of Rule 9(b) (*infra* Section II).

### I. EACH OF PLAINTIFF'S CLAIMS IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

A claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where, as here, it is apparent from the face of the complaint that the period of time in which plaintiff may bring the claim has expired. *See Rohm and Haas Co. v. Capuano*, 301 F.Supp.2d 156, 162-63 (D.R.I. 2004) (granting Rule 12(b)(6) motion where statute of limitations had expired on face of complaint); *Greene v. Rhode Island*, 289 F.Supp.2d 5, 12 (D.R.I. 2003) (same). To determine the applicable limitations period, this Court, which is sitting in diversity, must apply the choice of law rules of Rhode Island. *See Montaup Elec. Co. v. Ohio Brass Corp.*, 561 F. Supp. 740, 744

(D.R.I. 1983). Rhode Island views the statute of limitations as a substantive issue and applies the law agreed upon by the parties or, absent any agreement, the law of the state with the greatest interest in the dispute. *See Hasbro, Inc. v. Mikohn Gaming Corp.*, 2006 WL 2035501, at *5 (D.R.I. July 18, 2006) (where parties have agreed to a choice of law provision the court "will forego an independent analysis of the choice-of-law issue . . .") (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 127 n.5 (1st Cir. 2006)); *Cribb v. Augustyn*, 696 A.2d 285 (R.I. 1997) (holding that weighted-interest analysis and not rule of lex loci delicti applies to determine applicable statute of limitations).

### A. All Claims Are Subject To The Applicable Delaware Limitations Period

As plaintiff acknowledged in the NACEPF Delaware Action, Delaware law governs the Master Agreement Claims. *See* Exh. G (NACEPF Del. Ch. Ans. Br.) at 30-44 (asserting Delaware law in support of its fraudulent inducement and tortious interference claims).[7] Furthermore, since claims that concern the obligations and rights of directors and shareholders of Delaware corporations are most appropriately governed by Delaware law, Delaware law also governs the C Round Financing Claims. *See Young v. Lepone*, 305 F.3d 1, 13 (1st Cir. 2002) ("courts generally refer to the law of the state of incorporation, rather than the law of the forum state, to determine the duties of corporate directors").

---

7 Any argument to the contrary would be futile as the Master Agreement itself provides that Delaware law governs here. *See* Mansour Decl., Exh. C §20; *see also McBurney v. GM Card*, 869 A.2d 586, 589 (R.I. 2005) (choice of law provision applies "unless the chosen state has no substantial relationship to the parties or the transaction"). In light of this contractual choice of law, all the Master Agreement related claims should also be governed by Delaware Law. *See Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1048-50 (Del.Ch. 2006) (choice of law provision governed claims of fraudulent inducement, fraud and negligent misrepresentation); *VGS, Inc. v. Castiel*, 2003 WL 723285, at *7 n.29 (Del.Ch. Feb. 28, 2003) (similar); *Olick v. Kearney*, 451 F. Supp. 2d 665, 676 (E.D. Pa. 2006) (enforcing contractual choice of law clause with respect to tortious interference claims); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 591 F. Supp. 812, 815 (N.D. Ill. 1984)(contractual choice of law provision also controlled unjust enrichment and tortious interference claims "since they are closely related to the parties' contractual claims.").

### B. **This Action Was Commenced After The <u>Three-Year Limitations Period Expired</u>**

Under Delaware law, each of plaintiff's claims is subject to a three-year limitations period, which begins to run on the date the cause of action accrues. *See* 10 Del. C. § 8106.[8] This action was commenced on November 15, 2006; therefore, any claim that accrued prior to November 15, 2003, was not timely brought. "A cause of action accrues under this section at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Albert v. Alex. Brown Mgmt. Servs.*, 2005 WL 2130607, at *15 (Del. Ch. Aug. 26, 2005). Here (setting aside the question of whether plaintiff has actually pled any cognizable cause of action – it has not), all of the events on which plaintiff's claims are predicated occurred prior to November 15, 2003 and, therefore, the applicable limitations period had expired when this action was commenced.[9]

<u>The Master Agreement Claims</u>: Plaintiff's claim for fraudulent inducement (Count I) accrued when plaintiff and Clearwire entered into the Master Agreement – on March 13, 2001. Compl. ¶ 26, Mansour Decl., Exh. C. Consequently, the limitations period for bringing this claim expired three years later on March 13, 2004. *See Middlebrook v. Ayres*, 2004 Del. Super. LEXIS 179 at *15 (Del. Super. Ct. June 9, 2004) (where claim subject to § 8106 accrued on July 12, 1998, the statute of limitations expired on July 12, 2001).[10]

---

8 *See also Solow v. Aspect Resources*, LLC, 2004 WL 2694916, at *3-4 (Del. Ch. Oct. 19, 2004) (fraud, fraudulent inducement); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd* 752 A.2d 112 (Del. 2000) (breach of fiduciary duty).; *SmithKline Beecham Pharmaceuticals Co. v. Merck & Co., Inc.*, 766 A.2d 442, 450-51 (Del. 2000) (tortious interference); *Merck v. SmithKline Beecham Pharms. Co.*, 1999 Del. Ch. LEXIS 242, at *128 (Del. Ch. Aug. 5, 1999), *aff'd*, 766 A.2d 442 (Del. 2000) (unjust enrichment).

9 If plaintiff seeks to establish that there was any basis for tolling the statute of limitation for any of its claims, plaintiff "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled." *See In re Dean Witter Partnership Litig.*, 1998 Del. Ch. LEXIS 133 (Del. Ch. July 17, 1998). There are no such facts pled and, in any event, the Delaware courts have narrowly carved out limited circumstances in which the running of the limitations period can be tolled, none of which apply here.

10 Plaintiff contends that its claim for fraudulent inducement (Count I) arises out of alleged misstatements occurring between June 2000 and May 2002. Compl. ¶ 60. Even if the court were to consider any alleged

It is somewhat more challenging to determine when plaintiff's putative claim for fraud (Count II) might have accrued, since, as discussed in detail below (*infra* at 20-21), the complaint does not even attempt – even vaguely – to allege a misstatement or any other element of fraud, much less provide any specific dates. Compl. ¶ 65-68. Nonetheless, in order for plaintiff's fraud claim to be timely, it would have to have accrued on or after November 15, 2003. The complaint, however, does not allege *any act whatsoever* that occurred following the sale of Clearwire assets on November 14, 2003. Moreover, a review of the factual allegations of the complaint reveals that the latest act attributed to the defendants took place on February 12, 2003. Compl. ¶ 42. Accordingly, under any possible analysis, plaintiff's fraud claim, filed on November 15, 2006, was also brought too late. *See, e.g., McIntosh v. Antonino*, 71 F.3d 29, 38 (1st Cir. 1995) (where claim accrued on January 7, 1990, complaint filed on January 8, 1993 was untimely under three-year limitations period).

In stating its first claim for interference with a prospective business opportunity (Count III), the complaint vaguely alleges that "[a]fter March 2001 and **until June 2002**," it had an opportunity to convey its licenses to other companies and that the defendants "**during that period**" caused Clearwire to assert its contractual rights, which resulted in NACEPF losing the opportunity to convey its licenses to other buyers. Compl. ¶¶ 70, 71 (emphasis added). Accordingly, any claim would have accrued no later than June 2002 and expired in June 2005.

Plaintiff's second claim for interference with a prospective business opportunity (Count IV) fares no better. Plaintiff alleges that the defendants' wrongful act was "negotiating separate settlements with [other] Alliance members . . . ." Compl. ¶ 76. However, these settlements

---

misstatements up through June 2002 as relevant, the limitations period would, in that case, expire in June 2005 and plaintiff's claims would still be untimely.

occurred in or about February 2003, which was clearly more than three years before November 15, 2006, when plaintiff commenced this action.

The C Round Financing Claims: The crux of Counts V-VIII of the complaint is that plaintiff was injured when it decided not to participate in the Preemptive Rights Offer which closed on August 27, 2003, due to the defendants' failure to disclose in August the McCaw Sale (which occurred on November 14, 2003). Accordingly, plaintiff's claims accrued, at the latest, by August 27, 2003, after which plaintiff no longer had the option to purchase shares of the Series C Preferred Stock. *See* Mansour Decl. Exh. E at 1. The limitations period for all of plaintiff's C Round Financing Claims, therefore, expired on August 27, 2006 and counts V-VIII were untimely brought.

Because plaintiff brought each of its claims more than three years after it accrued, all Counts must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Rohm and Haas Co.*, 301 F. Supp.2d at 162-63 (dismissing claims where limitations period had expired).

## II. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if plaintiff's claims are timely brought (they are not), plaintiff's complaint still does not state a claim. To withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must "allege a factual predicate concrete enough to warrant further proceedings." *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004). Although the Court must, in reviewing the motion to dismiss, accept the allegations in the complaint as true, "[c]onclusory allegations or legal conclusions masquerading as facts will not suffice to prevent a motion to dismiss." *Cesario,* 2006 U.S. Dist. LEXIS 10141, at *6-7 (citing *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989), *overruled on other grounds*, *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir.

2004)) (noting "bald assertions, unsupportable conclusions, and opprobrious epithets" are insufficient to withstand dismissal).

Fed. R. Civ. P. 9(b) further requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See, e.g., Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 21, 29-30 (1st Cir. 2004); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985). A failure to include particularized allegations in the complaint is fatal to a claim sounding in fraud. *In re Gtech Holdings Corp. Securities Litigation*, 1995 WL 500414, at *5-7 (D.R.I. Mar. 16, 1995) (dismissing fraud claim where conclusory statements that defendants knew their statements were materially false failed to set forth specific facts to make such allegation reasonable); *Haft v. Eastland Fin. Corp.*, 755 F. Supp. 1123, 1129 (D.R.I. 1991) (dismissing fraud claim where plaintiff's complaint contained no concrete examples of fraudulent conduct, but merely vague accusations that a false and misleading impression was created). [11]

### A. Absolutely No Claim Is Alleged Against GS Group

A glaring deficiency in plaintiff's complaint is that it fails to allege — even by a conclusory allegation — that GS Group is liable for anything. GS Group is not a shareholder of Clearwire, was not a party to the Master Agreement, and does not employ the individual defendants; plaintiff has failed to plead any facts to suggest otherwise (nor could they).

---

11 The particularity requirement of 9(b) applies to plaintiff's claims for fraud (Counts II and VII) as well as to the claims for fraudulent inducement (Count I), breach of fiduciary duty (Counts V and VI) and unjust enrichment (Count VIII), each of which sounds in fraud. *See In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994) ("[a]lthough no fraud claim is pleaded per se in the Complaint, . . . the particularity requirement of Rule 9(b) applies where 'fraud lies at the core of the action'"); *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993) ('[a]lthough the language of Rule 9(b) confines its requirements to claims of mistake and fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud'); *see also Hayduk*, 775 F.2d at 443 (affirming dismissal of claims of conspiracy which sounded in fraud because they were not plead with sufficient particularity under Rule 9(b)).

Moreover, plaintiff similarly does not plead any action (or failures to act) or statement (or omission) on the part of GS Group. Accordingly, all claims against GS Group must be dismissed for failure to state a claim.

**B. <u>Plaintiff Fails To Plead Its Claims With Particularity</u>**

Under Rule 9(b), a plaintiff is required – at a minimum – to "specify the allegedly fraudulent statements, the identity of the speaker, the time and place that the statements were made, and the reason why the statements are fraudulent." *Sekuk Global Enters. v. KVH Indus.*, 2005 U.S. Dist. LEXIS 16628 at *17 (D.R.I. Aug. 11, 2005); *Haft,* 755 F.Supp. at 1129 (plaintiff must allege "the who, what, when, where, and how"). Moreover, where, as here, a plaintiff attempts to cast a wide net over multiple defendants, Rule 9(b) requires that the complaint contain clear factual allegations as to the role of each defendant, and not just blanket claims as to all defendants. *See, e.g., In re Gtech,* 1995 WL 500414 at *7 (dismissing fraud claim where plaintiff failed to identify which defendant spoke with plaintiff and what that defendant actually said); *Hayduk,* 775 F.2d at 444-45 (complaint warrants dismissal when conclusory allegations do not apprise defendants of the individual charges against them).

In direct contrast to Rule 9(b)'s requirement for particularity, plaintiff's complaint is replete with references to "defendants" and fails to identify with any specificity what, if anything, each of the three individual and four institutional defendants did that gave rise to any of plaintiff's claims. For example, in support of the Master Agreement Claims, the complaint alleges:

- "*Defendants* made fraudulent misrepresentations in order to induce the execution of [the Master Agreement]. Compl. ¶ 1

- "The *Defendants*' representations regarding Clearwire's claims were not made in good faith." Compl. ¶ 39.

- "The *Defendants*, by their fraudulent conduct and misrepresentations, fragmented the Alliance . . ." Compl. ¶ 77.

Plaintiff's improper group pleading is even more apparent with respect to the C Round Financing Claims (¶¶ 47-58, 81-98). Not once does plaintiff mention Gheewalla, Cardinale, or Daly by name. Nor does this portion of the Complaint attribute any statement to GS Group or the Goldman Shareholder Defendants. Instead, plaintiff relies on vague and conclusory allegations of misconduct, all attributed either to Clearwire (which is not sued even though all the statements are its) or to "Defendants." For example:

- "The negotiations for the McCaw Sale led to a scheme concocted by the *Defendants* . . ." Compl. ¶ 48.

- "By the court of misconduct set forth above . . . the *Defendants* have breached their fiduciary duties owed to the plaintiff." Compl. ¶ 83.

- "The *Defendants* acted with the intent to deceive, or with reckless disregard for the truth . . ." Compl. ¶ 88.

- *Defendants* caused to be issued, and participated in the issuance of, materially false and misleading statements to Plaintiffs [sic], and omitted material facts necessary to make the statements not misleading, including any information about the pending McCaw Sale. Compl. ¶ 95 (emphasis added).

- *Defendants* disseminated the materially false and misleading statements and material omissions described herein with the knowledge that the statements would be reviewed and relied upon by Plaintiffs [sic] in deciding whether or not to participate in the C Round Financing. Compl. ¶ 97 (emphasis added).

Because it is impossible for each defendant to ascertain what allegations are made specifically against him or it, each of plaintiff's claims sounding in fraud must be dismissed. *See e.g., Alternative System Concepts*, 374 F.3d at 29-30 (affirming dismissal of fraud claim where complaint did not provide any details as to who allegedly uttered the misleading statements, to whom they were made, where they were made, when they occurred, and what actions they engendered); *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 281 (D.R.I. 2000)

(dismissing conspiracy claim grounded in fraud where complaint's allegations were stated in broad terms and did not go further than restating the elements of the claim, thereby not serving its purpose of giving the defendant the notice it is entitled to in order to answer a claim of fraud); *Haft*, 755 F. Supp. at 1127-29 (similar).

## C. The Master Agreement Claims Fail

Should plaintiff somehow survive the 9(b) infirmities, and the fact that all its claims are untimely, it still cannot avoid dismissal. As set forth below, each Count of the complaint is fatally flawed.

### 1. Plaintiff Has Not Pled The Elements Of Fraudulent Inducement or Fraud (Counts I and II)

The elements of fraudulent inducement or fraud are: (a) the existence of a false representation of fact by the defendant; (b) the defendant's knowledge or belief that the representation was false, or made with reckless indifference to the truth, (c) defendant had the intent to induce plaintiff to act or refrain from action; (d) plaintiff acted or did not act in justifiable reliance on the representation; and (e) plaintiff suffered damages as a result of such reliance. *See Solow*, 2004 WL 2694916, at *2; *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003). Plaintiff fails to meet its burden to allege facts that if true would establish each of these elements with respect to either Count I or II and, therefore, fails to state a claim upon which relief can be granted.

#### (a) Plaintiff Fails To Allege The Elements Of Its Fraudulent Inducement Claim

Plaintiff's complaint refers generally to a number of representations allegedly made by defendants before the execution of the Master Agreement. *See* Compl. ¶¶ 60-64. Plaintiff does not, however, allege any non-conclusory facts in support of its assertion that such representations were false (much less intentionally false) when made or, more strikingly, that it acted in

justifiable reliance on any such allegedly false representation. Plaintiff also fails to allege non-conclusory facts to support the element of causation – instead opting to state in only the most general terms that "NACEPF lost the opportunity to license its spectrum and was otherwise damaged as a proximate result of the Defendants' conduct." Compl. ¶ 64.

Plaintiff attempts to support its inducement claim by referring to a nefarious-sounding "hidden agenda" to "flip" spectrum rights acquired by Clearwire under the Master Agreement. *See* Compl. ¶ 36. Even were plaintiff's allegations true, and defendants had stated prior to the execution of the Master Agreement that spectrum rights would not be transferred, such allegations are insufficient as a matter of law to support an allegation of justifiable reliance.[12]

Here, the clear terms of the Master Agreement provide that it is "the entire agreement of the Parties with respect to the subject matter, [t]hereof and supersede[s] all prior and contemporaneous arrangements or understandings with respect [t]hereto." Mansour Decl., Exh. C (Master Agreement) at § 14. "The existence of such a clause in a formal written contract between sophisticated parties is, in the absence of unconscionable or other extraordinary circumstances, ***conclusive evidence that the parties intended the written contract to be their complete agreement.***" *J.A. Moore Constr. Co. v. Sussex Assoc. Ltd. P'ship*, 688 F. Supp. 982, 987 (D. Del. 1988) (emphasis added) (citations omitted); *accord Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 Del. Ch. LEXIS 91, at *25 (Del. Ch. July 9, 2002). The clear terms of the Master Agreement unequivocally granted Clearwire the right to assign, sell or transfer, – *i.e.*, to "flip" – individual use and renewal agreements for spectrum. *See* Mansour

---

12 Indeed, plaintiff makes no attempt to allege specific facts about how and why it relied upon certain alleged statements by defendants, despite the fact that such statements directly would have conflicted with several terms of the Master Agreement. Rather, plaintiff merely parrots the legal standard: "NACEPF relied upon the representations of [Defendants] in entering into the Master Agreement . . ." Compl. ¶ 61. This does not come close to pleading fraudulent inducement with particularity.

Decl., Exh. C (Master Agreement) at § 1.5(a) ("Right to Assign Individual Use Agreement or Renewal Agreement"). Plaintiff's allegation of a "hidden agenda" is thus belied by the plain terms of the Master Agreement and does not provide support for any element of a fraudulent inducement claim against defendants – Clearwire was entitled, under the express terms of the Master Agreement, "to sell, transfer, sublease and assign any Individual Use Agreement . . ." if it decided to do so. Plaintiff could not have justifiably relied on any alleged false representations by defendants if such representations were inconsistent with the clear terms of the Master Agreement as executed. *See Carrow v. Arnold,* 2006 Del. Ch. LEXIS 191, at *36 (Del. Ch. Oct. 31, 2006) (justifiable reliance was not shown where alleged prior oral representations were inconsistent with the terms of the written executed contract).

Plaintiff has failed to allege facts necessary which would establish the elements of a fraudulent inducement claim and, as a result, Count I should be dismissed.

(b) <u>Plaintiff Fails To Allege The Elements Of Its Fraud Claim</u>

Count II of the Complaint asserts a separate (and wholly incomprehensible) claim for fraud, which appears to be little more than a retitled recitation of its breach of fiduciary duty claim from the NACEPF Delaware Action, which was dismissed by the Court of Chancery. *Compare* Compl. ¶¶ 65-68 *with* Exh. E (NACEPF Chancery Compl.) at ¶¶ 45-46; *NACEPF v. Gheewalla*, 2006 WL 2588971 at *1. The complaint alleges that "the defendants acted fraudulently to induce plaintiff to continue its business relationship with Clearwire" by "(1) not utilizing the assets of Clearwire for its benefit and that of its creditors, and (2) holding on to NACEPF's ITFS license rights when Clearwire would not use them . . . ." Compl. ¶¶ 66-67. Plaintiff also includes a perplexing allegation of self-dealing (which has nothing to do with fraud). Compl. ¶ 68. Conspicuously absent, however, is any allegation – conclusory or otherwise – of any misstatement or any other element of a fraud claim. There is simply no

falsity alleged and thus, *a fortiorari*, no well-plead claim that any defendant uttered the non-existent falsehood with the requisite intent. *See Solow*, 2004 WL 2694916, at *2.

Although plaintiff purports to claim that some additional fraud occurred after it had already entered into the Master Agreement with Clearwire, the complaint likewise fails to allege that any defendant made any false representation of fact or material omission at any time after March 2001. Plaintiff alleges only that "from the initial Alliance closing in March 2001 until May 2002, the Defendants caused Clearwire to continue to assert to the Alliance members that Clearwire had the right to acquire from them any of their spectrum licenses that became available." Compl. ¶ 38. This is not fraud. If anything, it is an accurate statement of the contractual rights Clearwire had under the Master Agreement.

Further, an allegation of unidentified assertions (*by Clearwire and not the defendants*), made at some point during a more than one year span of time, falls far short of providing the "who, what, when, where and why" required under Rule 9(b). *See Haft*, 755 F. Supp. at 1128. Indeed, nothing in the complaint suggests that any such assertions were false at the time they were made; or, even if made, that the defendants made them. Finally, the complaint does not identify any post-March 2001 action taken by plaintiff in reliance on any supposed misrepresentation.[13] In short, *no* element of a fraud claim is stated.

---

13 It is indisputable that plaintiff could not have entered into the Master Agreement in reliance on statements made after the agreement was executed. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (plaintiff could not establish reliance where "statement was made after . . . the contracts were signed, and, obviously, could not have induced [plaintiff] to sign the contract") (citing *Burke v. Jacoby*, 981 F.2d 1372, 1378 (2d Cir. 1992)); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 2004 U.S. Dist. LEXIS 7015, at *14 (S.D.N.Y. Apr. 21, 2004) (noting that it "is clearly true" that statements made after a merger agreement was signed are not actionable misrepresentations under 10b-5).

**2. Plaintiff Has Not Pled The Elements Of Interference With A Prospective Business Opportunity (Counts III and IV)**

Under Delaware law, a showing of deliberate interference with a prospective business opportunity requires:

> (a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.

*DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980) (citation omitted). In two separate counts, plaintiff alleges that the defendants first interfered with NACEPF's opportunity to convey its licenses to use wireless spectrum (Count III, Compl. ¶¶ 69-74) and subsequently interfered with NACEPF's opportunity to acquire additional spectrum (Count IV, Compl. ¶¶ 75-80). Plaintiff's conclusory allegations, unsupported by any facts, are insufficient and its interference claims must fail. *See Carley Distrib. Corp. v. First Nat'l Bank, N.A.*, 1993 U.S. App. LEXIS 31380, at *2 (1st Cir. Dec. 2, 1993) (affirming dismissal of claims including tortious interference where complaint "failed to allege facts ('as opposed to unverifiable conclusions') supporting such claim").

(a) Plaintiff Has Not Pled Any Interference <u>With An Opportunity To Convey Licenses</u>

Plaintiff first alleges that during the period Clearwire asserted rights to acquire the NACEPF wireless spectrum under the Master Agreement, plaintiff had the opportunity to convey its licenses to other companies that sought to acquire the same spectrum. Compl. ¶¶ 49-50. This bald assertion, without more specific details of these alleged missed opportunities (*i.e.*, when, with whom, and on what terms), is insufficient to establish the existence of a valid business relation or expectancy, the first prong of a deliberate inference claim. *See, e.g., Dionisi v. DeCampli*, 1995 Del. Ch. LEXIS 88, at *36-37 (Del. Ch. June 28, 1995) (dismissing a claim for

tortious interference with prospective contractual relationships because plaintiffs did not have a "realistic expectancy" – plaintiffs' perception that they would receive more work from a potential customer, without more, was "insufficient to form the basis of a *bona fide* expectancy") (emphasis in original); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F. Supp. 2d 238, 243 (D. Del. 1998) (granting summary judgment in favor of defendant on interference claim where plaintiff broadly alleged that "potential customers" were interfered with, but did not "cite any actual contract, or even contract discussions, with any of these parties").

Plaintiff's complaint is also devoid of any factual assertion that would suggest that Messrs. Gheewalla, Cardinale and Daly or GS Group (or the Goldman Shareholder Defendants either) knew of any relationship expectancy between NACEPF and any other entity. Plaintiff's own failure to articulate any particular business opportunity undermines its conclusory statements that any such business opportunity existed, and *a fortiori* fails to plead that defendants both knew of such opportunity and acted intentionally to interfere with it. Furthermore, plaintiff fails to allege any intentional interference by any defendant(s) with any such unidentified opportunities.

Even had plaintiff specified these mysterious opportunities, an interference claim cannot survive if the actions allegedly taken were within a "privilege to interfere within the limits of fair competition with prospective business opportunities." *DeBonaventura*, 419 A.2d at 947. In determining the validity of an interference claim, each element "must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *Id.* Here, Clearwire simply acted to preserve its own corporate assets and rights in the NACEPF licenses pursuant to the Master Agreement and the individual defendants acted in furtherance of their duties as directors of Clearwire. That is not a tort. *See Gilbert v. El Paso Co.*, 1988 Del.

Ch. LEXIS 150, at *40 (Del. Ch. Nov. 21, 1988) ("To constitute tortious interference, the act that is claimed to have interfered with the contract relationship or business opportunity must itself have been wrongful") (citing *DeBonaventura*, 428 A.2d 1151).[14]

Likewise, none of the Individual Defendants are alleged to have acted improperly as directors or to have otherwise exceeded the bounds of their agency. Rather, all the complaint alleges is that the directors caused Clearwire to act in furtherance of the corporation's interests in light of its financial difficulties—a right that is a fundamental maxim of Delaware corporate law. *See Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985) ("[T]he board's power to act derives from its fundamental duty and obligation to protect the corporate enterprise, which includes stockholders, from harm reasonably perceived, irrespective of its source.") (collecting cases). The Delaware Supreme Court has recognized that "in the broad context of corporate governance, including issues of fundamental corporate change, a board of directors is not a passive instrumentality." *Id.* Indeed, a director is "charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders." *See, e.g., Cede & Co. v. Technicolor*, 634 A.2d 345, 360 (Del. 1993).

Therefore, Count III of plaintiff's complaint fails to state a claim against defendants and should be dismissed.

(b) Plaintiff Has Not Pled Any Interference With An Opportunity To Acquire Additional Spectrum

Count IV of plaintiff's complaint suffers from the same fatal deficiencies as Count III. Again Plaintiff's claim relies entirely on a vague and conclusory allegation of a prospective

---

14 Plaintiff's claim in Count IV that it was wrongful of Clearwire to "fragment the Alliance" by settling with the other members of the Alliance (and thereby releasing its rights under the Master Agreement) merely highlights the absurdity of its contrary assertion in Count III that defendants efforts to preserve their rights under the Master Agreement was wrongful and unjustified. Indeed, in the Delaware Action, NACEPF asserted that the failure to preserve Clearwire's rights under the Master Agreement constituted a breach of duty by Clearwire's directors. Exh. D at Count II.

business opportunity. The complaint alleges: "During the relevant time period, NACEPF was ready, willing and able to acquire additional spectrum in the market, which opportunity was prevented by the Defendant's fraudulent conduct." Compl. ¶ 78. This allegation of hypothetical future acquisitions is precisely the type of allegation that was rejected by the court in *Lucent Info. Mgmt.*, 5 F. Supp. 2d at 243.

Similarly, to establish the element of wrongful interference, plaintiff relies on another conclusory allegation: "the actions of the defendants in interfering with NACEPF's ability to acquire new spectrum was wrongful and unjustified." Plaintiff's sole allegation of any supposed misconduct is that the defendants "negotiated settlements with [Alliance members] HITN and ITF, based upon false misrepresentations of Clearwire's imminent bankruptcy . . . " Compl. ¶ 76. Again, plaintiff fails to allege any facts, such as which defendant made these alleged misrepresentations, what was said and why it was false. This allegation is, of course, more than curious in light of (1) NACEPF's claims in Delaware, currently being pursued before the Delaware Supreme Court, that Clearwire was, at this time, insolvent and (2) the fact that neither HITN nor ITF claim they were mislead in any way.

Moreover, plaintiff's own actions demonstrate that entering into settlement agreements with other Alliance members was clearly a means for Clearwire and its directors to "protect their business interests in a fair and lawful manner." *DeBonaventura*, 419 A.2d at 947. Elsewhere in the complaint plaintiff alleges that it had sent Clearwire notices of default under the Master Agreement. Compl. ¶ 93. Plaintiff also filed a series of lawsuits alleging, *inter alia*, that Clearwire had failed to satisfy its obligations under the Master Agreement (Exhs. A, C, E) and that Clearwire was insolvent and, therefore it and its directors owed a duty to Plaintiff, which was breached. Exhs. C, E. Plaintiff cannot now argue that Clearwire and its directors were

unjustified in settling with others similarly situated to NACEPF. Thus, plaintiff has not stated a claim for relief. *See Gilbert,* 1988 Del. Ch. LEXIS 150, at *40.

### 3. Counts I-IV Fail For The Independent Reason That Plaintiff Has Not Alleged Any Basis For Holding Defendants Personally Liable For Any Interference By Clearwire

It is a fundamental tenet of corporate law that "[a]n officer or director of a corporation is not personally liable for torts of the corporation . . . merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity." 3A William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 11.37 (perm. ed., rev. vol. 2002).[15] An "officer or director may be held personally liable for tortious interference with a contract of the corporation if and only if [they] exceed the scope of their agency in so doing." *Goldman v. Pogo.com Inc.*, 2002 Del. Ch. LEXIS 71, at *28-29 (Del. Ch. June 14, 2002) (quoting *Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F. Supp. 392, 400 (D. Del. 1993) and *Grand Ventures, Inc. v. Paoli's Rest., Inc.*, 1996 Del. Super. LEXIS 3, at *11-12 (Del. Super. Ct. Jan. 4, 1996)); *see also Local Union 42*, 814 F. Supp. at 400. ("The rule . . . is consistent with Delaware's venerable business judgment rule which creates a presumption that officers and directors are immune from personal liability when making business decisions in their fiduciary capacity.").

Here, plaintiff alleges no action on the part of the defendants, which exceeded their authority, nor could it. This omission is fatal to plaintiff's claims. *See Goldman*, 2002 Del. Ch. LEXIS 71, at *32 (granting motion to dismiss contractual interference claim in noting "the absence of any allegation in the complaint to justify an inference that the directors acted outside

---

15 The same rule applies to shareholders as well. *Owl Fumigating Corp. v. California Cyanide Co.*, 24 F.2d 718, 720 (D. Del. 1928) (neither stock ownership nor common officers or directors "make one corporation liable for the infringing acts of the other"). Plaintiff has alleged no basis for disregarding this well-established principle of law.

the scope of their authority"); *Wallace v. Wood*, 752 A.2d 1175, 1182-83 (Del. Ch. 1999) (granting motion to dismiss interference with contractual relations claim where plaintiff failed to allege that defendant officers "exceeded the scope of their authority to direct [the company's] business decision making" in committing self-interested acts). Likewise, to the extent plaintiff's claims are really dressed up allegations that defendants caused Clearwire to breach its contractual obligations, these claims too must fail. *See Bakerman v. Sidney Frank Importing Co.*, 2006 WL 2987020 (Del. Ch. Oct. 10, 2006) (plaintiff failed to state a claim for tortious interference because the defendants were parties to the contracts with which they allegedly interfered); *see also Nye v. Univ. of Delaware*, 897 A.2d 768 (Del. 2006) ("[A]s a matter of law, a party cannot tortiously interfere with a contract to which it is also a party.") (citing *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1058 (Del. Ch. 1984)); *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994) ("It is rudimentary that a party to a contract cannot be liable both for breach of that contract and for inducing that breach.").

**D. Plaintiff's C Round Financing Claims Fail**

Plaintiff employs a variety of legal theories to assert what is – at its core – a claim that it was defrauded in connection with Clearwire's C Round Financing. In addition to a claim for fraud or negligent misrepresentation (Count VII), plaintiff asserts claims for breach of the fiduciary duties of loyalty and care (Count V), breach of the duty of disclosure (Count VI), and unjust enrichment (Count VIII). Each of these suffers from the same fatal deficiency.

The *sine qua non* of fraud is a false representation and, yet, plaintiff's complaint pleads none. Nor does the complaint allege any facts to establish other elements of a fraud claim: scienter, reliance or an injury. Accordingly, plaintiff has failed to state a claim for fraud. The remainder of plaintiff's claims fare no better as each is similarly predicated on there having been some misrepresentation or omission by the defendants – a fact which plaintiff has not alleged

and which the documents upon which the complaint is based conclusively refute. For these reasons, as well as others set forth below, each of plaintiff's claims must be dismissed.

### 1. Plaintiff Fails To State A Claim For Fraud Or Negligent Misrepresentation (Count VIII)

**<u>Fraud</u>**

Under Delaware law, to state a claim for fraud, a plaintiff must allege: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). "'Further, under common law fraud, the representation must not only be material, but must concern "'an essential part of the transaction.'" *E.I. Du Pont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999) (citing *Nye Odorless Incinerator Corp. v. Felton*, Del. Super., 162 A. 504, 512 (Del. Super. Ct. 1931)). Plaintiff's failure to establish each of the foregoing elements mandates dismissal of the claim.

**Plaintiff has not alleged a false representation of fact, made by a defendant.** Plaintiff fails to identify a single statement made by any defendant that was false.[16] Instead, plaintiff seeks to establish an actionable omission based solely on the unsupported conclusion that, because Clearwire was acquired by Flux in November 2003, the defendants must have known

---

16 As noted *supra* at 16-18, plaintiff's distinctly unparticularized allegations as to "defendants" make it difficult to discern whether any defendant ever made any statement to plaintiff. Plaintiff wholly fails to plead facts to support the inference that the defendants had actual knowledge of an imminent sale to McCaw and were responsible for writing, reviewing, or delivering any alleged misstatement. *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 210-11 (Del. Ch. 2006) (dismissing fraud claim where complaint did not describe the level of involvement of the directors in the preparation of financial statements or other disclosures; nor did it identify deficiencies in the directors' process for considering the statements and disclosures).

months earlier, at the time of the C Round Financing, that this acquisition would take place.[17] This is a quintessential attempt to plead "fraud by hindsight" and does not suffice to state a claim for relief. *See, e.g., Noerr v. Greenwood*, 1997 WL 419633, at *5 (Del. Ch. July 16, 1997) ("allegations of 'fraud by hindsight' are not enough to state a cognizable claim of misrepresentation").

The fraud by hindsight doctrine prevents drawing an inference that a statement was false at the time it was made merely because a stated condition later changed. *See In re Zangrilli*, 1 B.R. 717, 720 (Bankr. D.R.I. 1979) ("a statement which was true [or thought to be true] when given, will not constitute a false representation because of a subsequent change in the debtor's affairs") (citation omitted); *see also Berliner v. Lotus Dev. Corp.*, 783 F. Supp. 708, 710 (D. Mass. 1992) (rejecting as "fraud by hindsight" plaintiff's attempt to infer falsity of announcement that results would be available in Second Quarter based on later announcement that results would not be available until the Fourth Quarter); *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990) (dismissing claim under Rule 9(b) where "complaint presents nothing other than the change in the stated condition of the firm" and "discloses none of the circumstances that might separate fraud from the benefit of hindsight"). Courts in the First Circuit "have consistently held that a securities plaintiff does not satisfy the requirements of Rule 9(b) merely by pleading "fraud by hindsight." *Gross v. Summa Four*, 93 F.3d 987, 991-92 (1st

---

17 As a threshold matter, to the extent plaintiff's fraud claim is predicated on the same alleged omission as its breach of the duty of disclosure claim, plaintiff has failed to plead an independent claim for relief and, for reasons stated in this section and *infra* at 37, this claim must be dismissed. *See Albert*, 2005 WL 2130607, at *7 (dismissing fraud claim where plaintiffs alleged that defendants failed to disclose material information which they had a fiduciary duty to disclose); *Iotex Communications v. Defries*, 1998 WL 914265, at * 5 (Del. Ch. Dec. 21, 1998) (fraud claims suffer from same defect as breach of fiduciary duty to disclose claim: complaints are speculative conclusions unsupported by fact).

Cir. 1996) (holding plaintiff could not infer from a discussion at a board meeting that defendants were aware of the same information at the time of a press release issued five weeks earlier).

Plaintiff's claim, however, also fails for a much more fundamental reason. There was no omission. The complaint alleges simply that in August 2003, there were "negotiations" for a sale of Clearwire (Compl. ¶ 49) – this was indisputably disclosed.[18] Both the August 15th Letter and the August 20th Letter clearly and repeatedly advised shareholders that a sale of the Clearwire was being considered and that Clearwire was "***currently engaged in discussions with third parties***" about such a possible transaction. The letters stated:

> [T]he Corporation is proposing to raise emergency bridge financing . . . to fund the Corporation's continued operations pending completion of the new financing round **or a possible strategic transaction.** Mansour Decl., Exh. D (Aug. 15 Ltr.) at 1.
>
> "The Bridge Financing will provide the Corporation with additional time to pursue a new round of financing and to pursue other strategic alternatives, **which may include a sale or merger of the corporation.**" Mansour Decl., Exh. D (Aug. 15 Ltr.) at 1.
>
> **"The corporation is currently engaged in discussions with third parties** regarding either a new financing round or a strategic transaction, **which could result in the acquisition of the Corporation**. . . . Mansour Decl., Exh. E (Aug. 20th Ltr.) at 2; Exh. D (Aug. 15 Ltr.) at 1.
>
> The Corporation will use the proceeds from the issuance of the Series C Preferred Stock to fund the Corporation's continued operations pending completion of the new financing round or a possible strategic transaction, **which may include a sale of the Corporation**. Mansour Decl., Exh. E (Aug. 20th Ltr.) at 1.

18 The vague allegation that defendants were "in negotiations" with McCaw in particular need not be given much weight. Plaintiffs failure to identify which, if any, defendant met with McCaw, when any such meeting took place, which was said at such meeting, whether agreement was reached at such meeting, all contravenes the requirements of Rule 9(b). As noted above, this allegation is nothing more than an inference Plaintiff seeks to draw based on hindsight. Presumably, if the plaintiff had a reasonable basis to believe that the company was in negotiations at the time, the complaint would have included at least one fact supporting such a conclusion. *See Sanders v. Devine*, 1997 WL 599539, at *8 (Del. Ch. Sept. 24, 1997).

**Any alleged misrepresentation or omission was not material.** Even assuming that Clearwire had entered "into negotiations" with McCaw prior to the C Round Financing, this fact is not material. There is no allegation that the parties had reached agreement on a transaction by the time the C Round Financing closed in August 2006. As the Delaware Supreme Court made clear in *Bershad v. Curtiss-Wright Corp.*, as a matter of law, efforts to arrange a potential business combination are immaterial until the firms have agreed on the price and structure of the transaction. 535 A.2d 840, 847 (Del. 1987).[19]

**Plaintiff has not alleged the defendant's knowledge that any representation was false.** Plaintiff also improperly relies on an inference of fraud by hindsight to assert scienter. Plaintiff may not infer that defendants knew that any statement was false or misleading at the time it was made merely because it later proved to be wrong. *See Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308, 326 (D.R.I. 2004) (no strong inference of scienter where plaintiffs "have merely plead 'fraud by hindsight'"); *see also Gross*, 93 F.3d at 995 (noting that the heightened pleading requirement of Rule 9(b) applies even when the fraud relates to matters peculiarly within the defendant's knowledge); *Suna v. Bailey Corp.*, 107 F.3d 64, 71 (1st Cir. 1997) (rejecting legitimacy of fraud by hindsight). But that is all plaintiff alleges. Moreover, of course, there is no reasonable inference of scienter to be drawn from the fact that the current discussions with third party disclosed in August letters culminated in a transaction three months later in November. That is the natural progression of a corporate transaction – discussions lead to a deal (or those negotiations fail to culminate in an agreement).

---

19 Delaware courts have repeatedly dismissed claims on this basis. *See In re MONY Group, Inc. Shareholders Litigation*, 852 A.2d 9, 29 (Del. Ch. 2004) (holding that letter expressing an interest in a possible business combination with Defendant company was not material, noting that the letter did not provide a price or structure and was not a definitive offer); *Krim v. ProNet, Inc.*, 744 A.2d 523, 528-29 (Del. Ch. 1999) (similar).

**Plaintiff has not alleged any act of justifiable reliance.** In addition to disclosing the current status of discussions, both the August 15th Letter and the August 20th Letter invited the shareholders to obtain additional, up-to-date information:

> **Management of the Corporation is available to discuss in further detail the status of the potential investment or strategic transaction** with any recipient of this letter prior to such recipient's decision to either invest or not in the Convertible notes. **If you wish to obtain further details about the potential investment or the potential strategic transaction,** please contact Beau Paradowski at (469) 737-7610 or Jim Kirkland at (469) 737-7520.

Mansour Decl., Exh. D at 1, Exh. E at 2. Plaintiff does not allege that it ever inquired about the details of any negotiations and was given false information or that the company refused to respond. Accordingly, no reliance on supposedly omitted information can possibly be justified. *See Homan v. Turoczy*, 2005 Del. Ch. LEXIS 121, at *61 (Del. Ch. Aug. 12, 2005) ("The requirement that reliance be reasonable is designed in part to ensure diligence on the part of purchasers").

**Plaintiff has not alleged any cognizable damages.** Plaintiff's claim (at Compl. ¶ 55) that the defendants' alleged omission caused an injury to plaintiff in that it suffered a dilution of its Clearwire holdings assumes that plaintiff would have fully participated in the C Round financing (and not been diluted) if Clearwire's "negotiations" with McCaw had been disclosed. But there are no facts alleged to establish that such action by NACEPF was likely. Holders of securities have no cognizable injury and such speculation will not support a claim. *See In re Fuqua Indus., Inc.*, 2005 Del. Ch. LEXIS 60, at *29-28 (Del. Ch. May 6, 2005) (finding "[no] basis in Delaware law or policy to support a damage calculation based on *hypothetical* investments") (emphasis original); *Hoang v. E*trade Group,* 784 N.E.2d 151, 156-57 (Ohio Ct.

App. 2003) ("the law does not recognize inchoate claims") (cited by *Wit Capital Group, Inc. v. Benning, Sr.*, 897 A.2d 172, 186 (Del. 2006)).

The complaint contains no allegations that support the inference that if negotiations with McCaw had been disclosed, plaintiff would have participated in the offer. To the contrary, plaintiff admits that "without knowledge or understanding that Holdings' business was about to engage in the McCaw Sale, the stockholders would not have seen anything favorable in the recent history of Holdings to warrant further investment." Compl. ¶ 54.

Plaintiff's failure to plead facts establishing each of the elements of its fraud claim with particularity mandates dismissal of this claim. *See, e.g., Trenwick Am. Litig. Trust,* 906 A.2d at 207-08 (dismissing fraud count where complaint cursorily stated that directors of the company acted together to both fraudulently conceal and misstate material facts, failing to describe the level of involvement of each defendant in these statements or omissions); *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc.*, 854 A.2d 121 (Del. Ch. 2004) (noting that the Court must disregard and give no credence to conclusory allegations unsubstantiated by specific factual details including lack of identifying a specific defendant).

**Negligent Misrepresentation**

The elements of negligent misrepresentation are: (1) the defendant had a pecuniary duty to provide accurate information; (2) the defendant supplied false information; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff suffered a pecuniary loss by justifiable reliance upon the false information. *See, e.g., Unisuper, Ltd. v. News Corporation,* 2005 WL 3529317, at *9 (Del. Ch. Dec. 20, 2005); *Sanders,* 1997 WL 599539, at *6-7. As a result of plaintiff's failure to allege with particularity the falsity of any representation, which "defendants" made any such misrepresentations, any

justifiable reliance and resulting damages, this claim also fails for the same reason as the fraud claim.

**2. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duties Of Loyalty And Care (Count V)**

Under Delaware law, "[t]he business judgment rule generally protects the actions of directors, affording them the presumption directors act on an informed basis and in the honest belief they acted in the best interest of the corporation." *Nebenzahl v. Miller*, 1996 Del. Ch. LEXIS 113, at *6 (Del. Ch. Aug. 26, 1996) (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). Under the business judgment rule, corporate action will be upheld provided it "can be attributed to any rational business purpose." *See Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003) (citations and internal quotations omitted). "In order for plaintiff['s] [breach of fiduciary duty] claims to survive a motion to dismiss, [it] must sufficiently plead facts which if true would take defendants' actions outside the protection afforded by the business judgment rule." *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 984 (Del. Ch. 2000); *accord Omnicare*, 818 A.2d at 928 ("the business judgment rule places the burden on the party challenging the [board's] decision to establish facts rebutting the presumption.").

The complaint alleges that defendants breached their fiduciary duties "by the course of misconduct set forth above, including, among other things, the modification of the liquidation preferences, engaging in a series of self-dealing transactions designed to benefit GS Group, the Director Defendants and their family members; and failing to disclose the nature of those transactions." Compl. ¶ 83. Plaintiff has pled no facts that support this allegation. As discussed *supra* at 28-31, Plaintiff has not alleged that defendants failed to disclose any material facts. And, as discussed below, Plaintiff has also failed to allege any modification of the liquidation preferences or improper self-dealing by the defendants.

**Plaintiff has not alleged any modification of the liquidation preferences.** Plaintiff alleges that the defendants terminated the Original Offer (the August 15 Letter) and substituted the Preemptive Rights Offer (the August 20 Letter) for the primary purpose of "altering the definition of 'Liquidation Events' to include 'a strategic transaction (including a sale of the Corporation) as a triggering event" (Compl. at ¶ 32) and that this constituted a breach of duty (Compl. ¶ 83). Plaintiff's claim is premised upon a fundamental error – there was no change to the definition of Liquidation Event.[20]

According to the terms of the Fourth Amended and Restated Certificate of Incorporation, which was effectuated in connection with the C Round Financing, Series C stockholders were entitled to a certain preference upon the occurrence of a "Liquidation Event." The definition of a "Liquidation Event" is provided in §§ 3.3.5(a) and 3.4 of the Certificate.[21] *See also* §§ 3.1.5(a),

---

20 Where, as here, an allegation in the complaint is demonstrably false on the face of the pleadings and any documents which the court may properly consider, the Court need not accept it to be true. *See Soto-Negron v. Taber Partners I,* 339 F.3d 35, 38 (1st Cir. 2003) (In evaluating a Rule 12(b)(6) motion, the court "need not accept as true those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise") (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) (internal quotation marks omitted)); *Stenmark v. Bank of America Corp.* 2006 WL 2474871, at *1 (D.R.I. Aug. 24, 2006) (quoting same); *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 46 (D. Mass. 2006) ("In ruling on the motion to dismiss, the Court 'must consider the complaint, documents annexed to it, and other materials fairly incorporated within it. This sometimes includes documents referred to in the complaint but not annexed to it.'") (citations omitted).

21 "Liquidation Event" is defined as:

> (i) any liquidation (complete or partial), dissolution or winding up of the Corporation, whether voluntary or involuntary or (ii) a single transaction or series of transactions, whether or not such transactions are related, pursuant to which a Person or Persons (other than a wholly owned subsidiary of the Corporation) acquire all or substantially all of the Corporation's assets determined on a consolidated basis.
>
> . . .
>
> In addition, a merger or consolidation of the Corporation into or with any other Person or Persons (other than a direct or indirect wholly owned subsidiary of the Corporation), as well as the sale of all or substantially all of the stock of the Corporation, shall also be deemed a Liquidation Event . . . .

3.2.5(a). This is functionally identical to the definition that was provided in the Third Amended and Restated Certificate of Incorporation, which became effective *over a year earlier*. *See* Mansour Decl., Exh. A at §§ 3.1.5(a), 3.2.5(a). Accordingly, this allegation cannot support plaintiff's the defendants structured the Preemptive Rights Offer as part of a scheme to enrich themselves upon the imminent sale of the company is completely unfounded.

**Plaintiff has not alleged any self-dealing.** Because the Preemptive Rights Offer was available on the same terms to all shareholders on a pro-rata basis, it was not a "self-dealing" transaction as a matter of law. *See Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971) ("Self-dealing occurs when the parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders of the subsidiary."); *Gilbert,* 1988 Del. Ch. LEXIS 150 (no self-dealing where an opportunity to tender was afforded equally to all shareholders, including the directors and the class, and the directors' stock was purchased on the same prorated basis as the stock tendered by all other stockholders.). Accordingly, any action by defendants in furtherance of the Preemptive Rights Offer is afforded the protection of the business judgment rule. *Gilbert*, 1988 Del. Ch. LEXIS 150, at *23 (where transactions under scrutiny "cannot fairly be considered as 'self-dealing' transactions," they are reviewed under the business judgment rule).[22]

---

Mansour Decl., Exh. B §§ 3.4, 3.3.5(a); *see also* §§ 3.1.5(a), 3.2.5(a).

22 The complaint also fails to allege, as it must, that the transaction was "unfair." The absence of such allegations is fatal to a claim for breach of the duty of loyalty. *See Solomon v. Pathe Communications*, 1995 Del. Ch. LEXIS 46, at *12-14 (Del. Ch. Apr. 21, 1995) (dismissing claim where complaint contained no non-conclusory allegations of unfairness) *aff'd* 672 A.2d 35 (Del. 1995); *accord Steinman v. Levine*, 2002 Del. Ch. LEXIS 132, at *43-44 (Del. Ch. Nov. 27, 2002).

Moreover, plaintiff is precluded from any recovery of damages for a breach of the duty of care under the exculpatory provision of Clearwire's Certificate of Incorporation. *See* Mansour Decl., Exh. B, Art. VII at 36; Del. C. 102(b)(7). Accordingly, this claim must be dismissed. *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 501-02 (Del. Ch. 2000) (dismissing complaint where exculpatory clause applied and complaint did not plead any non-immunized conduct) (citations omitted); *see also Malpiede v. Townson*, 780 A.2d 1075, 1094 n.64 (Del. 2001).[23]

### 3. Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Of Disclosure (Count VI)

Under Delaware law, a claim for a breach of the duty of disclosure requires a plaintiff to plead facts identifying (1) material (2) reasonably available (3) information that (4) was omitted from [a shareholder solicitation] and describe (5) how the omission caused injury. *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 372 (Del. Ch. 1998). As discussed *supra* at 28-32, plaintiff has alleged neither a material omission, nor an injury.[24] Therefore, this claim too must be dismissed.

---

23 Article VII of Clearwire's Certificate of Incorporation states in relevant part:

> No director of the corporation shall be liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, provided that this provision does not eliminate the liability of a director (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the GCL or (iv) for any transaction from which the director derived an improper personal benefit.

Mansour Decl., Exh. B at 36.

24 Moreover, "Delaware law does not require disclosure of inherently unreliable or speculative information." *Rosser v. New Valley Corp.*, 2000 WL 1206677, at *13 (Del. Ch. Aug. 15, 2000); "Merger negotiations, because of the ever-present possibility that the contemplated transaction will not be effectuated," are inherently "speculative in nature." *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988).

### 4. Plaintiff Fails To State A Claim For Unjust Enrichment (Count VII)

The elements of an unjust enrichment claim are: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and impoverishment; and (5) absence of a remedy provided by law." *Khoury Factory Outlets, Inc. v. Snyder*, 1996 WL 74725, at *11 (Del. Ch. Jan. 8, 1996).

Plaintiff here alleges two separate bases for a claim of unjust enrichment, neither of which can withstand a motion to dismiss. Plaintiff's first asserted basis for its unjust enrichment claim, at Compl. ¶ 92, is simply a reiteration of its other claims arising out of the C Round Financing and, for the reasons stated above, must be dismissed. *See Republic of Pan. v. Am. Tobacco Co.*, 2006 Del. Super. LEXIS 268, at * 36 (Del. Super. Ct. June 23, 2006) ("an unjust enrichment claim is essentially another way of stating a traditional tort claim . . . once . . . the tort claims have properly been dismissed, there is no reason to allow the unjust enrichment claim to proceed").

Plaintiff's second asserted basis for its unjust enrichment claim is that defendants were enriched by retaining shares in Clearwire, which were rightfully due to plaintiff under the terms of the Master Agreement. Compl. ¶ 93. This is substantively a claim against Clearwire for a breach of the Master Agreement and cannot be asserted as an unjust enrichment claim.[25] *See Bakerman,* 2006 WL 2987020, at * 18 ("Where the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed"); *Albert,* 2005 WL 2130607, at *8 (where the contractual relationship is not

---

[25] Plaintiff had every opportunity to assert a breach of contract claim against Clearwire, and chose not to. In fact, Plaintiff did assert a breach of contract claim against Clearwire, but voluntarily dismissed that action. *See Exhibits A* and *B*, attached hereto; *see also NACEPF v. Gheewalla, et al.*, 2006 WL 2588971, at *17 n.154; *North Am. Catholic Educ. Programming Found., Inc. v. Clearwire Holdings, Inc.*, C.A. No. 03C-11-172 (RRC) (Del. Super. Ct. Feb. 12, 2004) (attached hereto as Exh. B).

controverted, claim for unjust enrichment must be dismissed); *ID Biomedical Corp. v. TM Technologies, Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (unjust enrichment, or quasi-contract, is a theory of recovery to remedy the absence of a formal contract).

## CONCLUSION

For the forgoing reasons, the defendants respectfully request that all claims asserted against them in this action be dismissed.

Respectfully submitted,

January 16, 2007

**THE GOLDMAN SACHS GROUP, INC., GERRY CARDINALE, ROB GHEEWALLA and JACK DALY,**

By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
Wayne F. Dennison, *pro hac vice*
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main Street
Providence, RI 02903
401.276.2600
401.276.2601 Facsimile
bjl@brownrudnick.com
*Attorneys for Defendants*

OF COUNSEL:
Douglas H. Flaum
Lara Turcik
Elizabeth A. Walsh
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980
(212) 859-8000

543698.7

**CERTIFICATION**

I hereby certify that, on the 16th day of January, 2007, this document was electronically filed and that it is available for viewing and downloading from the Court's ECF system by the following Filing Users:

Matthew T. Oliverio
Christine M. Curley
Oliverio & Marcaccio LLP
55 Dorrance Street
Suite 400
Providence, RI 02903

/s/ Brian J. Lamoureux

# 50226136 v1 - LAMOURBJ - 024607/1432