MILBANK, TWEED, HADLEY & McCLOY LLP

1 CHASE MANHATTAN PLAZA
NEW YORK, N.Y. 10005-1413

212-530-5000
FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

PALO ALTO
650-739-7000
FAX: 650-739-7100

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-207-448-3000
FAX: 44-207-448-3029

FRANKFURT
49-69-7593-7170
FAX: 49-69-7593-8303

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-428-2400
FAX: 65-428-2500

SCOTT A. EDELMAN
PARTNER
DIRECT DIAL NUMBER
(212) 530-5149
DIRECT FACSIMILE
(212) 822-5149
E-MAIL: sedelman@milbank.com

May 9, 2003

**VIA FACSIMILE & OVERNIGHT COURIER**

Mr. John Primeau
President
NACEPF
2419 Hartford Avenue
Johnston, RI 02919-1719

Dear Mr. Primeau,

Clearwire Holdings, Inc. has instructed me to inform you that in the event you and Clearwire are unable to reach an immediate, definitive and voluntary settlement of the parties' claims against each other, Clearwire will have no choice but to file suit against NACEPF. In the interests of preserving an environment conducive to an amicable settlement, Clearwire has, to date, chosen to forbear from asserting the substantial legal claims that Clearwire has against NACEPF. Clearwire wants to ensure, however, that such forbearance is not misinterpreted and that NACEPF understands the nature of the claims to which NACEPF would be exposed in such a lawsuit. This letter is intended to set forth Clearwire's position clearly so that you can make an informed decision whether to subject your organization to litigation that would follow from your failure to settle your outstanding issues with Clearwire.

Clearwire's claims arise from your persistent pattern of non-performance under the Master Agreement, your concerted efforts to deny Clearwire and its investors the benefits they had contracted for under the Master Agreement, and your arbitrary and unreasonable conduct relative to Clearwire and other Alliance members. Clearwire believes that you and NACEPF have engaged in a consistent pastern of conduct calculated to deny Clearwire these benefits, and to create opportunities for NACEPF to leverage Clearwire into providing cash and other benefits to which NACEPF was not entitled.

NACEPF's pattern of wrongful conduct involves numerous express breaches of its agreements with Clearwire, as well as substantial breaches of the implied covenant of good faith and fair dealing. Under Delaware law, such breaches will be found where a party engages in (i) "arbitrary or unreasonable" conduct that (ii) prevents a contracting party from "receiving the fruits of the contract." *See Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985); *Cantor Fitzgerald, L.P. v. Cantor*, C.A. No. 16297, 2000 WL 307370 at *15 (Del. Ch. Mar. 13, 2000). In addition, Clearwire believes that the record in litigation will show that NACEPF committed misrepresentation and fraud, including fraud in inducing Clearwire to enter into the Master Agreement and related transactions, in that NACEPF never intended to provide Clearwire with the use of NACEPF's spectrum that Clearwire had bargained for (notwithstanding its contrary representations to Clearwire) or to cooperate with Clearwire in the exercise of its contractual rights with respect to NACEPF's spectrum. The damages associated with these breaches amount, at a minimum, to the return of all sums paid by Clearwire to NACEPF.

Set forth below is a very brief summary of some of NACEPF's improper conduct:

- NACEPF demanded that Clearwire indemnify NACEPF for all arbitration expenses relating to the Spokane, Washington arbitration. Under the Master Agreement, Clearwire was not obligated to bear the expense of any litigation or arbitration prior to the execution of an IUA. *See* Master Agreement, Section 24(b). In NACEPF's first dispute with an existing operator (*i.e.* Sprint) concerning whether Sprint's offer "matched" Clearwire's offer pursuant to the terms of NACEPF's standard form lease agreement, you threatened to breach the Master Agreement and deliver the market to Sprint unless Clearwire met your demand to indemnify NACEPF for arbitration expenses. Faced with losing its first contested market while it was in the midst of important negotiations with Sprint (negotiations that were well known to you) or acceding to your wrongful threat and demand, Clearwire had little choice but to capitulate. Clearwire believes that your conduct was completely improper.

- NACEPF negligently mishandled the Spokane arbitration, which cost Clearwire over $400,000 in legal fees, resulted in NACEPF losing the arbitration, and which undermined Clearwire's position in critical negotiations with Sprint.

- NACEPF willfully and intentionally breached Sections 1.2 (a) and 1.2(c) the Master Agreement by refusing to deliver spectrum to Clearwire and continuing to accept payments from existing operators for the continued use of your spectrum in fifteen markets. Between March 2001 and May 2002, eighteen of NACEPF's existing lease agreements with Sprint or Nucentrix expired yet NACEPF initiated the right of first refusal process called for under your form lease agreements in only three cases: Spokane (discussed above); Anchorage, Alaska; and Austin, Texas.

- In the case of Colorado Springs, Colorado and Fresno, California, NACEPF breached the Master Agreement by willfully electing to accept higher payments from Sprint, notwithstanding the fact that these leases had expired following Sprint's failure to meet subscriber threshold requirements for a new renewal term, rather than deliver the associated spectrum to Clearwire in accordance with NACEPF's obligations under the Master Agreement.

- NACEPF unreasonably withheld its consent to payment to HITN of accelerated lump sum payments under Section 1.1(a)(ii) of the Master Agreement in June 2001, continuing through May 2002, thereby creating a substantial internal dispute amongst the Alliance members. This dispute was severely disruptive to Clearwire's efforts to develop its business and establish a favorable position in the industry, consumed substantial Clearwire resources, and ultimately resulted in the delay of the Jacksonville launch by several months at a critical time for Clearwire.

- NACEPF wrongfully solicited parties to existing lease agreements with WorldCom, and attempted to induce breaches of such lease agreements. NACEPF's bad faith conduct led to a threat of litigation by WorldCom against Clearwire and damaged Clearwire's business relationship with WorldCom.

- NACEPF engaged in disruptive and harmful public conduct relative to Clearwire, its board of directors, and its employees, which undermined Clearwire's position in the industry and business prospects, including public threats to a Clearwire executive at the NIA trade show in February 2002.

- NACEPF made persistent and unreasonable demands for economic benefits from Clearwire that Clearwire was not obligated to provide. Such demands include, but are not limited to, NACEPF's unreasonable request that Clearwire issue stock to third parties to support NACEPF's abortive attempts to acquire additional spectrum, and its demand that Clearwire enter into IUAs for "default" markets notwithstanding Clearwire's right to elect to make payments pursuant to Section 1.2(b) of the Master Agreement.

- NACEPF repeatedly threatened to withhold its cooperation with important strategic initiatives of Clearwire pursuant to rights granted by NACEPF under the Master Agreement, such as the Sprint swap transaction, if NACEPF's wrongful demands for economic benefits were not met. These threats created substantial uncertainty in Clearwire's business planning and damaged Clearwire's ability to develop its business.

- NACEPF disrupted and delayed consideration of industry consensus proposals for reform of FCC rules that were critical to enhancing the value of the spectrum NACEPF had delivered to Clearwire. In this context, NACEPF intentionally conducted itself in a manner that damaged Clearwire's reputation and position in the industry.

In contrast, NACEPF's alleged breach of contract claims against Clearwire lack merit. As indicated above, it was NACEPF that first breached and repudiated the obligation to close IUAs as its spectrum became available. Moreover, even if NACEPF wished to deliver additional spectrum to Clearwire, it was not and is not in a position to do so. As evidenced by its course of conduct with respect to the fifteen markets described above where leases with existing operators expired between March 2001 and May 2002, NACEPF was unable and unwilling to bear the substantial costs involved in arbitrating under the right of first refusal provisions contained in its standard form lease agreement. All of NACEPF's undelivered spectrum is subject to rights of first refusal and arbitration rights. In light of this, NACEPF will be unable to demonstrate that it was in a position to perform under the Master Agreement, and receive the contractual payments and other economic benefits, were it not for Clearwire's alleged breaches.

We hope that you will act responsibly to protect the best interests of your organization and resolve your outstanding issues with Clearwire without the need for legal action. Rest assured, however, that Clearwire will promptly pursue all available remedies if you fail to do so.

Please address any correspondence with respect to the foregoing matters to the undersigned.

Very truly yours,

Scott A. Edelman

cc: James Kirkland, Esq.
James Mansour

NY2:#4506223

# MILBANK, TWEED, HADLEY & MCCLOY LLP

1 CHASE MANHATTAN PLAZA
NEW YORK, NY 10005-1413

212-530-5000
FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

PALO ALTO
650-739-7000
FAX: 650-739-7100

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-207-448-3000
FAX: 44-207-448-3029

FRANKFURT
49-69-7593-7170
FAX: 49-69-7593-8303

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

## FACSIMILE TRANSMISSION

| | | | |
|---|---|---|---|
| To: | Mr. John Primeau<br>NACEPF | Tel. Number:<br>Fax Number: | <br>1-401-934-2240 |
| From:<br>File Number: | Daniel Perry<br>36848-00000 | Tel. Number:<br>Fax Number: | 1-212-530-5083<br>1-212-822-5083 |
| Date/Time: | May 9, 2003 12:34:54 PM | | |

Number of Pages (including this cover page): 5 Pages
Contact Sender upon receipt: No

MESSAGE:

CONFIDENTIALITY NOTE:
The information contained in this facsimile message may contain legally privileged and/or confidential information and is inte only for the use by the individual or entity named above. If the reader of this message is not the intended recipient, you are h notified that any dissemination, distribution or reproduction of this facsimile is strictly prohibited. If you have received this facs in error, we would appreciate your notifying us at 212-530-5014. Thank you.