**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **No.: 1:06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS ITI, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants*****.** | : | |

**OBJECTION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(5) AND, IN THE ALTERNATIVE TO STAY THE ACTION BY DEFENDANTS GS CAPITAL PARTNERS III, L.P. AND GS CAPITAL PARTNERS III (OFFSHORE), L.P.**

Plaintiff, North American Catholic Educational Programming Foundation, Inc., hereby objects to the motion to dismiss the Complaint pursuant to Rule 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure and, in the alternative, to stay the action, brought by Defendants GS Capital Partners III, L.P. and GS Capital Partners III (Offshore), L.P. on the grounds that each of the Defendants were properly served, this Court has personal jurisdiction over each of the Defendants, and that there is no factual or equitable basis for this Court to exercise its discretion to issue a stay of this proceeding.

In support of its objection, Plaintiff relies on the accompanying Memorandum of Law with exhibits and the Affidavit of John Primeau and exhibits attached thereto.

North American Catholic Educational
Programming Foundation, Inc.
By its Attorneys,

/s/ Matthew T. Oliverio
Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

Dated: March 16, 2007

**CERTIFICATION**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 16th day of March, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | **C.A. No. 06-492S** |
| **v.** | : | |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants.*** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(5) OF THE FEDERAL RULES OF CIVIL PROCEDURE BY DEFENDANTS GS CAPITAL PARTNERS III, L.P. AND GS CAPITAL PARTNERS III (OFFSHORE), L.P.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

STATEMENT OF FACTS .................... 1

LEGAL ARGUMENT .................... 2

I. PLAINTIFF HAS PROPERLY SERVED THE GS CAPITAL DEFENDANTS.......... 2

II. THIS COURT MAY EXERCISE JURISDICTION OVER THE GOLDMAN SHAREHOLDER DEFENDANTS. .................... 2

A. General Jurisdiction. .................... 2

B. Specific Jurisdiction over the Goldman Shareholder Defendants May be Established Through the Actions of its Agents. .................... 3

1. Contacts of the Individual Defendants in Their Capacity as Agents for Goldman Sachs. .................... 3

2. Contacts of Attorney Ronnen in His Capacity as Agent of Goldman Sachs. .................... 6

CONCLUSION .................... 8

# TABLE OF AUTHORITIES

**Cases**

*Borschow Hospital & Medical Supplies, Inc. v. Burdick-Siemens Corp.*, 143 F.R.D. 472 (D.P.R. 1992)........ 4

*C.I.R. v. Banks*, 543 U.S. 426 (2005)........ 6

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42 (1st Cir. 2002)........ 4

*Farland, et al. v. T & T Fishing Corp., et al.*, 682 F. Supp. 700 (D.R.I. 1988)........ 6

*Fraoli v. Lemcke*, 328 F. Supp. 2d. 250 (D.R.I. 2004)........ 3

*Group of Former Employees of Sprague Caribe v. American Annuity Group, Inc.*, 388 F. Supp. 2d. 3 (D.P.R. 2005)........ 3

*In re Atlantic Financial Management Inc.*, 784 F.2d 29 (1st Cir. 1986)........ 3

*Jet Wine & Spirits, Inc. v. Bacardi & Company, Ltd.*, 298 F.3d 1 (1st Cir. 2002)........ 3

*McBurney v. Roszkowski*, 875 A.2d 428 (R.I. 2005)........ 6

*Modern Computer Corp. v. Ma*, 862 F. Supp. 938 (E.D.N.Y. 1994)........ 7

*Murphy v. Shearson Lehman Brothers, Inc.*, 42 F.3d 79 (1st Cir. 1994)........ 3

*Sunview Condominium Association v. Flexal International, Ltd.*, 116 F.3d 964 (1st Cir. 1997)... 3

*The Giving Bank Fund, Inc. v. Steverson*, 2002 WL 1586994 (D. Mass. 2002)........ 4

**Treatises**

29 Am.Jur.2d § 806........ 6

*Restatement (Third) of Agency § 1.01, Comment c*........ 6

## INTRODUCTION

Plaintiff North American Catholic Educational Programming Foundation ("NACEPF" or "Plaintiff") named Defendants GS Capital Partners III, L.P., GS Capital Partners III (Offshore) and Goldman Sachs & Co. Verwaltungs (collectively the "Goldman Shareholder Defendants") as Defendants in this action based upon its understanding during the negotiation of the Master Agreement and the ensuing business relationship between Goldman Sachs, Clearwire Holdings, Inc. ("Clearwire" or "Holdings") and the ITFS Spectrum Development Alliance, Inc. (the "Alliance"), that "Goldman Sachs" meant and included each of the Goldman Sachs entities that had invested in the Clearwire/Alliance venture, and that the Individual Defendants, in addition to being employees of GS Group,[1] at all times acted on the behalf of and at the behest of the Goldman Shareholder Defendants.

In the jurisdictional equation, it is well-established that contacts of an agent constitute contacts of the agent's principal.

## STATEMENT OF FACTS

So as not to unduly burden this Court with a repetitive recitation of the facts of this case, Plaintiff adopts and incorporates by reference the Statement of Facts set forth in its Memorandum in Support of its Objection to Defendants' Jurisdictional Motion (p. 3-17), as well as the jurisdictional analysis and arguments set forth therein (pp. 18-42) filed herewith.

It is apparently conceded that the Goldman Shareholder Defendants together held a majority interest in Clearwire by virtue of their combined investment of $47 million. (GS Shareholder 12 (b)(6) Memo, p. 2). Based upon this and other reasons, Plaintiff has alleged that the Goldman Shareholder Defendants had the means and the motive to direct, control and manipulate Clearwire and its business relationship with NACEPF and the Alliance. (Compl. ¶ 8)

[1] If in fact Plaintiff has named the wrong Goldman Sachs entity, in light of Goldman Sachs' deliberate obfuscation, NACEPF should be permitted to undertake discovery to ascertain the proper entity and move to amend its Complaint accordingly. *See* Plaintiff's 12 (b)(b) Memorandum in response to GS Group and the Individual Defendants motion to dismiss, pp. 2-3.

The primary basis for asserting jurisdiction over the Goldman Shareholder Defendants is the agency relationship between the Individual Defendants, GS Group and the Goldman Shareholder Defendants. (Compl. ¶¶ 9-13).

**LEGAL ARGUMENT**

## I. PLAINTIFF HAS PROPERLY SERVED THE GS CAPITAL DEFENDANTS.

Federal Rule of Civil Procedure 4(e) provides that service may be effectuated "(1) pursuant to the law of the state in which the district court is located." Pursuant to Rhode Island state law, service may be accomplished by certified mail where a defendant is otherwise subject to personal jurisdiction in Rhode Island. R.I. Rules of Civil Procedure 4(f)(1).

On or about January 9, 2007, GS Capital Partners III, L.P. was served a Summons and Complaint by certified mail to CT Corporation in Delaware, as evidenced by the signed return receipt. *See* Affidavit of Service Pursuant to Rule 4, Court Document 11. On or about January 20, 2007, GS Capital Partners III, (Offshore) was served a Summons and Complaint by certified mail to CT Corporation in Delaware, as evidenced by the signed return receipt. *See* Affidavit of Service Pursuant to Rule 4, Court Document 29 .

Consequently, since the Goldman Shareholder Defendants are subject to this Court's personal jurisdiction, they were also properly served, and the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) must be denied.

## II. THIS COURT MAY EXERCISE JURISDICTION OVER THE GOLDMAN SHAREHOLDER DEFENDANTS.

### A. General Jurisdiction.

Plaintiff has alleged that the Goldman Shareholder Defendants maintained continuous and systematic contacts with Rhode Island. The Goldman Shareholder Defendants have not denied this allegation, by way of affidavit or otherwise. Moreover, the fact that this Court may exercise jurisdiction over the GS Group may also permit the exercise of personal jurisdiction

over the Goldman Shareholder Defendants, if the GS Group acted as agents for the Goldman Shareholder Defendants. *See Jet Wine & Spirits, Inc. v. Bacardi & Company, Ltd.*, 298 F.3d 1 (1st Cir. 2002).

To the extent necessary, Plaintiff hereby requests the opportunity to conduct limited jurisdictional discovery into the contacts, investments and business relationships between the Goldman Shareholder Defendants and Rhode Island as well as the agency relationship between GS Group and the Goldman Shareholder Defendants. *Sunview Condominium Association v. Flexal International, Ltd.*, 116 F.3d 964 (1st Cir. 1997); *Group of Former Employees of Sprague Caribe v. American Annuity Group, Inc.*, 388 F. Supp. 2d. 3 (D.P.R. 2005).

### B. Specific Jurisdiction over the Goldman Shareholder Defendants May be Established Through the Actions of its Agents.

#### 1. <u>Contacts of the Individual Defendants in Their Capacity as Agents for Goldman Sachs.</u>

As alleged in the Complaint, the conduct of Individual Defendants was at all times in their capacity as agents for Goldman Sachs.[2] Under Rhode Island law, a principal is bound by the actions of its agent when the principal consents or knowingly permits the agent to act on its behalf. *See Murphy v. Shearson Lehman Brothers, Inc.*, 42 F.3d 79, 81-2 (1st Cir. 1994) (noting that agency may be based on apparent authority pursuant to Rhode Island law); *Fraoli v. Lemcke*, 328 F. Supp. 2d. 250, 278 (D.R.I. 2004) (stating that "[a]pparent authority may arise from indicia of authority given by the principal to the agent and does not have to be in the form of a direct communication to a third person"); *In re Atlantic Financial Management Inc.*, 784 F.2d 29, 31-32 (1st Cir. 1986) (corporation may be liable for agent's misrepresentations based upon common law apparent authority). When a third party reasonably and in good faith relies on the agent's authority to act for the principal and is subsequently injured as a result of such reliance, the liability of the agent is imputed to the principal. *Fraoli*, 328 F. Supp. 2d. at 278.

---

[2] Whether or not the Individual Defendants acted at all times ***within the scope*** of that agency is a matter for discovery.

It is well-established that contacts of an agency may be sufficient to establish jurisdiction over a corporate entity that has no physical presence in the forum, particularly when the agent's acts are subsequently ratified by the principal. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42 (1st Cir. 2002); *See also The Giving Bank Fund, Inc. v. Steverson*, 2002 WL 1586994 (D. Mass. 2002) (contacts of attorney attributable to firm); *Borschow Hospital & Medical Supplies, Inc. v. Burdick-Siemens Corp.*, 143 F.R.D. 472 (D.P.R. 1992).

In this regard, the contacts of the Individual Defendants are fully detailed in Plaintiff's Jurisdictional Memorandum (pp. 3-17). In light of the clear agency relationship, these contacts suffice to establish minimum contacts over the Goldman Shareholder Defendants.

At all times during the course of their interactions with NACEPF, the Individual Defendants conveyed both directly and indirectly their status as agents of Goldman Sachs. At the inception of the investment negotiations, Cardinale and Gheewalla represented to NACEPF that they were acting as agents and representatives of Goldman Sachs. Primeau Aff. ¶ 4. On June 7, 2000, Cardinale sent a memo on behalf of the "Goldman Sachs Team," printed on Goldman Sachs letterhead, to NACEPF and other members of the Alliance representing that Goldman Sachs intended to invest its resources to not only pay for the ITFS license but also to finance the acquisition costs for the Alliance's entire portfolio of spectrum. Primeau Aff. ¶ 5, Exh. 1; Compl. ¶ 31. As stated in his affidavit, John Primeau, as NACEPF's representative, understood that the "Goldman Sachs Team," as it is designated in the June 7, 2000 memorandum, referred to Cardinale, Gheewalla and Daly who were employees and representatives of the investment company Goldman Sachs. Primeau Aff. ¶ 6. Further, Primeau understood that "Goldman Sachs" referred to a number of different corporate entities. Primeau Aff. ¶ 6. With this understanding and relying thereon, NACEPF, through Primeau, began negotiating directly with the Individual Defendants regarding the terms of the Master Agreement and engaged in numerous e-mail and telephonic communications with the Individual Defendants. Primeau Aff. ¶¶ 7-8, 15-16, Exh. 6.

During the course of negotiations, a working group list was developed and distributed to the parties by Goldman Sachs' attorneys, Fried Frank. Primeau Aff. ¶¶ 9-10, Exh. 3. The Clearwire/Spectrum Working Group List identifies each of the Individual Defendants as having a Goldman Sachs' business address, telephone number and e-mail address. Over the several months of negotiations between NACEPF, the other members of the Alliance and the Individual Defendants, the Individual Defendants made numerous representations on Goldman Sachs' behalf; representations that NACEPF relied upon in moving forward through the negotiation process. Primeau Aff. ¶¶ 7-8, 15-16, 20.

Pursuant to the terms of the Master Agreement, Cardinale, Daly and Gheewalla were each appointed as directors of Clearwire. Primeau Aff. ¶ 21, Exh. 4 and Exh. 7 at Schedule 9.2(e). Each of these individuals was appointed by Goldman Sachs. *Id*. Cardinale in particular was specifically appointed to continue on the Clearwire board as notice agent of Goldman Sachs. Primeau Aff. ¶ 23, Exh. 8 at Section 15.

Subsequent to the execution of the Master Agreement, NACEPF continued to regularly communicate with the Individual Defendants in regard to Clearwire's performance obligations to the Alliance pursuant to the negotiated terms. Primeau Aff. ¶ 24, Exhs. 5 and 6. At all times during their ongoing business relationship, Primeau understood that the Individual Defendants were each acting in their capacity as agents of Goldman Sachs, even after they became controlling members of the Clearwire Board. Primeau Aff. ¶ 24.

Applying the governing principles of agency law to the set of facts described above leads to no other conclusion than that the Individual Defendants were indeed acting as agents for Goldman Sachs during the negotiation phase leading up to the execution of the Master Agreement and beyond. The agency relationship was not hidden; indeed through their direct representations, the Individual Defendants made NACEPF aware that they were acting on behalf of their employer, Goldman Sachs as well as the various Goldman Sachs investment entities. Indirectly, evidence of the agency relationship can be observed in the communications between the parties. Each time NACEPF communicated with one of the Individual Defendants, it was

through a Goldman Sachs channel, i.e., e-mail, telephone or written communications directed towards the Goldman Sachs corporate offices. Furthermore, Goldman Sachs' action in appointing the Individual Defendants to the Clearwire board was an effective ratification of the agency relationship it enjoyed with Cardinale, Gheewalla and Daly. By appointing the Individual Defendants to Clearwire's board, Goldman Sachs affirmed the actions undertaken by them up to that point and publicly endorsed their continuing agent-principal relationship in connection with Clearwire.

Such an open and obvious agency relationship cannot be denied. As such, the contacts of the Individual Defendants may be attributed to the Goldman Shareholder Defendants for the purpose of personal jurisdiction.

**2. <u>Contacts of Attorney Ronnen in His Capacity as Agent of Goldman Sachs.</u>**

The attorney-client relationship, despite its unique privileges, is fundamentally an agency relationship. *See Restatement (Third) of Agency § 1.01, Comment c*. *See also, C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (noting that the attorney-client relationship is a "quintessential principal-agent relationship"); *Farland, et al. v. T & T Fishing Corp., et al.*, 682 F. Supp. 700, 704 (D.R.I. 1988) (stating "[i]ndubitably, an attorney is an agent of his clients"); *McBurney v. Roszkowski*, 875 A.2d 428, 437 (R.I. 2005) (recognizing that attorneys act as their clients' agent in the context of legal representation). As such, an attorney's representations, made at the direction of the principal-client are imputed for purposes of liability to the client, just as the acts of any agent are imputed to the principal they represent. *See* 29 Am.Jur.2d § 806.

In addition to the Individual Defendants, NACEPF dealt directly with counsel for Goldman Sachs throughout the negotiation phase, consummation of the Master Agreement and beyond. Primeau Aff. ¶ 10. Primeau understood that Fried Frank was working for the benefit of Goldman Sachs and Fried Frank's interactions with the Individual Defendants further illustrate that relationship. Primeau Aff. ¶¶ 11-12. In particular, after the Master Agreement was

executed, Dan Ronnen, an attorney from Fried Frank, prepared and distributed a memorandum presenting an overview of the Master Agreement to Cardinale, which purports to explain "the various components of both the equity investment in Clearwire Holdings, Inc. ('Clearwire') made by various Goldman Sachs funds ('Goldman') and the Master Use and Royalty Agreement (the 'Master Agreement') entered into by Clearwire and seven members of the ITFS Spectrum Development Alliance (the 'Alliance')." Exh. 4 to Primeau Aff.

NACEPF, through its principal, Primeau, communicated with counsel for Goldman Sachs on a regular basis prior to the execution of the Master Agreement. Primeau Aff. ¶ 17. Most, if not all of the written communications were copied to Daly and Cardinale. Primeau Aff. ¶¶ 13-14, Exh. 5. Furthermore, Fried Frank conducted due diligence prior to the execution of the Master Agreement on behalf of Goldman Sachs, including the Individual Defendants. Primeau Aff. ¶ 19. Subsequent to the execution of the Master Agreement, Attorney Ronnen continued to act as Goldman Sachs' attorney-agent, as is apparent in a series of e-mail communications in which he makes assertions "on behalf of Goldman Sachs" with respect to the C Round financing. Primeau Aff. ¶ 46, Exh. 17.[3]

All of the foregoing facts illustrate the fact that Fried Frank was the duly authorized agent of Goldman Sachs for the purpose of negotiating and closing the Master Agreement and subsequently in an ongoing basis. Consequently, the contacts of Dan Ronnen and Fried Frank should be considered for the purpose of asserting jurisdiction over the Goldman Shareholder Defendants. *See Modern Computer Corp. v. Ma*, 862 F. Supp. 938 (E.D.N.Y. 1994) (attorney's contacts attributed to client in assessing jurisdiction over non resident defendant).

---

[3] With regard to the agency and control issues, this e-mail from Dan Ronnen on August 29, 2003, Goldman Sachs' attorney, is quite revealing. He stated "on behalf of Goldman Sachs" that they would not accept a reservation of rights to assert claims with respect to the process of the C Round offering, requiring instead that a participant waive "any right to later assert claims and damages in connection with how the process was handled or with respect to any purported diminution in the rights of Series A and B shares by the GS Parties." Primeau Aff. *Exh. 17*. This communication establishes both the agency of Fried Frank in the context of the C Round financing as well as the fact that it was orchestrated by Goldman Sachs.

**CONCLUSION**

As explained in its Jurisdictional Memorandum, the "gestalt factors" further support the exercise of personal jurisdiction over all of the Defendants in this case, including the Goldman Shareholder Defendants. Accordingly, Defendants' motion to dismiss must be denied.

North American Catholic Educational
Programming Foundation, Inc.
By its Attorneys,

/s/ Matthew T. Oliverio

Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

Dated: March 16, 2007

**CERTIFICATION**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 16th day of March, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio