**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **No.: 1:06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS ITI, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants*.** | : | |

**OBJECTION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BY DEFENDANTS THE GOLDMAN SACHS GROUP, INC., GERRY CARDINALE, ROB GHEEWALLA AND JACK DALY**

Plaintiff, North American Catholic Educational Programming Foundation, Inc., hereby objects to the motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure brought by Defendants the Goldman Sachs Group, Inc,, Gerry Cardinale, Rob Gheewalla and Jack Daly on the grounds that Plaintiff has alleged a claim or claims against each of the Defendants upon which relief can be granted.

In support of its objection, Plaintiff relies on the accompanying Memorandum of Law and exhibits attached thereto.

North American Catholic Educational Programming Foundation, Inc.
By its Attorneys,

/s/ Matthew T. Oliverio

Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

Dated: March 16, 2007

**CERTIFICATION**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 16th day of March, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | **C.A. No. 06-492S** |
| **v.** | : | |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants.*** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE BROUGHT BY DEFENDANTS THE GOLDMAN SACHS GROUP, INC., GERRY CARDINALE, ROB GHEEWALLA AND JACK DALY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 4

STANDARD OF REVIEW ........ 5

LEGAL ARGUMENT ........ 7

I. RHODE ISLAND LAW GOVERNS THE RESOLUTION OF PLAINTIFF'S CLAIMS. ........ 7

A. Choice of Law Analysis ........ 7

B. Statute of Limitations Analysis ........ 9

C. The Choice of Law is Not Controlled by the Master Agreement. ........ 10

II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS. ........ 11

A. Fraud Claims ........ 11

B. Tortious Interference Claims ........ 11

C. Breach of Fiduciary Duty Claims ........ 11

III. PLAINTIFF'S COMPLAINT COMPLIES WITH NOTICE PLEADING REQUIREMENT OF RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE. ........ 13

A. Tortious Interference Claims ........ 14

B. Breach of Fiduciary Duty Claims. ........ 17

1. Fiduciary Duty to Disclose. ........ 18

2. Fiduciary Duty of Loyalty. ........ 20

C. Unjust Enrichment Claim ........ 21

IV. THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 9 OF THE FEDERAL RULES OF CIVIL PROCEDURE. .......... 22

A. The Rule 9(b) Standard for Fraud Claims. .......... 22

B. Plaintiff has Sufficiently Pled Fraudulent Inducement of the Master Agreement. .......... 24

C. Fraud in the Performance of the Master Agreement. .......... 27

D. Fraud in the Context of the C Round Financing. .......... 28

E. The Allegations in Plaintiff's Complaint Referring to the Defendants as a Group May Properly Be Considered Under Rule 9. .......... 31

V. AS AN ALTERNATIVE TO DISMISSAL, PLAINTIFF MOVES TO AMEND THE COMPLAINT TO CONFORM THE PLEADINGS TO RULE 9(b). .......... 32

CONCLUSION .......... 32

# TABLE OF AUTHORITIES

**Cases**

*A. Teixeira & Co. v. Teixeira*, 699 A.2d 1383 (R.I. 1997) ........................................................ 18

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001).......... 6

*Boateng v. InterAmerican University, Inc.*, 201 F.3d 56 (1st Cir. 2000)....................................... 6

*Byron v. Great American Indemnity Co.*, 54 R.I. 405, 173 A. 546 (1934).................................... 9

*Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340 (R.I. 1996)................................................ 10

*Cesario v. Bergquist*, 2006 WL 587598 (D.R.I. 2006)................................................................. 6

*City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646 (D.R.I. 1986) ...................... 24, 27

*Companelli v. Vescera*, 75 R.I. 71, 63 A. 2d 722 (1949)........................................................... 24

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) .......................................... 13

*Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F. 3d 1 (1st Cir. 1994)........................... 8

*Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000) ..................................20

*Cribb v. Augustyn*, 696 A.2d 285 (R.I. 1997).............................................................................. 9

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13 (1st Cir. 1989)........................................ 5

*DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942 (Del. Ch. 1980) ..............................17

*DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382 (D.R.I. 1989)............... 24

*Dionisi v. DeCampli*, 1995 WL 398536 (Del. Ch. 1980) ............................................................17

*Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105 (D.R.I. 1990) .......................... 23, 29

*Eastland Bank Massbank for Savings*, 767 F. Supp. 29 (D.R.I. 29).............................................10

*Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 51 F. Supp.2d 81 (D.R.I. 1999) ............................ 18

*El Dia, Inc. v. Rossello*, 165 F.3d 106 (1st Cir. 1999)................................................................... 5

*Fleet National Bank v. Anchor Media Television, Inc.*, 831 F. Supp. 16 (D.R.I. 1993)............... 24

*Gilbert v. El Paso Co.*, 1988 WL 124325 (Del. Ch. Nov. 21, 1988)............................................15

*Goldman v. Pogo.com, Inc.*, 2002 WL 1358760 (Del. Ch. June 14, 2002)..................................16

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir. 1988)...................................................... 5, 13

*Gray v. Derderian*, 2007 WL 386125, *1 (D.R.I. 2007) ............................................................ 5

*Gray v. Derderian*, 365 F. Supp. 2d 218 (D.R.I. 2005)............................................................ 13

*Greene v. Rhode Island*, 398 F.3d 45 (1st Cir. 2005) ................................................................ 6

*Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263 (D.R.I. 2000) ........ 5, 23, 28, 29, 32

*Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31 (1st Cir. 2005)................................................. 6

*Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730 (1970)......................................................... 24

*Hasbro, Inc. v. Mikohn Gaming Corp.*, 2006 WL 2035501 (D.R.I. 2006).............................. 6, 10

*Hendrick v. Hendrick*, 755 A.2d 784 (R.I. 2000) ...................................................................... 20

*Holmes v. Bateson*, 434 F. Supp. 1365 (D.R.I. 1977) *aff'd.* 583 F.2d 542 (1st Cir. 1978) ... 16, 28, 29, 31

*In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002) ................................................ 29, 31

*In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56 (D. Mass. 1994)................................. 14

*In re Dean Witter Partnership Litig.*, 1998 WL 442456 (Del. Ch. July 17, 1998)...................... 12

*In re GTech Holdings Corporation Securities Litigation*, 32 Fed. R. Serv. 3d 604 (D.R.I. 1995) ........................................................................................................................................ 32

*In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131 (D. Mass. 2001) .............................................. 31

*In re Tyson Foods, Inc. Consolidated Shareholder Litig.*, 2007 WL 416132, at * 12 (Del. Ch. Feb. 6, 2007)............................................................................................................................ 12

*Jenkins v. Mullen*, 2006 WL 909483, *1 (D.R.I. April 7, 2006) ................................................ 27

*Jolicoeur Furniture Co., Inc. v. Baldelli*, 653 A.2d 740 (R.I. 1995) ...........................................17

*Kennet v. Marquis*, 798 A.2d 416 (R.I. 2002) ...........................................................................17

*Kooloian v. Suburban Land Co.*, 873 A.2d 95 (R.I. 2005)........................................................ 23

*L.A. Ray Realty v. Town Council of Town of Cumberland*, 698 A.2d 202 (R.I. 1997) ................ 15

*LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) .......... 13

*Langadinos v. American Airlines, Inc.*, 199 F.3d 68 (1st Cir. 2000) .......... 14, 15, 23

*LaPlante v. American Honda Motor Co., Inc.*, 27 F.3d 731 (1st Cir. 1994) .......... 8

*Lares Group, II v. Tobin*, 47 F. Supp. 2d 223 n.4 (D.R.I. 1999) .......... 27

*Lawton v. Nyman*, 2002 WL 221621 (D.R.I. 2002) *aff'd* 327 F.3d 30 (1st Cir. 2003) ... 17, 18, 19, 22, 29

*Levin v. Dalva Brothers, Inc.*, 459 F.3d 68 (1st Cir. 2006) .......... 7

*Levin v. Kilborn*, 756 A.2d 169 (R.I. 2000) .......... 11, 12

*Local Union 42 v. Absolute Environmental Services*, 814 F. Supp. 392 (D. Del. 1993) .......... 16

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, F. Supp. 2d 238 (D. Del. 1998) .......... 17

*McBurney v. Roszkowski*, 687 A.2d 447 (R.I. 1997) .......... 11

*McConaghy v. Sequa Corp.*, 294 F. Supp. 2d 151 (D.R.I. 2003) .......... 20

*Mesolella v. City of Providence*, 508 A.2d 661 (R.I. 1986) .......... 15

*Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir.2003) .......... 13

*Najarian v. National Amusements, Inc.*, 768 A.2d 1253 (R.I. 2001) .......... 9

*Narragansett Elec. Co. v. Carbone*, 898 A.2d 87 (R.I. 2006) .......... 22

*National Credit Union Administration Board v. Regine*, 749 F. Supp. 401 (D.R.I. 1990) ... 20, 21, 24

*Noerr v. Greenwood*, 1997 WL 419633 (Del. Ch. 1997) .......... 29

*Nortek, Inc. v. Molnar,* 36 F. Supp. 2d 63 (D.R.I. 1999) .......... 7

*Olney v. Conanicut Land Co.*, 16 R.I. 597, 18 A. 181 (1889) .......... 17

*Ostalkiewicz v. Guardian Alarm*, 520 A.2d 563 (R.I. 1987) .......... 24

*Oyola v. Burgos,* 864 A.2d 624 (R.I. 2005) .......... 8

*Pinkham v. Collyer Insulated Wire Company, Inc.*, 1994 WL 385375 (D.R.I. 1994) .......... 9

*Point Trap Co. v. Manchester*, 98 R.I. 49, 199 A.2d 592 (1964) .......... 18

*Providence & Worcester Railroad Company v. Sargent & Greenleaf, Inc.*, 802 F. Supp. 680 (R.I. 1992) .......... 9

*R & B Electric Co. v. Amco Construction Co.*, 471 A.2d 1351 (R.I.1984) .......... 22

*Read & Lundy, Inc. v. Washington Trust Co. of Westerly*, 840 A.2d 1099 (R.I. 2004) .......... 14

*Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250 (R.I. 1996) .... 10

*Robertson Stephens, Inc. v. Chubb Corp.*, 2007 WL 476328, *3 (D.R.I. 2007) .......... 8, 17

*Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004) .......... 23, 25

*Roeder v. Alpha Indus.*, 814 F.2d 22 (1st Cir.1987) .......... 29

*Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308 (D.R.I. 2004) .......... 20, 25, 31

*Scritchfield v. Paolo*, 274 F. Supp.2d 163 (D.R.I. 2003) .......... 24, 25

*St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, 2003 WL 22659875 at *6 (Del. Ch.. 2003) .......... 16

*Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126 (R.I. 2004) .......... 8

*Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901 (R.I. 2002) .......... 14

*Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985) ..........15

*UXB Sand & Gravel, Inc., v. Rosenfeld Concrete Corp.*, 641 A.2d 75 (R.I. 1994) .......... 10

*Water v. Walt Disney World Company*, 237 F. Supp. 2d. 162 (D.R.I. 2002) .......... 11

*Wheelock v. State*, 2006 WL 3391507 (D.R.I. 2006) .......... 14

*Woodward v. Stewart*, 104 R.I. 290, 299, 243 A.2d 917, *cert. denied*, 393 U.S. 957, 89 S. Ct. 387 (1968) .......... 7

*Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002) .......... 12

*Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) .......... 23

**Statutes**

R.I. Gen. Laws §9-1-13 (a) .......... 11

**Rules**

Fed. R. Civ. P. 12 (b)(6)........................................................................................................... 5

Fed. R. Civ. P. 8(a)(2)............................................................................................................. 13

**Treatises**

18B Am. Jur. 2d *Corporations* § 1877 (2004)...................................................................... 16

F.H. O'Neal *40 & R.B. Thompson, O'Neal's close Corporations 8.12, at 129 (3d ed. & Supp. 1995) ...........................................................................................................................19

Moore's Federal Practice § 9.03[1][a] (Matthew Bender 3d ed.)................................................ 27

Restatement (Second) of Conflicts of Laws §122 cmt. a (1971)................................................... 9

## INTRODUCTION

Plaintiff North American Catholic Educational Programming Foundation ("NACEPF") seeks redress in this Court for a pattern of unscrupulous, deceitful and unlawful conduct perpetrated by the Defendants against NACEPF as follows: first, their fraudulent scheme to induce NACEPF into executing the Master Use and Royalty Agreement (the "Master Agreement") with Clearwire Holdings, Inc. ("Clearwire" or "Holdings") for the leases of educational licenses for the use of Instruction Television Fixed Service "ITFS" spectrum; second, their continuing fraudulent misrepresentations with respect to Defendants' investment and development of a wireless broadband network; third, their tortious interference with respect to potential third party purchasers of the leases and tortious interference with the ITFS Spectrum Development Alliance, Inc. (the "Alliance") itself and its ability to acquire additional spectrum; and last, the fraudulent concealment and breach of fiduciary duties with respect to the C Round financing.

As alleged in the Complaint, the actions of Gerry Cardinale, Rob Gheewalla and Jack Daly, the "Individual Defendants," were fraudulent, tortious and were in breach of their fiduciary duties to NACEPF. NACEPF understood that the Individual Defendants were agents, employees and representatives of Goldman Sachs. Goldman Sachs directed and controlled the negotiation of the Master Agreement through the Individual Defendants. Thereafter, the Individual Defendants were appointed by Goldman Sachs as Directors of Clearwire, thereby exerting its influence and control over Clearwire and its Board. As alleged in the Complaint, Goldman Sachs was able to accomplish this by:

(a) investing $47 million in Holdings, representing 84% of the total sums invested in Holdings in March 2001;

(b) knowing that Holdings had significant financial obligations but not the ability to raise sufficient cash from operations to pay its debts as they became due. Thus, Holdings was dependent on Goldman Sachs to make additional investments to fund Holdings' operations for the foreseeable future;

(c) controlling the majority of the votes of Holdings' stock entitled to vote after November 2001, and by asserting rights to acquire a majority of the shares after March 2001;

(d) by ensuring that Goldman Sachs was Clearwire's sole source of investment banking advice, contacts with potential acquisition candidates and legal advisors; and

(e) at all times imposing and exercising undue influence, pressure and control upon the members of the Clearwire Board of Directors such that unless the instructions of Goldman Sachs were followed, Clearwire would cease to receive the assistance from Goldman Sachs that it needed to continue to function.

(Compl. ¶ 12). The Goldman Sachs Defendants also manipulated the C Round financing and the selective disclosure made by Clearwire, through its agents, the Individual Defendants, its attorneys, and the Clearwire Board which they controlled. (Compl. ¶¶ 48-56).

Plaintiff has named the various Goldman Sachs Defendants based upon its information and belief that the term "Goldman Sachs" in the documents and communications between the parties, meant and referred to the entities that employed Gheewalla, Cardinale and Daly as well as the Goldman Sachs entities that invested in Clearwire.

Although Defendant Goldman Sachs Group, Inc. ("GS Group") filed with its Rule 12(b)(2) and Rule 12(b)(5) Motion (the "Jurisdiction Motion") Declarations of the Individual Defendants setting forth that each of them were employed by "Goldman Sachs & Co.," it remains unclear to which corporate entity they are truly affiliated. GS Group's Jurisdiction Memorandum, p. 5, states that the Individual Defendants "are employed by affiliates of GS Group in New York and London." However, in its Memorandum in Support of its Rule 12(b)(6)

Motion ("GS 12(b)(6) Memo"), the GS Group states that the Individual Defendants were "all employees of Goldman Sachs & Co. or its affiliates." That same memo, at p. 1 suggests that the Individual Defendants are "employed by affiliates of GS Group." (GS Rule 12(b)(6) Memo, p. 4). Yet, other public information about the true identity of the Individual Defendants' employer suggests differently. A search of the State of Delaware corporations database reveals 320 Goldman Sachs entities, and a review of the State of New York corporations database reveals 152 such Goldman Sachs entities. (*See Exhibits A and B* attached hereto). Furthermore, on their corporate website, Defendant GS Group lists the three Individual Defendants as "Managing Directors." (*See Exhibit C* attached hereto). While Defendants play a needless and deceptive shell game, the Plaintiff can hardly be faulted if it has named the incorrect entity, particularly in light of the representations made to Plaintiff about their identity as the "Goldman Sachs Team." Compl. ¶31; s*ee also* Affidavit of John Primeau filed in support of Plaintiff's Objections to Defendants' Jurisdiction Motion, ¶¶ 5, 6, 10, 12.

In their Rule 12(b)(6) Motions, GS Group states that "GS Group was not an investor and has no apparent connection to the facts and circumstances of this lawsuit." ("GS Rule 12(b)(6) Memo", p. 1, 4). However, no affidavit has been submitted in support of this bald statement, despite the fact that four affidavits with exhibits have been filed in support of the various motions to dismiss. If in fact Plaintiff has named the wrong Goldman Sachs entity, in light of Goldman Sachs' deliberate obfuscation, NACEPF should be permitted to undertake discovery to ascertain the proper entity and move to amend its Complaint accordingly.

Notwithstanding the above, Plaintiff shall address the instant motion, assuming until discovery or affidavit proves otherwise, that the Individual Defendants acted as the employee, agents and representatives of the GS Group and the other Goldman Sachs Defendants, and

further that GS Group directed and controlled their actions and the actions of Clearwire. References herein to the Defendants shall mean both the Individual Defendants and the Goldman Sachs Defendants.[1]

The premise of the Defendants' Rule 12(b)(6) motion is fundamentally flawed because it assumes that Delaware law governs this action. It does not. This action is governed by Rhode Island law. Accordingly, Rhode Island's general ten (10) year statute of limitations is applicable and, therefore, all of Plaintiff's claims were timely filed. Even assuming Delaware law is applicable to the breach of fiduciary duty claims, which Plaintiff does not concede, the claims related to the C Round financing were timely filed within three (3) years of the fraudulently concealed McCaw Sale.

The allegations in the Complaint comply with the notice pleading requirements of Rule 8 and Rule 9 of the Federal Rules of Civil Procedure. Thus, there are no grounds for dismissal at this preliminary stage of the proceedings. To the extent this Court finds that more particularity is required pursuant to Rule 9, Plaintiff requests the opportunity to amend its Complaint to include the statements set forth in the Affidavit of John Primeau filed in support of Plaintiff's Objections to the Defendants' Jurisdiction Motions. (*See* Section V of this Memorandum, *infra*).

**STATEMENT OF FACTS**

So as not to unduly burden the Court, Plaintiff relies upon and incorporates by reference the Statement of Facts section set forth in its Memorandum in Support of its Objections to Defendants' Jurisdiction Motions.

[1] A separate motion to dismiss pursuant to Rule 12(b)(6) has been filed by the remaining Goldman Sachs Defendants. The arguments specific to these Goldman Sachs Defendants will be addressed in a separate brief.

## STANDARD OF REVIEW

Defendants' Motion to Dismiss Plaintiff's Complaint is grounded upon Fed. R. Civ. P. 12 (b)(6), failure to state a claim upon which relief may be granted.

> In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. . . . Dismissal under Rule 12 (b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*See Guilbeault v. R.J. Reynolds Tobacco Company*, 84 F. Supp. 2d 263 (D.R.I. 2000) (internal citations omitted).

The role of the District Court in considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to "treat all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989); *Gray v. Derderian*, 2007 WL 386125, *1 (D.R.I. 2007). Under Rule 12(b)(6), the District Court must limit itself to the facts stated in the complaint or incorporated therein by reference. *El Dia, Inc. v. Rossello*, 165 F.3d 106, 110 (1st Cir. 1999). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle them to relief. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988).

Defendants have submitted voluminous materials in support of their motion to dismiss, most of which should not be considered by this Court at this early stage of the proceedings. Generally, on a Rule 12(b)(6) motion the Court may *not* take into account matters outside of the Complaint or expressly incorporated therein. The ***narrow*** exception, beyond which the motion must be converted to a motion for summary judgment, "is for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to

plaintiff's claim; or for documents sufficiently referred to in the complaint." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001). To fall within this exception, the complaint's factual allegation must be expressly linked to and admittedly dependent upon the outside records submitted on a motion to dismiss. *Hasbro, Inc. v. Mikohn Gaming Corp.*, 2006 WL 2035501 (D.R.I. 2006).

Apart from the actual complaint and decision in the *NACEPF* Delaware action, none of the other pleadings or briefs attached by Defendants as Exhibits A-G to their Memorandum is even marginally relevant to the factual allegations in the Complaint. Thus, they should not be considered by this Court. *See Boateng v. InterAmerican University, Inc.*, 201 F.3d 56 (1st Cir. 2000) (considering complaint and judgment in prior court action to determine whether *res judicata* was applicable to pending case); *and Cesario v. Bergquist*, 2006 WL 587598 (D.R.I. 2006) (prior court decisions) *and Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31 (1st Cir. 2005) (refusing to take judicial notice of another case involving similarly situated plaintiffs).

Likewise, although Exhibits D and E to the Mansour Declaration are matters fairly incorporated in the Complaint, Exhibits A and B, the Third and Fourth Amended Certificates of Incorporation of Clearwire are not the type of public records that are relevant at this stage of the proceedings as they are not incorporated into the Complaint. *Compare Greene v. Rhode Island*, 398 F.3d 45, 48 (1st Cir. 2005) (taking judicial notice of statute as a public record). In the absence of testimony regarding the circumstances of these amendments - Plaintiff disputes whether these amendments were properly voted by the Clearwire Board - these certificates do not amount to the type of public record of which this Court should take judicial notice on a motion to dismiss.

It must be emphasized that no discovery has been conducted in this case, and indeed no discovery has been conducted in any of the other related cases which Goldman Sachs is defending with respect to the Clearwire deal. Likewise, no documents or information have been produced by the Defendants pursuant to Rule 26(a) of the Rules of Civil Procedure. In short, it is inappropriate for this Court to consider these extraneous materials or construe the documents presented by Defendants on a Rule 12(b)(6) motion.

Plaintiff asserts that its Complaint alleges sufficient facts to withstand Defendants' motion to dismiss with respect to each of its claims.

## LEGAL ARGUMENT

### I. RHODE ISLAND LAW GOVERNS THE RESOLUTION OF PLAINTIFF'S CLAIMS.

#### A. Choice of Law Analysis

It is well-established that this Court, sitting in diversity, must apply Rhode Island's choice of law rules to determine which state's law should be applied to this dispute. *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 66 (D.R.I. 1999). Here there is a conflict of laws with respect to both the applicable statute of limitations and the substantive claims. *Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 74 (1st Cir. 2006) (initial task is to determine whether an actual conflict exists).

With respect to the tort based claims alleged in Plaintiff's Complaint, Rhode Island has abandoned the *lex loci delicti* doctrine, (place where the injury occurred), in favor of the interest-weighing approach to conflicts of laws. *Woodward v. Stewart,* 104 R.I. 290, 299, 243 A.2d 917, 923, *cert. denied,* 393 U.S. 957, 89 S. Ct. 387 (1968). The interest-weighing approach involves looking at the particular case facts and determining therefrom the rights and liabilities of the parties "in accordance with the law of the state that bears the most significant relationship to the

event and the parties." *Oyola v. Burgos*, 864 A.2d 624, 627 (R.I. 2005) (*quoting Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126, 1128 (R.I. 2004) (per curiam)). Such factors to be considered include "(a) [the] location where the conduct leading to the injury occurred, (b) the parties' domicile, residence or place of business; and (c) the location where the parties' relationship was centered," but by far "the most compelling factor is the location where the injury occurred." *Taylor*, 840 A.2d at 1128.

An examination of these factors must compel this Court to apply Rhode Island law. The Plaintiff was incorporated in Rhode Island, which at all relevant times was its principal place of business and corporate home; and a significant amount of the communications surrounding the Master Agreement, the business relationship between the parties and the C Round Financing were sent to NACEPF in Rhode Island. Because the Defendants knowingly engaged in an ongoing business relationship with a Rhode Island entity, the justified expectations of the parties would not be upset or thwarted by the application of Rhode Island law. *See LaPlante v. American Honda Motor Co., Inc.*, 27 F.3d 731 (1st Cir. 1994).

There is no question that the injuries alleged in this case were sustained by NACEPF in Rhode Island. Although the Defendants may be located elsewhere, it is undisputed that Rhode Island has a significant interest in protecting its residents from injuries that are sustained within its borders. *See Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 12 (1st Cir. 1994) (observing that Rhode Island has a substantial interest in protecting its resident companies from deceptive representations). Because this interest outweighs any that Delaware or New York can bring to bear, the law of Rhode Island should apply to all of Plaintiff's claims. *See Robertson Stephens, Inc. v. Chubb Corp.*, 2007 WL 476328, *3 (D.R.I. 2007).

**B. Statute of Limitations Analysis**

Where the choice of law issue involves a statute of limitations, some courts have found that the interest-weighing analysis is not required, as it is generally held that the law of the forum state determines the applicable statute of limitations. *Providence & Worcester Railroad Company v. Sargent & Greenleaf, Inc.*, 802 F. Supp. 680 (R.I. 1992) (and cases cited therein); *Byron v. Great American Indemnity Co.*, 54 R.I. 405, 173 A. 546 (1934). This is so because statutes of limitations are generally viewed as procedural, affecting only the remedy, rather than the substantive right to bring the particular action. As a result, the forum is more concerned with how its judicial processes are administered than another state. *Pinkham v. Collyer Insulated Wire Company, Inc.*, 1994 WL 385375 (D.R.I. 1994) (citing to Restatement (Second) of Conflicts of Laws §122 cmt. a (1971).

In this case, the forum is in Rhode Island, and therefore, Rhode Island's statute of limitations is applicable.

Even if the interest-weighing approach is utilized, Rhode Island's statute of limitations would be applicable. In *Cribb v. Augustyn*, 696 A.2d 285 (R.I. 1997), the Rhode Island Supreme Court found that Rhode Island's statute of limitations would apply to an action brought by a Rhode Island resident despite the fact that the injury occurred in New Hampshire and the action would have been barred under New Hampshire law. After analyzing and balancing the above factors, the court concluded that Rhode Island, rather than New Hampshire, had the greater interest in determining the time period in which Rhode Island residents may sue or be sued for tort claims arising out of a business relationship that had its origins in this state. *Id.* at 288. *Compare Najarian v. National Amusements, Inc.*, 768 A.2d 1253 (R.I. 2001) (applying

Massachusetts law where patron chose to attend movie in Massachusetts, injury and conduct that caused it occurred in Massachusetts and defendant's headquarters was in Massachusetts).

Consequently, Rhode Island has the greater interest in applying its statute of limitations to Plaintiff’s claims.

### C. The Choice of Law is Not Controlled by the Master Agreement.

The choice of law provision in the Master Agreement has no application o this case. Such a provision may be enforceable in a different context only if it is part of a valid and negotiated contractual agreement ***between the parties***. *See Hasbro, Inc. v. Mikohn Gaming Corp.*, 2006 WL 2035501 (D.R.I. 2006). Under Rhode Island law, for an agreement to be enforceable the parties must evince their objective intent to be bound by its terms. *UXB Sand & Gravel, Inc., v. Rosenfeld Concrete Corp*., 641 A.2d 75, 79 (R.I. 1994). The essential elements of a contract are “competent parties, subject matter, legal consideration, mutuality of agreement and mutuality of obligation. *Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250, 1253 (R.I. 1996). Mutuality of obligation, achieved when both parties are bound legally by the making of reciprocal promises, fulfills the consideration requirement of contracts. *Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340 (R.I. 1996).

As Defendants have acknowledged, none of the Defendants was a party to the Master Agreement. (GS 12(b)(6) Memo, p. 4). Thus, the Master Agreement, or any choice of law provision contained therein, cannot be invoked by the Defendants. Moreover, although Plaintiff’s claims are in part made with reference to the Master Agreement, the Complaint sounds in fraud, tort and breach of fiduciary duty, and not breach of contract. *See Eastland Bank Massbank for Savings*, 767 F. Supp. 29 (D.R.I. 29) (letter of credit’s requirement that it be governed by Massachusetts law does not absolve district court’s duty to apply Rhode Island

choice of law principles to non contractual issues). Consequently, the choice of law provision in the Master Agreement does not control the claims between NACEPF and these Defendants.[2]

## II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

### A. Fraud Claims

Under Rhode Island law, the general ten year statute of limitations, R.I. Gen. Laws §9-1-13 (a), applies to claims for fraudulent misrepresentation. *See Levin v. Kilborn*, 756 A.2d 169 (R.I. 2000); *Water v. Walt Disney World Company*, 237 F. Supp. 2d. 162, 166-167 (D.R.I. 2002). The earliest allegations of fraudulent misrepresentations occurred in the Spring of 2000. Accordingly, Plaintiff's Complaint, filed on November 14, 2006,[3] was filed well within the statutory limitations period.

### B. Tortious Interference Claims

Under Rhode Island law, the general ten year statute of limitations, R.I. Gen. Laws §9-1-13 (a), applies to claims for tortious interference. *McBurney v. Roszkowski*, 687 A.2d 447 (R.I. 1997). The earliest allegations of tortious interference occurred in 2001 after the Master Agreement was executed. Accordingly, Plaintiff's Complaint, filed on November 14, 2006, was filed well within the statutory limitations period.

### C. Breach of Fiduciary Duty Claims

Under Rhode Island law, the general ten year statute of limitations, R.I. Gen. Laws

---

[2] This conclusion is not altered by the fact that Delaware law was cited by the parties in the *NACEPF* Delaware action, inasmuch as that case was pending in Delaware state court and involved the application of Delaware personal jurisdiction statutes. The fact that NACEPF cited to Delaware law in a Delaware action does not amount to a contract regarding the choice of law, nor is it in any way binding on this Court or the claims asserted in this proceeding.

[3] A copy of the first page of the Complaint, date stamped by the District Court on November 14, 2006 is attached hereto as *Exhibit D*.

§9-1-13(a), applies to claims for breach of fiduciary duty. *Levin v. Kilborn*, 756 A.2d 169 (R.I. 2000). The earliest allegations of breach of fiduciary duty occurred in 2001 after the execution of the Master Agreement. Accordingly, Plaintiff's Complaint, filed on November 14, 2006, was filed well within the statutory limitations period.

Defendants contend that the fiduciary duty claims, to the extent they concern the obligations and rights of directors and shareholders of Delaware corporations, are most appropriately governed by Delaware law. (GS 12(b)(6) Memo, p. 11, citing to *Young v. Lepone*, 305 F.3d 1, 13 (1st Cir. 2002)). However, *Young v. Lepone*, did not hold that reference to the law of the state of incorporation was a *per se* rule, but remanded the case to the district court to determine the appropriate law to be applied to the breach of fiduciary duty claims based upon the particular circumstances of the case. *Id*. Based on the foregoing choice of law analysis, Rhode Island law, and the ten year statute of limitations is applicable to Plaintiff's breach of fiduciary duty claims.

Furthermore, even if Delaware law was applicable to the breach of fiduciary duty claims pertaining to the C Round financing, these claims may still proceed. It is true that the breach of fiduciary duty claims concern primarily the failure to disclose material facts related to the McCaw deal at the time of the C Round financing or any time thereafter. However, under Delaware law, the limitation period would be tolled until the facts of the transaction were no longer concealed and became public knowledge. *See, e.g., In re Dean Witter Partnership Litig.*, 1998 WL 442456 (Del. Ch. July 17, 1998); *In re Tyson Foods, Inc. Consolidated Shareholder Litig.*, 2007 WL 416132, at * 12 (Del. Ch. Feb. 6, 2007) (examining the three recognized exceptions to the running of the statute of limitations: (1) the doctrine of "inherently unknowable" injuries where plaintiff was blamelessly ignorant of injury or cause of action; (2)

the doctrine of "fraudulent concealment" of facts; and (3) "equitable tolling" when a plaintiff reasonably relies upon statements of fiduciaries).

The McCaw deal was not consummated until on or after November 14, 2003 and it did not become public knowledge until some time thereafter. As alleged in the Complaint, the McCaw negotiations were fraudulently concealed by the Defendants. Thus, they were not "knowable" until after the actual transaction was completed. Since Plaintiff's Complaint was filed on November 14, 2006, its claims are not barred by the three year statute of limitations.

## III. PLAINTIFF'S COMPLAINT COMPLIES WITH NOTICE PLEADING REQUIREMENT OF RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff is required simply to make "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). A complaint sufficiently raises a claim as long as relief is possible under any set of facts that could be established consistent with the allegations. *See, e.g., Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003); *Gray v. Derderian*, 2007 WL 386125, *2 (D.R.I. 2007). Rule 8 is meant to ensure that a defendant will have fair notice of what the plaintiff's claim is and the grounds upon which it rests. *LaLonde v. Textron, Inc*., 369 F.3d 1, 6-7 (1st Cir. 2004) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). "Rule 8 provides for 'notice' pleading; its operation is broad and its standard liberal." *Gray v. Derderian*, 365 F. Supp. 2d. 218, 226 (D.R.I. 2005). In addition, at this stage of the litigation, a plaintiff may state as many separate claims as it has and one pleading will not be treated as an admission precluding another, inconsistent pleading. *Id.*

It must be emphasized that in this forum the particularity requirements of Rule 9(b) are not applicable to the tortious interference, breach of fiduciary duty and unjust enrichment claims.

*Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) (stating that apart from a few specific categories of cases, the particularity requirements of Rule 9(b) are not applicable). Therefore, the cases cited by Defendants for the contrary proposition are inapposite. *See In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994) (applying Rule 9(b) to claims of securities fraud and negligent misrepresentation). In short, Defendants demand more from the Plaintiff in its Complaint than the Rules of Civil Procedure require. *Langadinos v. American Airlines, Inc.*, 199 F.3d at 72 ("While defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading."); *Wheelock v. State*, 2006 WL 3391507 (D.R.I. 2006) ("Because a complaint is a precursor to discovery, it need not state all the possible facts at issue.")

Plaintiff's Complaint complies with the notice pleading requirements of Rule 8 and therefore, Defendants' motion to dismiss the Complaint must be denied.

### A. Tortious Interference Claims

Under Rhode Island law, a tortious interference claim with respect to a contract requires proof of the following elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or its] intentional interference; and (4) damages. *Read & Lundy, Inc. v. Washington Trust Co. of Westerly*, 840 A.2d 1099, 1102 (R.I. 2004) (citing *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 906 (R.I. 2002)). Once a plaintiff establishes the prima facie elements, the burden shifts to the defendant to prove that there was sufficient justification for the interference. Further, plaintiff need not prove actual malice or ill will to show the interference was intentional. Legal malice, an intent to do harm without justification, is sufficient. *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 906 (R.I. 2002).

The basic elements of interference with prospective contractual relations are "(1) the existence of a business relationship or expectancy; (2) knowledge by the interferor of the relationship or expectancy; (3) an intentional act of interference; (4) proof that the interference caused the harm sustained; and (5) damages to the plaintiff." *L.A. Ray Realty v. Town Council of Town of Cumberland*, 698 A.2d 202, 207 (R.I. 1997) (*citing Mesolella v. City of Providence*, 508 A.2d 661, 669 (R.I. 1986).

Count III of the Complaint alleges tortious interference with Plaintiff's prospective business opportunity to convey its lease rights in the spectrum licenses to other companies. (Compl. ¶¶ 49-50; 70-74). Because Goldman Sachs controlled the Individual Defendants, and through them controlled the Clearwire Board, the facts alleged in the Complaint support the inference that each of the Defendants knew of the Plaintiff's potential to convey its lease interest in the licenses to third parties. (Compl. ¶¶12, 13, 29, 34, 35, 38, 39). By way of example, the Complaint alleges that Defendants' representations regarding Clearwire's claims to the licenses were "not made in good faith" with the knowledge that "Clearwire lacked the funding to acquire and use that spectrum and that Goldman Sachs would not provide that funding." (Compl. ¶ 39). These allegations set forth that Defendants acted intentionally and without justification, thereby causing damage to the Plaintiff.[4] (Compl. ¶ 71). There is no requirement at the pleading stage that Plaintiff identify the particular third parties interested in purchasing the spectrum; that is a matter for discovery. *See Langadinos v. American Airlines, Inc.*, 199 F.3d at 72.

---

[4] Defendants' argument that the actions of Clearwire and the Individual Defendants were justified may be appropriate on a motion for summary judgment after discovery is conducted, but in this procedural posture serve only to highlight why a motion to dismiss should not be granted - since Plaintiff's Complaint has raised factual issues, they should not be resolved by the Court at this preliminary stage of the litigation. (GS 12(b)(6) Memo, pp. 23-24). *See Gilbert v. El Paso Co*., 1988 WL 124325 (Del.Ch. Nov. 21, 1988) (ruling on what the court termed "a motion to dismiss or motion for summary judgment" after the parties had engaged in discovery for three years); *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985) (reviewing propriety of directors' actions on appeal from grant of preliminary injunction).

Count IV of the Complaint alleges tortious interference with the Alliance, that the Defendants intentionally and without justification acted to break up the Alliance, thereby causing Plaintiff to sustain damages as a result of the dilution in the power and leverage of the Alliance and lost opportunities to acquire additional spectrum. (Compl. ¶¶ 76-80). Details regarding potential acquisitions are not required to be enumerated in the Complaint. *Id*. As alleged in the Complaint, the Defendants had an active role in the negotiation of the Master Agreement. Thus, they were obviously aware of the business relationship between the Alliance members and the dynamics of the spectrum market. Consequently, the Complaint adequately puts the Defendants on notice of the claim that they tortiously interfered with the Alliance and its prospective business opportunities. (Compl. ¶¶ 27, 42, 43).

The allegations in the Complaint are likewise sufficient to assert claims against the Individual Defendants and they are not insulated from liability simply because they are directors of Clearwire and employees of Goldman Sachs. (Compl. ¶¶ 72, 78). This is true when a director commits or participates in the commission of a tort. Whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter whether liability attaches to the corporation for the tort. 18B Am. Jur. 2d *Corporations* § 1877 (2004). *See also Holmes v. Bateson*, 434 F. Supp. 1365 (D.R.I. 1977); *St. James Recreation, LLC v. Rieger Opportunity Partners, LLC*, 2003 WL 22659875 at *6 (Del. Ch.. 2003) (acknowledging general rule that a corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort) (citing cases).[5] Significantly, even if correct in the abstract, Defendants' argument fails because Goldman Sachs

[5] The cases relied upon by Defendants for this proposition do not support immunity from torts committed to third parties. *Goldman v. Pogo.com, Inc.*, 2002 WL 1358760 (Del. Ch. June 14, 2002). *See also Local Union 42 v. Absolute Environmental Services*, 814 F. Supp. 392 (D. Del. 1993) (discussing business judgment rule).

has not conceded that the Individual Defendants acted within the scope of their authority with respect to the allegations in the Complaint. S*ee Robertson Stephens, Inc. v. Chubb Corp.*, 2007 WL 476328, *9 (D.R.I. 2007).

Furthermore, Defendants' argument that Plaintiff's claims "are really dressed up allegations that defendants caused Clearwire to breach its contractual obligations" such that the Defendants cannot be liable for the breach of their own contract misses the mark. (GS 12(b)(6) Memo, p. 27). The Complaint alleges that the Defendants tortiously interfered with the contracts and prospective business opportunities offered to NACEPF ***by third parties*** who either wanted NACEPF's spectrum or from whom NACEPF could have acquired spectrum.[6]

Based on the forgoing, the allegations in Plaintiff's Complaint, when viewed in their entirety, clearly meet the notice pleading requirements of Rule 8 for each of the tortious interference claims.[7]

**B. Breach of Fiduciary Duty Claims.**

Rhode Island has a long history of viewing directors of companies as owing a fiduciary duty to the shareholders of the company. *Lawton v. Nyman*, 327 F.3d 30, 38 (1st Cir. 2003) (citing to *Olney v. Conanicut Land Co*., 16 R.I. 597, 18 A. 181, 182 (1889). The courts have

---

[6] Rhode Island courts have addressed liability of an agent for interfering with a contract to which his principal is a party and concluded such a claim is viable. S*ee Jolicoeur Furniture Co., Inc. v. Baldelli*, 653 A.2d 740, 752-53 (R.I. 1995) (holding that a mayor could tortiously interfere with a contract to which the municipality was a party); *Kennett v. Marquis,* 798 A.2d 416, 419 (R.I. 2002) ("An agent, however, may be personally liable for unauthorized acts outside the scope of the agency[.]")

[7] Even if Delaware law is applicable to the tortious inference claims, the elements alleged need only comply with the notice pleading requirements of this forum. For the most part, the cases cited by Defendants did not involve motions to dismiss on the pleadings, but were motions determined after discovery, trial or witness testimony. *See DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980) (ruling on post trial motion for preliminary injunction); *Dionisi v. DeCampli*, 1995 WL 398536 (Del. Ch. June 28, 1995) (decision after trial and post trial briefing); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, F. Supp.2d 238 (D. Del. 1998) (ruling on motion for summary judgment).

analogized the duties corporate officers owe to stockholders to those of trustees. *Id*. (citing to *Point Trap Co. v. Manchester*, 98 R.I. 49, 199 A.2d 592, 595-96 (1964)).

> Such a relationship is one of trust and confidence and imposes the duty on the fiduciary to act with the utmost good faith. That good faith requirement forbids action on the part of a fiduciary without the knowledge and consent of his cestui que trust when he has an individual interest in the subject matter or when his interest is in conflict with that of the person for whom he acts.

*Point Trap*, 199 A.2d at 596.

In order to prevail on a breach of fiduciary duty claim, a plaintiff must establish that: (1) the defendants owed the plaintiff a fiduciary duty; (2) the defendants breached that duty; and (3) the defendants' breach harmed the plaintiff. *A. Teixeira & Co. v. Teixeira*, 699 A.2d 1383, 1387 (R.I. 1997). It is undeniable that corporate officers and directors owe a fiduciary duty of good faith and fair dealing to the corporation and its shareholders and that such duty imposes a standard of conduct that is "stricter than the morals of the marketplace." *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 51 F. Supp. 2d 81, 98 (D.R.I. 1999). It is equally well-established under Rhode Island law that majority shareholders owe a fiduciary duty to minority shareholders. *A. Teixeira & Co. v. Teixeira*, 699 A.2d 1383, 1387 (R.I. 1997).

Plaintiff has sufficiently alleged all of the requisite elements of these claims in Counts V and VI of its Complaint to meet the liberal standard to be applied by the Court under Rule 12(b)(6).

**1. <u>Fiduciary Duty to Disclose.</u>**

The fiduciary duty of disclosure under the common law is more stringent, far reaching and burdensome upon corporate directors and officers than the duty of disclosure imposed by the securities laws. Corporate officers who contemplate a possible sale of the company must reveal that possibility to minority stockholders. *Lawton v. Nyman*, 327 F.3d 30, 39 (1st Cir. 2003).

In *Lawton*, the First Circuit approved the district court's delineation of the standard for determining materiality for corporate disclosure purposes as follows:

> When directors of a closely held corporation are purchasing a minority stockholder's shares, fiduciary duty imposes an obligation of 'complete candor' to disclose 'all information in their possession 'germane' to the transaction.' " (quoting F.H. O'Neal' *40 & R.B. Thompson, O'Neal's Close Corporations 8.12, at 129 (3d ed. & Supp.1995)). That is a generally accepted standard and its use was appropriate. The court found that under state law, negotiations for a sale need not be underway for there to be a duty to disclose; the duty "also encompasses transactions that the directors anticipate are reasonably likely to occur or that are something more than remote possibilities."

*Id.* at 39. The Court went on to conclude that it is commonly accepted that officers of close corporations have a greater duty of disclosure about the possible sale or merger of a company to minority shareholders than do officers of a publicly traded corporation and that Rhode Island law would similarly recognize a heightened duty of disclosure in a close corporation setting by officers who are majority shareholders with undisclosed information, who are purchasing minority shares or causing the corporation to do so. *Id*. (affirming district court's determination that the series of non disclosures and misrepresentations of information regarding a possible sale of the company was material because it would have been important to the plaintiffs in evaluating the offer made).

Here, Plaintiff has asserted common law claims of the breach of fiduciary duty of full disclosure, thereby causing the Plaintiff to sustain losses. For instance, Plaintiff alleges: Defendants, by reason of their majority stock ownership of Clearwire and their control of Clearwire's Board of Directors, officers and agents, owed the Plaintiff the fiduciary duties of loyalty, care and full disclosure (Compl. ¶ 86); that neither the Original Offer nor the Preemptive Rights Offer disclosed any details of the pending McCaw Sale or transaction to all of shareholders, nor did the records or books of the Corporation controlled by Defendants put the

shareholders on notice or disclose such discussions or proposed or pending transaction (Compl. ¶¶ 54, 55); that Defendants breached their duty by misrepresenting, concealing and failing to disclose the details or facts of the pending McCaw Sale and the real reason for the transactions (Compl. ¶¶ 87, 88); and that Plaintiff has incurred damages as a proximate result of the Defendants' breaches of their duties of loyalty, care and full disclosure. (Compl. ¶ 90). The Complaint expressly alleged that Plaintiff relied on the incomplete information provided by the Defendants in deciding not to participate in the C Round financing. (Compl. ¶ 54).

Furthermore, the materiality of the information that was not disclosed is a question of fact that cannot be resolved on a motion to dismiss. *See Rosen v. Textron, Inc.*, 321 F. Supp. 2d. 308, 318 (D.R.I. 2004).[8]

**2. <u>Fiduciary Duty of Loyalty.</u>**

As directors, the Individual Defendants owed the duty of "utmost good faith and fair dealing to the corporation so that [they] were required to place the interests of the corporation before [their] own personal interests." *National Credit Union Administration Board v. Regine*, 749 F. Supp. 401 (D.R.I. 1990). Rhode Island has long recognized that corporate officers, directors and shareholders are fiduciaries that owe a duty of loyalty to the corporation and its shareholders. *McConaghy v. Sequa Corp.*, 294 F. Supp. 2d 151, 164 (D.R.I. 2003) (citing to *Hendrick v. Hendrick*, 755 A.2d 784 (R.I. 2000).

---

[8] Delaware courts similarly hold that the materiality of information withheld from a shareholder is a question of fact, precluding judgment for a defendant in the context of a motion to dismiss. *See Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000) (citing cases). In denying a motion to dismiss breach of fiduciary duty claims the Court ruled:

> It would be impracticable and imprudent on a motion to dismiss to attempt to conclude with finality that the alleged omissions represent information that a reasonable stockholder would not consider to have significantly altered the 'total mix' of information made available.

*Id.* at 987-988.

In this case it is alleged that the Individual Defendants put their own interests as employees and agents of Goldman Sachs ahead of their duty to Clearwire and its shareholders. The breach of their duty of loyalty manifested itself in the non disclosure of the McCaw negotiations in the context of the C Round financing offer to the shareholders. *National Credit Union Administration Board v. Regine*, 749 F. Supp. 401 (D.R.I. 1990) (breach of duty of loyalty occurs if a director misrepresents key information to the corporation).

For instance, the Complaint alleges that under this cause of action: the secret and undisclosed negotiations for the McCaw Sale led to a scheme concocted by the Defendants, which was consummated in or about November 2003, for the benefits of the insiders only (Compl. ¶ 48); that despite having been in negotiations for the McCaw Sale, Clearwire, controlled by the Defendants, announced a proposal to raise emergency bridge financing and to sell and issue Series C Convertible Preferred Stock for the purpose of diluting existing stockholders for the benefit of the insiders (Compl. ¶¶ 49-55); that such activity of self-dealing transactions was designed to benefit Goldman Sachs, the Director Defendants and their family members and that by failing to disclose the nature of those transactions, Defendants breached their fiduciary duties owed to the Plaintiff (Comp. ¶ 83); and that as a consequence of the Defendants' breach of their duty of loyalty, Plaintiff has incurred damages. (Compl. ¶ 84).

Thus, applying the liberal standard of Rule 8 to the factual allegations in the Complaint, mandates that Defendants' motion to dismiss these Counts be denied.

### C. Unjust Enrichment Claim

To recover under a claim for unjust enrichment, "a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff; (2) there must be appreciation by the defendant of such benefit; and (3) there must be an acceptance of such

benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (citations omitted). Recovery for unjust enrichment is predicated upon the equitable principle that one should not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them. *See R & B Electric Co. v. Amco Construction Co.*, 471 A.2d 1351, 1355 (R.I. 1984).

In cases involving breach of fiduciary duty, this Circuit has affirmed the invocation of the equitable doctrine of "avoiding unjust enrichment" and awarded damages to a plaintiff based upon the windfall or profits obtained by a defendant in violation of a fiduciary duty. *Lawton v. Nyman*, 327 F.3d 30, 45-46 (1st Cir. 2003).

Under Count VII of its Complaint, Plaintiff has asserted that (1) by reason of Defendants' majority stock ownership of Clearwire; (2) their control of Clearwire's Board of Directors, officers and agents; (3) their control over the C Round Financing; and (4) their undisclosed negotiation and execution of the McCaw Sale, they knowingly, wrongfully and unjustly obtained benefits to which they were not entitled. (Compl ¶ 92). Consequently, such actions deprived NACEPF of its rightful equity share in Holdings. (Compl. ¶93). These allegations are a classic example of claims asserting unjust enrichment, particularly when coupled with a breach of fiduciary duty claim in the corporate context.

## IV. THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 9 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A. The Rule 9(b) Standard for Fraud Claims.

To establish a claim for fraudulent misrepresentation, a plaintiff must establish: (1) a false or misleading statement of material fact; (2) that was known to the defendant to be false;

(3) that was made to deceive; and (4) upon which plaintiff relied to his detriment. *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d. 263, 268 (D.R.I. 2000); *Kooloian v. Suburban Land Co.*, 873 A.2d 95, 99 (R.I. 2005) (fraud claim requires proof that defendant "made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage.")

Rule 9(b) of the Federal Rules of Civil Procedure states: "In all averments of fraud and mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." One purpose of the rule is to provide the defendant with information that is sufficiently particularized to enable him to understand the precise nature of the allegations and to prepare a response. *See Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1111 (D.R.I. 1990). What is indisputable is that Rule 9 does not exist in a vacuum; it must be read in light of the notice pleading and liberality dictated by Rule 8 as well as the generous review of the allegations in a plaintiff's complaint required by Rule 12(b)(6). *See Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000); *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) (recognizing that a plaintiff is not required to prove its case in a complaint). The judicial task is not to decide whether the plaintiff will ultimately prevail, but rather whether it is entitled to undertake discovery in furtherance of the pleaded claims. *Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (reversing dismissal of fraudulent misrepresentation claims).

Since "the most basic consideration in determining the sufficiency of a fraud pleading is deemed to be the amount of detail necessary to give adequate notice to an adverse party so a responsive pleading can be prepared," dates covering a range, when combined with the

information about the statements made, are sufficient notice to enable a defendant to respond. *City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 655 (D.R.I. 1986). Along these lines, allegations establishing the basis of a *fraudulent scheme* adequately places a defendant on notice of the misconduct of which it is charged, satisfying Rule 9(b). *See National Credit Union Administration Board v. Regine*, 749 F. Supp. 401, 412 (D.R.I. 1990).

**B. Plaintiff has Sufficiently Pled Fraudulent Inducement of the Master Agreement.**

Under Rhode Island law, a party who has been induced by fraud to enter a contract may either rescind the contract or affirm the contract and sue for fraud. *Fleet National Bank v. Anchor Media Television, Inc.*, 831 F. Supp. 16, 38 (D.R.I. 1993) (citing to *Ostalkiewicz v. Guardian Alarm*, 520 A.2d 563, 565-66 (R.I. 1987); *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730, 733 (1970)).

Rhode Island has long held that "a false and fraudulent representation of one's solvency or pecuniary responsibility is ground for actionable deceit if the representation is a definite statement of fact and not an estimate or expression of opinion." *Companelli v. Vescera*, 75 R.I. 71, 63 A. 2d 722 (1949). Along these lines, statements regarding management assistance to be furnished, when relied upon by the other party to the agreement, are actionable misstatements of fact. *See DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382, 385-386 (D.R.I. 1989). In addition, promises to perform in the future are actionable where the maker did not intend to perform the promise at the time of making it." *Id*. For instance, even where those promises or statements are set forth in a press release in which a company touts its present status or capabilities to perform, such statements are not mere puffery or opinion, but are actionable and survive a motion to dismiss. *Scritchfield v. Paolo*, 274 F. Supp. 2d. 163 (D.R.I. 2003).

Plaintiff has not only alleged a fraudulent scheme, which alone is sufficient to defeat Defendants' motion, but it has alleged all of these above-cited conditions with the requisite degree of specificity.

The thrust of Defendants' motion, however, seeks to hold Plaintiff to a much higher standard of pleading than that which is required under Rule 9(b) and how this Court and the First Circuit has applied the standard. *See, e.g., Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004) (a statement, though couched in terms of opinion, constitutes an actionable claim where audience reasonably understood statement to imply existence or non-existence of facts); *Rosen v. Textron, Inc.*, 321 F. Supp. 2d. 308 (D.R.I. 2004) (public statement to investors and during interview about viability of Textron defense program not puffery, but actionable misstatement); *Scritchfield v. Paolo*, 274 F. Supp. 2d. 163 (D.R.I. 2003) (statements made in press release not mere puffery or opinion). In essence, Defendants inappropriately challenge Plaintiff to "prove" its case without regard to the deference accorded a Plaintiff under a Rule 12(b)(6) motion. Such "proof" is not required at this early juncture of the proceedings. Nevertheless, Plaintiff has sufficiently pled its claim for Fraud in the Inducement of the Master Agreement in accordance with the standard above.

First, Plaintiff has alleged and identified with particularity the false representations that were made by the Defendants between the Spring of 2000 and March of 2001, to wit: that the Goldman Defendants emphasized that Goldman Sachs was *committed* through Clearwire to providing *adequate capital and management to develop the spectrum assets* of the Alliance members into an *operating, national system* of wireless connections to the internet (Compl. ¶ 30); the numerous false statements and representations made in the June 7, 2000 "Cardinale Memorandum" in which they did not disclose their true intentions, which included among other

representations that Goldman Sachs would provide adequate and necessary management support and services (Compl. ¶ 31; *see also* Statement of Facts in Plaintiff's Jurisdictional Memorandum, p. 6); further, that the Goldman Sachs Defendants would do what was necessary to (1) continue to expand its existing markets with its proprietary technology, (2) acquire NACEPF's license rights in spectrum as the existing licenses for that spectrum expired and the licenses were not renewed, and (3) use the then-available technology of Clearwire or its equivalent to incorporate in its expanding unlicensed band build-outs, the Alliance spectrum as it became rationalized in an operating wireless network to access the internet while permitting NACEPF to offer its services to its clients and to otherwise use that spectrum to maintain NACEPF licenses. (Compl. ¶ 60).

Plaintiff has alleged the remaining elements as well, namely that that the Defendants knew such representations to be false when made (Compl. ¶ 62), particularly given that the Defendants knew: (1) Clearwire would not acquire NACEPF's spectrum licenses as they became available or build out an operating wireless network because it lacked the resources to do so and Goldman Sachs did not intend to provide the funding required, and (2) Clearwire's equipment subsidiary (that was to supply the technology it needed) was for sale. (Compl. ¶ 63). Finally, Plaintiff properly asserted that these statements were intended to and did induce reliance on the part of the Plaintiff. (Compl. ¶¶ 32, 62).

Defendants contend that the allegations regarding time, place and date are insufficient to satisfy Rule 9. However, the June 7, 2000 memorandum is explicit - Cardinale made the affirmative misrepresentations set forth therein on behalf of the entire Goldman Sachs team. (Compl. ¶ 31). The Complaint also alleges that representations were consistently made by the Individual Defendants during the negotiations of the Master Agreement by the Individual

Defendants. (Compl. ¶ 30). By these allegations, Defendants have express notice of the misrepresentations the Plaintiff alleges are fraudulent and the time period in which they occurred. *See City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 655 (D.R.I. 1986) (complaint alleging range of dates complied with Rule 9 notice requirements).

Accordingly, the Complaint alleges sufficient facts for each of the above elements to sustain a claim of fraudulent inducement.

**C. Fraud in the Performance of the Master Agreement.**

As previously stated, the purpose of Rule 9(b) is to provide notice to defendants of the circumstances constituting the fraud that is being asserted against them. That is not to say however, that such particularity need incorporate every alleged misrepresentation. The plaintiff is required to set forth only the major misrepresentations or omissions upon which the fraud claims are based. *See* 2 *James Wm. Moore et al.*, Moore's Federal Practice § 9.03[1][a] (Matthew Bender 3d ed.). In order to meet the pleading standards of Rule 9(b), "'a well-pleaded allegation of fraud should include 'specification of the time, place, and content of an alleged false representation.'" *Jenkins v. Mullen*, 2006 WL 909483, *1 (D.R.I. April 7, 2006), quoting *Lares Group, II v. Tobin*, 47 F. Supp. 2d. 223, 232 n.4 (D.R.I. 1999) (citations omitted).

Plaintiff's complaint makes out specific allegations of fraud to meet the standards of Rule 9(b). The Complaint alleges that following Defendants' fraudulent inducement of NACEPF and the Alliance to enter into the Master Agreement (as described more fully in Section IV B, above), the Defendants continued to promote its business relationship with Clearwire, while at the same time pursuing an altogether contrary venture unbeknownst to NACEPF and the Alliance. (Compl. ¶¶ 33-37). Defendant's on-going representations, from March 2001 until May 2002 regarding its right to acquire the Alliance's spectrum licenses, effectively precluded

NACEPF and other Alliance members from pursuing other potential acquisitions during that time frame. (Compl.¶¶ 38, 39). These representations were made by Defendants despite their knowledge that Clearwire lacked the funding to consummate the contemplated acquisitions and that Goldman Sachs would not provide the funding needed. (Compl. ¶ 39). After the collapse of the market for wireless spectrum, Defendants' focused their efforts on ending Clearwire's obligations to NACEPF and the Alliance. (Compl. ¶¶ 41-43).

The foregoing allegations lay out with sufficient specificity the fraudulent course of dealing by which NACEPF has been harmed. The allegations are tailored such that Defendants can hardly claim undue or unfair surprise as to the nature of Plaintiff's claims against them in this regard.[9] Plaintiff identifies: (1) the time during which the fraud was perpetrated, that is, subsequent to the execution of the Master Agreement on a continuing basis until May 2002; (2) the place where such fraud was perpetrated, as within communications between the parties; and (3) the content of the fraudulent misrepresentations upon which Plaintiff relied to its detriment, as further described above. For all of these reasons, Plaintiff's fraud claims against the Defendants must and should survive.

### D. Fraud in the Context of the C Round Financing.

Fraud can be grounded in either affirmative acts or concealment. *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d. 263 (D.R.I. 2000)*; Holmes v. Bateson*, 434 F. Supp. 1365, 1381 (D.R.I. 1977) *aff'd* 583 F.2d 542 (1st Cir. 1978). A director who makes a statement of material fact to shareholders has a duty to make a complete disclosure of any other relevant

[9] The fact that Defendants seek to justify their conduct by asking this Court to construe the terms of the Master Agreement makes this point. (GS 12(b)(6) Memo, p. 19-20). Putting aside the fact that the Master Agreement itself should not be reviewed by this Court on a motion to dismiss, inasmuch as this case sounds in fraud, tort and breach of fiduciary duty, and not breach of contract, Defendants' attempt to explain their actions demonstrates that they have adequate notice of the nature and content of the misrepresentations alleged in Plaintiff's Complaint.

facts that may be necessary to prevent the statement from being misleading. *Roeder v. Alpha Indus.*, 814 F.2d 22, 26 (1st Cir. 1987); *see also Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1119 (D.R.I. 1990). Omitting additional facts is fraudulent when the omission makes what was stated misleading. *Lawton v. Nyman*, 2002 WL 221621 (D.R.I. 2002) *aff'd* 327 F.3d 30 (1st Cir. 2003). A duty to speak can also arise if a statement is made without knowledge of its falsity and the falsity subsequently becomes known to the speaker. *Guilbeault v. R.J. Reynolds Tobacco Co.,* 84 F. Supp. 2d. at 269. Where, as here, the alleged fraud is premised upon non disclosure, positive proof of reliance is not a prerequisite to recovery; the existence of an obligation to disclose and the withholding of a material fact raise the presumption or inference of reliance. *See Holmes v. Bateson*, 434 F. Supp. 1365, 1381 (D.R.I. 1977) *aff'd.* 583 F.2d 542 (1st Cir. 1978). As with the breach of fiduciary duty claim, the issue of whether a non disclosure amounts to a fraudulent misrepresentation depends in large part upon the issue of materiality, which is a fact issue that should be resolved by a jury. *See In re Cabletron Systems, Inc.*, 311 F.3d 11, 34 (1st Cir. 2002).[10]

The material facts that were fraudulently concealed in this case are those facts about the McCaw negotiations or discussions "which a reasonable man would attach importance to in determining his choice of action" in whether to purchase shares in the context of the C Round offering. *See Holmes v. Bateson*, 434 F. Supp. 1365 (D.R.I. 1977). In *Holmes*, the Court recognized that apart from an actual offer to acquire a corporation's assets, a strong interest in the acquisition would certainly have been a factor affecting the plaintiff shareholder's decision to sell their stock. *Id.* at 1380-1381, 1387. The Court further found that the negative remarks

[10] Delaware courts likewise recognize that because materiality of facts omitted from a statement normally depends on context, it is ordinarily unsuitable for determination on a motion to dismiss. *See Noerr v. Greenwood*, 1997 WL 419633 (Del. Ch. 1997) (ruling that court could not conclude, as a matter of law, on a motion to dismiss, that omitted information was immaterial).

made by the director concerning the financial health of the corporation accentuated the materiality of the non disclosure of a potential purchaser. *Id*.

As Defendants emphasize in their Motion, both the August 15, 2003 letter and August 20, 2003 letter set forth that financing would provide Clearwire with additional time "to pursue other strategic alternatives, ***which may include a sale or merger of the corporation***. (GS 12(b)(6) Memo, p.5-6). Indeed, the August 20, 2003 letter revealed that it "***is currently engaged in discussions with third parties regarding either a new financing round or a strategic transaction which would result in an acquisition of the Corporation.***" (GS 12(b)(6) Memo, p. 6). Thus, it is apparent that Clearwire, as advised and directed by Goldman Sachs, found this information material, thereby requiring disclosure to the shareholders.

However, as alleged in the Complaint, the negotiations with McCaw were not disclosed to Plaintiff or other non-insider shareholders.[11] (Compl. ¶¶ 53-56; 95; 97, 98).

In this regard, what is not stated by Defendants in their motion is most revealing: they do not deny that discussions had taken place with McCaw prior to the C Round offering. (GS 12(b)(6) Memo, p. 30). Instead, Defendants rely on the contention that the alleged negotiations were not material because there is no allegation that they had reached an agreement with McCaw prior to the time the C Round financing closed. (GS 12(b)(6) Memo, p. 31).[12]

---

[11] Even when inquiries were made to ascertain the nature of these "discussions" the ongoing McCaw discussions were not disclosed. In August 2003, John Schwartz who headed ITF called John Primeau to relate his conversation with Daly on the pending Bridge Financing. He stated that the main deal with AT&T failed, and that Daly discussed other potential parties which included Earthlink, the Clarity Group, Nextwave, IPCOM, TELMEX and Nextel. No mention was made of the McCaw Group. Primeau Aff. ¶ 43. Thereafter, In August 2003, Primeau followed up with his own telephone call to James Kirkland, attorney for Clearwire, to obtain additional information regarding the "C Round" Preemptive Rights Offer. Kirkland reiterated to Primeau what was generally related to him by John Schwartz, namely that the failed AT&T deal was referenced in some detail as was some potential smaller entities as Earthlink, the Clarity Group, Nextwave, IPCOM, TELMEX and Nextel. The critical discussions with the McCaw Group were not disclosed. Primeau Aff. ¶ 44. The list of the disclosures actually served to further the Defendants' fraudulent concealment of the McCaw Group as the extensive list left the impression that any efforts to obtain financing or investment with an entity that was at all noteworthy had been disclosed.

[12] This is not, as Defendants assert, a case where Plaintiff is alleging "fraud by hindsight" simply because the McCaw deal was consummated on or about November 14, 2003. (GS 12(b)(6) Memo, p. 28-30). Plainitff' alleges

Under Rhode Island law is it clear that a potential acquisition must be disclosed, whether or not the terms of the deal have been finalized, where that information is material to the decision to be made by the shareholders. *See Holmes v. Bateson*, 434 F. Supp. 1365 (D.R.I. 1977). Furthermore, as this Court has repeatedly stated, the issue of materiality is a question of fact that should not be resolved by way of summary dismissal. *See Rosen v. Textron, Inc.*, 321 F. Supp. 2d. 308, 318 (D.R.I. 2004).

**E. The Allegations in Plaintiff's Complaint Referring to the Defendants as a Group May Properly Be Considered Under Rule 9.**

Under the so-called group pleading presumption, it is appropriate to impute the alleged misstatements and omissions to all of the Individual Defendants as "collective actions." *Rosen v. Textron, Inc.*, 321 F. Supp. 2d. 308, 327 (D.R.I. 2004). Thus, a "plaintiff may impute false or misleading statements conveyed in annual reports, quarterly and year-end financial results, ***or other group published information*** to corporate officers." *Id.* (emphasis added) (citing to *In re Raytheon Sec. Litig.*, 157 F. Supp. 2d. 131, 152 (D. Mass. 2001)). This Court relied upon the First Circuit's emphasis on the permissiveness of group pleading when a case is at a pre-discovery posture. *Id*. (citing to *In re Cabletron Systems, Inc.*, 311 F.3d 11, 40-41 (1st Cir. 2002)).

In this case, the June 7, 2000 Memorandum was issued on behalf of all of the Defendants. Moreover, the fraudulent misrepresentations made after the execution of the Master Agreement were made in furtherance of Defendants' collective scheme to defraud the Plaintiff. Finally, the communications sent to the Plaintiff with regard to the C Round financing was a collective

---

that because the discussions with McCaw, ***in and of themselves***, were material, Defendants acted fraudulently by concealing this information from NACEPF and the other non-insider minority shareholders.

action, directed and controlled by the Defendants. Accordingly, the allegations in the Complaint comply with Rule 9 with respect to each of the Defendants.

## V. AS AN ALTERNATIVE TO DISMISSAL, PLAINTIFF MOVES TO AMEND THE COMPLAINT TO CONFORM THE PLEADINGS TO RULE 9(b).

A Rule 12(b)(6) motion is not a proper vehicle for resolving this case on the merits at this stage of the litigation. In furtherance of the policy of the liberality in allowing amendments, should this Court determine the facts as pled in the Complaint do not conform to the standards of Rule 12(b)(6) or Rule 9(b), Plaintiff should be permitted the opportunity to file an amended complaint. *Guilbeault v. R.J. Reynolds Tobacco Company*, 84 F. Supp. 2d. 263 (D.R.I. 2000); *In re GTech Holdings Corporation Securities Litigation*, 32 Fed. R. Serv. 3d 604 (D.R.I. 1995).

## CONCLUSION

For the reasons set forth herein, Plaintiff requests that the motion to dismiss the Complaint pursuant to Rule 12(b)(6) Brought by Defendants the Goldman Sachs Group, Inc., Gerry Cardinale, Rob Gheewalla and Jack Daly be denied in all respects.

Plaintiff,
By its Attorneys,

/s/ Matthew T. Oliverio
Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: March 16, 2007

**CERTIFICATION**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 16th day of March, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio