**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **No.: 1:06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants*.** | : | |

**OBJECTION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BY DEFENDANTS GS CAPITAL PARTNERS III, L.P. AND GS CAPITAL PARTNERS III (OFFSHORE), L.P.**

Plaintiff, North American Catholic Educational Programming Foundation, Inc., hereby objects to the motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure brought by Defendants GS Capital Partners III, L.P. and GS Capital Partners III (Offshore), L.P. on the grounds that on the grounds that Plaintiff has alleged a claim or claims against each of the Defendants upon which relief can be granted.

In support of its objection, Plaintiff relies on the accompanying Memorandum of Law and exhibits attached thereto.

North American Catholic Educational
Programming Foundation, Inc.
By its Attorneys,

/s/ Matthew T. Oliverio
Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

Dated: March 16, 2007

**CERTIFICATION**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 16th day of March, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff*,** | : | **C.A. No. 06-492S** |
| **v.** | : | |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants*.** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE BY DEFENDANTS GS CAPITAL PARTNERS III, L.P. AND GS CAPITAL PARTNERS III (OFFSHORE), L.P.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 1

LEGAL ARGUMENT ........ 2

I. GOLDMAN SACHS' LIABILITY MAY BE IMPUTED BY AND THROUGH THE ACTIONS OF ITS AGENTS, THE INDIVIDUAL DEFENDANTS. ........ 2

II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS. ........ 5

III. PLAINTIFF HAS SUFFICIENTLY PLED ITS CLAIMS AGAINST THE GOLDMAN SHAREHOLDER DEFENDANTS. ........ 5

IV. THE GOLDMAN SHAREHOLDER DEFENDANTS MAY BE LIABLE AS CONTROLLING SHAREHOLDERS. ........ 5

CONCLUSION ........ 6

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Emerson Radio Corp.*, 901 A.2d 751 (Del. Ch. 2006)................................................ 5

*Color Tile, Inc. v. Investcorp.*, 137 F. Supp. 2d. 502 (S.D.N.Y. 2001) .......................................... 6

*Fraoli v. Lemcke*, 328 F. Supp. 2d. 250 (D.R.I. 2004) ................................................................... 2

*Murphy v. Shearson Lehman Brothers, Inc.*, 42 F.3d 79 (1st Cir. 1994)........................................ 2

*Owl Fumigating Corp. v. California Cyanide Co., Inc.*, 24 F.2d 718 (D.Del. 1928)..................... 5

*Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002) .................................................................................... 5

## INTRODUCTION

Plaintiff North American Catholic Educational Programming Foundation ("NACEPF" or "Plaintiff") named Defendants GS Capital Partners III, L.P. , GS Capital Partners III (Offshore) and Goldman Sachs & Co. Verwaltungs (collectively the "Goldman Shareholder Defendants") as Defendants in this action based upon its understanding during the negotiation of the Master Agreement and the ensuing business relationship between Goldman Sachs, Clearwire Holdings, Inc. ("Clearwire" or "Holdings") and the ITFS Spectrum Development Alliance, Inc. (the "Alliance"), that "Goldman Sachs" meant and included each of the Goldman Sachs entities that had invested in the Clearwire/Alliance venture, and that the Individual Defendants, in addition to being employees of GS Group,[1] at all times acted on the behalf of and at the behest of the Goldman Shareholder Defendants.

## STATEMENT OF FACTS

So as not to unduly burden this Court with a repetitive recitation of the facts of this case, Plaintiff adopts and incorporates by reference the Introduction set forth in its Memorandum in Support of Plaintiff's Objection to the Defendant GS Group and the Individual Defendants' Rule 12(b)(6) Motion, pp. 1-4 ("Pl. 12(b)(6) Memo"). Plaintiff also adopts and incorporates by reference the Statement of Facts set forth in its Memorandum in Support of its Objection to Defendants' Jurisdictional Motion, pp. 3-17 filed herewith.

[1] If in fact Plaintiff has named the wrong Goldman Sachs entity, in light of Goldman Sachs' deliberate obfuscation, NACEPF should be permitted to undertake discovery to ascertain the proper entity and move to amend its Complaint accordingly. *See* Plaintiff's 12 (b)(b) Memorandum in response to GS Group and the Individual Defendants motion to dismiss, pp. 2-3.

## LEGAL ARGUMENT

### I. GOLDMAN SACHS'[2] LIABILITY MAY BE IMPUTED BY AND THROUGH THE ACTIONS OF ITS AGENTS, THE INDIVIDUAL DEFENDANTS.

It is apparently conceded that the Goldman Shareholder Defendants together held a majority interest in Clearwire by virtue of their combined investment of $47 million. (GS Shareholder 12 (b)(6) Memo, p. 2). Based upon this and other reasons, Plaintiff has alleged that the Goldman Shareholder Defendants had the means and the motive to direct, control and manipulate Clearwire and its business relationship with NACEPF and the Alliance. (Compl. ¶ 8) The primary basis for asserting liability against the Goldman Shareholder Defendants is the agency relationship between the Individual Defendants, GS Group and the Goldman Shareholder Defendants. (Compl. ¶¶ 9-13).

As alleged in the Complaint, the conduct of Individual Defendants was at all times in their capacity as agents for Goldman Sachs.[3] Under Rhode Island law, a principal is bound by the actions of its agent when the principal consents or knowingly permits the agent to act on its behalf. *See Murphy v. Shearson Lehman Brothers, Inc.*, 42 F.3d 79, 81-2 (1st Cir. 1994) (noting that agency may be based on apparent authority pursuant to Rhode Island law); *Fraoli v. Lemcke*, 328 F. Supp. 2d. 250, 278 (D.R.I. 2004) (stating that "[a]pparent authority may arise from indicia of authority given by the principal to the agent and does not have to be in the form of a direct communication to a third person"). When a third party reasonably and in good faith relies on the agent's authority to act for the principal and is subsequently injured as a result of such reliance, the liability of the agent is imputed to the principal. *Fraoli*, 328 F. Supp. 2d. at 278.

At all times during the course of their interactions with NACEPF, the Individual Defendants conveyed both directly and indirectly their status as agents of Goldman Sachs. At the inception of the investment negotiations, Cardinale and Gheewalla represented to NACEPF

---

[2] In keeping with its other memoranda filed with this Court, references to "Goldman Sachs" shall mean and refer to all of the named Goldman Sachs entity defendants.

[3] Whether or not the Individual Defendants acted at all times ***within the scope*** of that agency is a matter for discovery.

that they were acting as agents and representatives of Goldman Sachs. Primeau Aff. ¶ 4. On June 7, 2000, Cardinale sent a memo on behalf of the "Goldman Sachs Team," printed on Goldman Sachs letterhead, to NACEPF and other members of the Alliance representing that Goldman Sachs intended to invest its resources to not only pay for the ITFS license but also to finance the acquisition costs for the Alliance's entire portfolio of spectrum. Primeau Aff. ¶ 5, Exh. 1; Compl. ¶ 31. As stated in his affidavit, John Primeau, as NACEPF's representative, understood that the "Goldman Sachs Team," as it is designated in the June 7, 2000 memorandum, referred to Cardinale, Gheewalla and Daly who were employees and representatives of the investment company Goldman Sachs. Primeau Aff. ¶ 6. Further, Primeau understood that "Goldman Sachs" referred to a number of different corporate entities. Primeau Aff. ¶ 6. With this understanding and relying thereon, NACEPF, through Primeau, began negotiating directly with the Individual Defendants regarding the terms of the Master Agreement and engaged in numerous e-mail and telephonic communications with the Individual Defendants. Primeau Aff. ¶¶ 7-8, 15-16, Exh. 6.

During the course of negotiations, a working group list was developed and distributed to the parties by Goldman Sachs' attorneys, Fried Frank. Primeau Aff. ¶¶ 9-10, Exh. 3. The Clearwire/Spectrum Working Group List identifies each of the Individual Defendants as having a Goldman Sachs' business address, telephone number and e-mail address. Over the several months of negotiations between NACEPF, the other members of the Alliance and the Individual Defendants, the Individual Defendants made numerous representations on Goldman Sachs' behalf; representations that NACEPF relied upon in moving forward through the negotiation process. Primeau Aff. ¶¶ 7-8, 15-16, 20.

Pursuant to the terms of the Master Agreement, Cardinale, Daly and Gheewalla were each appointed as directors of Clearwire. Primeau Aff. ¶ 21, Exh. 4 and Exh. 7 at Schedule 9.2(e). Each of these individuals was appointed by Goldman Sachs. *Id*. Cardinale in particular was specifically appointed to continue on the Clearwire board as a notice agent of Goldman Sachs. Primeau Aff. ¶ 23, Exh. 8 at Section 15.

Subsequent to the execution of the Master Agreement, NACEPF continued to regularly communicate with the Individual Defendants in regard to Clearwire's performance obligations to the Alliance pursuant to the negotiated terms. Primeau Aff. ¶ 24, Exhs. 5 and 6. At all times during their ongoing business relationship, Primeau understood that the Individual Defendants were each acting in their capacity as agents of Goldman Sachs, even after they became controlling members of the Clearwire Board. Primeau Aff. ¶ 24.

Applying the governing principles of agency law to the set of facts described above leads to no other conclusion than that the Individual Defendants were indeed acting as agents for Goldman Sachs during the negotiation phase leading up to the execution of the Master Agreement and beyond. The agency relationship was not hidden; indeed through their direct communications and representations, the Individual Defendants made NACEPF aware that they were acting on behalf of their employer, Goldman Sachs, as well as the various Goldman Sachs investment entities. Indirectly, evidence of the agency relationship can be observed in the communications between the parties. Each time NACEPF communicated with one of the Individual Defendants, it was through a Goldman Sachs channel, i.e., e-mail, telephone or written communications directed towards the Goldman Sachs corporate offices. Furthermore, Goldman Sachs' action in appointing the Individual Defendants to the Clearwire board was an effective ratification of the agency relationship it enjoyed with Cardinale, Gheewalla and Daly. By appointing the Individual Defendants to Clearwire's board, Goldman Sachs affirmed the actions undertaken by them up to that point and publicly endorsed their continuing agent-principal relationship in connection with Clearwire.

Such an open and obvious agency relationship cannot be denied. As such, Goldman Sachs is liable for any misrepresentations, fraud or other injury perpetrated upon NACEPF by its duly appointed and authorized agents.

## II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

As argued in Plaintiff's 12 (b)(6) Memo, and incorporated herein by reference, the law applicable to this case is Rhode Island law and the application statute of limitations is ten (10) years. (Pl. 12(b)(6) Memo, pp. 7-13). Accordingly, all of Plaintiff's claims were timely filed within the statutory period.

The Goldman Shareholder Defendants' argument that Delaware law is applicable simply because it is the state of incorporation of Clearwire misreads *Young v. Lepone*, 305 F.3d 1, 13 (1st Cir. 2002). In *Young v. Lepone*, the Court did not state that law of incorporation ***must*** be applied, but merely "encouraged the court to take a closer look at Delaware law." *Id.* at 13. In light of the factual circumstances of this case, the Goldman Shareholder Defendants have not proffered any persuasive reason for this Court to apply Delaware's statute of limitations to Plaintiff's state law claims.

## III. PLAINTIFF HAS SUFFICIENTLY PLED ITS CLAIMS AGAINST THE GOLDMAN SHAREHOLDER DEFENDANTS.

Plaintiff's claims with respect to the Goldman Shareholder Defendants are based upon the agency principles argued above. Since Plaintiff has sufficiently alleged claims against the Individual Defendants, the claims against the Goldman Shareholder Defendants are viable as well. (Pl. 12(b)(6) Memo, pp. 13-32, incorporated herein by reference.)

## IV. THE GOLDMAN SHAREHOLDER DEFENDANTS MAY BE LIABLE AS CONTROLLING SHAREHOLDERS.

Contrary to the Goldman Shareholder Defendants' contention, it is not "well-settled" that they cannot be liable as shareholders of Clearwire. Indeed, the cases cited by the Goldman Shareholder Defendants acknowledge situations where shareholders may be liable based upon agency principles or control. *See Owl Fumigating Corp. v. California Cyanide Co., Inc.*, 24 F.2d 718, 720 (D.Del. 1928); *Abraham v. Emerson Radio Corp.*, 901 A.2d 751, 759 (Del. Ch. 2006)

(recognizing that claim against controlling shareholder could be brought where there was a breach of the duty of loyalty to the minority, not solely a breach of the duty of due care and diligence).

However, these are issues that cannot be resolved without discovery. *See Color Tile, Inc. v. Investcorp*., 137 F. Supp. 2d. 502 (S.D.N.Y. 2001) (resolution of duties owed by majority shareholders made upon motion for summary judgment after discovery).

**CONCLUSION**

For the reasons set forth herein, Plaintiff requests that the motion to dismiss the Complaint pursuant to Rule 12(b)(6) brought by Defendants GS Capital Partners III, L.P. , GS Capital Partners III (Offshore) and Goldman Sachs & Co. Verwaltungs be denied in all respects.

Plaintiff,
By its Attorneys,

/s/ Matthew T. Oliverio

Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: March 16, 2007

**CERTIFICATION**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 16th day of March, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio