UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, THE GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P. and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH,<br><br>Defendants. | ) | No.: 1:06-cv-00492-S-LDA |

**CONSOLIDATED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTIONS TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BROUGHT BY DEFENDANTS THE GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P., GERRY CARDINALE, JACK DALY AND ROB GHEEWALLA**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iv

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ..... 3

A. Choice-of-Law: The Breach of Fiduciary Duty Claims ..... 4

B. Choice-of-Law: The Master Agreement Claims ..... 4

1. Plaintiff Cannot Disavow Its Prior Assertion That Delaware Law Governs ..... 4

2. The Master Agreement Choice-of-Law Clause ..... 6

3. Plaintiff Misconstrues Rhode Island's Choice-of-Law Principles ..... 7

(a) Plaintiff's Claims Are Time-Barred Under The Laws of States With a More Significant Interest ..... 8

(b) Rhode Island Does Not Have Any Significant Relationship to the Claims ..... 9

C. The Statute of Limitation Is Not Tolled And Plaintiff's Claims Are Time-Barred ..... 11

II. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..... 13

A. Plaintiff Cannot Circumvent the Requirements of Rule 9(b) ..... 13

1. Plaintiff's Interference and Breach of Fiduciary Duty Claims Are Not Pled With the Requisite Specificity ..... 13

2. Plaintiff's Fraud Claims Are Not Pled With the Requisite Specificity ..... 15

3. The Group Pleading Doctrine Does Not Salvage Plaintiff's Claims ..... 17

B. The Allegations Against Defendants Do Not State a Cognizable Claim ..... 18

1. Fraudulent Inducement of the Master Agreement (Count I) ..... 19

2. Fraud in the Performance of the Master Agreement (Count II) ..... 20

3. Tortious Interference with Prospective Business Opportunities (Counts III and IV) ..... 21

4. Plaintiff's C Round Claims: Breach of Fiduciary Duties (Counts V and VI) and Fraud (Count VIII) .......... 23

5. Unjust Enrichment (Count VII) .......... 25

C. Plaintiff Fails to Plead any Claim Against The Goldman Shareholder Defendants .......... 25

D. Plaintiff Fails To Plead Any Claim Against GS Group .......... 26

III. LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED .......... 26

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bradley v. Google, Inc.*,
2006 U.S. Dist. LEXIS 94455 (N.D. Cal. Dec. 22, 2006)....21

*In re Cabletron Systems, Inc.*,
311 F.3d 11 (1st Cir. 2002) ....17 n.11, 18

*In re Commercial Money Center, Inc., Equipment Leasing Litig.*,
2006 U.S. Dist. LEXIS 72159 (S.D. Ohio Oct. 3, 2006) ....21

*Correa-Martinez v. Arrillaga-Belendez*,
903 F.2d 49 (1st Cir. 1990) ....27 n.21

*Crellin Technologies, Inc. v. Equipmentlease Corp.*,
18 F.3d 1 (1st Cir. 1994) ....11 n.8

*In re DaimlerChrysler AG Securities Litig.*,
2003 WL 22769051 (D. Del. Nov. 19, 2003)....7

*Davis v. Grusemeyer*,
996 F.2d 617 (3d Cir. 1993)....12

*E.&J. Gallo Winery v. Andina Licores S.A.*,
446 F.3d 984 (9th Cir. 2006)....10 n.6

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ....4, 23

*Educadores Puertorriquenos en Accion v. Hernandez*,
367 F.3d 61 (1st Cir. 2004) ....27 n.21

*Epstein v. Bard, Inc.*,
460 F.3d 183 (1st Cir. 2006) ....27 n.21

*Furman v. Ruger*,
2005 U.S. Dist. LEXIS 31172 (D. Me. Dec. 6, 2005)....14

*Gen. Elec. Capital Corp. v. DirectTV*,
94 F. Supp. 2d 190 (D. Conn. 1999) ....20

*Gerber v. Bowditch*,
2006 U.S. Dist. LEXIS 27552 (D. Mass. May 8, 2006)....14

*Goebel v. Schmid Brothers, Inc.*,
871 F. Supp. 68 (D. Mass. 1994) .......... 18

*Goodman v. President & Trustees of Bowdoin College*,
135 F. Supp. 2d 40 (D. Me. 2001) .......... 15

*Gray v. Derderian*,
365 F. Supp. 2d 218 (D.R.I. 2005) .......... 15 n.9

*Gray v. Derderian*,
472 F. Supp. 2d 172 (D.R.I. 2007) .......... 15 n.9

*Hayduk v. Lanna*,
775 F.2d 441 (1st Cir. 1985) .......... 14, 16

*Heritage Home Health, Inc. v. Capital Region Health Care Corp.*,
1996 U.S. Dist. LEXIS 22387 (D.N.H. Oct. 1, 1996) .......... 22

*Holmes v. Bateson*,
434 F. Supp. 1365 (D.R.I. 1977) .......... 24 n.18

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004) .......... 15 n.9

*LaPlante v. American Honda Motor Co., Inc.*,
27 F.3d 731 (1st Cir. 1994) .......... 11 n.8

*Langadinos v. American Airlines*,
199 F.3d 68 (1st Cir. 2000) .......... 15 n.9

*Lawton v. Nyman*,
327 F.3d 30 (1st Cir. 2003) .......... 25

*Maxcess, Inc. v. Lucent Technologies, Inc.*,
433 F.3d 1337 (11th Cir. 2005) .......... 6

*Micro Networks Corp. v. HIG Hightec, Inc.*,
195 F. Supp. 2d 255 (D. Mass. 2001) .......... 4

*Morales v. Potter*,
339 F.3d 9 (1st Cir. 2003) .......... 15 n.9

*Muslin v. Frelinghuysen Livestock Managers, Inc.*,
777 F.2d 1230 (7th Cir. 1985) .......... 5

*Nagy v. Riblet Products Corp.*,
79 F.3d 572 (7th Cir. 1996) .......... 4

*In re Norstan Apparel Shops, Inc.*,
2007 WL 965963 (Bankr. E.D.N.Y. Mar. 30, 2007) .......... 4

*Pinkham v. Collyer Insulated Wire Co., Inc.*,
1994 WL 385375 (D.R.I. Mar. 22, 1994) .......... 7 n.2

*Putnam Resources v. Pateman*,
958 F.2d 448 (1st Cir. 1992) .......... 6

*Robertson Stephens Inc. v. Chubb Corp.*,
473 F. Supp. 2d 265 (D.R.I. 2007) .......... 11 n.8

*Rodowicz v. Massachusetts Mutual Life Insurance Co.*,
192 F.3d 162 (1st Cir. 1999) .......... 23 n.16

*Rosen v. Textron*,
321 F. Supp. 2d 308 (D.R.I. 2004) .......... 17 n.11

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) .......... 10 n.6

*Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*,
976 F.2d 58 (1st Cir. 1992) .......... 24 n.16

*Scully Signal Co. v. Joyal*,
881 F. Supp. 727 (D.R.I. 1995) .......... 8 n.3

*Suna v. Bailey Corp.*,
107 F.3d 64 (1st Cir. 1997) .......... 16

*Swope v. Siegel-Robert, Inc.*,
243 F.3d 486 (8th Cir. 2001) .......... 10

*Taylor v. Ford Motor Co.*,
2006 WL 2228973 (D. Me. Aug. 3, 2006) .......... 15

*United States v. Byrum*,
408 U.S. 125 (1972) .......... 25

*Wallingford Shopping, L.L.C. v. Lowe's Home Centers, Inc.*,
2001 WL 96373 (S.D.N.Y. Feb. 5, 2001) .......... 20 n.13

*Warriner v. Stanton*,
475 F.3d 497 (3d Cir. 2007) .......... 10 n.6

*Wheelock v. State*,
2006 WL 3391507 (D.R.I. Nov. 22, 2006) .......... 15 n.9

*Wolff v. Rare Medium, Inc.*,
210 F. Supp. 2d 490 (S.D.N.Y. 2002) .......... 15

**STATE CASES**

*Cerullo v. Harper Collins Publishers, Inc.*,
2002 Del. Super. LEXIS 110 (Del. Super. Feb. 19, 2002) .......... 5

*Campanelli v. Vescara*,
75 R.I. 71 (R.I. 1949) .......... 19 n.12

*Cribb v. Augustyn*,
696 A.2d 285 (R.I. 1997) .......... *passim*

*DeBonaventura v. Nationwide Mutual Insurance Co.*,
419 A.2d 942 (Del. Ch. 1980) .......... 23

*In re Dean Witter Partnership Litig.*,
1998 Del. Ch. LEXIS 133 (Del. Ch., July 17, 1998) .......... 12, 13

*Najarian v. National Amusements, Inc.*,
768 A.2d 1253 (R.I. 2001) .......... 8 n.3

*Nisenzon v. Sadowski.*,
1994 R.I. Super. LEXIS 46 (R.I. Super. Ct. Mar. 4, 1994) .......... 20

*Pomeranz v. Museum Partners L.P.*,
2005 Del. Ch. LEXIS 10 (Del. Ch. Dec. 11, 2005) .......... 11

*Solow v. Aspect Resources, LLC*,
2004 WL 2694916 (Del. Ch. Oct. 19, 2004) .......... 19 n.12, 20

*Taylor v. Massachusetts Flora Realty*,
840 A.2d 1126 (R.I. 2004) .......... 10 n.7, 11 n. 8

*Trenwick America Litigation Trust Fund v. Ernst & Young LLP*,
906 A.2d 168 (Del. Ch. 2006) .......... 23 n.16

*Tuckman v. Aerosonic Corp.*,
1976 WL 954 (Del. Ch. July 8, 1976) .......... 12

*In re Tyson Foods, Inc.*,
2007 WL 1018209 (Del. Ch. Feb. 6, 2007) .......... 12

**FEDERAL RULES**

Fed. R. Civ. P. 8 .......... 14

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 1, 27 n.21

Defendants The Goldman Sachs Group, Inc. ("GS Group"), GS Capital Partners III, L.P. ("GS Capital Partners"), GS Capital Partners III Offshore, L.P. ("GS Offshore"), Gerry Cardinale, Rob Gheewalla, and Jack Daly submit this consolidated reply memorandum of law in further support of their respective Motions To Dismiss The Complaint Pursuant To Rule 12(b)(6).[1]

## INTRODUCTION

Plaintiff's burden on this motion to dismiss was to demonstrate how plaintiff's belated claims were commenced within the applicable statute of limitations; and alternatively why the pleading otherwise satisfies Rules 12(b)(6) and 9(b). Plaintiff's opposition fails to meet that burden in any respect.

First: Plaintiff does not dispute that each of its claims are barred under Delaware's statute of limitations. Rather, plaintiff asserts that Rhode Island's longer statute of limitations should apply – an assertion that is plainly contradicted by Rhode Island law (which deems statutes of limitations to be substantive rules subject to Rhode Island conflicts of law principles); the internal affairs doctrine (which requires application of Delaware law to plaintiffs' claims); and plaintiff's own prior application of Delaware law to its identical tort claims asserted in its Delaware proceeding (which plaintiff attempts to retreat from in a vain footnote). Plaintiff's alternative argument that

---

1 The following short form citations are used throughout this memorandum: "Defendants' Jurisdictional Memorandum" or "Def. Jur. Mem."; "Defendants' 12(b)(6) Memorandum" or "Def. 12(b)(6) Mem."; "Goldman Shareholder Defendants' 12(b)(6) Memorandum" or "SH Def. 12(b)(6) Mem."; "Plaintiff's Jurisdictional Opposition Memorandum" or "Pl. Jur. Opp. Mem."; "Plaintiff's 12(b)(6) Opposition Memorandum" or "Pl. 12(b)(6) Opp. Mem."; and "Plaintiff's Goldman Shareholder 12(b)(6) Opposition Memorandum" or "Pl. SH 12(b)(6) Opp. Mem." Unless otherwise stated, defined terms shall have the same meaning consistent with prior briefs filed in connection with these motions.

the Delaware statute of limitations was tolled with respect to the C Round Claims fares no better, as it is unsupported by any factual allegations.

Second: Plaintiff's opposition fails to show how the allegations in the complaint satisfy the heightened pleading requirements of Rule 9(b). The law is clear that Rule 9(b) applies to all claims – no matter how plaintiff captions them – where "fraud lies at the core of the action" and requires that a plaintiff allege the "who, what, when, and where" of the fraud.

- Plaintiff attempts to insulate its claims for tortious interference and breach of fiduciary duty from Rule 9(b) altogether, arguing that these claims need only satisfy Rule 8's more lenient pleading standard because they are not formally labeled "fraud" claims. Plaintiff's position fails given the numerous references to "fraud" and "misrepresentations" in the specific allegations on which these claims are predicated and that these claims expressly incorporate all the complaint's fraud allegations.

- Although Plaintiff concedes that it must plead its claims actually entitled "fraud" and "fraudulent inducement" with particularity, nowhere does plaintiff identify a specific and actionable misstatement, much less when and where it was made.

- Nor does plaintiff identify which (if any) defendant made the supposed misstatement, arguing instead that the "group pleading doctrine" relieves it of this obligation. However, the group pleading doctrine is unavailing where, as here, the plaintiff neither identifies any misstatement in "group published information" nor alleges any facts as to the role any defendant played in the making of the supposed misstatements.

Third: Beyond plaintiff's failure to overcome the statute of limitations bar and to particularize its claims, its complaint still must be dismissed for the most fundamental reason: plaintiff fails to allege basic and critical facts necessary to support each of its claims.

- Plaintiff identifies as the basis for its fraudulent inducement claim a memorandum containing a "preliminary" proposal, which, as a matter of law, cannot support a claim of fraud. No falsity of any factual statement in the memorandum is even alleged, and Plaintiff makes no attempt to

show how it reasonably relied on such preliminary statements when it was aware of the actual terms of the fully-integrated Master Agreement, which it executed.

- Likewise unavailing is plaintiff's argument that it only continued to perform its obligations under the Master Agreement because of defendants' fraud. As a matter of law there is no claim for having been defrauded into performing one's lawful obligations.

- Plaintiff concedes that it has not alleged any specific business opportunity which gives rise its tortious interference claims, much less defendants' knowledge of such an opportunity. Plaintiff's argument that it need not allege these facts because there was a general market for its spectrum of which defendants were aware is contrary to well-established law.

- Plaintiff fails to counter defendants' arguments that it cannot establish the elements of its C Round Financing Claims. Plaintiff argues only that materiality is a question of fact, which is directly contrary to the Delaware rule that preliminary negotiations (and the Complaint does not even allege this much) are immaterial as a matter of law – even more so here, where plaintiff admittedly knew that Clearwire was seeking a strategic partner. Plaintiff offers no response at all to defendants' arguments that it cannot establish reliance or damages; it merely declares these elements satisfied.

Accordingly, for the reasons explained in defendants' opening briefs, and discussed in further detail below, plaintiff's claims simply cannot survive, as a matter of law.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Hoping to revive its claims – all of which were time-barred when this action was commenced (*see* Def. 12(b)(6) Mem. at 10-14) – plaintiff ignores well-established choice-of-law principles, as well as its own prior application of Delaware law to its claims, and asserts that Rhode Island's more generous limitations periods should apply. Alternatively, plaintiff argues that the running of the three-year Delaware limitations

period should be tolled for some of its claims. None of plaintiff's contentions has any merit.

### A. Choice-of-law: The Breach of Fiduciary Duty Claims

Plaintiff's assertion that Rhode Island law governs its claims for breach of fiduciary duty by the defendants in their respective capacities as directors and shareholders of Clearwire – a Delaware corporation – is completely untenable. Under the internal affairs doctrine, Delaware law unquestionably governs these claims. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996); *Micro Networks Corp. v. HIG Hightec, Inc.*, 195 F. Supp. 2d 255, 266 n.1 (D. Mass. 2001). Application of Delaware law in these circumstances includes Delaware's three-year statute of limitations for breach of fiduciary claims. *See Cribb v. Augustyn,* 696 A.2d 285, 288 (R.I. 1997) (statute of limitations is a substantive rather than procedural rule); *In re Norstan Apparel Shops, Inc.*, 2007 WL 965963, at *11 (Bankr. E.D.N.Y. Mar. 30, 2007) (for breach of fiduciary duty claims involving Pennsylvania corporation, "the internal affairs doctrine controls and Pennsylvania's statute of limitations applies"). As set forth in Def. 12(b)(6) Mem. (at 12, 14), this three-year limitation bars the breach of fiduciary duty claims.

### B. Choice-of-law: The Master Agreement Claims

#### 1. <u>Plaintiff Cannot Disavow Its Prior Assertion That Delaware Law Governs</u>

Plaintiff's contention that Rhode Island law governs its claims (Pl. 12(b)(6) Opp. Mem. at 7-8) is, to say the least, quite surprising, since NACEPF itself has previously argued that Delaware law controlled. In the NACEPF Delaware Action, NACEPF raised the exact same fraudulent inducement and tortious interference claims it asserts here (*see*

Def. 12(b)(6) Mem. at 9 & Exh. D) and, in response to the defendants' motion to dismiss those claims pursuant to Rule 12(b)(6), it argued that under Delaware law it had stated proper claims for relief. *See* NACEPF Del. Ch. Answering Brief at 30-44 (Def. 12(b)(6) Mem. at Exh. G) (citing only Delaware law in support of its fraudulent inducement and tortious interference claims).

Buried in a footnote, plaintiff feebly attempts to explain away this now inconvenient fact, contending: "The fact that NACEPF cited to Delaware law in a Delaware action does not amount to a contract regarding the choice-of-law, nor is it any way binding on this Court or the claims asserted in this proceeding." Pl. 12(b)(6) Opp. Mem. at 11 n.2. Plaintiff cannot now disavow its prior application of Delaware law. Nor can it avoid the legal ramifications of its prior filings by precluding this court from reviewing these documents as it now tries to argue. *See* Pl. 12(b)(6) Opp. Mem. at 6.

As a threshold matter, plaintiff's previous acceptance of Delaware law as the governing law should preclude it from asserting the contradictory position before this Court that Rhode Island law applies. Delaware applies the rule of *lex loci delicti* (law of the place of the injury) and not *lex fori* (law of the forum) to resolve choice-of-law conflicts. *See Cerullo v. Harper Collins Publishers, Inc.*, 2002 Del. Super. LEXIS 110, at *13 n.7 (Del. Super. Feb. 19, 2002). Accordingly, plaintiff's decision to bring the previous action in a Delaware court did not mandate the application of Delaware law. In failing to assert that Delaware law did not govern its tort claims, plaintiff should be deemed to have waived any right to raise the issue at this juncture. *See Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985) (acquiescence in choice-of-law amounts to waiver of any objection to such choice).

At the very least, NACEPF's position here calls into serious question its veracity. As the First Circuit colorfully (and accurately) put it: "We are also constrained to remark that [the defendant], arguing here for the application of Rhode Island's substantive rule, *does so with the institutional equivalent of a forked tongue.* In the lower court, [the defendant] laced his submissions with citations to New York caselaw." *Putnam Resources v. Pateman*, 958 F.2d 448, 467 (1st Cir. 1992) (emphasis added). Thus, even if NACEPF is not technically precluded from asserting a contradictory position as to which state's law should govern its claims, its prior position on the issue is nonetheless significant and must inform the choice-of-law analysis.

2. The Master Agreement Choice-of-law Clause

As discussed in detail in Def. 12(b)(6) Mem. at 11, the Master Agreement, to which plaintiff and Clearwire were parties, expressly provides that it is to be "governed by and construed in accordance with the laws of the State of Delaware without giving effect to the principles of conflicts of law *which might result in the application of the laws of any other jurisdiction*." Mansour Decl. Exh. C (Master Agreement § 20). Each of plaintiff's claims arising out of the Master Agreement is thus governed by this choice-of-law clause, as is the statute of limitations. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1342 (11th Cir. 2005) (construing choice-of-law provision designating New York law to bar plaintiff's claims for, *inter alia*, fraudulent or intentional misrepresentation, negligent misrepresentation, and fraudulent inducement under New York statutes of limitations).

Plaintiff tries to evade this provision (and the consequence that all of its claims are time-barred) by arguing that, because the defendants were not signatories to the Master Agreement, it has no effect here. This contention is unavailing. Plaintiff is

unquestionably bound by this provision, and the Individual Defendants, as directors of Clearwire (which is a signatory), likewise should rationally be entitled to rely on it. *Cf., e.g., In re DaimlerChrysler AG Sec. Litig.*, 2003 WL 22769051, at *3 (D. Del. Nov. 19, 2003).

3. Plaintiff Misconstrues Rhode Island's Choice-of-law Principles

Even if this Court determines that neither the prior application of Delaware law nor the choice-of-law provision are controlling here, plaintiff's assumption that Rhode Island law applies is nonetheless erroneous. Plaintiff acknowledges that a federal court sitting in diversity must apply the choice-of-law principles of the forum state to determine the appropriate statute of limitations, but then completely disregards current Rhode Island choice-of-law principles.

Instead, plaintiff advances a frivolous and disingenuous argument for the automatic application of Rhode Island statutes of limitations by characterizing limitations periods as "procedural" matters – a rule that has been expressly rejected by the Rhode Island Supreme Court.[2] In *Cribb v. Augustyn* (on which *plaintiff relies* elsewhere in its 12(b)(6) Opposition Memorandum), the Rhode Island Supreme Court held that the question of which state's statute of limitations applies is a substantive issue, rather than procedural one, and should be dictated by a weighing of interests. *Cribb*, 696 A.2d 285, 288 (R.I. 1997) (in determining whether to apply Rhode Island or New Hampshire statute of limitations, "[the Court] follow[ed] . . . the interest-weighing approach and look[ed] at the particular case facts and determine therefrom the rights and liabilities of the parties

2 The cases on which plaintiff relies in support of its position were all decided prior to the 1997 *Cribb* decision and acknowledge that a federal court must determine the appropriate statute of limitations in accordance with choice-of-law principles of the forum state. *See, e.g., Pinkham v. Collyer Insulated Wire Co., Inc.*, 1994 WL 385375, at *3 (D.R.I. Mar. 22, 1994).

'in accordance with the law of the state that bears the most significant relationship to the event and the parties.'") (citations omitted). This is fully consistent with comment g to Restatement (Second) of Conflict of Laws § 142: "where the domicil of the plaintiff is in the state of the forum and that of the *defendant is in the other state with the most significant relationship to important issues in the case* . . . the forum should entertain the claim *only in extreme and unusual circumstances.*"[3] Thus, because the only interest Rhode Island has in this action is that plaintiff is domiciled here, if the law of any other state with a more significant interest bars any of the claims, those claims must be dismissed. This is the case here.

(a) Plaintiff's Claims Are Time-Barred Under the Laws of States With a More Significant Interest

Clearwire is incorporated in Delaware, which, as discussed above, was also selected in the Master Agreement as the governing law. And, as noted *supra* at 4-5, NACEPF itself assumed Delaware law applied to its claims; NACEPF commenced a lawsuit against Clearwire in Delaware; NACEPF brought two suits against the same defendants in Delaware; and NACEPF's counsel brought suit in Delaware against Clearwire and its officers and directors (which suit is still pending). Unquestionably, Delaware substantive law – including its three-year statute of limitations – should control here.[4]

---

3 Rhode Island courts (including the Supreme Court in *Cribb*) frequently look to the Restatement on choice-of-law issues. *See Cribb*, 696 A.2d at 288; *Najarian v. Nat'l Amusements, Inc.*, 768 A.2d 1253 (R.I. 2001); *Scully Signal Co. v. Joyal*, 881 F. Supp. 727 (D.R.I. 1995) (collecting cases).

4 Alternatively, even if Delaware were not the state with the most significant interest (it is), Rhode Island would not be next in line – or even close. Clearwire, the focal point for all plaintiff's claims, operated out of Texas (and that is where many of the communications referenced in the Primeau Affidavit originated). The majority of defendants are domiciled in New York, as were the representative for the Alliance and the attorneys referenced in the Primeau Affidavit. Each of

(b) Rhode Island Does Not Have Any Significant Relationship to the Claims

Plaintiff takes note of the weighted interest test and conclusorily contends that, even under that rule, Rhode Island's statute of limitations would apply. Plaintiff's analysis, however, consists entirely of a bald pronouncement that Rhode Island law applies, supported by a citation to *Cribb v. Augustyn* – a case that provides no support for NACEPF. Pl. 12(b)(6) Opp. Mem. at 9 (citing *Cribb*, 696 A.2d at 288). In *Cribb*, the Rhode Island Supreme Court did apply Rhode Island's limitations period; however, its reason for doing so was that "[a]ll the parties are domiciled residents of Rhode Island, and the contractual relationship between the parties was negotiated and consummated here in Rhode Island. In addition, at the time of the filing of the instant action, all the parties were still domiciled, living and employed in Rhode Island." *Id.* at 288. Rhode Island has no such interest in the present action, and a review of the relevant considerations – which NACEPF chose not to conduct – leads to a different result.

To determine which state's law should apply, the primary factors to be considered are (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests and (5) application of the better rule of law. *Id.* These factors, to the extent relevant, weigh heavily in favor of application of Delaware law.[5]

- Because Clearwire is incorporated in Delaware and plaintiff agreed to a choice-of-law provision in the Master Agreement selecting Delaware law and since there are currently pending in Delaware two additional cases involving these same

---

these states has a greater connection with, and interest in, this dispute than Rhode Island, and each of these states would bar most or all of the plaintiff's claims.

5 Consideration of the forum's governmental interest is not implicated here.

claims (and mostly these same parties) "predictability of result" heavily favors the application of Delaware law.

- Giving effect to the choice-of-law clause and the internal affairs doctrine would also further the "maintenance of interstate and international order."[6]

- Given that Delaware law unquestionably governs the breach of fiduciary duty claims (*see supra* at 4), "simplification of the judicial task" would best be achieved by applying Delaware law to all claims.

- Delaware also has been frequently recognized as having a particular expertise in matters alleging corporate misconduct (*see Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 496 (8th Cir. 2001)) and may well provide the "better rule of law."

In addition to the foregoing five factors, *Cribb* also advised consideration of the context of the claim asserted and reviewed the choice-of-law factors relevant to tort claims, as set forth in Section 145 of the Restatement. These include (a) the location where the conduct leading to the injury occurred, (b) the parties' domicile, residence or place of business, (c) the location where the parties' relationship was centered, and (d) the location where the injury occurred. *See Cribb*, 696 A.2d at 288. The *Cribb* court further explained that the latter two factors trump the first two. *Id.* Here, these two factors heavily weigh against the application of Rhode Island law, since neither the allegedly injurious conduct nor the injury took place in Rhode Island, nor was the parties' relationship centered in Rhode Island. *See* Def. Jur. Mem. at 15-19. The only fact favoring the application of Rhode Island Law is, once again, that plaintiff resides here.[7]

---

6 *E.&J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 993 (9th Cir. 2006) (noting that choice-of-law clauses "can specify 'in advance the forum in which disputes shall be litigated and the law to be applied' and that this function is 'indispensable' to the 'achievement of the *orderliness and predictability* essential to any business transaction.'") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974)) (emphasis added); *see also Warriner v. Stanton,* 475 F.3d 497, 503 (3d Cir. 2007) (interests of comity weigh against permitting a claim determined to be stale by another state).

7 Plaintiff undoubtedly believes that it was injured in Rhode Island as well. For reasons stated in Def. Jur. Mem., this is not the case, but even if it were, this is not sufficiently compelling to warrant the application of Rhode Island law. *See Taylor v. Massachusetts Flora Realty,* 840 A.2d 1126, 1129 (R.I. 2004) (court considered the *Cribb* factors and applied Massachusetts law to claim

However, this alone does not call for the application of Rhode Island law, particularly because the analysis considers the "domiciles, residences and places of business" of *all the parties* and here, the majority of the defendants reside and maintain their primary place of business in New York (and none are in Rhode Island). Accordingly, this factor is, at best, negligible, and the choice-of-law analysis cannot be said to favor Rhode Island and Delaware's three-year limitations period bars all of NACEPF'S claims.[8]

### C. The Statute of Limitation Is Not Tolled And Plaintiff's Claims Are Time-Barred

NACEPF advances no tolling argument whatsoever with respect to its fraud, fraudulent inducement, and tortious interference claims (Pl. 12(b)(6) Opp. Mem. at 11-13), it does offer, however, a conclusory statement that its breach of fiduciary duty claims should be tolled because the "McCaw negotiations" were "fraudulently concealed" and "were not 'knowable' until after the actual transaction was completed." See Pl. 12(b)(6) Opp. Mem. at 13. NACEPF's argument fails since it has not met its burden to plead specific facts to justify the tolling of the limitations period. *See Pomeranz v. Museum Partners L.P.*, 2005 Del. Ch. LEXIS 10, at *7 (Del. Ch. Dec. 11, 2005).

---

involving a Rhode Island resident). If this fact alone could override all other aspects of the parties' relationship, the court in *Cribb* would have applied the law of New Hampshire, where the fire occurred, but it did not.

8 The cases on which plaintiff relies to conclude that the weighted interest test favors the application of Rhode Island law are inapposite here. *Taylor*, 840 A.2d 1126 was a slip-and-fall premises liability action applying Massachusetts law where the injury occurred in a Massachusetts store. The location of the injury is given greater weight in personal injury cases. *See* Restatement (Second) Conflict of Laws § 145 cmt. e. *LaPlante v. American Honda Motor Co., Inc.*, 27 F.3d 731 (1st Cir. 1994) was a product liability action involving the sale of a vehicle to a Rhode Island resident, it was not a complex commercial transaction where the parties had selected a governing law. *Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 11-12 (1st Cir. 1994), found that Rhode Island had an interest in misrepresentations made during the course of litigation in the Rhode Island courts; Rhode Island has no such governmental interest here where any statements allegedly made to plaintiff were not made in Rhode Island and could just as easily have been sent to any other state. Finally, *Robertson Stephens Inc. v. Chubb Corp.*, 473 F. Supp. 2d 265 (D.R.I. 2007), arose out of an insurance dispute that occurred wholly within the state of Rhode Island and "all the communications surrounding the insurance claim... occurred in [plaintiff]'s Rhode Island office." In this case, nothing happened in Rhode Island.

A limitations period may be tolled only in certain narrowly defined circumstances (see *In re Dean Witter Partnership Litig.*, 1998 Del. Ch. LEXIS 133, at *20-21 (Del. Ch. July 17, 1998)), and a plaintiff seeking to toll the statute of limitations for fraudulent concealment has the burden of pleading – with the particularity required by Rule 9(b) – *specific facts* that would (1) identify an "affirmative act of concealment" or "actual artifice" that prevented it from gaining knowledge of the facts *and* (2) demonstrate that it did not and could not have discovered the cause of action through the exercise of reasonable diligence. *Id; Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993). Plaintiff offers no such facts and fails to meet its burden.

A plaintiff may not merely invoke the fraudulent concealment doctrine by "alleg[ing] in retrospect that the defendant did not confess to the allegation of which the plaintiff is accusing him." *Tuckman v. Aerosonic Corp.*, 1976 WL 954, at *1 (Del. Ch. July 8, 1976). But this is precisely what NACEPF tries to do here as the totality of its argument is that "the McCaw deal was not consummated until on or after November 14, 2003 and did not become public knowledge until some time thereafter." *See* Pl. 12(b)(6) Opp. Mem. at 12-13. However, public knowledge is not the standard. In all cases of tolling, the limitations period is suspended only until the plaintiff itself – not the public at large – is put on inquiry notice, *i.e.*, the point in time at which the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury. *In re Tyson Foods, Inc.*, 2007 WL 1018209, at *12 (Del. Ch. Feb. 6, 2007); *In re Dean Witter*, 1998 Del. Ch. LEXIS 133 at *23. Plaintiff's complaint offers no explanation as to why the information it sought (if it existed, it did not) would not have been discoverable by the exercise of reasonable diligence.

Indeed, the notice in the August 2003 offer letters disclosing that Clearwire was negotiating with third parties specifically invited the shareholders to call for additional details. *See* Def. 12(b)(6) Mem. at 32. Plaintiff has not alleged (and the Primeau Affidavit does not reference) any effort to directly inquire of any of the defendants whether they were seeking any strategic partners for Clearwire and thus is not entitled to any tolling. *See In re Dean Witter*, 1998 Del. Ch. LEXIS 133, at *15-16 (statute of limitations begins to run "at the time of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action").

## II. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

As detailed in Def. 12(b)(6) Mem., plaintiff's claims are fatally flawed, both as a matter of pleading and as a matter of law. NACEPF does not respond to the clear deficiencies, but tries instead to circumvent the Rule altogether. Likewise, rather than addressing its substantive pleading failures NACEPF just disregards critical elements of its claims.

### A. Plaintiff Cannot Circumvent the Requirements of Rule 9(b)

Plaintiff does not contend that the complaint alleges the facts required pursuant to Rule 9(b). Instead, because it cannot satisfy Rule 9(b), Plaintiff argues that the rule does not apply to certain of its claims and that, although it does apply to the claims specifically entitled "fraud," the "group pleading doctrine" absolves it of any obligation to plead concrete facts. Pl. 12(b)(6) Opp. Mem. at 13-14. Plaintiff is wrong.

#### 1. <u>Plaintiff's Interference and Breach of Fiduciary Duty Claims Are Not Pled With the Requisite Specificity</u>

Plaintiff asserts that it "must be emphasized" that its breach of fiduciary duty and tortious interference claims are not subject to the heightened pleading standard of Rule

9(b). Pl. 12(b)(6) Opp. Mem. at 13. Plaintiff could not be more wrong. It is well-established that Rule 9(b) governs all claims where "fraud lies at the core of the action," regardless of the specific claim asserted. Def. 12(b)(6) Mem. at 15 n.11; *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985); *see also Gerber v. Bowditch*, 2006 US Dist. LEXIS 27552, *41-42 (D. Mass. May 8, 2006) (Rule 9(b) "extends to all claims of fraud, whatever may be the theory of legal duty, statutory, tort, contractual or fiduciary") (citations omitted). This standard unquestionably applies to plaintiff's claims, each of which expressly incorporates all allegations of fraud in the complaint (Compl. ¶ 69, 75, 81, 85) and alleges specifically:

- Count III: "there were ready, willing and able acquirers for those expiring licenses, but none of those potential acquisitions went forward because of the Defendants' *continued misrepresentations.*" Compl. ¶¶ 38, 69.

- Count IV: "The Defendants further interfered with the Alliance itself, negotiating separate settlements with Alliance members HITN and ITF, *based upon false misrepresentations* . . ." (Compl. ¶ 76); "NACEPF was ready willing and able to acquire additional spectrum on the market, which opportunity was prevented by the defendants' fraudulent conduct (Compl. ¶ 78).

- Count V: "By the course of misconduct alleged above," the defendants engaged in self-dealing transactions and "*fail[ed] to disclose* the nature of those transactions." Compl. ¶ 83.

- Count VI: Defendants "*misrepresented and/or concealed the details*" of the McCaw Sale; that their actions were "*designed to create [a] false impression.*" Compl. ¶¶ 87-89.

Plaintiff's citation to cases to support its proposition that its complaint satisfies the general notice pleading standard of Rule 8 completely misses the mark. First, satisfaction of Rule 8 does not excuse the failure to meet the requirements of Rule 9(b). *See Furman v. Ruger*, 2005 U.S. Dist. LEXIS 31172, at *3 (D. Me. Dec. 6, 2005) ("Rule 9(b) thus creates an exception to the low bar set by Rule 8's notice pleading standard."). Moreover, none of the cases on which plaintiff relies involves a claim for breach of

fiduciary duty or tortious interference, or is otherwise remotely related to the nature of the claims asserted here.[9] In contrast, courts have repeatedly held that 9(b) applies to claims of tortious interference or breach of fiduciary duty where fraud is alleged. *See, e.g., Goodman v. President & Trs. of Bowdoin College*, 135 F. Supp. 2d 40, 59 (D. Me. 2001) (tortious interference); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 500 (S.D.N.Y. 2002) (tortious interference); *Taylor v. Ford Motor Co.*, 2006 WL 2228973, at *3 (D. Me. 2006) (fiduciary duty). As explained in Def. 12(b)(6) Mem. at 16-18, plaintiff has not alleged any particularized facts in support of these claims, and plaintiff does not argue that it has.

2. <u>Plaintiff's Fraud Claims Are Not Pled With the Requisite Specificity</u>

With respect to its fraud claims (Counts I and II), Plaintiff contends that it has satisfied Rule 9(b)'s specificity requirement but does not point to any actual statement made by any defendant that was known to be false or misleading (much less actionably and intentionally so). Rather, for its fraudulent inducement claim, plaintiff points to allegations that (i) sometime in the more than one year period "from 2000 into March 2001" the "Goldman Defendants" "consistently made representations" and "emphasized that Goldman Sachs was committed . . . to providing adequate capital" (Compl. ¶ 30) and

---

9 *See Morales v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003) (claims of retaliation and discrimination, conspiracy, breach of collective bargaining agreement, and intentional infliction of emotional distress); *Gray v. Derderian*, 365 F. Supp. 2d 218 (D.R.I. 2005) and *Gray v. Derderian*, 472 F. Supp. 2d 172 (D.R.I. 2007) (negligence, strict liability, and breach of warranty claims); *Wheelock v. State*, 2006 WL 3391507 (D.R.I. Nov. 22, 2006) (civil action for deprivation of rights brought pursuant to 42 U.S.C. § 1983); *Langadinos v. American Airlines*, 199 F.3d 68 (1st Cir. 2000) (violation of Warsaw Convention arising out of an assault). Indeed, *Langadinos* acknowledges that a heightened pleading requirement is necessary in a few specific situations, including standing, RICO violations, allegations of unlawful discrimination, and, of course, fraud or mistake. *Id.* at 73. *LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) did not even address the question of whether Rule 9(b) should apply.

(ii) that the June 7, 2000 memorandum was fraudulent because "Goldman Sachs did not intend" to do what it said. Pl. 12(b)(6) Opp. Mem. at 25. These generalized statements are woefully inadequate under Rule 9(b). *See Hayduk*, 775 F.2d at 443 (9(b) requires allegations of "who, what, when and where"); *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) ("Rule 9(b)'s relaxation of the scienter requirement is not intended to allow plaintiffs to 'base claims of fraud on speculation and conclusory allegations.'") (citation omitted).

For its claim of fraud in the performance of the Master Agreement, plaintiff does not appear to dispute that its allegation that "the Defendants acted fraudulently" (Compl ¶¶ 66, 67) is not sufficiently particular and, instead, points to paragraphs 33-37 in the complaint as providing the "specific allegations of fraud." Pl. 12(b)(6) Opp. Mem. at 37. However, neither these, nor any other paragraph in the complaint, identifies a single specific misstatement. Indeed, the deficiencies in this pleading are highlighted by NACEPF's brief which argues that the "time" is sufficiently specified as "subsequent to the execution of the Master Agreement [March 2001] . . . until May 2002" and the "place" is "within communications between the parties." Pl. 12(b)(6) Opp. Mem. at 28. This is totally inadequate to plead fraud.

Plaintiff similarly fails to explain how its claim for fraud in connection with the C Round satisfies Rule 9(b). Although plaintiff alleges material omissions in three documents it *received from Clearwire*, as explained in Def. 12(b)(6) Mem. at 28-30, there is a striking absence of any facts whatsoever which support the inference that the defendants had any advance knowledge of the sale or made any actionable statements – and plaintiff's response does not identify any. The simple fact that the sale took place

(which is the only objective fact alleged) does not permit the plaintiff to draw the inference of undisclosed knowledge of *the defendants* at the time of the C Round Financing. *See* Def. 12(b)(6) Mem. at 31.[10]

3. The Group Pleading Doctrine Does Not Salvage Plaintiff's Claims

In an attempt to get around Rule 9(b), NACEPF invokes the "group pleading doctrine" as a supposed substitute for the required specificity. NACEPF, however, fundamentally misunderstands this doctrine, which cannot salvage the complaint.

For NACEPF to impute a false statement to a collective group, it is essential that NACEPF first identify the actual statement it wishes to impute and the reason it is false. Here, plaintiff cites as the supposed group published misstatements (1) the June 7, 2000 Memorandum, but as discussed *infra* at 19, plaintiff fails to identify even one false statement therein; (2) "the fraudulent misrepresentations made after the execution of the Master Agreement," but plaintiff fails to provide any further identifying information[11]; and (3) communications sent to the plaintiff *by Clearwire* with regard to the C Round financing, which, as discussed *supra* at 16-17, are not alleged to contain any

---

10 Plaintiff states that "[defendants] do not deny that discussions had taken place with McCaw prior to the C Round offering." A motion to dismiss is not the appropriate vehicle to "deny" an allegation in a complaint – aside from pointing to the total absence of any facts supporting plaintiff's "fraud by hindsight" allegation, which defendants most certainly did. *See* Def. 12(b)(6) Mem. at 28-30. Nonetheless, even if true, plaintiff has still not alleged the elements for its claims with sufficient particularity.

11 To the extent the basis for any of plaintiffs claims is a conversation or e-mail (or other similar but unidentified communication) between Mr. Primeau and some (also unidentified) defendant, plaintiff cites no authority extending the group published doctrine to informal statements. *Cf. Rosen v. Textron*, 321 F.Supp.2d 308, 327 (D.R.I. 2004) ("Under the group pleading presumption, the plaintiff may impute false or misleading statements conveyed in annual reports, quarterly and year-end financial results, or other group-published information to corporate officers.") (citation omitted); *In re Cabletron Systems, Inc.*, 311 F.3d 11, 40 (1st Cir. 2002) (alleged misstatements in SEC filings).

misstatement or omission. Absent a properly alleged misstatement, there is nothing to impute.

Even assuming a misstatement in a group publication had been properly alleged, the "group pleading doctrine" is not, as plaintiff seems to think, a sort of jurisprudential dragnet that allows a plaintiff to force any defendant it pleases to defend itself against a baseless claim. This doctrine does not permit an inference that a defendant "made" a statement where the "complaint fails to connect him specifically to any of the materially misleading statements." *In re Cabletron Systems, Inc.*, 311 F.3d at 40; *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208 n.112 (Del. Ch. 2006) (the doctrine "does not permit the conclusion that a defendant knew of certain facts involving an organization merely because the defendant had a position of responsibility within that organization."); *Goebel v. Schmid Bros., Inc.*, 871 F. Supp. 68, 74 (D. Mass. 1994). Plaintiff, however, relies exclusively on general allegations of control, but pleads no facts to establish which, if any, of the defendants played a role in determining the content of any of the Clearwire material relating to the C Round Financing or any of its undefined communications. Accordingly, the group pleading presumption is unavailing here.

**B. The Allegations Against Defendants Do Not State a Cognizable Claim**

In its answering papers, NACEPF fails to address any of defendants' arguments as to why its various causes of action fail to state a claim. Instead, plaintiff simply rehashes the conclusory allegations in its complaint – as if they become more compelling by the simple act of repetition – and claims that its burden is so low in a 12(b)(6) motion that even its pleading meets it. Plaintiff is mistaken.

1. Fraudulent Inducement of the Master Agreement (Count I)

As discussed in Defendants' 12(b)(6) Memorandum, in addition to its pleading deficiencies, plaintiff cannot establish the necessary elements in connection with any of its claims for fraud, and plaintiff's response only emphasizes the defects in the Complaint. The June 7, 2000 Memorandum – plaintiff's only basis for its fraud claim – provides no support.

- First, it does not contain any false statement on which plaintiff was entitled to and did rely. As plaintiff itself concedes, a fraudulent representation is actionable only if the representation is "*a definite statement of fact* and not an estimate or expression of opinion." Pl. 12(b)(6) Opp. Mem. at 24. But the June 7, 2000 memorandum was, by its own terms, merely a proposal generally outlining the goals of any collaboration and the projected benefits to each party – such vague statements cannot form the basis of a fraud claim.[12]

- Second, as pointed out in Def. 12(b)(6) Mem. at 20, reliance on the June 7 Memo is further improper since all the statements of fact as to what was actually promised to the plaintiff are contained exclusively in the Master Agreement, which contained all the material terms of the deal and was fully integrated. Mansour Decl., Exh. C (Master Agreement) § 14. Plaintiff's response on this issue consists of nothing more than a conclusory statement that it sufficiently alleged reliance. Pl. 12(b)(6) Opp. Mem. at 26.

- Third, as explained in Def. 12(b)(6) Mem. at 18-19, even if any statement in the June 7, 2000 Memorandum can be considered a sufficiently concrete statement of fact (as compared to a prediction of future events), it cannot form the basis of a fraud claim absent any allegations that the statements were known to be false at the time they were made, and there are no such allegations here.

---

12 The language plaintiff points to as fraudulent (*e.g.*, a desire "to provide assurance that the partnership would represent the best interests of the alliance" and "a commitment" to provide "adequate" funding) are not definite statements of fact; they are subjective statements, estimates, predictions and other "puffery," which cannot support a claim for fraud. *See Solow v. Aspect Resources, LLC*, 2004 WL 2694916, at *3 (Del. Ch. Oct. 19, 2004) (statement that company "ha[d] the skills, experience, and resources to successfully and quickly capitalize on [a business opportunity]" were mere "puffery" and could not form the basis for a fraud claim). Moreover, unlike the general aspirations referred to in the June 7th Memorandum, in each of the cases on which plaintiff relies, the alleged misstatement at issue was unquestionably a false statement of fact, *i.e.*, there was a statement of a present, objectively verifiable condition, which was not true. For example, in *Companelli v. Vescera*, 75 R.I. 71 (1949), the defendant had stated that it owned certain machinery and equipment, which it did not own.

- Fourth, plaintiff's assertion that the June 7, 2000 Memorandum was "knowingly false" because Clearwire's equipment subsidiary was for sale (Pl. 12(b)(6) Opp. Mem. at 26) is baseless. If there is any false statement here, it belongs to plaintiff. According to the complaint itself, the decision to sell the equipment subsidiary was not made until after the Master Agreement had been executed. *See* Compl. ¶ 44. Because there is no knowingly false statement here, plaintiff has no claim for fraud. *See Solow,* 2004 WL 2694916, at *2-3 (no well-plead claim of fraud where there is no falsity alleged, nor that any defendant spoke with the requisite intent); *Nisenzon v. Sadowski*, 1994 R.I. Super. LEXIS 46, at *15-16 (R.I. Super. Ct. Mar. 4, 1994).

Therefore, for these reasons, and the reasons stated in Def. 12(b)(6) Mem. at 18-20, Count I should be dismissed.

2. Fraud in the Performance of the Master Agreement (Count II)

Again, even had plaintiff identified any particular statement on which it bases its fraud claim, as explained in Def. 12(b)(6) Mem. at 22, plaintiff still has not shown that any of the alleged assertions were false or that it took any action in reliance thereon. Instead, Plaintiff asserts that defendants' ongoing representations precluded it from pursuing other potential acquisitions during that time frame. However, plaintiff was already bound by the Master Agreement and cannot say that it relied on defendants' representations in fulfilling its pre-existing contractual obligations.[13] There is "no authority for a cause of action for fraudulent inducement to continue performing a contract." *Gen. Elec. Capital Corp. v. DirectTV*, 94 F. Supp. 2d 190, 202 (D. Conn. 1999). To the extent plaintiff seeks to establish that the defendants' actions were inconsistent with their obligations under the Master Agreement – as noted in Def.

---

13 *See Wallingford Shopping, L.L.C. v. Lowe's Home Centers, Inc.*, 2001 WL 96373, at *13-14 (S.D.N.Y. Feb. 5, 2001) (plaintiff failed to state a claim for fraud where "[a]t most . . . the alleged non-disclosure . . . led [plaintiff] to continue to act under the terms of the [parties'] [a]greement, on the belief that [defendant], too, was continuing to perform as it had promised;" such a claim, the court reasoned, was duplicative of a breach of contract action).

12(b)(6) Mem. at 19-20 – alleged intentional breach of contract does not state a claim for fraud.

For these reasons, and the reasons more fully briefed in Def. 12(b)(6) Mem. at 20-21, Count II of the Complaint should be dismissed.

3. Tortious Interference with Prospective Business Opportunities (Counts III and IV)

Plaintiff's admitted failure to plead any facts identifying any specific "prospective business opportunity" with which the defendants interfered is fatal to its claim. The law is clear that a claim for interference with a prospective business relationship cannot survive a Rule 12(b)(6) motion to dismiss where the "pleading fails to allege the existence of any specific economic relationship that was or could have been disrupted by the defendants' conduct." *In re Commercial Money Center, Inc., Equipment Leasing Litig.*, 2006 U.S. Dist. LEXIS 72159, at *43 (S.D. Ohio Oct. 3, 2006); *see also Bradley v. Google, Inc.*, 2006 U.S. Dist. LEXIS 94455, at *10 (N.D. Cal. Dec. 22, 2006) (claim dismissed where "[p]laintiff never identified any of the third parties" or "identified any specific relationships in which [the defendant] interfered"). Here, however, NACEPF has not identified a single relationship that was disrupted.[14]

Plaintiff likewise fails to even address the other deficiencies in its claim. As noted in Def. 12(b)(6) Mem. at 23, the Complaint fails to allege any circumstances suggesting that the defendants had the requisite knowledge of these supposed, but

14 Plaintiff's assertion that the identity of these third parties is a matter for discovery is somewhat perplexing. It is unclear if plaintiff is simply taunting the defendants by refusing to share this information – there would be no point since plaintiff's claim requires it to establish that the defendants already had knowledge of these supposed opportunities. Alternatively, if plaintiff itself is unaware of this information, it is equally unclear from whom it believes this information can be discovered – a business opportunity of which plaintiff itself was not aware is hardly concrete enough to support a claim for tortious interference.

unidentified, opportunities. NACEPF cannot refute this critical failing and instead argues that, for Count III, this Court may draw "the inference that each of the defendants knew of the plaintiff's potential to convey its lease interest in the licenses to third parties" and, for Count IV, that the defendants had knowledge of the spectrum market as a whole. However, plaintiff cites to no authority whatsoever for the proposition that a plaintiff's ability to participate in the market in general constitutes a prospective business opportunity, much less that a defendant's "knowledge of the market" is sufficient for plaintiff to prevail on its claim. *Cf. Heritage Home Health, Inc. v. Capital Region Health Care Corp.*, 1996 U.S. Dist. LEXIS 22387, at *12 (D.N.H. Oct. 1, 1996) (dismissing claim where "the court has found *no authority* for the proposition that a plaintiff may bring an action for tortious interference with prospective contractual relations *based solely on a plaintiff's potential for capturing a share of a given market.*") (emphasis added). The absence of any actual opportunity which was interfered with also precludes causation, *i.e.*, "that the interference caused the harm sustained."[15] Pl. 12(b)(6) Opp. Mem. at 15 (citations omitted).

Lastly, plaintiff asserts that defendants are not insulated from liability simply because they are directors of Clearwire and employees of Goldman Sachs, explaining that a director is liable when he participates in the commission of a tort. This has no application here, since plaintiff has failed to allege a tort. In any event, regardless of which capacity the defendants might be said to have been acting in, the defendants, as well as Clearwire itself, had an interest in protecting Clearwire's rights under the Master

---

15 It is also questionable whether there was any harm to plaintiff since plaintiff fails to allege any specific transaction and, thus, fails to allege what, precisely, it lost as a result of the claimed interference. Moreover, plaintiff retained the rights to the spectrum and there are no facts suggesting that it could not sell it at a later date.

Agreement. Thus, the alleged acts of the defendants in settling any potential claims against Clearwire were well within the privilege to compete and cannot constitute tortious interference. *See* Def. 12(b)(6) Mem. at 23-24; *DeBonaventura v. Nationwide Mutual Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980) (no interference where actions taken were within "privilege to interfere within the limits of fair competition with prospective business opportunity").

4. <u>Plaintiff's C Round Claims: Breach of Fiduciary Duties (Counts V and VI) and Fraud (Count VIII)</u>

Demonstrating a fundamental lack of understanding of the applicable law, NACEPF asserts that all of its fiduciary duty claims are governed by Rhode Island law. As explained *supra* at 4, since all of these claims relate to the conduct of the directors of a Delaware Corporation, Delaware law governs under the internal affairs doctrine (*see, e.g., Edgar v. MITE Corp.*, 457 U.S. at 645) and thus each of plaintiff's cases is inapposite. Moreover, whatever law applies, NACEPF's complaint fails to allege a breach.

As to the C Round, plaintiff does not dispute that it was aware that Clearwire was seeking a transaction with a third party. Nevertheless, NACEPF continues to assert that defendants fraudulently breached their respective fiduciary duties because specific details about the McCaw transaction were not disclosed.[16] Even assuming plaintiff can overcome the most critical flaw – that each of the C Round Claims is predicated on the

16 To the extent Plaintiff asserts that these disclosures themselves were misleading, its theory is contrary to the weight of authority holding that predictions and projections are not actionable statements. *See Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 192 F.3d 162, 175 (1st Cir. 1999); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58, 64-65 (1st Cir. 1992); *Trenwick America Litig.*, 906 A.2d at 209 n.119. Of course, the typical plaintiff alleges fraud when the prediction does not turn out to be true (*see Rodowicz, Schott, Trenwick*), whereas here, plaintiff has, ironically, commenced this action because the stated hope that the company would find a strategic partner actually did come to pass.

pure speculation that, at the time of the C Round Financing, the defendants had advance knowledge of the McCaw Sale, which took place months later – plaintiff's failure to address the remaining flaws in its claims ensure that they cannot survive.[17]

On the issue of materiality, in the context of its breach of fiduciary duty claims, plaintiff argues that materiality is a factual issue which cannot be considered on a motion to dismiss. While that may be true in some cases, it is not true here since the alleged omission relates to an unspecified preliminary negotiation which is "immaterial as a matter of law" under controlling Delaware authority. *See* Def. 12(b)(6) Mem. at 31 & n.19 (collecting cases). [18] This is particularly true here where plaintiff acknowledges the disclosure that the company was seeking a strategic partner (Pl. 12(b)(6) Opp. Mem at 30), but makes no effort to explain why interest by Mr. McCaw, as opposed to interest from any other potential acquirer, would be material. *See* Def. 12(b)(6) Mem. at 31-33. Finally, plaintiff fails to address defendants' arguments that it cannot establish either reliance or damages (*see* Def. 12(b)(6) Mem. at 32-33) choosing instead simply to restate the conclusory allegations of the Complaint. Pl. 12(b)(6) Opp. Mem. at 19-20. [19]

---

17 Faced with indisputable evidence to the contrary, plaintiff appears to have abandoned its original contention that the defendants modified Clearwire's certificate of incorporation for their own benefit. Nor does plaintiff address the fact that all shareholders were invited to participate in the C Round on a pro-rata basis. Def. 12(b)(6) Mem. at 32-33.

18 *Holmes v. Bateson*, 434 F. Supp. 1365 (D.R.I. 1977), cited by NACEPF, is not to the contrary. The *Holmes* court explicitly noted that there had been "*extensive negotiations*" which had "reached such an *advance state*" that there was a firm "*offer[] to acquire* the Corporation for $4,800,000" and "*strong interest*" from the potential acquirer and several other parties which "indicated that *a merger or acquisition* on terms very favorable to the Corporations stockholders *was imminent.*" *Id.* at 1380 (emphasis added). Here, not one single fact is alleged that suggests anything approaching this level of advancement (if any at all).

19 In response to defendants' contention that plaintiff could not reasonably rely on any "misleading" information since they were told that Clearwire was in negotiations with third parties and invited to call for more information, plaintiff refers to statements in the Primeau Affidavit. It is inappropriate for this Court to consider any facts or documents referenced in the Primeau Affidavit on a motion to dismiss because they are outside the pleading. Nonetheless, there is nothing in the

Accordingly, for this reason, as well as other reasons stated in Def. 12(b)(6) Mem. at 24-26, and 29-37, Counts V, VI, and VIII of the complaint must be dismissed.

5. Unjust Enrichment (Count VII):

As duly explained in Defendants' 12(b)(6) Memorandum at 38-39, plaintiff's claim for unjust enrichment is nothing more than a restatement of its tort claims and, therefore, fails for the same reasons. Indeed, plaintiff's response consists of little more than a reiteration of its conclusory allegations with respect to the other C Round claims. Plaintiff's reliance on *Lawton v. Nyman,* 327 F.3d 30, 45-46 (1st Cir. 2003), for the principle of "avoiding unjust enrichment" based upon a windfall obtained by a defendant in violation of a fiduciary duty is unavailing since plaintiff has not properly alleged any underlying breach of fiduciary duty. Pl. 12(b)(6) Opp. Mem. at 22.

**C. Plaintiff Fails to Plead any Claim Against The Goldman Shareholder Defendants**

Plaintiff's opposition papers do not point to any facts in the complaint which suggest that the Goldman Shareholder Defendants could be held vicariously liable for conduct by the Individual Directors (there are none), but instead, impermissibly rely on documents outside the pleadings. Pl. SH 12(b)(6) Mem. at 2-4. Plaintiff's reliance on agency theory is nonetheless unavailing, since, insofar as the Individual Defendants were directors of Clearwire, the law is clear that directors act on behalf of the corporation and all of its shareholders, and not as the representative of any individual shareholder or select group of shareholders. *See, e.g., United States v. Byrum*, 408 U.S. 125, 137-38

---

Primeau Affidavit which furthers plaintiff's claim since it recounts no conversations with any of the defendants. More fundamentally, plaintiff asks this Court to infer some widespread scheme of secrecy, but ignores the most obvious reason a potential transaction with McCaw was not disclosed in plaintiff's conversations with others – the possibility of a transaction with McCaw simply did not exist at this time.

(1972). Moreover, even if liability could be imputed, plaintiff has not stated a well-pled and viable claim against any of the Individual Defendants. Accordingly, for the reasons set forth herein as well as in Def. 12(b)(6) Mem. and SH Def. 12(b)(6) Mem., the claims against the Goldman Shareholder Defendants also fail.[20]

**D. Plaintiff Fails To Plead Any Claim Against GS Group**

Plaintiff does not dispute that, as set forth in Def. 12(b)(6) Mem. at 15-16, the complaint contains no allegations whatsoever as to GS Group, but instead chastises the defendants for not submitting an affidavit attesting to GS Group's lack of involvement, accuses defendants of "obfuscation," and requests discovery to determine the appropriate entities. Pl. 12(b)(6) Opp. Mem. at 3-4. Setting aside plaintiff's absurd attempt to saddle this defendant with the burden to plead its innocence through an inadmissible affidavit, the fact remains that discovery on GS Group's involvement would be pointless given that no meritorious claim has been alleged for which it could be held liable.

**III. LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED**

As detailed above and in Defendants' 12(b)(6) Memorandum, plaintiff's fundamental pleading failure is its inability to allege with specificity a fraudulent statement, omission or wrongful interference. Although plaintiff requests leave to amend its complaint, and more specifically, to amend its complaint to include the Primeau Affidavit (Pl. 12(b)(6) Opp. Mem. at 4, 32), such leave would serve no purpose. Plaintiff has already taken the liberty of referring to the Primeau Affidavit in order to bolster its claims, to no avail. Pl. 12(b)(6) Opp. Mem. at 30 n.11. Because plaintiff has already effectively amended its complaint (albeit without leave of the court) and, even

---

20 In light of plaintiff's failure to plead any wrongful conduct, its request for discovery as to whether the Goldman Shareholder Defendants were controlling shareholders is moot.

considering these amendments, fails to state a claim for relief, there is no basis for granting an opportunity to amend.[21]

## CONCLUSION

For the forgoing reasons, as well as the reasons stated in the defendants' opening memoranda in support of their respective motions to dismiss the Complaint, the defendants respectfully request that all claims asserted against them in this action be dismissed.

Respectfully submitted,

April 26, 2007

**THE GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P., GERRY CARDINALE, ROB GHEEWALLA and JACK DALY,**

By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
Wayne F. Dennison, *pro hac vice*
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main Street
Providence, RI 02903
401.276.2600
401.276.2601 Facsimile
bjl@brownrudnick.com
*Attorneys for Defendants*

OF COUNSEL:
Douglas H. Flaum
Lara Turcik
Elizabeth A. Walsh
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980
212.859.8000

---

21 Because it is readily apparent that plaintiff will not be able to replead its claims to conform with Rule 9(b) and Rule 12(b)(6), leave to amend should be denied. *See Epstein v. Bard, Inc.*, 460 F.3d 183, 191 (1st Cir. 2006) (affirming decision of district court to not allow plaintiff to amend his complaint noting that he could have properly pled fraudulent concealment in his complaint and that "a district court need not grant every request to amend, come what may"); *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990) ("[w]here an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters") (citation omitted), *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004).

**CERTIFICATION**

I hereby certify that, on the 26th day of April, 2007, this document was electronically filed and that it is available for viewing and downloading from the Court's ECF system by the following Filing Users:

Matthew T. Oliverio
Christine M. Curley
Oliverio & Marcaccio LLP
55 Dorrance Street
Suite 400
Providence, RI 02903

/s/ Brian J. Lamoureux

547527

# 50227598 v1 - 024607/1432