UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC., | ) | No.: 1:06-cv-00492-S-LDA |
| Plaintiff, | ) | |
| v. | ) | |
| GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, THE GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P. and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH, | ) | |
| Defendants. | ) | |

**CONSOLIDATED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTIONS TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(5) AND, IN THE ALTERNATIVE, TO STAY THE ACTION BROUGHT BY DEFENDANTS THE GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P., GERRY CARDINALE, JACK DALY, AND ROB GHEEWALLA**

# TABLE OF CONTENTS

PAGE


Table of Authorities ..................................................... ii

Introduction ..................................................... 1

Argument ..................................................... 2

I. PLAINTIFF'S EVIDENCE DOES NOT SUPPORT A FINDING OF SPECIFIC JURISDICTION OVER THE DEFENDANTS ..................................................... 2

A. The Alleged Contacts Do Not Support A Finding Of Specific Jurisdiction Over the Goldman Shareholder Defendants ..................................................... 3

B. Plaintiff Asserts No Jurisdictionally Relevant Contacts By The Individual Defendants ..................................................... 5

1. No Individual Defendant Engaged In Any Jurisdictionally Relevant Conduct In Rhode Island ..................................................... 5

2. The Tenuous Contacts Plaintiff Asserts Do Not Support The Exercise Of Jurisdiction Over The Individual Defendants ..................................................... 6

C. In-Forum "Effects" Are Irrelevant ..................................................... 16

II. PLAINTIFF CANNOT ALLEGE GENERAL JURISDICTION OVER THE GOLDMAN SHAREHOLDER DEFENDANTS ..................................................... 17

III. THE EXERCISE OF JURISDICTION OVER DEFENDANTS IS NOT REASONABLE ..................................................... 19

IV. THERE IS NO BASIS TO EXERCISE PENDENT JURISDICTION OVER THE C ROUND FINANCING CLAIMS ..................................................... 21

V. IT IS A PROPER EXERCISE OF THIS COURT'S DISCRETION TO GRANT A STAY ..................................................... 23

Conclusion ..................................................... 24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alvarado-Morales v. Digital Equipment Corp.*,
843 F.2d 613 (1st Cir. 1988) ............ 12

*American Para Professional Systems, Inc. v. Labone, Inc.*,
175 F. Supp. 2d 450 (E.D.N.Y. 2001) ............ 11

*Amoco Oil Co. v. IBEW*,
536 F. Supp. 1203 (D.R.I. 1982) ............ 9 n.8

*Anderson v. Century Products Co.*,
943 F. Supp. 137 (D.N.H. 1996) ............ 22, 23 n.21

*Austad Co. v. Pennie & Edmonds.*,
823 F.2d 223 (8th Cir. 1987) ............ 4 n.4

*Barrett v. Lombardi*,
239 F.3d 23 (1st Cir. 2001) ............ 17 n.15

*Boit v. Gar-Tec Products, Inc.*,
967 F.2d 671 (1st Cir. 1992) ............ 3

*Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*,
764 F.2d 928 (1st Cir. 1985) ............ 16

*Borschow Hospital & Medical Supplies, Inc. v. Burdick-Siemens Corp.*,
143 F.R.D. 472 (D.P.R. 1992) ............ 5 n.6

*Brian Jackson & Co. v. Eximas Pharmaceutical Corp.*,
248 F. Supp. 2d 31 (D.R.I. 2003) ............ 9

*Callahan v. Harvest Board International, Inc.*,
138 F. Supp. 2d 147 (D. Mass. 2001) ............ 3 n.2

*Compana LLC v. Emke*,
2004 WL 2058782 (N.D. Tex. Sept. 15, 2004) ............ 9 n.8

*CVS Corp. v. Taubman Ctrs., Inc.*,
225 F. Supp. 2d 120 (D.R.I. 2002) ............ 4 n.4, 13

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole*,
290 F.3d 42 (1st Cir. 2002) ............ 3 n.3, 13, 18

*Donatelli v. National Hockey League*,
893 F.2d 459 (1st Cir. 1990) ........ 18, 19

*Donatelli v. UnumProvident Corp.*,
324 F. Supp. 2d 153 (D. Me. 2004) ........ 17, 19 n.16

*Ealing Corp. v. Harrods, Ltd.*,
790 F.2d 978 (1st Cir. 1986) ........ 15 n.13

*E.F. Hutton & Co., Inc. v. Tourism and Development Corp.*,
455 F. Supp. 981 (D.R.I. 1978) ........ 10

*Escude Cruz v. Ortho Pharmaceutical Corp.*,
619 F.2d 902 (1st Cir. 1980) ........ 12

*Far W. Capital, Inc. v. Towne*,
46 F.3d 1071 (10th Cir. 1995) ........ 14

*Filler v. Lernout*,
337 F. Supp. 2d 298 (D. Mass. 2004) ........ 21, 22

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
46 F.3d 138 (1st Cir. 1995) ........ 3, 3 n.3

*Glater v. Eli Lilly & Co.*,
744 F.2d 213 (1st Cir. 1984) ........ 17

*Gorman v. Ameritrade Holding Corp.*,
293 F.3d 506 (D.C. Cir. 2002) ........ 9

*Hainey v. World Am Communications, Inc.*,
263 F. Supp. 2d 338 (D.R.I. 2003) ........ 3 n.2, 15, 22 n.18

*Harlow v. Children's Hospital.*,
432 F.3d 50 (1st Cir. 2005) ........ 7

*Home Owners Funding Corp. of America v. Century Bank*,
695 F. Supp. 1343 (D. Mass. 1988) ........ 22 n.19, 23 n.21

*ITI Holdings, Inc. v. Professional Scuba Ass'n*,
2006 U.S. Dist. LEXIS 3747 (D. Me. Jan. 31, 2006) ........ 9 n.8

*Interface Group-Massachusetts, LLC v. Rosen*,
256 F. Supp. 2d 103 (D. Mass. 2003) ........ 2 n.2, 11

*Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd,*
298 F.3d 1 (1st Cir. 2002)....................18

*Lantor, Inc. v. Nicassio Corp.,*
2007 WL 204015 (D.R.I. Jan. 24, 2007) ....................10, 16

*Mahler v. Startari,*
142 Fed. Appx. 839, (6th Cir. 2005)....................15 n.11

*Market/Media Research, Inc. v. Union Tribune Publishing Co.,*
951 F.2d 102, (6th Cir. 1991) ....................18

*Mass. School of Law at Andover, Inc. v. ABA,*
142 F.3d 26 (1st Cir. 1998)....................2 n.2, 7, 8, 17

*Microfibres v. Squires Hightech Corp.,*
2006 WL 305975 (D.R.I. Feb. 8, 2006)....................16 n.14

*Miller v. American Telegraph & Telegraph Co.,*
394 F. Supp. 58 (E.D. Pa. 1975) ....................16

*Murphy v. Erwin-Wasey, Inc.,*
460 F.2d 661 (1st Cir. 1972)....................22 n.19, 23 n.21

*In re New Motor Vehicles Canadian Export Antitrust Litigation,*
335 F. Supp. 2d 126 (D. Me. 2004) ....................22

*Nicholas v. Buchanan,*
806 F.2d 305 (1st Cir. 1986)....................14 n.12, 15 n.13

*Noonan v. Winston Co.,*
135 F.3d 85 (1st Cir. 1998)....................17

*Noonan v. Winston Co.,*
902 F. Supp. 298 (D. Mass. 1995) ....................19

*Northeastern Land Services, Ltd. v. Schulke,*
988 F. Supp. 54 (D.R.I. 1997)....................16 n.14

*PFIP, LLC v. Planet Fitness, Enterprises,*
2004 U.S. Dist. LEXIS 22799 (D.N.H. Oct. 10, 2002) ....................2

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.,*
196 F.3d 284 (1st Cir. 1999)....................*passim*

*Platten v. HG Berm. Exempted Ltd.*,
437 F.3d 118 (1st Cir. 2006) .......... 9, 14, 22 n.19

*Pro Edge, L.P. v. Gue*,
374 F. Supp. 2d 711 (D. Iowa 2005) .......... 14 n.11

*Remick v. Manfredy*,
238 F.3d 248 (3rd Cir. 2001) .......... 21 n.18

*Reynolds v. International Amateur Ath. Federation*,
23 F.3d 1110 (6th Cir. 1994) .......... 4, 14

*Riley v. Harr*,
292 F.3d 282 (1st Cir. 2002) .......... 22

*Salpoglou v. Schlomo Widder, M.D., P.A.*,
899 F. Supp. 835 (D. Mass. 1995) .......... 22 n.19

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995) .......... 4 n.4, 5, 6, 19

*Schaefer v. Cybergraphic System*,
886 F. Supp. 921, 923 (D. Mass. 1994) .......... 8 n.7

*Scullin Steel Co. v. National Railway Utilization Corp.*,
676 F.2d 309 (8th Cir. 1982) .......... 14 n.12

*Sears, Roebuck & Co. v. Sears*,
744 F. Supp. 1297 (D. Del. 1990) .......... 21 n.18

*Sun Bank, N.A. v. E.F. Hutton & Co.*,
926 F.2d 1030 (11th Cir. 1991) .......... 14

*Ticketmaster-New York, Inc. v. Alioto*,
26 F.3d 201 (1st Cir. 1994) .......... 19 n.17

*Unis Intern. Corp. v. M.L. Marketing Co.*,
1993 WL 116744 (N.D. Ill. April 14, 1993) .......... 9 n.8

*United Elec., Radio and Machine Workers of America v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992) .......... 2 n.2, 19

*Val Leasing v. Hutson*,
674 F. Supp. 53 (D. Mass. 1987) .......... 23 n.19, 23 n.21

*Women & Infants Hospital of R. I. v. Community Health Network of Conn., Inc.*,
394 F. Supp. 2d 488 (D.R.I. 2005)....................9

*Young v. Colgate Palmolive*,
790 F.2d 567 (7th Cir. 1986) ....................15

## STATE CASES

*West Virginia Laborers Pension Trust Fund v. Caspersen*,
829 N.E.2d 843 (Ill. App. Ct. May 11, 2005)....................15

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(2) (2006)....................1

Fed. R. Civ. P. 12(b)(5) (2006)....................1

Fed. R. Evid. 901 (2006)....................8 n.7

Fed. R. Evid. 1002 (2006)....................8 n.7

## STATE STATUTES

Mass. Gen. Laws Ann. ch. 223A § 3 (2006)....................23 n.20

R.I. Gen. Laws § 9-5-33 (2006)....................23 n.20

Defendants The Goldman Sachs Group, Inc. ("GS Group"), GS Capital Partners III, L.P. ("GS Capital Partners"), GS Capital Partners III Offshore, L.P. ("GS Offshore"), Gerry Cardinale, Jack Daly, and Rob Gheewalla submit this consolidated reply memorandum in further support of their respective Motions To Dismiss The Complaint Pursuant To Rules 12(b)(2) And 12(b)(5) And, In The Alternative, To Stay The Action.[1]

## INTRODUCTION

Despite submitting over 50 pages of jurisdictional briefs and a 50-paragraph affidavit with 17 separate exhibits, plaintiff is unable to refute the most critical jurisdictional facts: none of the defendants have ever even visited Rhode Island in connection with any of the events challenged in the Complaint and only one (who had no role in the underlying events) has maintained contacts of any kind here. Plaintiff attempts to deflect attention from defendants' lack of contacts with this forum in three ultimately ineffective ways, all of which are directly contrary to well-established First Circuit law. First, NACEPF conflates its claims and lumps all defendants together, along with numerous non-parties, in the hope that the collective contacts by all these individuals and entities combined will be enough to establish jurisdiction over the three people and three separate entities it chose to sue. But plaintiff's tactic does not work since the law explicitly requires *each* defendant and *each* claim to be analyzed *independently,* and when this is done it is plain that the defendants here took no action in Rhode Island sufficient to confer jurisdiction. Second, NACEPF submits "evidence" which consists of nothing more than miscellaneous documents and plaintiff-created "logs" (without the actual back-up source

---

1 The following short-form citations are used throughout this memorandum: "Defendants' Jurisdictional Memorandum" or "Def. Jur. Mem."; "Goldman Shareholder Defendants' Jurisdictional Memorandum" or "SH Def. Jur. Mem."; "Defendants' 12(b)(6) Memorandum" or "Def. 12(b)(6) Mem."; "Defendants' 12(b)(6) Reply Memorandum"; "Plaintiff's Jurisdictional Opposition Memorandum" or "Pl. Jur. Opp. Mem."; "Plaintiff's Goldman Shareholder Jurisdictional Opposition Memorandum" or "Pl. SH Jur. Opp. Mem.." Unless otherwise stated, defined terms shall have the same meaning consistent with prior briefs filed in connection with these motions.

documents) and an affidavit that offers only vague accusations and conclusions. But again, this is not sufficient as the evidence does not establish any in-forum activity by these defendants which gave rise to the causes of action alleged; indeed most of the evidence concerns contacts made *by* plaintiff *to* the defendants or third parties *outside* the jurisdiction. Third, NACEPF repeatedly trumpets the fact that it is resident in Rhode Island as if this were dispositive. But here again, the law is clear that this single fact is nearly irrelevant — what matters is what actions *defendants took in the forum* (and there are none), not where the plaintiff lived. In short, plaintiff's lengthy efforts to manufacture a jurisdictional nexus only serve to highlight the obvious – that there is no legitimate basis to subject any of these defendants to jurisdiction in this forum.

## ARGUMENT

### I. PLAINTIFF'S EVIDENCE DOES NOT SUPPORT A FINDING OF SPECIFIC JURISDICTION OVER THE DEFENDANTS

In its opposition to this motion, NACEPF fails to address the applicable legal standards, and the "evidence" proffered by it does nothing to bolster its position that any defendant (much less all of them) is subject to specific jurisdiction in this forum. In determining whether a plaintiff has met *its burden* to establish that the exercise of specific jurisdiction is proper, a court must remain cognizant that specific personal jurisdiction is "both defendant-specific and claim-specific." *PFIP, LLC v. Planet Fitness, Enters.*, 2004 U.S. Dist. LEXIS 22799, at *14 (D.N.H. Oct. 10, 2002).[2] Plaintiff's generalized assertions, lumping all defendants together and not itemizing which claim the "contact" relates to are woefully insufficient. *Phillips Exeter Acad. v.*

---

2 *Accord Hainey v. World Am Communications, Inc.*, 263 F. Supp. 2d 338, 344 (D.R.I. 2003); *Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d 103, 107 (D. Mass. 2003) (citing *Mass. Sch. of Law at Andover, Inc. v. ABA*, 142 F.3d 26, 35 (1st Cir. 1988); *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)); *Callahan v. Harvest Board Int'l, Inc.*, 138 F. Supp. 2d 147, 164 (D. Mass. 2001).

*Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("questions of specific jurisdiction are always tied to the particular claims asserted"). Accordingly, as set forth in detail below, neither the Affidavit of John Primeau (the "Primeau Affidavit"), nor the exhibits thereto, is sufficient to establish that, for each of the claims asserted in this action, the requisite elements for the exercise of specific jurisdiction – (1) relatedness, (2) purposeful availment and (3) reasonableness – are satisfied with respect to each of the defendants. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (under the *prima facie* method, "the district court . . . consider[s] whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction"); *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995) (noting that in reviewing a jurisdictional challenge, the court's role is similar to that of the court in deciding a motion for summary judgment).[3]

### A. The Alleged Contacts Do Not Support A Finding Of Specific Jurisdiction Over the Goldman Shareholder Defendants

Plaintiff does not premise specific jurisdiction over the Goldman Shareholder Defendants on any actual contact with the forum by these defendants. Of course, it cannot do so because none of these entities is based in Rhode Island and none is alleged to have done anything in Rhode Island related to this lawsuit. Instead, plaintiff argues that contacts by the Individual Defendants and contacts by law firms should be imputed to the Goldman Shareholder Defendants. As a threshold matter, even if the actions of the Individual Defendants could be imputed to the Goldman Shareholder Defendants, this would be legally insufficient since, as

---

3 Because plaintiff argues that jurisdiction should be predicated on the defendants having directed tortious conduct at the forum (Pl. Jur. Opp. Mem. at 31), the question of jurisdiction is tied to the merits of plaintiff's claims, presenting a risk that a "dubious case" may proceed even though the court may ultimately lack jurisdiction. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42, 51 n.6 (1st Cir. 2002) (citing *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 146 (1st Cir. 1995). The First Circuit has suggested that in such cases, a "likelihood" of success standard is more appropriate than the *prima facie* standard. *Id.*

discussed in detail below, plaintiff has not alleged any jurisdictionally relevant contacts by the Individual Defendants. Plaintiff similarly fails to offer any basis to impute such conduct to the Goldman Shareholder Defendants, since plaintiff does not identify whether the Individual Defendants were acting on behalf of the Goldman Shareholder Defendants or Clearwire, on whose board of directors they served.

Nor do any of the contacts attributed to Mr. Ronnen or others at the Fried Frank law firm in New York suffice to establish jurisdiction in Rhode Island over the Goldman Shareholder Defendants, even assuming they can be attributed to these defendants. Plaintiff's reliance on the memorandum attached to the Primeau Affidavit at Exhibit 4 is particularly perplexing. This is a memorandum from Mr. Ronnen to Mr. Cardinale, also in New York; it was not directed to plaintiff or anyone else in Rhode Island. The other contacts cited by plaintiff are no more availing.[4] Accordingly, jurisdiction over the Shareholder Defendants must be rejected. *Reynolds v. International Amateur Ath. Fed'n*, 23 F.3d 1110, 1118 (6th Cir. 1994) (holding that the court erred in premising jurisdiction on agency where alleged agent did not have minimum contacts with the forum related to the claim).[5]

---

4 The additional purported contacts by Mr. Ronnen and the Fried Frank law firm comprise phone calls and e-mails – the content of which is undisclosed – and the performance of due diligence at NACEPF's office. Pl. SH Jur. Opp. Mem. at 7; Primeau Aff. ¶ 19. There is ample authority that such contacts do not constitute purposeful availment of the forum state. *See, e.g., Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (no jurisdiction where "Defendants' contacts with New Hampshire, however, were limited to communicating with the clients in their home state"); *CVS Corp. v. Taubman Ctrs., Inc.*, 225 F. Supp. 2d 120, 127 (D.R.I. 2002) (a single visit to Rhode Island by defendant's auditors is insufficient to establish jurisdiction); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987)) (no jurisdiction where contacts included a three-day visit to the forum by a law firm associate and law clerk to review and inspect documents; numerous phone calls to the forum; the use of courier services; monthly billings to the forum; and checks paid by an in-forum bank) (cited as "instructive" by *Sawtelle*, 70 F.3d at 1391).

5 Plaintiff does not separately address the unreasonableness of the exercise of jurisdiction over these defendants.

**B. Plaintiff Asserts No Jurisdictionally Relevant Contacts By The Individual Defendants**

1. <u>No Individual Defendant Engaged In Any Jurisdictionally Relevant Conduct In Rhode Island</u>

Plaintiff's newly proffered evidence is most probative (if it is relevant at all) for what it does not include. Nowhere in the Primeau Affidavit or in the exhibits thereto is there *any* suggestion that *any* defendant ever entered the state of Rhode Island in connection with *any* activity which is alleged to have caused *any* of plaintiff's claimed injuries.

For reasons explained in detail in Def. Jur. Mem. (at 15-16), the only physical contact at all with this forum—Mr. Daly's Spring 2003 meeting in connection with efforts to settle a contract dispute between plaintiff and Clearwire (Compl. ¶ 7; Primeau Aff. ¶ 31)—could not have been the cause of any of plaintiff's injuries. Indeed, it occurred after the events giving rise to plaintiff's Master Agreement Claims and admittedly does not relate to plaintiff's C Round Financing Claims. Tellingly, plaintiff offers no plausible explanation as to how this settlement meeting could be the predicate for jurisdiction.[6] To the contrary, plaintiff tacitly acknowledges that there is no causal nexus between this single visit and any of its claims by relegating the issue to a footnote in which it suggests that this isolated visit is relevant because it "evinced both the business relationship and the dispute between the parties." Pl. Jur. Opp. Mem. at 26 n. 18. Whatever this might mean, it is not relevant to the jurisdictional analysis. *See Phillips Exeter Acad.*, 196 F.3d at 290 ("It is not the relationship itself, but the content of the parties' interactions that creates constitutionally significant contacts") (citing *Sawtelle,* 70 F.3d at 1389).

---

6 *Borschow Hospital & Medical Supplies, Inc. v. Burdick-Siemens Corp.*, 143 F.R.D. 472 (D.P.R. 1992), on which plaintiff relies (Pl. Jur. Opp. Mem. at 26 n.18), does not help plaintiff. In *Borschow*, the dispute arose out of the allegedly wrongful termination of an agreement for distribution rights *within the forum*. The court determined that the plaintiff had provided evidence of forum-based activity that satisfied the relatedness prong without any reference to the fact that the defendant visited the forum in connection with a settlement. *Id.* at 483. Here, plaintiff offers no evidence of any other forum-based activity that would establish jurisdiction over the Individual Defendants.

2. The Tenuous Contacts Plaintiff Asserts Do Not Support The Exercise Of Jurisdiction Over The Individual Defendants

Unable to demonstrate any in-forum activity by the Individual Defendants, NACEPF next asserts a hodgepodge of miscellaneous communications among a variety of people in an attempt to establish the requisite jurisdictional contacts by Messrs. Cardinale, Daly, and Gheewalla. Pl. Jur. Opp. Mem. at 26-28. This effort is woefully inadequate. As a threshold matter, the majority of plaintiff's proffered contacts were not even originated by the Individual Defendants. Pl. Jur. Opp. Mem. at 25-30. Moreover, plaintiff's "evidence" fails the "defendant-specific" requirement; i.e., it shows no communication whatsoever originating from Mr. Gheewalla and otherwise simply asserts communications with "Goldman." Indeed, a review of plaintiff's evidence for (1) relatedness of the contacts, (2) purposeful availment, and (3) reasonableness reveals that nothing in the Primeau Affidavit or the exhibits thereto justifies the exercise of specific jurisdiction over the Individual Defendants.

Relatedness. Plaintiff attempts to evade the relatedness prong by advocating a "flexible standard" for determining the "relationship between the parties." Pl. Jur. Opp. Mem. at 30-31. This ploy is directly contrary to established First Circuit jurisprudence. Indeed, *Sawtelle v. Farrell*, on which NACEPF relies for this proposition, makes clear that "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle*, 70 F.3d at 1389; *accord Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d at 284, 292 (1st Cir. 1999).

More specifically, where, as here, a plaintiff asserts claims in tort, the First Circuit has explained that to determine whether a plaintiff has satisfied the element of relatedness, it "customarily look[s] to whether the plaintiff has established 'cause in fact (i.e., the injury would

not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action).'" *Massachusetts Sch. of Law at Andover*, 142 F.3d at 35 (emphasis added) (citation omitted) (also noting that the analysis must be claim specific); *see also Harlow v. Children's Hospital*, 432 F.3d 50, 61 (1st Cir. 2005). A brief review of plaintiff's claims reveals that the proffered evidence of "related" contacts falls far short of the mark.

**Fraudulent Inducement:** Plaintiff lists an assortment of alleged contacts with Rhode Island (albeit not physical presence here), taking place in 2001, prior to the execution of the Master Agreement. Pl. Jur. Opp. Mem. at 26-28. However, none of these bears any causal nexus to plaintiff's claim for fraud:

- The delivery to Rhode Island of Master Agreement closing binders by a law firm, not the Individual Defendants (Pl. Jur. Opp. Mem. at 27; Primeau Aff. ¶ 22) *must* have happened *after the transaction closed and could not have induced NACEPF to execute the Master Agreement.*
- That defendants were on a "working group list," dated January 25, 2001 (Pl. Jur. Opp. Mem. at 26; Primeau Aff. ¶ 9), does not establish the Individual Defendants' respective roles in these negotiations, much less any contact *with this forum.*
- The Letter of Intent (Primeau Aff. Exh. 2) is not even directed to Rhode Island, but instead is addressed to the Alliance through ING Barings *in New York* (a place where the activities underlying this claim actually took place).
- The section from the Master Agreement attached as Primeau Aff. Exh. 9 shows that the primary contact for the Alliance was John Schwartz *in Colorado* and that counsel for the Alliance was located *in Connecticut* (while counsel for defendants was in *New York*).

Plaintiff simply provides no basis to even infer, much less establish, that anything happened in Rhode Island.

Equally dubious (and irrelevant) are the logs of phone calls and e-mails (set forth at Primeau Aff. Exh. 5; Pl. Jur. Opp. Mem. at 22), which appear to have been created by Mr. Primeau for purposes of responding to defendants' motions. Setting aside the questionable

validity of this "evidence,"[7] it simply does not establish jurisdictionally relevant contacts. *First*, the phone log submitted by plaintiff shows that *all* of the calls prior to March 1, 2001 were *outgoing calls from NACEPF*. Primeau Aff. Exh. 5. *Second*, there is no indication of any communication whatever from Mr. Gheewalla prior to the execution of the Master Agreement. *Third*, of the fourteen e-mails dated prior to the execution of the Master Agreement on March 1, 2001 (cited by Pl. Jur. Opp. Mem. at 27), ten of these were sent *by NACEPF*. Primeau Aff. Exh. 5.

Nor are the few communications that did originate from the defendants sufficient to establish jurisdiction. *See Mass. Sch. of Law*, 142 F.3d at 36-37 (solitary telephone conversation and subsequent mailing of a memorandum, combined with participation in a meeting in the forum were insufficient to establish purposeful availment) (collecting cases). This is particularly true here since plaintiff has chosen not to disclose the contents of the e-mails or identify any falsehood or misstatement allegedly contained in these few communications. *See Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 137-38 (1st Cir. 2006) (holding that alleged misrepresentations cannot be the basis for specific jurisdiction where "plaintiffs failed to provide any details in their complaint or affidavits . . . including any misrepresentations that were made at that time, who may have made them, and in what capacity").

Plaintiff argues in conclusory fashion – and again without citation to any actual evidence – that "the misrepresentations were contained in these communications, that the fraudulent concealment and breach of fiduciary duty was accomplished through correspondence to NACEPF in Rhode Island and that the tortious interference was part of the entire fraudulent

---

7 Insofar as these logs appear to be manufactured by plaintiff and not admissible under the Federal Rules of Evidence, Defendants move to strike them from the record. *See* Fed. R. Evid. 901; Fed. R. Evid. 1002; *see also Schaefer v. Cybergraphic Sys.*, 886 F. Supp. 921, 923 (D. Mass. 1994) ("the Court considers only whether the *admissible evidence* ... is sufficient to support findings on each jurisdictional element") (emphasis added).

scheme directed toward NACEPF in Rhode Island." Pl. Jur. Opp. Mem. at 31. Without even attempting to identify any facts in support of this statement, plaintiff simply asserts that such allegations must be accepted as true. *See id.* This is wrong as a matter of law and *Women's & Infants Hospital of Rhode Island*, on which plaintiff relies, stands for no such proposition; the court stated explicitly that it "must accept the plaintiff's (*properly documented*) evidentiary proffers as true." *Women & Infants Hospital of Rhode Island,* 394 F. Supp. 2d at 491 (quoting *Foster Miller*, 46 F.3d at 145) (emphasis added). Here, plaintiff's evidence is not properly documented and its vague accusations need not be given any weight.[8]

Further, none of the cases on which plaintiff relies actually stands for the proposition that a few isolated and generalized communications into the forum are sufficient to establish specific jurisdiction.

- In *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002), the court did not predicate specific jurisdiction on a smattering of undisclosed emails. Rather, it was a *general jurisdiction* case in which the defendant operated an online trading company and conceded that it transacted business with residents of the forum. Even so, the court noted that jurisdiction would ultimately depend upon the "frequency and volume of the firm's transactions with District residents." *Id.* at 514.

- In *Brian Jackson & Co. v. Eximias Pharmaceutical Corp.*, 248 F. Supp. 2d 31, 36 (D.R.I. 2003), the contractual duties underlying the claim *were to be performed in the forum* (at the defendant's own request). The court expressly noted that the defendant "might well have anticipated that encouraging [plaintiff] to perform his contractual duties in Rhode Island substantially increased its ties to Rhode Island." *Id.*

---

8 *See, e.g., Amoco Oil Co. v. IBEW*, 536 F. Supp. 1203, 1210 n. 8 (D.R.I. 1982) ("when deciding a motion to dismiss for lack of personal jurisdiction, a court need not assume the plaintiff's allegations to be true."); *ITI Holdings, Inc. v. Prof'l Scuba Ass'n*, 2006 U.S. Dist. LEXIS 3747, at *11 (D. Me. Jan. 31, 2006) (finding no jurisdiction where "the language in plaintiff's affidavit is the equivalent of unsupported allegations in a complaint"); *Compana, LLC v. Emke*, 2004 WL 2058782, at *3 & n.3 (N.D. Tex. Sept. 15, 2004) (by failing to provide "copies of [defendant's alleged] e-mails or an affidavit detailing the contents of these communications," plaintiff "failed to offer any evidence" in support of its claim that defendant had relevant jurisdictional contacts with the forum); *Unis Intern. Corp. v. M.L. Marketing Co.*, 1993 WL 116744, at *4 (N.D. Ill. April 14, 1993) (court "decline[d] to rely on unsupported [jurisdictional] conclusions" in plaintiff's briefing where plaintiff provided "no details of the contents" of correspondence between the parties since such details "[were] necessary to indicate to the Court who the actual initiator of the deal was").

- In *Lantor, Inc. v. Nicassio Corp.*, 2007 WL 204015 (D.R.I. 2007), apart from sending purchase orders to Rhode Island, defendant had established a course of dealing with plaintiff pipe manufacturer by placing several orders for a total of $800,000 of pipe materials to be manufactured in Rhode Island over the course of three-years.

- In *E.F. Hutton & Co., Inc. v. Tourism and Development Corp.*, 455 F. Supp. 981 (D.R.I. 1978), a Florida bank was subject to Rhode Island jurisdiction where it had agreed to finance the construction of a recreational facility in Rhode Island and had accepted a $55,000 down payment drawn on a Rhode Island bank from a Rhode Island entity.

All of plaintiff's cases involve substantially greater ties to the forum than are present here and actually highlight why jurisdiction is lacking in this case.

**Fraud (Count II)**: Count II of the Complaint (fraud in connection with the performance of the Master Agreement) alleges that defendants made certain misrepresentations – again from outside the state – occurring from March 2001 until May 2002. According to Mr. Primeau's log, during this time period *there were no phone calls to plaintiff initiated by any of the Individual Defendants*. Primeau Aff. ¶ 24, Exh. 6. The majority of e-mails referenced were also initiated by NACEPF, (and many others were between NACEPF and Clearwire executives and did not involve the Individual Defendants at all). Primeau Aff. ¶ 24, Exh. 5. Again, because plaintiff declined to provide the content of these e-mails, there is no basis to find that any of the few e-mails from Mr. Cardinale or Mr. Daly (there were again none from Mr. Gheewalla) were anything but ancillary communications, much less the cause of plaintiff's alleged injury.

**Interference With Prospective Business Opportunity Claims (Counts III and IV)**: Count III of the Complaint alleges that the Individual Defendants "caused Clearwire to assert its rights" in connection with the Master Agreement and, thereby, caused injury to plaintiff. Compl. ¶ 71. NACEPF's shortcoming, for jurisdictional purposes, is that its Complaint does not allege, and its "evidence" does not establish, that any of the actions allegedly taken by defendants in "causing" Clearwire to "assert its rights" were taken in Rhode Island. Of course, they were not, and even a rudimentary understanding of the actors involved makes this obvious. The Individual

Defendants worked and resided in New York; Clearwire was registered in Delaware and located in Texas. Accordingly, the tortious acts complained of (had they happened; they did not) would most likely have occurred in one of these three states.

Count IV of the Complaint, wherein plaintiff alleges that "[t]he Defendants further interfered with the Alliance itself, negotiating separate settlements with Alliance members HITN and ITF" fares no better. Compl. ¶ 76. HITN is a New York based company (Primeau Aff. Exh. 8) and ITF is located in Colorado. There is no basis to infer that any settlement negotiations among either of these parties and Clearwire (headquartered in Texas) or the Individual Defendants (in New York) would have taken place in Rhode Island and plaintiff's evidence does not suggest otherwise.[9] Even if the Individual Defendants had some communication with plaintiff during the relevant time period, there can be no jurisdiction over a defendant absent any evidence establishing that *the conduct constituting the alleged interference occurred in the forum*. *See Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d 103, 108 (D. Mass. 2003); *American Para Professional Systems, Inc. v. LabOne, Inc.*, 175 F. Supp. 2d 450, 455-56 (E.D.N.Y. 2001). Of course, no such evidence is even claimed to exist, much less is submitted in admissible form.

**<u>The C Round Financing Claims (Counts V-VII)</u>:** Plaintiff does not even put forth any evidence of contact by Messrs. Daly, Cardinale, or Gheewalla in connection with any of its three claims arising out of the C Round Financing – much less any contact by the Individual Defendants with NACEPF *in Rhode Island*. The only evidence plaintiff offers is the May 6

---

9 Indeed, plaintiff's evidence suggests that it was not the Individual Defendants who were negotiating these settlements at all. The Minutes of the Special Telephonic Board of Directors Meeting of Clearwire Holdings held on September 11, 2002 (Primeau Aff. Exh. 9), reflect that Mr. Mansour was reporting to the Individual Directors on the status of his negotiations with the Alliance members. In any event, whatever role the Individual Directors might have played in allegedly *influencing Clearwire* appears to have been through telephone calls or e-mails to Texas or meetings in places other than Rhode Island.

Investor Update Memo *from Clearwire* and the August 15 and August 20 offer letters, also *from Clearwire* and *signed by Clearwire's general counsel, James Kirkland*. Pl. Jur. Opp. Mem. at 11-12, 28; Primeau Aff. Exh. 14-16. Jurisdiction cannot be premised on these letters absent evidence that each of the Individual Directors was personally involved in these communications. *See Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980) (dismissing suit against individual officers and directors where plaintiff failed to show any "direct personal involvement by the corporate officer in some decision or action which [was] causally related to plaintiff's injury" in the forum state). Plaintiff alleges no facts to establish such direct involvement.

Plaintiff's argument that an e-mail from Mr. Ronnen sent "on behalf of Goldman Sachs" (Primeau Aff. Exh. 17) establishes that "the actions of Clearwire were orchestrated by Goldman Sachs" and, therefore, these letters should be considered as jurisdictional contacts of the Individual and Goldman Shareholder Defendants (Pl. Jur. Opp. Mem. at 29), misses the point. This e-mail — which was in response to a question by an Alliance member *after* the C Round materials had been distributed — does not establish (as plaintiff must) that the Individual Defendants specifically participated in the three Clearwire communications which plaintiff cites. *See Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 617 (1st Cir. 1988) ("Jurisdiction over the individual officers or directors of a corporation cannot be imputed from jurisdiction over the corporation" where plaintiff's affidavits are "devoid of any proof, or even allegations, that the Individual Defendants sanctioned, formulated, directed, actively participated or cooperated in the implementation of the [allegedly tortious act].").

<u>Purposeful Availment and Forseeability</u>. Even if plaintiff could overcome the "relatedness" prong of the jurisdictional analysis (it cannot), there is still no specific jurisdiction

since NACEPF has set forth no facts establishing any purposeful availment of the forum by any of the Individual Defendants. To establish purposeful availment, plaintiff must demonstrate that the Individual Defendants voluntarily engaged in contact with the forum, which made it foreseeable that they might be required to defend themselves in the forum. *See Phillips Exeter Acad.*, 196 F.3d at 292; *United Elec., Radio and Machine Workers of America*, 960 F.2d at 1089. Plaintiff cannot satisfy these requirements.

The First Circuit has held that "without evidence that the defendant actually *reached out to the plaintiff's state of residence to create a relationship* – say, by solicitation – the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." *Phillips Exeter Acad.*, 196 F.3d at 292 (citation omitted); *see also Daynard*, 290 F.3d at 62; *CVS Corp.*, 225 F. Supp. 2d at 125 ("More importantly, CVS proffered no evidence that Taubman reached out to CVS in Rhode Island in order to solicit its business"). But that is precisely what happened here. Indeed, the affidavit of John Primeau expressly states (at ¶ 3) that it was NACEPF that "reached out" beyond the borders of Rhode Island: in or about 2000 "[t]he *Alliance began searching for investors* to purchase the lease rights for its licenses . . ." This fact alone dooms NACEPF's attempts to establish specific jurisdiction here.

None of NACEPF's other "evidence" salvages, or even helps, its position. For example, plaintiff offers a memorandum dated June 7, 2000 as evidence that "Goldman Sachs, through the Individual Defendants, reached out to Primeau and NACEPF" as a member of the Alliance. Pl. Jur. Opp. Mem. at 32. A simple reading of the memorandum establishes that NACEPF is grossly overreaching. All that the June 7, 2000 memorandum demonstrates is that Goldman Sachs – *responding* to NACEPF's "search[] for investors" – eventually entered into negotiations with the

Alliance. This does not constitute purposeful availment or even come close.[10] *See Phillips Exeter Acad.*, 196 F.3d at 292.

Nor do any of the later communications identified by plaintiff support a finding of voluntariness. First, as discussed *supra* at 8-10, plaintiff itself originated the majority of phone calls and e-mails cited by plaintiff. "Such unilateral action by a plaintiff does not render the defendant amenable to suit in the plaintiff's home forum." *Reynolds v. International Amateur Ath. Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994); *accord Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991). Second, those communications originated by any of the Individual Defendants are so limited in number and, as noted *supra* at 8-10, have no apparent connection to plaintiff's claims or any forum-based activity, that they cannot support a finding of purposeful availment of the forum.[11] *See Platten*, 437 F.3d at 138 (questioning the exercise of jurisdiction based on phone calls and letters and citing with approval *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995), which held: "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts.")[12]

Similarly, the so-called contacts in connection with plaintiff's C Round Financing Claims consist exclusively of official corporate mailings *from Clearwire* – not the defendants – which

---

10 Moreover, this memorandum does not identify which, if any, of the Individual Directors were involved in discussions with the Alliance at this time. And, as noted above, plaintiff's evidence shows that the contacts for the Alliance were in New York, Connecticut and Colorado. *See supra* at 7, 11.

11 Such communication is particularly insignificant where, as here, it is sent into the forum solely a consequence of the plaintiff's residence. *See* Primeau Aff. at ¶¶ 14-17 (noting that communications "occurred while I was in Rhode Island"). Courts have repeatedly held that this does not create an act of purposeful availment by the defendants. *See Mahler v. Startari*, 142 Fed. Appx. 839, 842 (6th Cir. 2005); *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 730 (D. Iowa 2005). Under plaintiff's rationale, had defendants communicated with him while he was on vacation or on his cell phone in another state, defendants would be equally subject to jurisdiction in that forum.

12 *Accord, Nicholas v. Buchanan*, 806 F.2d 305, 307-08 (1st Cir. 1986) (per curiam) (collecting cases); *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982) ("the use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process'").

were sent to all shareholders. The fact that these Clearwire documents happened to have been sent to Rhode Island because the plaintiff happened to live here is clearly insufficient under the law to establish specific jurisdiction, even as to Clearwire. *See West Virginia Laborers Pension Trust Fund*, 829 N.E. 2d 843, 851 (Ill. App. Ct. May 11, 2005) (merger materials mailed to all shareholders in the forum were insufficient to establish jurisdiction) (citing *Young v. Colgate Palmolive*, 790 F.2d 567, 570 (7th Cir. 1986) (holding that mailings to shareholders are not "purposeful contacts")).

Last, none of the contacts alleged by plaintiff made it foreseeable that the Individual Defendants would be subject to jurisdiction in this Court. Forseeability, like the element of relatedness, must be viewed in the context of the particular claims asserted. *See, e.g., Hainey v. World AM Communications, Inc.*, 263 F. Supp. 2d 338, 343 (D.R.I. 2003). Here, the location of any injury alleged in plaintiff's tortious interference claims occurred where the actual act of interference occurred and any "breach of fiduciary duty occurs [in the state] where the fiduciary acts disloyally." *Phillips Exeter Acad.*, 196 F.3d at 291; *accord Platten*, 437 F.3d at 138. As explained *supra* at 10-12, there is no evidence that either of these things occurred in Rhode Island – a place where none of the participants are ever alleged to have spent any time (much less engaged in the alleged specified act of wrongdoing).[13]

---

13 Plaintiff's reliance on *Ealing Corp. v. Harrods, Ltd.* 790 F.2d 978, (1st Cir. 1986) for the proposition that a defendant is subject to jurisdiction for sending a false statement into the forum, with knowledge that plaintiff would rely on this statement, is unavailing. In *Ealing*, the plaintiff identified a specific misrepresentation in a telex sent directly from the defendant to the plaintiff. *Id.* at 981-82. Here, as discussed *supra* at 7-12, the plaintiff has made no such showing. More relevant is the later First Circuit decision in *Nicholas*, 806 F.2d at 307, holding that a plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more, [was not] sufficient to satisfy due process requirements." *Id.* (citing *Ealing* as distinguishable).

### C. In-Forum "Effects" Are Irrelevant

Stripped to its essence, it becomes clear that plaintiff's opposition rests heavily – if not exclusively – on the fact that NACEPF and its president Mr. Primeau are residents of Rhode Island. The law is clear, however, that for jurisdictional purposes it is not the plaintiff's residence that matters; the sole issue is the nature and extent of the *defendants'* contacts with the forum itself. *See Lantor, Inc. v. Nicassio Corp.*, 2007 WL 204015 at *6 (D.R.I. Jan. 24, 2007) (citing *Phillips Exeter Acad.*, 196 F.3d at 290). "The existence of jurisdiction turns *not upon a defendant's relationship with a resident plaintiff, but will depend on whether the defendant participated in the economic life of the forum. . . .*" *Lantor*, 2007 WL 204015 at *8 (citing *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 933 (1st Cir. 1985)) (emphasis added). NACEPF has neither alleged nor provided by affidavit any facts whatsoever to establish that any of the Individual Defendants participated in relevant activities in Rhode Island.[14]

Nor can plaintiff convert what is essentially non-forum conduct into a jurisdictional contact by claiming that it (i) suffered the effects of this conduct in the forum (*see Sawtelle*, 70 F.3d at 1390-91 (finding no specific jurisdiction, noting that where "the gravamen of the [plaintiffs'] claim is that they suffered in New Hampshire the 'effects' of the defendants' negligence committed elsewhere")) or (ii) received Clearwire's mailings about the C Round in Rhode Island (*see Miller v. American Tel. & Tel. Co.*, 394 F. Supp. 58, 64 (E.D. Pa. 1975) ("The place of residence of stockholders and customers is *irrelevant* and incidental to the actions taken

---

14 The decisions in *Microfibres v. Squires Hightech Corp.*, 2006 WL 305975 (D.R.I. Feb. 8, 2006) and *Northeastern Land Services, Ltd. v. Schulke*, 988 F. Supp. 54 (D.R.I. 1997), on which plaintiff relies, are inapposite. In *Microfibres*, the court determined that the defendant had purposely availed itself of the forum by holding *three meetings with the plaintiff in Rhode Island* to negotiate the very contract at issue in the lawsuit. 2006 WL 305975, at *6. In *Northeastern Land Services*, the court held that the defendant had purposely availed himself of the benefits of Rhode Island where the defendant had been *employed by the plaintiff in Rhode Island, performed many of his duties in Rhode Island, and regularly attended board meetings there.* 988 F. Supp. at 56.

by the Individual Defendants which are complained of here.")). As the First Circuit succinctly put it in *Massachusetts School of Law at Andover, Inc. v. ABA*: "We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and *have found in the negative.*" *Mass. Sch. of Law at Andover*, 142 F.3d at 36 (emphasis added). But, as discussed above, in-state effect is all that plaintiff's evidence establishes. The fortuitous fact that NACEPF is based in Rhode Island is, under the circumstances, irrelevant for jurisdictional purposes.

## II. PLAINTIFF CANNOT ALLEGE GENERAL JURISDICTION OVER THE GOLDMAN SHAREHOLDER DEFENDANTS

The First Circuit has recognized that "[t]he standard for evaluating whether . . . contacts satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions." *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998) (quoting *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir. 1984)); *accord Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 164 n.11 (D. Me. 2004). The standard is even greater with respect to GS Offshore, which is not even a U.S. entity. *Noonan*, 135 F.3d at 93. ("Courts must exercise even greater care before exercising personal jurisdiction over foreign nationals."). Plaintiff fails to establish that these strict requirements are even close to satisfied here.

Nowhere in plaintiff's submissions is there any evidence that either GS Capital Partners or GS Offshore have maintained continuous and systematic contacts with the State of Rhode Island (or for that matter, any contacts at all).[15] Instead, plaintiff again relies on agency theory

---

15 Plaintiff's assertion that defendants did not deny continuous and systematic contacts with Rhode Island demonstrates a fundamental misunderstanding of its pleading burden. Defendants GS Capital Partners III and GS Offshore properly disputed the existence of personal jurisdiction; having done so, it is not their burden to disprove the existence of jurisdiction. Rather, it is plaintiff's burden to set forth facts, which establish that jurisdiction exists – a burden plaintiff still has not met. *See Barrett v. Lombardi*, 239 F.3d 23,

and hypothesizes that "the fact that this Court may exercise jurisdiction over the GS Group *may* also permit the exercise of personal jurisdiction over the Goldman Shareholder Defendants, *if* the GS Group acted as agents for the Goldman Shareholder Defendants." Pl. Jur. Opp. Mem. at 3.

The only authority cited by plaintiff in support of this vast expansion of the principles of general jurisdiction is *Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd*, 298 F.3d 1 (1st Cir. 2002), which stands for no such proposition. The court in *Jet Wine & Spirits* determined that it had *specific* jurisdiction over the defendant based on the in-forum actions of its agent and clearly stated: "*We express no opinion on the strength of Jet Wine's arguments for general jurisdiction.*" *Id.* at 6 n. 4 (emphasis added). In contrast, in *Daynard*, the First Circuit recognized that exercising general jurisdiction over a defendant who had engaged in no forum-based activities by imputing the "continuous and systematic" contacts of a related party, would be an "unjust scenario." *Daynard*, 290 F.3d at 55 (1st Cir. 2002) (discussing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 469 (1st Cir. 1990)). Accordingly, plaintiff's position is untenable and must be rejected.

Plaintiff is cognizant of the lack of evidence establishing jurisdiction over the Goldman Shareholder Defendants and seeks to engage in a fishing expedition to find any possible link. Discovery is not warranted "when, as in the instant case, a plaintiff's pleadings and affidavits are insufficient to make a *prima facie* showing of facts supporting the court's assertion of *in personam* jurisdiction." *In Market/Media Research, Inc. v. Union Tribune Publishing Co.*, 951

---

26-27 (1st Cir. 2001) ("[T]o defeat a motion to dismiss for want of *in personam* jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality.").

F.2d 102, 106 (6th Cir. 1991) (cited by *Noonan v. Winston*, 902 F. Supp. 298, 309 (D. Mass. 1995)).[16]

## III. THE EXERCISE OF JURISDICTION OVER DEFENDANTS IS NOT REASONABLE

Because plaintiff has failed to make the requisite showing that the defendants had contact with the forum related to the claims asserted *and* that the defendants purposefully availed themselves of the forum, there is no basis for the exercise of jurisdiction here. Accordingly, the court need not reach the question of reasonableness. *United Elec., Radio & Mach. Workers of Am.*, 960 F. 2d at 1091 ("The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled."). Nonetheless, we address the issue briefly.[17]

**Rhode Island Law Does Not Govern the Case**. Plaintiff's argument that the exercise of jurisdiction is reasonable in Rhode Island is constructed on the faulty premise that Rhode Island law governs its claims. Pl. Jur. Opp. Mem. at 21, 23. As set forth in Defendants' 12(b)(6) Memorandum (at 11-12) and Defendants' 12(b)(6) Reply Memorandum (at 4-11), submitted herewith, Rhode Island law is not applicable to any of NACEPF's claims. Because plaintiff's claims do not arise out of any Rhode Island based activity and are not governed by Rhode Island law, "considerations of Rhode Island's interest in adjudicating the dispute" and "the common interests of all sovereigns in promoting substantive social policies" (Gestalt factors (b) and (e)) weigh against the exercise of jurisdiction here. *See Sawtelle*, 70 F.3d at 1394-95; *Donatelli v. Nat'l Hockey League*, 893 F.2d at 471-72.

---

16 Plaintiff has not requested any additional discovery on the question of specific jurisdiction over any of the defendants, nor is there any basis for plaintiff to do so. *See Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 162 (D. Me. 2004) (denying discovery where "[e]vidence of injury to [plaintiff] in Maine would most likely come from [plaintiff] himself, not discovery initiatives directed at [defendant]").

17 In light of the weakness of plaintiff's evidence on the first two prongs of the jurisdictional analysis, its assertion that jurisdiction is reasonable carries little weight. *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) ("the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction").

**Convenience Factors Weigh Against Rhode Island**. In its attempt to dispute that the limitations on the subpoena power of this court weighs against its interest in obtaining convenient and effective relief (Gestalt factor (c)), plaintiff does not contest that this fact makes the exercise of jurisdiction in the forum unreasonable. Rather, plaintiff attempts to disregard this issue because defendants did not at this stage provide an exhaustive list of likely witnesses. Pl. Jur. Opp. Mem. at 23. Even at this preliminary stage, it is plainly obvious that – aside from plaintiff – anyone affiliated with Clearwire, the defendants, or the Alliance is located outside of the forum's subpoena power. Moreover, of course, plaintiff cannot legitimately complain that it is "too inconvenient" for it to litigate in the Delaware courts, having over the past three years commenced separate actions there against Clearwire and the Individual Defendants.

**This Case Is Almost Identical to the One Pending in Delaware**. Finally, plaintiff suggests that the Pending Delaware Litigations have no bearing on the analysis, proclaiming that the NACEPF Delaware action does not involve the same claims. Pl. Jur. Opp. Mem. at 23, 36. Even a cursory glance at the complaints in the two cases belies that assertion. The claims of fraudulent inducement and tortious interference raised in the NACEPF Delaware action are identical, while the fraud claim asserted here is asserted as a breach of fiduciary duty claim in the NACEPF Delaware Action. As explained in Defendants' Jurisdictional Memorandum at 18-21, because of the burdens and inconveniences associated with duplicative litigations, it is unreasonable to assert jurisdiction in this forum.

**GS Group Has No Connection To This Action**. Plaintiff has not alleged any conduct by GS Group in connection with this action (in this forum or anywhere else). Def. Jur Mem. at 14, 18-21. Instead, plaintiff seeks to hold GS Group liable strictly through imputation of the alleged activities of the Individual Defendants. The Individual Defendants, however, having no

jurisdictional contacts with the forum (*see supra* at I.B.), will not be a party to this action and, given plaintiff's prolix history of pursuing litigation against them (Def. Jur. Mem. at 1-3), will likely be forced to defend themselves (as will the Goldman Shareholder Defendants) in a separate action, once plaintiff inevitably refiles this action in an appropriate forum. Accordingly maintaining this action solely against GS Group in this forum would unjustifiably increase the inconveniences and burdens on all parties and the courts.

For these reasons, as well as the reasons stated in Defendants' Jurisdictional Memorandum, the exercise of jurisdiction in this action is unreasonable.

## IV. THERE IS NO BASIS TO EXERCISE PENDENT JURISDICTION OVER THE C ROUND FINANCING CLAIMS

Plaintiff's argument that if jurisdiction exists with respect to any of the Master Agreement claims, the court may exercise pendant jurisdiction over the defendants in connection with the C Round claims, fails as a matter of law and logic. First, plaintiff's proposal flies in the face of the Constitutional requirements for the exercise of specific jurisdiction, which as discussed *supra* at 2, strictly mandate that the exercise of such jurisdiction must be claim-specific. [18] In essence, plaintiff asks this court to employ the doctrine of pendent personal jurisdiction to exercise jurisdiction over all claims. Far from being "settled" law as plaintiff contends (Pl. Jur. Opp. Mem. at 37), at least one court has observed that "the First Circuit never has adopted such a doctrine." *See Filler v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 337 F.

---

18 *See* discussion *supra* at 2. *Phillips Exeter Acad.*, 196 F.3d at 289; *accord Hainey*, 263 F. Supp. 2d at 344; *Remick v. Manfredy*, 238 F.3d 248, 255 (3rd Cir. 2001) (a conclusion that a district court has specific jurisdiction over a defendant as to a particular claim does not necessarily mean that it has specific jurisdiction over the same defendant as to other claims); *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1307 (D. Del. 1990) ("Where general jurisdiction . . . is lacking, the constitutional analysis distinguishing between general and specific jurisdiction would become meaningless if the finding of specific jurisdiction over one claim provided the basis for extending jurisdiction over all other alleged claims.").

Supp. 2d 298, 324 (D. Mass. 2004); *see also Riley v. Harr*, 292 F.3d 282, 288 n.8 (1st Cir. 2002) (declining to consider the "complex and unsettled doctrine of pendent personal jurisdiction").

Second, the limited circumstances under which pendent personal jurisdiction might apply are not present here – as the claims do not arise out of a "common nucleus of operative facts." *In re Lernout & Hauspie* 337 F. Supp. 2d at 324; *accord In re New Motor Vehicles Canadian Export Antitrust Litigation*, 335 F. Supp. 2d 126 (D. Me. 2004); *Anderson v. Century Products Co.*, 943 F. Supp. 137, 144-45 (D.N.H. 1996). No such common nucleus is shared among all of plaintiff's varied claims, which arise out of a series of unrelated events, spanning the course of nearly three years. The fraud and tortious interference claims in connection with the Master Agreement arise out of supposed misrepresentations *by the defendants* in the years 2000 through early 2002. In contrast, plaintiff's C Round breach of fiduciary duty and fraud claims do not relate to the Master Agreement at all, but instead concern NACEPF's rights as a shareholder of Clearwire. Moreover, these claims arise out of the Company's efforts to find additional financing or a strategic partner, which began in April 2003, long after the other members of the Alliance had terminated the Master Agreement. Accordingly, the exercise of pendent personal jurisdiction would be improper here.

The authority relied on by plaintiff has no application here as each of the cases cited asserted jurisdiction where the multiple claims arose out of the same event, i.e., shared a common nucleus of fact.[19] Moreover, it is no coincidence that all of the cases relied on by

---

19 *See Salpoglou v. Schlomo Widder, M.D., P.A.*, 899 F. Supp. 835, 838 (D. Mass. 1995) (malpractice and breach of contract claims arising out of unsuccessful surgery and release agreement); *Val Leasing v. Hutson*, 674 F. Supp. 53, 56 (D. Mass. 1987) (varied claims arising out of inadequate renovation); *Home Owners Funding Corp. of America v. Century Bank*, 695 F. Supp. 1343, 1345-46 (D. Mass. 1988) (all claims arising out of misrepresentations regarding one contract); *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 663-64 (1st Cir. 1972) (fraud and breach of contract arising out of failure to pay a percentage of billings under one contract) (cited by *Platten*, 437 F.3d at 138 (noting that *Murphy* "was decided before the advent of the Supreme Court's modern personal jurisdiction cases") (citations omitted)).

Plaintiff come out of the District of Massachusetts. Unlike Rhode Island's long-arm statute, which permits the exercise of jurisdiction to the full extent allowed by Due Process, the Massachusetts long-arm statute permits the exercise of personal jurisdiction only in specific situations.[20] Therefore, it is possible for a Massachusetts court to have jurisdiction over only one claim under the long-arm statute even though there are sufficient minimum contacts with respect to all claims. As plaintiff's cases demonstrate, this is the precise situation in which the exercise of pendent personal jurisdiction would apply.[21] It is not, as plaintiff seeks to use it, an end-run around the Constitution where a defendant has not had the requisite minimum contacts with respect to each and every claim asserted.

## V. IT IS A PROPER EXERCISE OF THIS COURT'S DISCRETION TO GRANT A STAY

The decision as to whether it is appropriate to stay an action is left to the discretion of the court. Plaintiff has not provided any compelling reason for this court not to exercise its discretion to await a final ruling from the Delaware Supreme Court in the largely duplicative NACEPF Delaware Action filed by plaintiff prior to the present action. Accordingly, for reasons stated in Defendants' Jurisdictional Memorandum at 22-27, this action should be stayed.

---

20 *Compare* R.I. Gen. Laws § 9-5-33 *with* Mass. Gen. Laws ch. 223A § 3.

21 *See Anderson*, 943 F. Supp. at 146 (noting "cases extending the doctrine to state long-arm statutes do not bring its constitutional significance into the sharp focus that is appropriate") (citing *Val Leasing*, 674 F. Supp. at 56; *Home Owners Funding Corp.*, 695 F. Supp. at 1345-46; *Murphy*, 460 F.2d at 663-64).

## Conclusion

For the forgoing reasons, as well as the reasons stated in the defendants' opening memoranda in support of their respective motions to dismiss the Complaint, the defendants respectfully request that all claims asserted against them in this action be dismissed.

Respectfully submitted,

April 26, 2007

**THE GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P., GERRY CARDINALE, ROB GHEEWALLA, and JACK DALY,**

By their Attorneys,

/s/ Brian J. Lamoureux
William M. Dolan III (#4524)
Wayne F. Dennison, *pro hac vice*
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main Street
Providence, RI 02903
401.276.2600
401.276.2601 Facsimile
bjl@brownrudnick.com
*Attorneys for Defendants*

OF COUNSEL:
Douglas H. Flaum
Lara Turcik
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980
212.859.8000

**CERTIFICATION**

I hereby certify that, on the 26th day of April, 2007, this document was electronically filed and that it is available for viewing and downloading from the Court's ECF system by the following Filing Users:

Matthew T. Oliverio
Christine M. Curley
Oliverio & Marcaccio LLP
55 Dorrance Street
Suite 400
Providence, RI 02903

/s/ Brian J. Lamoureux

# 50227605 v1 - LAMOURBJ - 024607/1432