**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **C.A. No.: 06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS ITI, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants*.** | : | |

**CONSOLIDATED RESPONSE TO DEFENDANTS' REPLY MEMORANDUM AND IN FURTHER SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12 (b)(5) AND, IN THE ALTERNATIVE TO STAY THE ACTION**

## Table of Contents

Table of Authorities .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THIS COURT HAS GENERAL JURISDICTION OVER GS GROUP WITH RESPECT TO EACH OF THE CLAIMS ASSERTED IN THE COMPLAINT. .......... 2

II. THIS COURT MAY ASSERT SPECIFIC JURISDICTION OVER THE INDIVIDUAL DEFENDANTS. .......... 3

A. All of the Contacts of the Individual Defendants with the Forum are Relevant to the Jurisdictional Equation. .......... 3

B. Telephone Contacts and E-mail Communications by the Individual Defendants Are Relevant to the Jurisdictional Analysis. .......... 4

C. The Contacts of the Individual Defendants Are Sufficient to Confer Jurisdiction Over the Plaintiff's Claims as the Effects of Defendants' Actions Were Sustained in Rhode Island. .......... 7

D. This Court May Exercise Pendent Personal Jurisdiction Over All of Plaintiff's Claims. .......... 10

III. PLAINTIFF REQUESTS JURISDICTIONAL DISCOVERY WITH RESPECT TO THE GOLDMAN SHAREHOLDER DEFENDANTS. .......... 11

CONCLUSION .......... 13

# Table of Authorities

## Cases

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004)............. 10

*Agsco Corp. v. Scheer*, 1999 WL 1285867 (N.D. Ill. 1999)........................................................ 5

*Amoco Oil v. IBEW*, 536 F. Supp. 1203 (D.R.I. 1982).......................................................... 6, 13

*Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp. 2d. 539 (N.D. Ohio 2003)......................... 5

*Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292 (R.I. 1982) ................................... 3

*Brookfield Machine, Inc. v. Calbrit Design*, 929 F. Supp. 491 (D. Mass. 1996) .......................... 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174 (1985)................................... 8, 9

*Compana, LLC v. Emke*, 2004 WL 2058782 (N.D. Tex. 2004) .................................................... 7

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002)..... 12

*Digital Equipment Corp. v. Altavista Technology, Inc.*, 960 F. Supp. 456 (D. Mass. 1997) ......... 9

*Dynamic Concepts, Inc. v. Modern Chain Mfg. Co., Inc.*, 610 F. Supp. 285 (D.R.I. 1985)........... 8

*Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir. 1980) ................................ 3

*Forum Financial Group v. President and Fellows of Harvard College*, 173 F. Supp. 2d 72 (D. Me. 2001)........................................................................................................ 2, 8, 11

*Hainey v. World Am Communications, Inc.*, 263 F. Supp. 2d. 338 (D.R.I. 2003)....................... 11

*In re Lernout & Hauspie Securities Litigation*, 337 F. Supp. 2d. 298 (D. Mass. 2004)............... 10

*In re New Motor Vehicles Canadian Export Antitrust Litigation*, 335 F. Supp. 2d. 126 (D. Me. 2004)........................................................................................................................... 10

*Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d. 103 (D. Mass. 2003)................ 4

*ITI Holdings, Inc. v. Professional Scuba Association*, 2006 WL 240618 (D. Me. 2006) ............. 6

*Jet Wine & Spirits, Inc. v. Bacardi & Company, Ltd.*, 298 F.3d 1 (1st Cir. 2002)...................... 11

*Lahr v. Adell Chemical Co.*, 300 F.2d 256 (1st Cir. 1962)......................................................... 4

*Levinger v. Matthew Stuart & Co., Inc.*, 676 F. Supp. 437 (D. R.I. 1988).................................. 6

*Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972)............................................. 10, 11

*New Life Brokerage Services, Inc. v. Cal-Surance Associates, Inc.*, 222 F. Supp. 2d. 94 (D. Me. 2002) ........ 7

*Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996) ........ 6

*Platten v. HG Bermuda Exempted, Ltd.*, 437 F.3d 118 (1st Cir. 2006) ........ 12

*Robinson Manufacturing Co. v. Banc of America Commercial LLC*, 2002 WL 1284282 (D. Me. 2002) ........ 10

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ........ 5

*Spear v. Somers Sanitation Service, Inc.*, 162 F.R.D. 1 (D. Mass. 1995) ........ 4

*Sunview Condominium Association, et al. v. Flexel International, Ltd.*, 116 F.3d 962 (1st Cir. 1997) ........ 12

*Sun Bank, N.A. v. E.F. Hutton & Company, Inc.*, 926 F.2d 1030 (11th Cir. 1991) ........ 5

*Surpitski v. Hughes-Keenan Corporation, etc., et al.*, 362 F.2d 254 (1st Cir. 1966) ........ 12

*The Elliott Sales Group, Inc. v. Dare Development Group, Inc.*, 1998 WL 34101010 *5 (D.R.I. 1998) ........ 8

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) ........ 7

*U.S. v. Swiss American Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999) ........ 12

*Unis Intern. Corp. v. M.L. Marketing Co.*, 1993 WL 116744 (N.D. Ill. 1993) ........ 7

*United Elec., Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080 (1st Cir. 1992) ........ 2

*United States v. Milkiewicz*, 470 F.3d 390 (1st Cir. 2006) ........ 6

*Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d. 102 (D. Mass. 2003) ........ 4

Plaintiff North American Catholic Educational Programming Foundation, Inc. ("NACEPF") files its response to the Consolidated Reply Memorandum of Law filed on behalf of all the Defendants with respect to their Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) and in the alternative to stay the action, and in further support of its objection to the motions to dismiss.

## **INTRODUCTION**

Since the filing of Defendants' motions, the Delaware Supreme Court issued its decision in the pending Delaware action, *North American Catholic Educational Programming Foundation, Inc. v. Rob Gheewalla, Gerry Cardinale and Jack Daly, No. 521, 2006*, denying NACEPF's appeal. A true and accurate copy of this Decision is attached hereto as *Exhibit D.*

Consequently, there is absolutely no basis for this Court to stay this action, as there is no longer a case pending in Delaware or any other forum involving NACEPF as a party.

In addition, it is significant that the Delaware court did not rule on any of the substantive legal claims before it apart from the viability of a creditor's action for breach of fiduciary duty under Delaware law. In its twenty-four page decision, the Delaware Supreme Court limited its consideration to a novel question of Delaware law; namely whether a corporation's creditors, when such corporation is insolvent or in the 'zone of insolvency,' may assert direct claims for breach of fiduciary duty against the corporation's directors. By answering this question in the negative, the ruling affirmed the Chancery Court's decision to grant Defendants' Motion to Dismiss for lack of personal jurisdiction over the Individual Defendants. As such, the case is concluded.

In its decision, the Delaware Supreme Court did not examine or address any of the issues before this Court beyond a mere recitation of the facts alleged in Plaintiff's complaint.

Accordingly, the decision of the Delaware court has no res judicata or collateral estoppel effect on the separate claims pending in this Court brought by NACEPF for fraud, tortious interference with prospective business relationships, or breach of fiduciary duty to NACEPF as shareholder. Moreover, the fact that the Delaware courts have declined to assert jurisdiction over the Individual Defendants further supports the exercise of jurisdiction over all of the Defendants, including GS Group, in Rhode Island.

## ARGUMENT

### I. THIS COURT HAS GENERAL JURISDICTION OVER GS GROUP WITH RESPECT TO EACH OF THE CLAIMS ASSERTED IN THE COMPLAINT.

Defendant GS Group has conceded that it maintains continuous and systematic contact with Rhode Island so as to confer general jurisdiction upon this Court over each of the claims asserted in the Complaint. *United Elec., Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). In its Reply, GS Group does not proffer any additional basis for this Court to conclude that jurisdiction would be unreasonable under any of the "gestalt factors." Furthermore, the dismissal of the Delaware case brought by NACEPF renders the "pending action" argument a non factor. Consequently, GS Group's motion to dismiss must be denied. *See Forum Financial Group v. President and Fellows of Harvard College*, 173 F. Supp. 2d 72, 87 (D. Me. 2001) (once plaintiff has made a showing of requisite minimum contacts, the burden shifts to the defendants to show that the exercise of jurisdiction is otherwise unfair).

GS Group's principal argument is that there are no claims asserted against it in the Complaint. GS Group conveniently overlooks the obvious. The Complaint defines Defendants Goldman Sachs Group, Inc., GS Capital Partners III, L.P., GS Capital Partners III, Offshore L.P.

and Goldman, Sachs & Co. Verwaltungs GmbH collectively as "Goldman Sachs." Compl. ¶ 8. Insofar as the Defendants have differentiated GS Capital Partners III, L.P., GS Capital Partners III, Offshore L.P. and Goldman, Sachs & Co. Verwaltungs GmbH as the "Goldman Shareholder Defendants" and have conceded that the Individual Defendants worked for GS Group, references to Goldman Sachs in the Complaint necessarily mean and refer to "GS Group." In addition, it is well settled that a corporation acts through its agents. Thus, the actions of the Individual Defendants, whether occurring inside or outside of the jurisdiction, may properly be attributed to the GS Group for the purpose of establishing liability. *See Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292, 1295 (R.I. 1982) (a corporation is responsible for the tortious conduct committed by its agents while acting within the scope of their authority).

Accordingly, this Court may properly assert jurisdiction over GS Group with respect to all of the claims asserted in the Complaint.

## II. THIS COURT MAY ASSERT SPECIFIC JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

### A. All of the Contacts of the Individual Defendants with the Forum are Relevant to the Jurisdictional Equation.

The First Circuit has made it clear that an individual corporate officer may be held liable to third parties for tortious conduct the officer commits on behalf of a corporate employer where the officer is directly involved in the decision or action which is causally related to the plaintiff's injury. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980). An individual officer is liable for torts in which he personally participated whether or not he was

acting within the scope of his authority. *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 260 (1st Cir. 1962).[1]

Although jurisdiction over a corporate officer may not be predicated solely upon jurisdiction over the corporation, the requirement for an independent jurisdictional basis over an officer may be satisfied when a corporate officer transacts in-forum business either in his personal capacity or on behalf of the corporation. *Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d. 103, 105 (D. Mass. 2003). Thus, corporate contacts, even in the absence of personal contacts, are sufficient to satisfy constitutional due process. *Id*.

In this case, Cardinale, Gheewalla and Daly, all acted at the behest of the Goldman Sachs Defendants in their communications with NACEPF in Rhode Island and in directing their fraudulent misrepresentations with the intent to acquire the assets of a Rhode Island corporation. All of the contacts previously enumerated in the Affidavit of John Primeau and the Complaint must be factored into the jurisdictional equation.

### B. Telephone Contacts and E-mail Communications by the Individual Defendants Are Relevant to the Jurisdictional Analysis.

A defendant's lack of physical presence in the state is not fatal to the exercise of jurisdiction. When physical presence is lacking, the Court looks for some other indication that the defendant reached into the forum, such as mail or telephone contacts. *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d. 102, 113 (D. Mass. 2003) (citing cases).

Despite the Individual Defendants' arguments to the contrary, the telephone communications and e-mails with the Plaintiff in Rhode Island were more than mere fortuitous

[1] Plaintiff requests the opportunity to amend its complaint if necessary and to the extent required by this Court. *See Spear v. Somers Sanitation Service, Inc.*, 162 F.R.D. 1 (D.Mass. 1995) (granting motion to amend complaint to

contacts with a plaintiff that happened to be located in Rhode Island and do meet the purposeful availment prong of the jurisdictional analysis.[2] As the First Circuit acknowledged in *Sawtelle v. Farrell*, 70 F.3d 1381, 1389-90 (1st Cir. 1995), the transmission of information by telephone and mail is unquestionably a contact for the purpose of jurisdiction. The problem in *Sawtelle* was that telephone calls and letters did not form the basis of the legal malpractice claims, as the alleged negligence took place where the litigation was prosecuted in Florida and where pertinent settlement decisions were made in Virginia. *Id.* at 1390. Here, the representations in the June 7, 2000 memorandum were directed to NACEPF, reviewed by NACEPF in Rhode Island, were restated on numerous occasions by the Individual Defendants in subsequent communications and were expressly relied upon by NACEPF entering into and maintaining the business relationship with Clearwire. Thus, the initial contact and subsequent communications form the basis of the cause of action for fraud, permitting the exercise of jurisdiction. *See Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp. 2d. 539 (N.D. Ohio 2003) (representations in telephone conversations, mail and e-mail directed to forum regarding capacity and intentions to perform contract were sufficient to confer personal jurisdiction over non resident shareholder); *Agsco Corp. v. Scheer*, 1999 WL 1285867 (N.D. Ill. 1999) (mailings and telephone calls by non resident into forum with intent to effect forum resident was a sufficient basis for jurisdiction).

The fact that NACEPF may have originated a substantial number of the communications with the Individual Defendants does not transform the communications into "involuntary" contacts. In those contacts and communications, the Individual Defendants were in the process

---

allege claims against individual shareholders of corporation).

[2] In this way, S*un Bank, N.A. v. E.F. Hutton & Company, Inc.*, 926 F.2d 1030 (11th Cir. 1991) is factually distinguishable, as in that case a Massachusetts customer chose to move to Florida, such that the calls to Florida were merely fortuitous and not purposeful. Here, Plaintiff has at all times been located in Rhode Island and the Individual Defendants purposefully communicated with the Plaintiff in Rhode Island to acquire the assets owned by a Rhode Island corporation.

of negotiations such that the communications cannot in any sense be viewed as "unilateral" or "involuntary" action by the Plaintiff. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996) (finding that even if business relationship was originally instigated by plaintiff, the continued communications with residents of the forum did not amount to unilateral action that made the forum-state contacts involuntary). Likewise, the Defendants were not coerced or deceived into dealing with a Rhode Island corporation. *See Levinger v. Matthew Stuart & Co., Inc.*, 676 F. Supp. 437, 440 (D. R.I. 1988) (course of dealing supported finding that defendants' conduct was purposefully directed toward Rhode Island).

The logs created by John Primeau cataloguing the phone calls and e-mails from the Individual Defendants and their attorneys as agents, and attached to his affidavit, are admissible summaries of voluminous documents permitted by Rule 1006 of the Federal Rules of Evidence. *See Brookfield Machine, Inc. v. Calbrit Design*, 929 F. Supp. 491 (D. Mass. 1996) (chart summarizing phone calls extending over one year deemed admissible). There is no requirement under the Rules of Evidence for the actual telephone and computer records to be introduced in evidence. *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006). Nevertheless, the subject telephone records are available for inspection and review.

Finally, it is clear that the Affidavit of John Primeau constitutes admissible evidence to refute Defendants' Motions to Dismiss inasmuch as the statements therein are based upon John Primeau's personal knowledge and the business records of NACPEF. *See Amoco Oil v. IBEW*, 536 F. Supp. 1203 (D.R.I. 1982) (court may consider any affidavits presented to determine whether there is a factual issue as to the existence of jurisdiction); *ITI Holdings, Inc. v. Professional Scuba Association*, 2006 WL 240618 (D. Me. 2006) (court reviews assertions in affidavit and exhibits submitted therewith in determining personal jurisdiction). The assertions

in the Affidavit of John Primeau are in marked contrast to the cases cited by Defendants wherein the plaintiffs failed to submit *any* evidence in support of the exercise of personal jurisdiction apart from their complaints. *See Compana, LLC v. Emke*, 2004 WL 2058782 (N.D. Tex. 2004) and *Unis Intern. Corp. v. M.L. Marketing Co.*, 1993 WL 116744 (N.D. Ill. 1993).

### C. The Contacts of the Individual Defendants Are Sufficient to Confer Jurisdiction Over the Plaintiff's Claims as the Effects of Defendants' Actions Were Sustained in Rhode Island.

Jurisdictional contacts are analyzed in terms of their "relatedness" to the cause of action and whether or not they constitute "purposeful availment" of the forum. *See New Life Brokerage Services, Inc. v. Cal-Surance Associates, Inc.*, 222 F. Supp. 2d. 94 (D. Me. 2002) (citing cases). Relatedness flexibly incorporates concepts of proximate cause in terms of whether the litigation arises out of or is related to a defendant's contacts with the forum state. *Id*. The touchstones of purposeful availment are voluntariness and forseeability. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

In this regard, Plaintiff has asserted allegations regarding cause in fact and legal cause sufficient to withstand jurisdictional scrutiny with respect to the relatedness aspect of the jurisdictional analysis. Specifically, NACEPF has alleged in its Complaint and the Affidavit of John Primeau that representations made to it by the Individual Defendants caused them to enter into the Master Agreement and adversely interfered with other prospective business relationships. But for the Individual Defendants' representations in the June 7, 2000 memorandum directed to NACEPF and reviewed by NACEPF in Rhode Island, and reiterated in subsequent meetings and communications, Plaintiff would not have been harmed. At this stage of the proceedings, Plaintiff's allegations meet the jurisdictional requirement of relatedness and

causation. *See Forum Financial Group v. President and Fellows of Harvard College*, 173 F. Supp. 2d. at 88-89.

The contacts of the Individual Defendants were directed toward Rhode Island, with the knowledge that the end result of their communications and negotiations would be a long-term structured relationship with NACEPF in Rhode Island. *See Dynamic Concepts, Inc. v. Modern Chain Mfg. Co., Inc.*, 610 F. Supp. 285 (D.R.I. 1985) (specific jurisdiction could be exercised against New York corporation based upon "structured relationship" with Rhode Island plaintiff) (citing to *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182 (1985)).

In particular, the negotiations leading up to the execution of the Master Agreement, and the alleged fraudulent misrepresentations made in the course of both the negotiations of the Master Agreement and the continued performance thereof, were directed toward NACPEF in Rhode Island. When NACEPF entered into the Master Agreement, it was done in reliance on the Individual Defendants' statements regarding Goldman Sach's financial capability and stated commitment to a long-term partnership for the development of the ITFS spectrum. It cannot be credibly disputed that the Individual Defendants contemplated and acted in furtherance of an ongoing business relationship with NACEPF in Rhode Island.

In tort as well as contract cases, the question to be resolved is whether the Individual Defendants voluntarily committed acts that occurred in or were directed at the forum state under circumstances making it reasonably foreseeable that they would be haled into court here. *See The Elliott Sales Group, Inc. v. Dare Development Group, Inc.*, 1998 WL 34101010 *5 (D.R.I. 1998) (asserting jurisdiction where defendant knew or should have known the appropriation of the plaintiff's designs would cause harm to plaintiff's business located in Rhode Island).

It is disingenuous for Defendants to argue that it merely "willingly entered into a tendered relationship" and did not actively engage in negotiations with NACEPF, a Rhode Island entity, simply because NACEPF began the process by searching for investors. The June 7, 2000 memorandum clearly evidences that the Defendants desired to enter into a long-term business relationship with NACEPF, and that it was actively seeking to become the chosen investment partner to develop the wireless spectrum. Unlike the situation where a seller tenders a product that is accepted by a buyer, the Defendants here voluntarily engaged in extensive negotiations with NACEPF before the Master Agreement was executed by the parties in March 2001 and continued the business relationship for years thereafter.

The rationale articulated by the United States Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182 (1985) is most appropo here:

> [The Due Process Clause] requir[es] that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign...." [T]his "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities.

The volume of communications with NACEPF in Rhode Island belies Defendants' assertion that it did not purposefully avail itself of conducting business within the forum and did not otherwise make fraudulent representations regarding its financial capacity and plans in order to acquire the assets of a forum resident.

The fact that the Individual Defendants at all times knew they were communicating misrepresentations to a party located in Rhode Island meets the purposeful availment test. *Digital Equipment Corp. v. Altavista Technology, Inc.*, 960 F. Supp. 456 (D. Mass. 1997) (a defendant allegedly causing harm in a state has acted purposefully because it has targeted the forum state and its residents). Since the Individual Defendants intended their fraudulent

misstatements to effect NACEPF in the Rhode Island forum, by inducing the execution of the Master Agreement, the injurious effects sustained by the intended Rhode Island victim are sufficient to meet the jurisdictional "effects" test for purposeful availment. *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972).

### D. This Court May Exercise Pendent Personal Jurisdiction Over All of Plaintiff's Claims.

Plaintiff's claims against the Individual Defendants are grounded in tort and based upon an alleged pattern of fraudulent conduct, misrepresentation, breach of fiduciary duty and improper and tortious actions directed at the Plaintiff in Rhode Island. Under the doctrine of pendent jurisdiction, a court may assert jurisdiction over a claim for which there is no independent basis of personal jurisdiction. The pendent claim must arise out of a set of facts that also forms the basis of a separate claim in the same action over which the court has jurisdiction. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing cases).

Accordingly, a finding of personal jurisdiction with respect to one claim countenances the exercise of pendent personal jurisdiction over the others. *See In re New Motor Vehicles Canadian Export Antitrust Litigation*, 335 F. Supp. 2d. 126, 128-129 (D. Me. 2004) (applying pendent personal jurisdiction over all claims and acknowledging that the Second, Third, Fourth, Seventh, Ninth, Tenth and D.C. Circuits have all recognized pendent personal jurisdiction explicitly); *Robinson Manufacturing Co. v. Banc of America Commercial LLC*, 2002 WL 1284282 (D. Me. 2002) (asserting personal jurisdiction over all claims arising out of the same nucleus of operative facts stemming from scheme to defraud plaintiffs); *In re Lernout & Hauspie Securities Litigation*, 337 F. Supp. 2d. 298, 323-324 (D. Mass. 2004) (asserting pendent

personal jurisdiction over state law fraud claims). It is only where the claims are separate and distinct that it is necessary to analyze personal jurisdiction with respect to each claim. *Hainey v. World Am Communications, Inc.*, 263 F. Supp. 2d. 338, 344 (D.R.I. 2003) (claim specific jurisdictional analysis is applicable where claims are founded on distinct factual allegations).

Here, the Plaintiff's claims against the Individual Defendants center on their fraudulent conduct, breaches of fiduciary duty and tortious actions beginning with the negotiation of the Master Agreement and continuing thereafter through their manipulation of Clearwire. The C Round financing is one aspect of this manipulation which is part and parcel of the same tainted business relationship. As such, it is perfectly appropriate for this Court to assert pendent personal jurisdiction over all of the claims asserted against the Individual Defendants in the Complaint.

**III. PLAINTIFF REQUESTS JURISDICTIONAL DISCOVERY WITH RESPECT TO THE GOLDMAN SHAREHOLDER DEFENDANTS.**

Specific jurisdiction may be asserted over an out-of-state corporation when its agents have the requisite minimum contacts with the forum state. *See Jet Wine & Spirits, Inc. v. Bacardi & Company, Ltd.*, 298 F.3d 1 (1st Cir. 2002). Likewise, where a corporation directs the acts of its agents in the jurisdiction, it may be subject to jurisdiction. *See Murphy v. Edwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972) (if agents of non-resident corporation made misrepresentations to plaintiff in forum, personal jurisdiction may be exercised over non-resident corporation); *Forum Financial Group v. President and Fellows of Harvard College*, 173 F. Supp. 2d. at 90. Because of the layered organizational structure of GS Group and the Goldman Shareholder Defendants, it is difficult to ascertain whether GS Group and/or some or all of the Individual Defendants, and/or Dan Ronnen of the Fried Frank law firm, acted as agents on behalf

of the Goldman Shareholder Defendants. In its Complaint NACEPF alleged that the Individual Defendants were controlled by Goldman Sachs, both in their actions toward NACEPF and in their role as directors of Clearwire. Compl. ¶ 12, 13. These allegations have not been denied by the Defendants. In addition, in his affidavit John Primeau attested to the fact that the Individual Defendants represented that they were agents of Goldman Sachs. Consequently, there is a factual basis to grant discovery on the issue of the agency relationship between the various parties and corporate entities. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002) (permitting limited discovery into agency relationship).

Should this Court have reservation about exercising personal jurisdiction over any or all of the Defendants, Plaintiff seeks permission to conduct limited discovery on the issue. In consideration of the complex interlocking corporate entities created by the Defendants and the unclear relationship the Individual Defendants have within the corporate structure of 'Goldman Sachs,' such limited discovery is neither unwarranted nor unreasonable. "A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery." *Surpitski v. Hughes-Keenan Corporation, etc.*, *et al.*, 362 F.2d 254, 255 (1st Cir. 1966).

The First Circuit recognizes that plaintiffs have the right to conduct limited jurisdictional discovery. *Sunview Condominium Association, et al. v. Flexel International, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997) (noting that where a 'colorable case' is made for the existence of personal jurisdiction, discovery is warranted). *See also Platten v. HG Bermuda Exempted, Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006) (quoting *Sunview* for same principle); *U.S. v. Swiss American Bank, Ltd.*, 191 F.3d 30, 46 (1st Cir. 1999) (noting holding in *Sunview* regarding limited jurisdictional discovery). Furthermore, this Court in *Amoco Oil Co. v. IBEW*, recognized the need for limited

jurisdictional discovery and granted an order of dismissal unless plaintiff submitted a "reasonably detailed plan for expeditiously conducting discovery on the issue" of personal jurisdiction; the submission of which would presumably defer the entry of the dismissal order. 536 F. Supp. 1203, 1211 (D.R.I. 1982).

Given the progeny of cases that allow limited jurisdictional discovery in the context of motions to dismiss, and in light of the complex nature of the Defendants' organizational structure, should the Court be unsatisfied with the evidence proffered thus far in support of Plaintiff's claim of personal jurisdiction, it is appropriate to allow limited discovery on the issue before this Court makes its ruling in this regard.

## CONCLUSION

For all of the foregoing reasons, in addition to the arguments asserted in Plaintiff's prior submissions, Plaintiff respectfully requests this Court to deny Defendants' Motion to Dismiss or in the alternative to grant Plaintiff leave to conduct limited discovery on the issues raised herein.

Plaintiff,
By its Attorneys,

/s/ Matthew T. Oliverio

Matthew T. Oliverio, Esquire (#3372)
Christine M. Curley, Esquire (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

Dated: June 8, 2007

## CERTIFICATION

I hereby certify that the foregoing *CONSOLIDATED RESPONSE TO DEFENDANTS' REPLY MEMORANDUM AND IN FURTHER SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12 (b)(5) AND, IN THE ALTERNATIVE TO STAY THE ACTION* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 8th day of June, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio