**EFiled: May 18 2007 11:07AM EDT**
**Filing ID 14926919**
**Case Number 521,2006**

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC | § | |
| EDUCATIONAL PROGRAMMING | § | |
| FOUNDATION, INC., | § | No. 521, 2006 |
| | § | |
| Plaintiff Below, | § | Court Below—Court of Chancery |
| Appellant, | § | of the State of Delaware, |
| | § | in and for New Castle County |
| v. | § | C.A. No. 1456-N |
| | § | |
| ROB GHEEWALLA, GERRY | § | |
| CARDINALE and JACK DALY, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: February 12, 2007
Decided: May 18, 2007

Before **STEELE**, Chief Justice, **HOLLAND, BERGER, RIDGLEY**, Justices, and **ABLEMAN**, Judge.[1]

Upon appeal from the Court of Chancery. **AFFIRMED**.

Edward M. McNally, Esquire (argued) and Raj Srivatsan, Esquire, Morris, James, Hitchens & Williams, Wilmington, Delaware, for appellant.

Samuel A. Nolen, Esquire, Richards, Layton & Finger, Wilmington, Delaware, for appellees.

**HOLLAND**, Justice:

---

[1] Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

This is the appeal of the plaintiff-appellant, North American Catholic Educational Programming Foundation, Inc. ("NACEPF") from a final judgment of the Court of Chancery that dismissed NACEPF's Complaint for failure to state a claim.[2] NACEPF holds certain radio wave spectrum licenses regulated by the Federal Communications Commission ("FCC"). In March 2001, NACEPF, together with other similar spectrum license-holders, entered into the Master Use and Royalty Agreement (the "Master Agreement") with Clearwire Holdings, Inc. ("Clearwire"), a Delaware corporation. Under the Master Agreement, Clearwire could obtain rights to those licenses as then-existing leases expired and the then-current lessees failed to exercise rights of first refusal.

The defendant-appellees are Rob Gheewalla, Gerry Cardinale, and Jack Daly (collectively, the "Defendants"), who served as directors of Clearwire at the behest of Goldman Sachs & Co. ("Goldman Sachs"). NACEPF's Complaint alleges that the Defendants, even though they comprised less than a majority of the board, were able to control Clearwire because its only source of funding was Goldman Sachs. According to NACEPF, they used that power to favor Goldman Sachs' agenda in derogation of their fiduciary duties as directors of Clearwire. In addition to

---

[2] *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 2006 WL 2588971 (Del. Ch. Sept. 1, 2006) ("Opinion").

bringing fiduciary duty claims, NACEPF's Complaint also asserts that the Defendants fraudulently induced it to enter into the Master Agreement with Clearwire and that the Defendants tortiously interfered with NACEPF's business opportunities.[3]

NACEPF is not a shareholder of Clearwire. Instead, NACEPF filed its Complaint in the Court of Chancery as a putative *creditor* of Clearwire. The Complaint alleges *direct*, not derivative, fiduciary duty claims against the Defendants, who served as directors of Clearwire while it was either insolvent or in the "zone of insolvency."

Personal jurisdiction over the Defendants was premised exclusively upon 10 *Del.C.* § 3114, which subjects directors of Delaware corporations to personal jurisdiction in the Court of Chancery over claims "for violation of a duty in [their] capacity [as directors of the corporation]." No other basis for personal jurisdiction over the Defendants was asserted. Accordingly, NACEPF's efforts to bring its other claims in the Court of Chancery fail on jurisdictional grounds unless those other claims are adequately alleged to be "sufficiently related" to a viable fiduciary duty claim against the Defendants.

---

[3] This action was initially filed in the Superior Court; it was dismissed without prejudice for lack of subject matter jurisdiction. Transfer to the Court of Chancery was permitted under 10 *Del. C.* § 1902.

For the reasons set forth in its Opinion, the Court of Chancery concluded: (1) that creditors of a Delaware corporation in the "zone of insolvency" may not assert direct claims for breach of fiduciary duty against the corporation's directors; (2) that the Complaint failed to state a claim for the narrow, if extant, cause of action for direct claims involving breach of fiduciary duty brought by creditors against directors of insolvent Delaware corporations; and (3) that, with dismissal of its fiduciary duty claims, NACEPF had not provided any basis for exercising personal jurisdiction over the Defendants with respect to NACEPF's other claims. Therefore, the Defendants' Motion to Dismiss the Complaint was granted.

In this opinion, we hold that the creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against the corporation's directors. Accordingly, we have concluded that the judgments of the Court of Chancery must be affirmed.

## *Facts*[4]

NACEPF is an independent lay organization incorporated under the laws of Rhode Island. In 2000, NACEPF joined with Hispanic Information and Telecommunications Network, Inc. ("HITN"), Instructional

[4] The relevant facts are primarily selected excerpts from the opening brief filed by NACEPF in this appeal.

Telecommunications Foundation, Inc. ("ITF"), and various affiliates of ITF to form the ITFS Spectrum Development Alliance, Inc. (the "Alliance"). Collectively, the Alliance owned a significant percentage of FCC-approved licenses for microwave signal transmissions ("spectrum") used for educational programs that were known as "Instruction Television Fixed Service" spectrum ("ITFS") licenses.

The Defendants were directors of Clearwire. The Defendants were also all employed by Goldman Sachs and served on the Clearwire Board of Directors at the behest of Goldman Sachs. NACEPF alleges that the Defendants effectively controlled Clearwire through the financial and other influence that Goldman Sachs had over Clearwire.

According to the Complaint, the Defendants represented to NACEPF and the other Alliance members that Clearwire's stated business purpose was to create a national system of wireless connections to the internet. Between 2000 and March 2001, Clearwire negotiated a Master Agreement with the Alliance, which Clearwire and the Alliance members entered into in March 2001. NACEPF asserts that it negotiated the terms of the Master Agreement with several individuals, including the Defendants. NACEPF submits that all of the Defendants purported to be acting on the behalf of Goldman Sachs and the entity that became Clearwire.

Under the terms of the Master Agreement, Clearwire was to acquire the Alliance members' ITFS spectrum licenses when those licenses became available. To do so, Clearwire was obligated to pay NACEPF and other Alliance members more than $24.3 million. The Complaint alleges that the Defendants knew but did not tell NACEPF that Goldman Sachs did not intend to carry out the business plan that was the stated rationale for asking NACEPF to enter into the Master Agreement, i.e., by funding Clearwire.

In June 2002, the market for wireless spectrum collapsed when WorldCom announced its accounting problems. It appeared that there was or soon would be a surplus of spectrum available from WorldCom. Thereafter, Clearwire began negotiations with the members of the Alliance to end Clearwire's obligations to the members. Eventually, Clearwire paid over $2 million to HITN and ITF to settle their claims and; according to NACEPF, was only able to limit its payments to that amount by otherwise threatening to file for bankruptcy protection. These settlements left the NACEPF as the sole remaining member of the Alliance. The Complaint alleges that, by October 2003, Clearwire "had been unable to obtain any further financing and effectively went out of business."[5]

[5] Complaint at ¶ 36 ("Except for money advanced to it as a stopgap measure by Goldman Sachs in late 2001, Clearwire was never able to raise any significant money.").

### *NACEPF's Complaint*

In its Complaint, NACEPF asserts three claims against the Defendants. In Count I of the Complaint, NACEPF alleges that the Defendants fraudulently induced it to enter into the Master Agreement and, thereafter, to continue with the Master Agreement to "preserv[e] its spectrum licenses for acquisition by Clearwire."[6] In Count II, NACEPF alleges that because, at all relevant times, Clearwire was either insolvent or in the "zone of insolvency," the Defendants owed fiduciary duties to NACEPF "as a substantial creditor of Clearwire," and that the Defendants breached those duties by:

> (1) not preserving the assets of Clearwire for its benefit and that of its creditors when it became apparent that Clearwire would not be able to continue as a going concern and would need to be liquidated and (2) holding on to NACEPF's ITFS license rights when Clearwire would not use them, solely to keep Goldman Sachs's investment "in play."[7]

In Count III, NACEPF claims that the Defendants tortiously interfered with a prospective business opportunity belonging to NACEPF in that they caused Clearwire wrongfully "to assert the right to acquire NACEPF

[6] *Id.* at ¶ 40.
[7] *Id.* at ¶ 45.

wireless spectrum," which resulted in NACEPF losing "the opportunity to convey its licenses for spectrum to other buyers."[8]

### *Motions to Dismiss*

The Defendants moved to dismiss the Complaint on two grounds: first, for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2); and, second, for NACEPF's failure to state a claim upon which relief can be granted under Court of Chancery Rule 12(b)(6). With respect to their first basis for dismissal, the Defendants noted that NACEPF's sole ground for asserting personal jurisdiction over them is 10 *Del.C.* § 3114. The Defendants argued that personal jurisdiction under § 3114 requires, at least, sufficient allegations of a breach of fiduciary duty owed by director-defendants. With respect to their second basis for dismissal, the Defendants contended that, even assuming that personal jurisdiction was sufficiently alleged, NACEPF's Complaint failed to set forth allegations which adequately supported any of its claims for relief, as a matter of law.

### *Court of Chancery Rule 12(b)(2)*

The Court of Chancery initially addressed the Defendants' motion under Rule 12(b)(2).[9] It began by examining the exercise of personal

---

[8] *Id.* at ¶ 50.

[9] *See Branson v. Exide Elecs. Corp.*, 625 A.2d 267 (Del. 1993).

jurisdiction over nonresident directors of Delaware corporations under 10 *Del.C.* § 3114:[10]

> "[T]he Delaware courts have consistently held that Section 3114 is applicable only in connection with suits brought against a nonresident for acts performed in his . . . capacity as a director . . . of a Delaware corporation." Further narrowing the scope of Section 3114, "Delaware cases have consistently interpreted [early cases construing the section] as establishing that [it] . . . appl[ies] only in connection with suits involving the statutory and nonstatutory fiduciary duties of nonresident directors."[11]

[10] The basis for personal jurisdiction relied upon by NACEPF, provides:

> Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity, and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member *for violation of a duty in such capacity*, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.

10 *Del. C.* § 3114(a) (emphasis added).

[11] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 3-5[a] (2005).

The Court of Chancery limited its Rule 12(b)(2) analysis to whether personal jurisdiction existed over the Defendants with respect to Count II of the Complaint.

Count II alleged that the Defendants breached their fiduciary duties while they served as directors of Clearwire and while Clearwire was either insolvent or in the zone of insolvency. The Court of Chancery concluded that the facts alleged in the Complaint, as supported by the affidavit submitted by NACEPF, constituted a *prima facia* showing of a breach of fiduciary duty by the Defendants in their capacity as directors of a Delaware corporation. Accordingly, the Court of Chancery held that a statutory basis for the exercise of personal jurisdiction had been established by NACEPF for purposes of litigating Count II of the Complaint.

NACEPF expressly premised its Rule 12(b)(2) arguments for personal jurisdiction over the Defendants regarding Counts I and III (*i.e.*, the non-fiduciary duty claims) on the Court of Chancery's first determining that Count II (*i.e.*, the fiduciary duty claim) survives the Defendants' Rule 12(b)(6) motion to dismiss. Accordingly, the Court of Chancery proceeded on the basis that if it found that Count II must be dismissed under Rule 12(b)(6), then it would be without personal jurisdiction over the Defendants for purposes of moving forward with the merits of Counts I and III.

Therefore, to resolve the issue of personal jurisdiction, the Court of Chancery was required to decide whether, as a matter of law, Count II of the NACEPF Complaint properly stated a breach of fiduciary duty claim upon which relief could be granted.

***Court of Chancery Rule 12(b)(6)***

The standards governing motions to dismiss under Court of Chancery Rule 12(b)(6) are well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[12]

In the Court of Chancery and in this appeal, NACEPF waived any basis it may have had for pursuit of its claim derivatively. Instead, NACEPF seeks to assert only a *direct claim* for breach of fiduciary duties. It contends that such direct claims by creditors should be recognized in the context of both insolvency and the zone of insolvency. Accordingly, in ruling on the 12(b)(6) motion to dismiss Count II of the Complaint, the Court of Chancery was confronted with two legal questions: whether, as a matter of law, a corporation's *creditors* may assert *direct* claims against directors for breach

---

[12] *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

of fiduciary duties when the corporation is either: first, insolvent or second, in the zone of insolvency.

### *Allegations of Insolvency and Zone of Insolvency*

In support of its claim that Clearwire was either insolvent or in the zone of insolvency during the relevant periods, NACEPF alleged that Clearwire needed "substantially more financial support than it had obtained in March 2001."[13] The Complaint alleges Goldman Sachs had invested $47 million in Clearwire, which "represent[ed] 84% of the total sums invested in Clearwire in March 2001, when Clearwire was otherwise virtually out of funds."[14]

> *After March 2001*, Clearwire had financial obligations related to its agreement with NACEPF and others that *potentially* exceeded $134 million, did not have the ability to raise sufficient cash from operations to pay its debts as they became due and was dependent on Goldman Sachs to make additional investments to fund Clearwire's operations for the foreseeable future.[15]

The Complaint also alleges:

> For example, upon the closing of the Master Agreement, Clearwire had approximately $29.2 million in cash and of that $24.3 million would be needed for future payments for spectrum to the Alliance members. Clearwire's "burn" rate was

---

[13] Complaint at ¶ 30.
[14] *Id.* at ¶ 7(a).
[15] *Id.* at ¶ 7(b) (emphasis added). NACEPF also asserts that "Clearwire was unable to borrow money or obtain any other significant financing after March 2001, except from Goldman Sachs." *Id.* at ¶ 7(c).

> $2.1 million per month and it had then no significant revenues. The process of acquiring spectrum upon expiration of existing licenses was both time consuming and expensive, particularly if existing licenseholders contested the validity of any Clearwire offer that those license holders were required to match under their rights of first refusal.[16]

Additionally, in the Complaint, NACEPF alleges that, "[b]y October 2003, Clearwire had been unable to obtain any further financing and effectively went out of business. Except for money advanced to it as a stopgap measure by Goldman Sachs in late 2001, Clearwire was never able to raise any significant money."[17]

The Court of Chancery opined that insolvency may be demonstrated by either showing (1) "a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof,"[18] or (2) "an inability to meet maturing obligations as they fall due in the ordinary course of business."[19] Applying the standards applicable to review under Rule 12(b)(6), the Court of Chancery concluded that

---

[16] *Id.* at ¶ 30.
[17] *Id.* at ¶ 36.
[18] For that proposition, the Court of Chancery relied upon *Production Res. Group v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004) (quoting *Siple v. S & K Plumbing & Heating, Inc.*, 1982 WL 8789, at *2 (Del. Ch. Apr. 13, 1982)); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 789 (Del. Ch. 1992) (explaining that corporation is insolvent if "it has liabilities in excess of a reasonable market value of assets held"); and *McDonald v. Williams*, 174 U.S. 397, 403 (1899) (defining insolvent corporation as an entity with assets valued at less than its debts).
[19] For that proposition, the Court of Chancery also relied upon *Production Res. Group v. NCT Group, Inc.*, 863 A.2d at 782 (quoting *Siple v. S & K Plumbing & Heating, Inc.*, 1982 WL 8789, at *2).

NACEPF had satisfactorily alleged facts which permitted a reasonable inference that Clearwire operated in the zone of insolvency[20] during at least a substantial portion of the relevant periods for purposes of this motion to dismiss. The Court of Chancery also concluded that insolvency had been adequately alleged in the Complaint, for Rule 12(b)(6) purposes, for at least a portion of the relevant periods following execution of the Master Agreement.

***Corporations in the Zone of Insolvency Direct Claims for Breach of Fiduciary Duty May Not Be Asserted by Creditors***

In order to withstand the Defendant's Rule 12(b)(6) motion to dismiss, the Plaintiff was required to demonstrate that the breach of fiduciary duty claims set forth in Count II are cognizable under Delaware law.[21] This procedural requirement requires us to address a substantive question of first impression that is raised by the present appeal: as a matter of Delaware law, can the *creditor* of a corporation that is operating within

---

[20] In light of its ultimate ruling, the Court of Chancery did not attempt to set forth a precise definition of what constitutes the "zone of insolvency." *See Credit Lyonnais Bank Nederland N.V. v. Pathe Commc'ns Corp.*, 1991 WL 277613, at *34; *see also Production Res. Group v. NCT Group, Inc.*, 863 A.2d at 789 n.56 (describing the difficulties presented in identifying "zone of insolvency"). Our holding in this opinion also makes it unnecessary to precisely define a "zone of insolvency."

[21] *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) ("In this case it cannot be concluded that the complaint alleges a derivative claim. . . . But, it does not necessarily follow that the complaint states a direct, individual claim. While the complaint purports to set forth a direct claim, in reality, it states no claim at all.")

the *zone of insolvency* bring a *direct action* against its directors for an alleged *breach of fiduciary* duty?

It is well established that the directors owe their fiduciary obligations to the corporation and its shareholders.[22] While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights.[23] Delaware courts have traditionally been reluctant to expand existing fiduciary duties.[24] Accordingly, "the general rule is that directors do not owe creditors duties beyond the relevant contractual terms."[25]

In this case, NACEPF argues that when a corporation is in the zone of insolvency, this Court should recognize a new direct right for creditors to challenge directors' exercise of business judgments as breaches of the fiduciary duties owed to them. This Court has never directly addressed the

---

[22] *See Guth v Loft*, 5 A.2d 503, 510 (Del. 1939) (while not technically trustees, directors stand in a fiduciary relationship to the corporation and its shareholders); *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998).
[23] *See Production Res. Group v. NCT Group, Inc.*, 863 A.2d at 790.
[24] *See, e.g., Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 625 (Del. Ch. 2005), *aff'd in part and rev'd in part on other grounds*, 901 A.2d 106 (Del. 2006).
[25] *See, e.g., Simons v. Cogan*, 549 A.2d 300, 304 (Del. 1988); *Katz v. Oak Indus., Inc.*, 508 A.2d 873, 879 (Del. Ch. 1986); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 787 (Del. Ch. 1992); *Production Res. Group v. NCT Group, Inc.*, 863 A.2d 772, 787 (Del. Ch. 2004).

zone of insolvency issue involving directors' purported fiduciary duties to creditors that is presented by NACEPF in this appeal.[26] That subject has been discussed, however, in several judicial opinions[27] and many scholarly articles.[28]

---

[26] E. Norman Veasey & Christine T. Di Guglelmo, *What Happened in Delaware Corporate Law and Governance From 1992-2004? A Retrospective on Some Key Developments*, 153 U. Pa. L. Rev. 1399, 1432 (May 2005).

[27] *Credit Lyonnais Bank Nederland N.V. v. Pathe Commc'ns Corp.*, 1991 WL 277613 (Del. Ch.); *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004); *Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006); *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 2006 WL 846121 (Del. Ch.).

[28] Rutherford B. Campbell, Jr. & Christopher W. Frost, *Managers' Fiduciary Duties in Financially Distressed Corporations: Chaos in Delaware (and Elsewhere)*, 32 J. Corp. L. 491 (2007); Richard M. Cieri & Michael J. Riela, *Protecting Directors and Officers of Corporations That Are Insolvent or In the Zone or Vicinity of Insolvency: Important Considerations, Practical Solutions*, 2 DePaul Bus. & Com. L.J. 295, 301-02 (2004); Patrick M. Jones & Katherine Heid Harris, *Chicken Little Was Wrong (Again): Perceived Trends in the Delaware Corporate Law of Fiduciary Duties and Standing in the Zone of Insolvency*, 16 J. Bankr. L. & Prac. 2 (2007); Laura Lin, *Shift of Fiduciary Duty Upon Corporate Insolvency: Proper Scope of Directors' Duty to Creditors*, 46 Vand. L. Rev. 1485, 1487 (1993); Jonathan C. Lipson, *Directors' Duties to Creditors: Power Imbalance and the Financially Distressed Corporation*, 50 UCLA L. Rev. 1189 (2003); Ramesh K. S. Rao, et al., *Fiduciary Duty A La Lyonnais: An Economic Perspective on Corporate Governance in a Financially-Distressed Firm*, 22 J. Corp. L. 53 (1996); Myron M. Sheinfeld & Harris Pippitt, *Fiduciary Duties of Directors of a Corporation in the vicinity of Insolvency and After Initiation of a Bankruptcy Case*, 60 Bus. Law. 79 (2004); Robert K. Sahyan, Note, *The Myth of the Zone of Insolvency: Production Resources Group v. NCG Group*, 3 Hastings Bus. L.J. 181 (2006). Vladimir Jelisavcic, *Corporate Law – A Safe Harbor Proposal to Define the Limits of Directors' Fiduciary Duty to Creditors in the "Vicinity of Insolvency:" Credit Lyonnais Bank Nederland N.V. v. Pathe Commc'ns Corp.*, 18 J. Corp. L. 145 (Fall 1993). *See also* Selected Papers from the University of Maryland's "Twilight in the Zone of Insolvency" Conference, available at http://digitalcommons.law.umaryland.edu/blc_2005: Stephen M. Bainbridge, *Much Ado About Little? Directors' Fiduciary Duties in the Vicinity of Insolvency*, *available at* http://ssrn.com/abstract=832504; J. William Callison, *Why a Fiduciary Duty Shift to Creditors of Insolvent Business Entities Is Incorrect as a Matter of Theory and Practice*, available at http://digitalcommons.law.umaryland.edu/blc_

In *Production Resources*, the Court of Chancery remarked that recognition of fiduciary duties to creditors in the "zone of insolvency" context may involve:

> using the law of fiduciary duty to fill gaps that do not exist. Creditors are often protected by strong covenants, liens on assets, and other negotiated contractual protections. The implied covenant of good faith and fair dealing also protects creditors. So does the law of fraudulent conveyance. With these protections, when creditors are unable to prove that a corporation or its directors breached any of the specific legal duties owed to them, one would think that the conceptual room for concluding that the creditors were somehow, nevertheless, injured by inequitable conduct would be extremely small, *if extant*. Having complied with all legal obligations owed to the firm's creditors, the board would, in that scenario, ordinarily be free to take economic risk for the benefit of the firm's equity owners, so long as the directors comply with their fiduciary duties to the firm by selecting and pursuing with fidelity and prudence a plausible strategy to maximize the firm's value."[29]

In this case, the Court of Chancery noted that creditors' existing protections—among which are the protections afforded by their negotiated agreements, their security instruments, the implied covenant of good faith and fair dealing, fraudulent conveyance law, and bankruptcy law—render the imposition of an additional, unique layer of protection through direct

---

2005/3/; Larry E. Ribstein & Kelli A. Alces, *Directors' Duties in Failing Firms, available at* http://ssrn.com/abstract=800074; Frederick Tung, *Gap Filling in the Zone of Insolvency* (2006) available at http://digitalcommons.law.umaryland.edu/blc_2005/3/.

[29] *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d at 790 (emphasis added).

claims for breach of fiduciary duty unnecessary.[30] It also noted that "any benefit to be derived by the recognition of such additional direct claims appears minimal, at best, and significantly outweighed by the costs to economic efficiency."[31] The Court of Chancery reasoned that "an otherwise solvent corporation operating in the zone of insolvency is one in most need of effective and proactive leadership—as well as the ability to negotiate in good faith with its creditors—goals which would likely be significantly undermined by the prospect of individual liability arising from the pursuit of direct claims by creditors."[32] We agree.

Delaware corporate law provides for a separation of control and ownership.[33] The directors of Delaware corporations have "the legal responsibility to manage the business of a corporation for the benefit of its shareholders owners."[34] Accordingly, fiduciary duties are imposed upon the directors to regulate their conduct when they perform *that* function. Although the fiduciary duties of the directors of a Delaware corporation are unremitting:

---

[30] *See, e.g.*, *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 2006 WL 846121, at *8 (citing Stephen M. Bainbridge, *Much Ado About Little? Directors' Fiduciary Duties in the Vicinity of Insolvency*, available at http://ssrn.com/abstract=832504 at 30)).
[31] Opinion at *13.
[32] *Id.*
[33] *Malone v. Brincat*, 722 A.2d 5 (1998).
[34] *Id.* at 9.

> the exact cause of conduct that must be charted to properly discharge that responsibility will change in the specific context of the action the director is taking with regard to either the corporation or its shareholders. This Court has endeavored to provide the directors with clear signal beacons and brightly lined channel markers as they navigate with due care, good faith, a loyalty on behalf of a Delaware corporation and its shareholders. This Court has also endeavored to mark the safe harbors clearly.[35]

In this case, the need for providing directors with definitive guidance compels us to hold that no direct claim for breach of fiduciary duties may be asserted by the creditors of a solvent corporation that is operating in the zone of insolvency. When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners. Therefore, we hold the Court of Chancery properly concluded that Count II of the NACEPF Complaint fails to state a claim, as a matter of Delaware law, to the extent that it attempts to assert a direct claim for breach of fiduciary duty to a creditor while Clearwire was operating in the zone of insolvency.

---

[35] *Id.* at 10.

***Insolvent Corporations***
***Direct Claims For Breach of Fiduciary Duty***
***May Not Be Asserted by Creditors***

It is well settled that directors owe fiduciary duties to the corporation.[36] When a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring *derivative* actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value.[37] When a corporation is *insolvent*, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value.

Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.[38] The corporation's insolvency "makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value."[39] Therefore, equitable considerations give creditors standing to pursue derivative claims against the directors of an

[36] *See,e. g.*, *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).
[37] *See, e.g.,Aronson v . Lewis*, 473 A.2d 805, 811 (Del. 1984) *partially overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).
[38] *Agostino v. Hicks*, 845 A.2d 1110, 1117 (Del. Ch. 2004); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d at 1036 ("The derivative suit has been generally described as 'one of the most interesting and ingenious of accountability mechanisms for large formal organizations.'" (quoting *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988); *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003) (noting the "deterrence effects of meritorious derivative suits on faithless conduct.").
[39] *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d at 794 n.67.

insolvent corporation. Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.

In *Production Resources*, the Court of Chancery recognized that—in most, if not all instances—creditors of insolvent corporations could bring derivative claims against directors of an insolvent corporation for breach of fiduciary duty. In that case, in response to the creditor plaintiff's contention that derivative claims for breach of fiduciary duty were transformed into *direct* claims upon insolvency, the Court of Chancery stated:

> The fact that the corporation has become insolvent does not turn [derivative] claims into direct creditor claims, it simply provides creditors with standing to assert those claims. At all times, claims of this kind belong to the corporation itself because even if the improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly by diminishing the value of the firm and therefore the assets from which the creditors may satisfy their claims.[40]

Nevertheless, in *Production Resources*, the Court of Chancery stated that it was "not prepared to rule out" the *possibility* that the creditor plaintiff had alleged conduct that "might support" a *limited* direct claim.[41] Since the

---

[40] *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d at 776; *see also Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 2006 WL 2333201, at *22 n.75 (Del. Ch.).

[41] *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d at 800. The court reserved "the opportunity . . . to revisit some of these questions with better input from the parties." *Id.* at 801.

complaint in *Production Resources* sufficiently alleged a derivative claim, however, it was unnecessary to decide if creditors had a legal right to bring direct fiduciary claims against directors in the insolvency context.[42]

In this case, NACEPF did not attempt to allege a derivative claim in Count II of its Complaint. It only asserted a *direct* claim against the director Defendants for alleged breaches of fiduciary duty when Clearwire was insolvent. The Court of Chancery did not decide that issue. Instead, the Court of Chancery *assumed arguendo* that a direct claim for a breach of fiduciary duty to a creditor is legally cognizable in the context of actual insolvency. It then held that Count II of NACEPF's Complaint failed to state such a direct creditor claim because it did not satisfy the pleading requirements described by the decisions in *Production Resources*[43] and *Big Lots Stores, Inc. v. Bain Capital Fund VVI, LLC.*[44]

---

[42] *Id.*

[43] In *Production Resources*, the Court of Chancery expressed in *dicta* a "conservative assumption that there might, possibly exist circumstances in which the directors [of an actually insolvent corporation] display such a marked degree of animus towards a particular creditor with a proven entitlement to payment that they expose themselves to a direct fiduciary duty claim by that creditor." *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d at 798. We think not. While there may well be a basis for a direct claim arising out of contract or tort, our holding today precludes a direct claim arising out of a purported breach of a fiduciary duty owed to that creditor by the directors of an insolvent corporation.

[44] *Big Lots Stores, Inc. v. Bain Capital Fund VVI, LLC*, 2006 WL 846121 (Del. Ch.). In *Big Lots*, the Court of Chancery reiterated, also in *dicta*, that any potentially cognizable direct claims asserted by creditors in actual insolvency should be confined to the limited circumstances in *Production Resources*, namely, instances in which invidious conduct toward a particular "creditor" with a "proven entitlement to payment" has been alleged.

To date, the Court of Chancery has never recognized that a creditor has the right to assert a *direct* claim for breach of fiduciary duty against the directors of an *insolvent* corporation. However, prior to this opinion, that possibility remained an open question because of the "arguendo assumption" in this case and the *dicta* in *Production Resources* and *Big Lots Stores*. In this opinion, we recognize "the pragmatic conduct-regulating legal realms . . . calls for more precise conceptual line drawing."[45]

Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors, would create uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation.[46] Accordingly, we hold that individual *creditors* of an *insolvent* corporation

---

*Id.* The suggestion in that *dicta* is also inconsistent with and precluded by our holding in this opinion.

[45] *In Re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 65 (Del. 2006).

[46] *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d at 797.

have *no right to assert direct* claims for breach of fiduciary duty against corporate directors. Creditors may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation or any *other* direct nonfiduciary claim, as discussed earlier in this opinion, that may be available for individual creditors.

***Conclusion***

The creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against its directors. Therefore, Count II of NACEPF's Complaint failed to state a claim upon which relief could be granted. Consequently, the final judgment of the Court of Chancery is affirmed.