**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **C.A. No.: 06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS ITI, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants.*** | : | |

**CONSOLIDATED RESPONSE TO DEFENDANTS' REPLY MEMORANDUM AND IN FURTHER SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)**

**Table of Contents**

Table of Authorities ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE RHODE ISLAND LAW IS APPLICABLE TO PLAINTIFF'S CLAIMS. .... 1

A. The Internal Affairs Doctrine Does Not Require the Application of Delaware Law to the Breach of Fiduciary Duty Claims. ........ 1

B. The Fact that Delaware Law was Applied by the Court in the Now Dismissed Delaware Action Does Not Preclude the Choice of Rhode Island Law in this Case. .... 3

C. The Master Agreement Choice of Law Clause does not Preclude the Application of Rhode Island Law to this Case. ........ 4

D. Rhode Island's Choice of Law Principles Require the Application of Rhode Island Law to Plaintiff's Claims. ........ 4

E. Should Delaware Law Apply to the Plaintiff's Claims, the Claims Related to the C Round Financing Are Not Barred by the Three Year Statute of Limitations. ........ 6

II. PLAINTIFF'S CLAIMS MEET THE NECESSARY PLEADING REQUIREMENTS AND SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM. ........ 7

A. Neither the Tortious Interference Claims Nor the Breach of Fiduciary Duty Claims Are Required to Comply with the Heightened Pleading Standards of Rule 9(b). ........ 7

B. Plaintiff's Fraud and Breach of Fiduciary Duty Claims Based Upon the Failure to Disclose Material Information in the Context of the C Round Financing Are Sufficiently Alleged. ........ 9

C. The Statements Contained in the June 7, 2000 Memorandum Are Actionable Misstatements and Not Mere "Puffery." ........ 10

D. Plaintiff's Have Sufficiently Alleged Tortious Interference with Prospective Business Opportunities Under Rhode Island Law. ........ 12

III. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT. ..... 13

CONCLUSION ........ 14

## Table of Authorities

### Cases

*Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622 (R.I. 2000) .......................................................... 12

*Cribb v. Augustyn*, 696 A.2d 285 (R.I. 1997) .......................................................... 4, 6

*Cummings v. HPG International, Inc.*, 244 F.3d 16 (1st Cir. 2001) .......................................................... 11

*DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382 (Bankr. R.I. 1989) ....... 12

*Eastland Bank v. Massbank for Savings*, 767 F. Supp. 29 (D.R.I. 1991) .......................................5

*Edgar v. Mite Corporation*, 457 U.S. 624 102 S.Ct. 2629 (1982) .......................................... 2

*Educadores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61 (2004) ................................ 8

*Epstein v. C.R. Bard, Inc.*, 460 F.3d 183 (1st Cir. 2006) ..........................................................13

*Federal Auto Body Works, Inc. v. Aetna Casualty & Surety Co.*, 447 A.2d 377 (R.I. 1982) ......... 9

*Feinstein v. Brown*, 432 F. Supp. 2d. 258 (D.R.I. 2006) .......................................................... 12

*Goodwin v. President and Trustees of Bowdoin College*, 135 F. Supp. 2d. 40 (D. Me. 2001) ...... 8

*Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12 (1st Cir. 2001) ....... 13

*In re Cabletron Systems, Inc.*, 311 F.3d 11 (2002) ..........................................................9

*In re DaimlerChrysler AG Sec. Litig.*, 2003 WL 22769051 (D. Del. Nov. 19, 2003) ................... 4

*Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740 (R.I. 1995) .......................................................... 9

*LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) .......................................................... 8

*Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F. 3d 1337 (11th Cir. 2005) ..........................................4

*Mesolella v. City of Providence*, 508 A.2d 661 (R.I. 1986) .......................................................... 12

*Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, n. 1 (7th Cir. 1985) ............. 3

*Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d. 290 (D. Mass. 2004) .................................. 11

*Pomeranz v. Museum Partners, L.P*, 2005 WL 217039 (Del. Ch. Jan. 24, 2005) ......................... 6

*Putnam Resources v. Pateman*, 958 F.2d 448 (1st Cir. 1992) .......................................................... 3

*Resolution Trust Corporation v. Gladstone*, 895 F. Supp. 356 (D. Mass. 1995) ........................... 2

*Robertson Stephens, Inc. v. Chubb Corp.*, 473 F. Supp. 265 n. 5 (D.R.I. 2007) ............................5

*Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004)................................. 11

*Sekuk Global Enterprises v. KVH Industries, Inc.*, 2005 WL 1924202, n. 1 (D.R.I. Aug. 11, 2005)........................................................................................................................ 11

*Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1996) ................................................................9

*Strichfield v. Paolo*, 274 F. Supp. 2d. 163 (D.R.I. 2003)........................................................... 11

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)...................................................................... 7

*Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126 (R.I. 2004)......................................................5

*Taylor v. Ford Motor Company*, 2006 WL 2228973 (D. Me. 2006)............................................. 8

*Thompson Trading, Ltd. v. Allied Breweries Overseas Trading Ltd.*, 748 F. Supp. 936 (D.R.I. 1990)........................................................................................................................ 12

*Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d. 490 (S.D.N.Y. 2002) ............................................ 8

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................ 1

Plaintiff North American Catholic Educational Programming Foundation, Inc. ("NACEPF") files its response to the Consolidated Reply Memorandum of Law filed on behalf of all the Defendants with respect to their Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and in further support of its objection to the motions to dismiss.

## INTRODUCTION

First, Plaintiff does not dispute that the choice of law issue is largely determinative of the statute of limitations issue. However, Plaintiff does dispute that the Delaware statute of limitations and Delaware law in general is applicable to Plaintiff's claims. When the choice of law analysis is applied to the facts of this case, Rhode Island law prevails and Plaintiff's claims are not barred by the statute of limitations.

Second, not all of Plaintiff's claims are required to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). Since they sufficiently comply with the notice pleading of Rule 8, and given the preliminary stages of this proceeding, the motion should be dismissed and the case ought to proceed to discovery.

Third, the allegations in Plaintiff's Complaint meet the pleading requirement for each of the elements of Plaintiff's causes of action and there is no basis for dismissal as a matter of law.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE RHODE ISLAND LAW IS APPLICABLE TO PLAINTIFF'S CLAIMS.

#### A. The Internal Affairs Doctrine Does Not Require the Application of Delaware Law to the Breach of Fiduciary Duty Claims.

Defendants seek to delimit this Court's ability to review and determine Plaintiff's breach of fiduciary duty claims as to the Individual Defendants by asserting and relying upon the internal affairs doctrine. (Defendants' 12(b)(6) Consolidated Reply at p. 4.) While Plaintiff recognizes the existence of the internal affairs doctrine and while at first blush it may appear to

be dispositive as to the law applicable to the fiduciary duty claims, Plaintiff asserts that upon closer examination of the cases relied upon by Defendants, the theory has no application under the facts of this case.

The internal affairs doctrine is based on the "presumption that the law of the chartering jurisdiction should be applied to disputes stemming from the internal administration of a corporation." *Resolution Trust Corporation v. Gladstone*, 895 F. Supp. 356, 363 (D. Mass. 1995). Underlying this presumption is the idea that the actions at the heart of the dispute involve strictly intra-corporate players and activities. Thus, in *Edgar v. Mite Corporation*, a case cited by the Defendants, the Supreme Court declined to rely on the internal affairs doctrine because the issue at the heart of the case involved a stock tender offer, which by its very nature, involve third parties outside of the corporate structure. 457 U.S. 624, 645, 102 S.Ct. 2629, 2642 (1982).

In the case at hand, while Defendants urge the Court to classify the breach of fiduciary duty claims as strictly intra-corporate, a comprehensive understanding of this case urges the opposite conclusion. The Individual Defendants, by virtue of their dual role as agents of Goldman Sachs on one hand and Clearwire directors/officers on the other, committed fraudulent and tortious actions at the behest of Goldman Sachs, an independent third party. Because such activities were made at the direction of a third party and outside of the corporate structure, the internal affairs doctrine has no applicability in the instant case. This is illustrated by the fact that Plaintiff is not asserting claims against Clearwire itself, but against those individuals who abused their status as Clearwire's corporate officers to do the bidding of Goldman Sachs, a third party that is also named as a defendant in this action. For the foregoing reasons, the internal affairs doctrine is not applicable here and Plaintiff's fiduciary duty claims may be decided by this Court under the laws of the State of Rhode Island.

**B. The Fact that Delaware Law was Applied by the Court in the Now Dismissed Delaware Action Does Not Preclude the Choice of Rhode Island Law in this Case.**

Defendants cite to no case law that supports their declaration that Plaintiff is bound by its prior assertion (in the separate, now dismissed Delaware action) that Delaware law was applicable to certain of its claims against the Defendants. Indeed, each of the two cases cited by Defendants in support of this proposition is inapposite and clearly distinguishable.

In *Muslin v. Frelinghuysen Livestock Managers, Inc.*, the record was unclear as to whether the parties had stipulated to the applicable choice of law or if the court had made an independent determination as to the choice of law to apply. 777 F.2d 1230, n. 1 (7th Cir. 1985). Nonetheless, the Appeals Court found that the parties had acquiesced to the application of New York law by the district court judge and were bound by this choice of law when the case went up for appeal. *Id*. Thus, the only reasonable holding that can be gleaned from the *Muslin* case is: a party who acquiesces on a choice of law issue is bound by that acquiescence in the subsequent appeal taken in the same forum.

Similarly, in *Putnam Resources v. Pateman*, 958 F.2d 448 (1st Cir. 1992), the First Circuit took issue with the Defendant's argument on appeal that Rhode Island law applied where it had argued below that New York was the more appropriate applicable law. *Id.* at 467. Although Defendants use the provocative language employed by the *Putnam* court in seeking to categorize the Plaintiff in this case in the same negative light, no such comparison can be drawn. Of note is the fact that in *Putnam*, although the Court recognized the disparate positions taken by the defendant in the district court and then on appeal, the change in strategy was not deemed dispositive of the issue as to the governing choice of law. *Id*. Furthermore, similar to the *Muslin* case, the choice of law arguments in *Putnam* were made in the context of the *same case in the same forum*, albeit before different judicial bodies.

In the present case, there is simply no basis for barring Plaintiff's assertion that Rhode Island law applies to this controversy. The Delaware action that Defendants make so much of has now been dismissed without even proceeding to discovery. That action has no preclusive or

binding effect on this Court, nor do the legal arguments made by the Plaintiff through prior counsel in that action have any binding or preclusive effect on arguments at issue in this case.

**C. The Master Agreement Choice of Law Clause does not Preclude the Application of Rhode Island Law to this Case.**

Plaintiff has already fully briefed the issue of the Master Agreement choice-of-law clause in its previous Objection to Defendants' Motion to Dismiss. The cases cited by Defendants in their Consolidated Reply are factually inapposite and have no instructive value with regard to the present case. In *Maxcess, Inc. v Lucent Techs. Inc.*, 433 F. 3d 1337, 1342 (11th Cir. 2005), the parties expressly agreed to limit the ability to bring suit without reference to any particular state statutory limitation period. That is clearly not the case here. *In re DaimlerChrysler AG Sec. Litig.*, 2003 WL 22769051 (D. Del. Nov. 19, 2003) dealt with a jury waiver and individual defendants who acted solely as agents of corporate defendants. Here, the Individual Defendants are being sued both in their capacities as Clearwire directors and as employees of Goldman Sachs and in that capacity are not subject to the terms of the Master Agreement. Thus, the choice-of-law provision in the Master Agreement is inapplicable to the Individual Defendants.

As Defendants do not raise any novel issues in their Consolidated Reply, Plaintiff will rest on its prior submission in support of this particular issue.

**D. Rhode Island's Choice of Law Principles Require the Application of Rhode Island Law to Plaintiff's Claims.**

Plaintiff acknowledges that the determination of the law to be applied to both the statute of limitations and the substantive legal claims must be made with reference to the interest-weighing approach. *Cribb v. Augustyn*, 696 A. 2d 285 (R.I. 1997). However, Plaintiff does not concede that the interest-weighing approach points to the application of Delaware law, but rather that Rhode Island law should govern both the statute of limitations and the substantive claims as the state with the most significant interest in resolving Plaintiff's claims.

Defendants' assertion that Delaware law applies is premised upon conclusory statements that do no follow logically from the actual circumstances of this case. Defendants cannot simply dismiss as inconsequential the facts that NACEPF is located in Rhode Island, that its injuries and economic losses were sustained in Rhode Island, and that Defendants knowingly undertook extensive negotiations to acquire substantial assets to engage in a long-term business partnership with a Rhode Island entity.

- Clearwire's state of incorporation in Delaware does not trump Plaintiff's incorporation in Rhode Island. The choice of law provision in the Master Agreement has no bearing on the non-contractual claims in this case brought against third parties who are not signatories.[1]

- There is no pending Delaware litigation involving NACEPF as a party and the pendency of a similar action brought by other shareholders (the "Stritzinger Action") is not relevant to this Court's choice of law analysis. The Stritzinger Action has not even been answered by the Defendants, as motions to dismiss were filed.

- As argued *infra*, the internal affairs doctrine, if applicable, only pertains to the breach of fiduciary duty claims and does not impact the choice of law with respect to Plaintiff's fraud and tortious interference claims.

- This Court is capable of analyzing Plaintiff's claims and need not defer to Delaware as "the better rule of law" in assessing corporate misconduct.

The factors favoring the application of Rhode Island law are not merely the Plaintiff's residence - Defendants' fraudulent and tortious conduct was knowingly directed toward a Rhode Island corporation, with the intent of creating a long-term business partnership, which resulted in injuries being sustained by the Rhode Island corporation, NACEPF, in Rhode Island.[2] From NACEPF's point of view, the relationship vis-à-vis its part of the business partnership, and the

---

[1] *See Eastland Bank v. Massbank for Savings*, 767 F. Supp. 29 (D.R.I. 1991) (letter of credit's requirement that it be governed by law of Massachusetts did not alter District Court's duty to apply Rhode Island choice of law principles to non-contractual issues in dispute).

[2] *Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126 (R.I. 2004), does not require a different result, as Massachusetts law was applied where a Rhode Island resident sustained personal injuries after slipping on ice in a parking lot of a Massachusetts shopping center. In this case, it is unclear where Defendants believe NACEPF actually sustained its economic injury, if not in Rhode Island. As in *Robertson Stephens, Inc. v. Chubb Corp.*, 473 F. Supp. 265, 270, n. 5 (D.R.I. 2007), the economic injury was sustained by a Rhode Island corporation in Rhode Island; the most important factor in Rhode Island's interest weighing approach, assaying the application of Rhode Island law.

assets it was bringing to the table, was clearly centered in Rhode Island, warranting the application of Rhode Island law to the claims asserted herein, as well as the statute of limitations.[3]

### E. Should Delaware Law Apply to the Plaintiff's Claims, the Claims Related to the C Round Financing Are Not Barred by the Three Year Statute of Limitations.

Plaintiff brought its complaint in this forum based upon the reasoned presumption that Rhode Island law applies to all elements of this controversy, including the pertinent statute of limitations. To the extent that this Court determines that the laws of the state of Delaware apply, including that state's statute of limitations, Plaintiff respectfully requests permission to amend its complaint to allege facts sufficient to support a tolling argument pursuant to Delaware law. Although Plaintiff briefly addressed this issue in its Objection to Defendants' Motion to Dismiss, it is plain that Plaintiff's Complaint was premised on the applicability of Rhode Island law and as such did not address the tolling issue.

Defendants correctly assert in their Consolidated Reply Memorandum that pursuant to Delaware law, the limitations period is suspended until such time as the plaintiff is put on inquiry notice of its injury. (Defendants' 12(b)(6) Consolidated Reply Memorandum, at p. 12). However, Defendants fail to assert what facts, if any, would support their position that Plaintiff was on inquiry notice of the Defendants' alleged tortious actions. In *Pomeranz v. Museum Partners, L.P.*, a case cited by Defendants, the Chancery Court of Delaware found multiple methods by which the plaintiffs in that action should or could have become aware of the alleged breaches of fiduciary duty and other tort claims asserted by the plaintiffs. 2005 WL 217039 (Del. Ch. Jan. 24, 2005). For example, the Court determined that plaintiffs should have been aware of the alleged breaches, or at least inquired further upon the occurrence of several

---

[3]*Cribb v. Augustyn*, 696 A.2d at 288 ("[W]e further this forum's law because Rhode Island, rather than New Hampshire, has the greater interest in determining the time period in which Rhode Island residents may sue or be sued for tort claims arising out of a contractual relationship that had its origins in this state.") (applying Rhode Island's ten year statute of limitation to claim that would have been time barred under New Hampshire law).

significant disclosure events, such as, the transmittal of financial schedules to the plaintiffs and their receipt of a renewal letter, both of which contained information that should have alerted plaintiffs to the allegedly tortious activities. *Id*. at *10-13. No such direct, open and obvious communications were ever received by the Plaintiff in this action to substantiate an assertion of inquiry notice. To the contrary, Plaintiff had no notice that the McCaw deal had been consummated until after it became public.

In the current case, Plaintiff has alleged both in its Complaint and in the Affidavit of John Primeau that it was unaware of the McCaw negotiations until it was too late and the sale had been consummated. Defendants point to nothing other than the August 2003 offer letter to infer that Plaintiff could have made itself aware that the McCaw negotiations were underway. Defendants disingenuously assert that "Plaintiff has not alleged …any effort to directly inquire of any of the defendants whether they were seeking any strategic partners for Clearwire…" (Defendants' 12(b)(6) Consolidated Reply Memorandum, at p. 13). In fact, Plaintiff did assert in its Complaint (¶ 53) and the Primeau Affidavit the efforts it made to obtain additional information from Clearwire regarding potential investors. Significantly, the McCaw negotiations were not disclosed. Plaintiff did not acquire knowledge that he had been injured by reason of the Defendants' failure to disclose the McCaw negotiations until the actual deal became public on November 14, 2003. Consequently, Plaintiff's Complaint was filed within the three year limitation period.

## II. PLAINTIFF'S CLAIMS MEET THE NECESSARY PLEADING REQUIREMENTS AND SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Neither the Tortious Interference Claims Nor the Breach of Fiduciary Duty Claims Are Required to Comply with the Heightened Pleading Standards of Rule 9(b).

The United States Supreme Court has dictated that the simplified pleading standard limned in Rule 8(a) applied to all civil actions with limited exceptions. *Swierkiewicz v. Sorema*,

*N.A.*, 534 U.S. 506, 513 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims"). Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. *Id.* at 515. In *Educadores Puertorriquenos En Accion v. Hernandez*, 367 F.3d 61, 66 (2004), the First Circuit recognized:

> *Swierkiewicz* has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result. In all other cases, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2).

NACEPF has complied with this standard with respect to both its tortious interference and breach of fiduciary duty claims.

Rhode Island law does not require the pleading of particularized facts to establish a breach of fiduciary duty and, therefore, a heightened pleading standard may not be imposed upon these claims. *See LaLonde v. Textron, Inc.*, 369 F.3d 1, 6-7 (1st Cir. 2004) (denying motion to dismiss fiduciary duty claims under Rule 8(a)). *Taylor v. Ford Motor Company*, 2006 WL 2228973 (D. Me. 2006), does not support the proposition that Rule 9(b) is applicable to all breach of fiduciary duty claims. The sufficiency of the fraud allegations were not challenged by the defendants in that case, only the existence of a fiduciary relationship was challenged, which required particularized allegations under Maine law.

Furthermore, with respect to the tortious interference claims, the cases cited by Defendants are legally distinguishable because under the respective state law governing those cases, proof of fraud or intimidation is a required element of a tortious interference claim. *See Goodwin v. President and Trustees of Bowdoin College*, 135 F. Supp. 2d. 40, 59 (D. Me. 2001) (claim for tortious interference under Maine law requires a showing that fraud or intimidation procured the breach of contract); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d. 490, 499 (S.D.N.Y. 2002) (under New York law, claim of tortious interference requires pleading of "wrongful means" to induce third party to breach the contract.) In contrast, Rhode Island law

does not implicate fraud as an element of a tortious interference claim, only that the claimed conduct be intentional, in the sense that it is improper or unjustified. *Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740 (R.I. 1995) (tortious interference with contract); *Federal Auto Body Works, Inc. v. Aetna Casualty & Surety Co*., 447 A.2d 377 (R.I. 1982) (tortious interference with prospective contractual relations).

### B. Plaintiff's Fraud and Breach of Fiduciary Duty Claims Based Upon the Failure to Disclose Material Information in the Context of the C Round Financing Are Sufficiently Alleged.

Plaintiff's Complaint alleges at paragraph 47 that "around the same time of the Investor Update, in or about the Spring of 2003, the Defendant Directors began discussing a possible sale of Clearwire, or a sale of substantially all of Clearwire's assets, with the McCaw Group." The Complaint further alleges that this information was not disclosed to the Plaintiff in the context of the C Round Financing. Complaint, ¶ 49, 53. These allegations constitute more than mere "fraud by hindsight." [4] The Complaint further alleges that the Defendants controlled Clearwire. Complaint ¶ 9-13. Accordingly, the Complaint sufficiently alleges fraudulent omissions with respect to the C Round Financing under Rule 9(b).

In addition, the information regarding the McCaw negotiations was necessarily material, as they resulted in a deal which substantially increased the value of Clearwire shares. As argued in its Objection, the very fact that the Defendants disclosed other negotiations that did not come to fruition, highlights the materiality of the information that was not disclosed.[5] Moreover,

---

[4] The First Circuit has acknowledged in this regard that pre-discovery motions to dismiss under Rule 9(b) may be construed less strictly than post-discovery motions. *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1225 (1996) ("[I]n determining the adequacy of a complaint under that rule, we cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence. Rule 9(b) proscribes the pleading of "fraud by hindsight, but neither can plaintiffs be expected to plead fraud with complete insight") (citations omitted); *In re Cabletron Systems, Inc.*, 311 F.3d 11, 33 (2002) ("[T]he difference in discovery is relevant to a court's evaluation of sufficient particularity") (post discovery motion).

[5] It should be pointed out that the allegation that the McCaw negotiations had begun prior to August 2003 is not pure speculation, as a similar allegation was made in the Stritzinger Action, that the McCaw negotiations had began in the Spring of 2003, which has not been denied by the Defendants in that case. GS Memo, Exhibit F, ¶ 27.

Defendants' insistent citation to Delaware law regarding preliminary negotiations as being immaterial as a matter of law is not controlling.

### C. The Statements Contained in the June 7, 2000 Memorandum Are Actionable Misstatements and Not Mere "Puffery."

Defendants seek to minimize the affirmative representations set forth in the June 7, 2000 Memorandum by categorizing the statements made therein as "vague" "and other puffery, which cannot support a claim for fraud." (Defendants' 12(b)(6) Consolidated Reply Memorandum at p. 19 and n. 12). The statements contained in the Memorandum, although already a part of the record in this case, bear repeating in light of Defendants' spurious arguments.

> As part of our proposal, we wanted to reiterate again our philosophy in partnering with the alliance to meet the objectives of both sides, alleviate any material upfront concerns, and provide as much assurance as possible that the partnership going forward represents the best interests of the Alliance and its constituencies. As we tried to articulate in our last two meetings, we take a long-term view to wealth creation in these type of projects.
>
> ***
>
> As we mentioned in our meeting, we believe in being fair and are absolutely prepared to not only pay competitive market prices for the assets which you can deliver but also finance the acquisition cost for your entire portfolio of spectrum (i.e., all 140 million channel POPs, as well as any additional affiliated channel POPs which you can deliver).
>
> ***
>
> This results in upfront cash payment to the Alliance of $8 million (assuming 20 million channel POPs), which together with our funding of the engineering study and related legal/upfront development costs to be determined, establishes our commitment to the Alliance of a long-term partnership for the development of the ITFS spectrum via an ongoing, fully funded operating vehicle.
>
> ***
>
> [A Goldman Sachs affiliate], with the assistance of Jimmy Mansour and Goldman Sachs, will manage the engineering project and ensure timely completion under FCC guidelines.
>
> ***

> Based on our current projections, the purchase and build-out costs associated with the delivery and operationalization of 140 million channel POPs will require approximately $350 million over the build-out period. (Emphasis added.)

Such specific, targeted statements can hardly be classified as vague, nor are they the type of statements that courts in this jurisdiction find constitute corporate puffery. This Court, in quoting a District of Massachusetts decision, described "corporate puffery" as "'a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace – loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available.'" *Sekuk Global Enterprises v. KVH Industries, Inc.*, 2005 WL 1924202, n. 1 (D.R.I. Aug. 11, 2005) (*quoting Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d. 290, 299-300 (D. Mass. 2004)). *See also Strichfield v. Paolo*, 274 F. Supp. 2d. 163, 174 (D.R.I. 2003) (applying Judge Young's two-part analysis for the classification of statements as puffery).

The statements in the Memorandum are not of a superlative quality so as to be classified as corporate opinion or puffing. In fact, the statements clearly intimate that underlying facts and circumstances exist that justify and support the statements in the proposal. Understood from this perspective, the Memorandum's statements contain actionable misrepresentations. *Cummings v. HPG International, Inc.*, 244 F.3d 16 (1st Cir. 2001) (citations omitted) (noting that even statements of opinion are actionable where they imply that facts support the opinion).

This present case is much more like the situation that confronted the First Circuit in *Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004). In *Rodi*, the plaintiff claimed he was fraudulently induced into enrolling at the defendant law school as a result of affirmative representations made directly to him regarding the school's likelihood of becoming accredited by the time he graduated. *Id*. at 10-11. Like the plaintiff in *Rodi*, Plaintiff here was the target of specific factual statements that contained assurances that were relied upon to the Plaintiff's detriment (indeed, the Memorandum even contains the word "assurances"). The weight of the statements in *Rodi* was, like the statements at issue here, sufficient to establish a

claim of negligent misrepresentation. Similarly, the United States Bankruptcy Court for the District of Rhode Island has determined that statements made which purport to offer future performance or assistance can constitute the basis of a misrepresentation claim. *DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382, 386 (Bankr. R.I. 1989). Here, the Plaintiff received numerous promises of performance and assurances of support in the June 7, 2000 Memorandum; promises upon which Plaintiff relied to its detriment.

The foregoing makes clear that Defendants' argument that the Memorandum constitutes unreliably vague statements of corporate puffery is inconsistent with the law of this jurisdiction and is nothing more than an abject denial of the clear language and intention of the Memorandum itself. As such, the June 7, 2000 Memorandum contains actionable misstatements sufficient to support Plaintiff's fraudulent misrepresentation claims against the Defendants.

### D. Plaintiff's Have Sufficiently Alleged Tortious Interference with Prospective Business Opportunities Under Rhode Island Law.

Rhode Island does not require proof of a prospective business opportunity at the pleading stage of a tortious interference claim and Defendants have cited to no Rhode Island case, or Delaware case for that matter, for this proposition.

Furthermore, once a plaintiff has alleged a prima facie claim of tortious interference, it is the defendant's burden to prove justification. *See Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000); *Mesolella v. City of Providence*, 508 A.2d 661, 669-670 (R.I. 1986). Defendants' conclusory statements in the Consolidated Reply at pages 22-23, regarding its privilege to act under the Master Agreement, do not meet this burden. *See Feinstein v. Brown*, 432 F. Supp. 2d. 258, 268-269 (D.R.I. 2006) (enumerating factors to be considered in assessing justification defense); *Thompson Trading, Ltd. v. Allied Breweries Overseas Trading Ltd.*, 748 F. Supp. 936, 943-945 (D.R.I. 1990) (mere invocation of a contract right does not, as a matter of law, negate a tortious interference claim).

## III. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT.

Plaintiff has requested the opportunity to amend its Complaint to the extent deemed necessary by this Court in the context of Defendants' Motions to Dismiss. While Plaintiff does not concede its Complaint is deficient, it should nevertheless be permitted to amend its Complaint before a motion to dismiss is granted, should this Court require clarification of its claims against the various Defendants.

The case cited by Defendants do not undermine or refute the liberality of amendments under Rule 15, but stand for the narrow proposition that such motions need not be granted when they would otherwise be futile.[6] Where, as here, discovery has not been completed and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged by reference to the liberal criteria of Rule 12(b)(6). *See Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) "In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." *Id*. (citing cases). Plaintiff has set forth certain additional facts in the Primeau Affidavit which would be incorporated in an Amended Complaint, and may also make additional allegations in support of its claims with respect to each of the Defendants in an Amended Complaint. Defendants cannot argue at this juncture that there are no set of facts that could establish a claim against them to establish the requisite futility to warrant denial of a motion to amend.

---

[6] In *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183 (1st Cir. 2006), the requested amendment was deemed futile because the plaintiff's claims were definitively barred by the statute of limitations. As argued *infra*, the statute of limitations is not a bar to Plaintiff's claims in this case.

## CONCLUSION

For all of the foregoing reasons, in addition to the arguments asserted in Plaintiff's previous submissions, Plaintiff respectfully requests this Court to deny Defendants' Motion to Dismiss or in the alternative allow Plaintiff leave to amend its complaint.

Plaintiff,
By its Attorneys,

/s/ Matthew T. Oliverio

Matthew T. Oliverio, Esquire (#3372)
Christine M. Curley, Esquire (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

Dated: June 8, 2007

## CERTIFICATION

I hereby certify that the foregoing *CONSOLIDATED RESPONSE TO DEFENDANTS' REPLY MEMORANDUM AND IN FURTHER SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 8th day of June, 2007.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio