**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **No.: 1:06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants.*** | : | |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**
**AND FOR RECONSIDERATION**

Plaintiff, North American Catholic Educational Programming Foundation, Inc., moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, that this Court reconsider its entry of judgment against the Plaintiff entered on March 5, 2008. In particular, Plaintiff requests that this Court reconsider and vacate its grant of judgment in favor of the Defendant Goldman Sachs Group, Inc. on the grounds that this Court has general jurisdiction over said Defendant; and vacate its grant of judgment against the Individual Defendants, Gerry Cardinale, Rob Gheewalla and Jack Daly, with respect to the Bridge Financing claims on the grounds that there are sufficient facts alleged to establish personal jurisdiction under First Circuit precedent.

In support of its motion, Plaintiff relies on the accompanying Memorandum of Law and the Affidavit of John Primeau and exhibits attached thereto previously filed with this Court as Document 35.

North American Catholic Educational
Programming Foundation, Inc.
By its Attorneys,

_/s/ Matthew T. Oliverio_____________

Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

## CERTIFICATION

I hereby certify that the foregoing *PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND FOR RECONSIDERATION* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 19th day of March, 2008.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

_/s/ Matthew T. Oliverio______________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,** | : | |
| ***Plaintiff,*** | : | |
| **v.** | : | **No.: 1:06-cv-00492-S-LDA** |
| **GERRY CARDINALE, ROB GHEEWALLA, JACK DALY, GOLDMAN SACHS GROUP, INC., GS CAPITAL PARTNERS III, L.P., GS CAPITAL PARTNERS III OFFSHORE, L.P and GOLDMAN, SACHS & CO. VERWALTUNGS GmbH** | : | |
| ***Defendants.*** | : | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**
**AND FOR RECONSIDERATION**

Plaintiff, North American Catholic Educational Programming Foundation, Inc., moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, that this Court reconsider its entry of judgment against the Plaintiff entered on March 5, 2008. In particular, Plaintiff requests that this Court reconsider and vacate its grant of judgment in favor of the Defendant Goldman Sachs Group, Inc. on the grounds that this Court has general jurisdiction over said Defendant; and vacate its grant of judgment against the Individual Defendants, Gerry Cardinale, Rob Gheewalla and Jack Daly, with respect to the Bridge Financing claims on the grounds that there are sufficient facts alleged to establish personal jurisdiction under First Circuit precedent.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the course of the proceedings with respect to Defendants' motions to dismiss, this Court has already been presented with the facts of this case. Accordingly, Plaintiff will not restate them in this motion, except to the extent necessary to support the arguments below.

In its Decision and Order dated March 5, 2008, this Court dismissed all of the claims against all of the Defendants, with prejudice, for lack of personal jurisdiction. Although Plaintiff asserts that the Decision and Order was incorrect in all respects, mindful of the standard on a Rule 59 motion that it is not to be interposed solely for the purpose of re-argument, Plaintiff requests that this Court reconsider two primary issues: (1) the Court made a manifest error of law in dismissing Goldman Sachs Group, Inc. ("GS Group") for lack of personal jurisdiction; and (2) the Court made a manifest error of fact and law in dismissing the claims against the Individual Defendants with respect to the Bridge Financing claims.

## STANDARD OF REVIEW

Plaintiffs' motion for reconsideration is filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See National Metal Finishing Co. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 122 (1st Cir.1990) ("Circuit precedent suggests that challenges to the correctness of a judgment are properly construed as motions under Rule 59(e)."). It is appropriate for a court to grant a motion to reconsider: "1) where the court made a manifest error of fact or law; 2) where there is newly discovered evidence; or 3) where there has been a change in the law." *Murphy v. Maine*, 2007 WL 1846777 (D.R.I. 2007) (citing to *McLaughlin v. Unum Life Ins. Co. of America*, 212 F.R.D. 40, 41 (D.Me.2002).

A district court has broad discretion in deciding a motion under Rule 59(e). *United States v. Land at 5 Bell Rock Rd*., 896 F.2d 605, 611 (1st Cir.1990). To show manifest error of law or fact, the moving party must demonstrate a substantial reason the court is in error. *See DeSenne v. Jamestown Boat Yard, Inc*., 781 F. Supp. 866 (D.R.I. 1991).

In this case, Plaintiff contends that this Court erred as a matter of fact and law in granting Defendant GS Group's motion to dismiss and in granting the Individual Defendants' motion to dismiss with respect to the Bridge Financing claims.

## LEGAL ARGUMENT

### I. The District Court Erred in Granting Defendant GS Group's Motion to Dismiss.

In the Decision and Order, the dismissal of GS Group was relegated to a footnote:

> Defendant GS Group does have a registered agent for service of process in Rhode Island. However, Plaintiff has not made any allegation against GS Group, instead predicating GS Group's liability, if any, on the activities of the Individual Defendants. Given that the Court lacks personal jurisdiction over the Individual Defendants, as explained in detail in this opinion, the court sees no justification to allow the action to proceed against GS Group. Should Plaintiff refile its Complaint in an appropriate forum, the Individual Defendants and GS Group will presumably be required to defend themselves in that forum.

Decision, p. 11, n.3.

There is no legal or factual dispute that GS Group has sufficient contacts for the exercise of general jurisdiction. It is well established that general jurisdiction, once established, extends to all claims that may be asserted against a defendant. *United Elec., Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). It is equally well established that a corporation is liable for the actions of its officers, agents and employees. *See Murphy v. Shearson Lehman Brothers, Inc.*, 42 F.3d 79, 81-2 (1st Cir. 1994)

(noting that agency may be based on apparent authority pursuant to Rhode Island law); *Fraoli v. Lemcke*, 328 F.Supp.2d 250, 278 (D.R.I. 2004) (stating that "[a]pparent authority may arise from indicia of authority given by the principal to the agent and does not have to be in the form of a direct communication to a third person"); *In re Atlantic Financial Management Inc.*, 784 F. 2d 29, 31-32 (1st Cir. 1986) (corporation may be liable for agent's misrepresentations); *Brimbau v. Ausdale Equipment Rental Corp.*, 440 A. 2d 1292, 1295 (R.I. 1982) (finding that a corporation is responsible for the tortious conduct committed by its agents while acting within the scope of their authority.) This tenet is true whether the actions of the Individual Defendants occurred within or outside of the State of Rhode Island, and whether or not there is personal jurisdiction over the Individual Defendants in Rhode Island.

In its recitation of the facts the Court acknowledged that the Individual Defendants "are employed by affiliates of GS Group in New York and London." (Decision, p. 2)

With regard to the employment of the Individual Defendants by "affiliates of GS Group", this Court should take judicial notice of the fact that in GS Group's own press releases, which are public records found on Goldman Sachs' website, as of November 25, 2000, Defendants John Daly and Robert Gheewalla were invited to join the Partnership Pool; as of November 30, 2002 Gerald Cardinale was invited to become a Managing Director; and as of November 24, 2004, Gerald Cardinale was invited to join the Partnership Pool. (Copies of these press releases are attached hereto as *Exhibit 1*). Thus, during the course of the events alleged in Plaintiff's Complaint, and elaborated upon in the Affidavit of John Primeau, the Individual Defendants were more than mere employees, but were integral parts of the GS Group's management team. Against this backdrop the Plaintiff's allegations that each of the Individual Defendants were

involved in orchestrating the GS Group's investment and involvement in Clearwire attains greater jurisdictional significance.

Plaintiff submits that this Court committed a manifest error of law in failing to exercise jurisdiction over GS Group because it failed to provide a sufficient legal or factual basis for its decision to decline jurisdiction. In this context, Plaintiff made a showing of requisite minimum contacts, the burden shifted to the Defendants to show that the exercise of jurisdiction is otherwise unfair. *See Forum Financial Group v. President and Fellows of Harvard College*, 173 F. Supp. 2d 72, 87 (D.Me. 2001). Specifically, the "gestalt factors" militate in favor of this Court exercising jurisdiction over GS Group. With respect to this argument, Plaintiff incorporates by reference pages 21-24 of its Memorandum in Support of its Objection to the Motion to Dismiss the Complaint Pursuant to Rules 12(b)(2) and 12(b)(5), previously filed with this Court as Document 36.

Furthermore, this Court's finding that there is no basis to assert personal jurisdiction over the Individual Defendants weighs in favor of asserting jurisdiction over GS Group, inasmuch as there may be no other forum whereby Plaintiff can obtain redress against these Defendants. At this point, since the pendency of the proceedings on the motions to dismiss, the statute of limitations has expired under New York law as to certain of the fraud claims, and possibly as to the breach of fiduciary duty claims, and the claims brought in Delaware have already been dismissed on personal jurisdiction grounds. Declining jurisdiction over GS Group in this Court, which is likely to be the responsible party to indemnify even the claims against the Individual Defendant, could effectively deprive Plaintiff of its day in court. Accordingly, Plaintiff requests that this Court reconsider its dismissal of GS Group from this action and exercise jurisdiction over GS Group.

## II. As a Matter of Law, the District Court Erred in Granting Defendants' Judgment on the Plaintiff's Bridge Financing Claims.

### A. The Court Erred in Determining Questions of Fact as the Basis for Dismissing the Bridge Financing Claims.

The function of a judge facing a motion for judgment for lack of personal jurisdiction is not to make findings of fact. In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a district court must construe the facts from the pleadings and affidavits in the light most favorable to the plaintiff. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675-676 (1st Cir. 1992). Moreover, until a full evidentiary hearing or a trial on the merits is held, a plaintiff need only set forth prima facie evidence of personal jurisdiction. *McAleer v. Smith*, 728 F. Supp. 857, 861 (D.R.I. 1990).

The First Circuit enumerated the requirements of the prima facie standard in *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675-676 (1st Cir. 1992). Under this standard a plaintiff is required to proffer evidence that, if believed, would support the findings of all facts essential to jurisdiction under both the long-arm statute and the due process clause. *Id.* at 675. The district court does not act as a fact finder but accepts the evidence proffered by the plaintiff, and all reasonable inferences to be drawn therefrom, as true. *Id*. Once a plaintiff has provided affirmative evidence of the propriety of jurisdiction, the court must accept those facts for the purposes of the motion, even if the movant disputes them. *CVS Corporation v. Taubman Centers, Inc.*, 225 F. Supp. 2d 120, 123 (D.R.I. 2002). Thus, in applying the prima facie standard, this Court is required to accept Plaintiff's affidavit as true. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d at 679.

In its Decision and Order, this Court improperly made findings of fact with respect to the undisclosed McCaw deal, finding that Plaintiff's claim rests on mere conclusory allegations that

the McCaw negotiations were underway prior to the August bridge offering letters and were not disclosed to the Plaintiff and other non-insiders. However, since these "conclusory allegations" were not contradicted by the Defendants, they should have been accepted as true by this Court. Moreover, the Court overlooked certain salient facts, that should have been viewed in the light most favorable to the Plaintiff.

Plaintiff's Complaint alleges at paragraph 47 that "Around the same time of the Investor Update, in or about the Spring of 2003, the Defendant Directors began discussing a possible sale of Clearwire, or a sale of substantially all of Clearwire's assets, with the McCaw Group." The Complaint further alleges that this information was not disclosed to the Plaintiff in the context of the C Round Financing. Complaint, ¶ 49, 53. The Complaint further alleges that the Defendants controlled Clearwire, such that the communications sent by Clearwire were part of Defendants' scheme to defraud Plaintiff. Complaint ¶ 9-13.

Neither the Original Offer nor the Preemptive Rights Offer disclosed the pending McCaw Sale or any details of that transaction to the minority shareholders. Participation by investors, including the Defendants, in the C Round of financing raised a mere $600,000. Given the monthly burn rate of $2.1 million, this was an inconsequential sum, not intended or able to continue the operations of Clearwire. As the McCaw name was withheld, little reason existed to participate on the part of the shareholders. (Compl. ¶ 53).

The purported bridge financing was in fact part of a scheme to defraud the minority stockholders by diluting certain stockholder interests and by limiting participation in the C Round Financing to Goldman Sachs and the Individual Defendants in anticipation of the pending McCaw Sale so that they might obtain the benefits of that transaction for themselves.

Without knowledge or understanding that Clearwire's business was about to engage in the McCaw Sale, the stockholders would not have seen anything favorable in the recent history of Clearwire to warrant further investment. Defendants, of course, knew that to be the case and capitalized upon it. (Compl. ¶ 54).

As set forth in the Affidavit of John Primeau, Goldman Sachs, through Daly, negotiated a buyout from HITN whereby Goldman Sachs would still retain the spectrum rights. Primeau Aff. ¶ 32. At the time of this deal, HITN's attorney was Edward (Rudy) Geist. Significantly, in joining the Stritzinger Complaint (attached as Exhibit F to Goldman Sach's Memorandum, Document number 13), Giest also alleged that the McCaw negotiations were in process and not disclosed. (Stritzinger Complaint, ¶ 27-38)

The Court also found, despite the facts presented to the contrary, that "Plaintiff does not allege that it made any attempt to inquire about such details or that any person who did inquire was not informed about the allegedly pending and secret meetings with McCaw." Decision, p. 23; and that "As with the first letter, Plaintiff has not claimed that it attempted to learn more about the potential transactions; perhaps if it had, it would have found Clearwire to be perfectly forthcoming about the potential deal with McCaw." Decision, p. 24.

As set forth in the Affidavit of John Primeau, NACEPF filed a formal action for Books & Records under Delaware law in order to better assess the Preemptive Rights Offer but the information produced did not disclose the potential McCaw sale. Primeau Aff. ¶ 40.

Moreover, when inquiries were made by other shareholders to ascertain the nature of these "discussions" the ongoing McCaw discussions were not disclosed. In August 2003, John Schwartz who headed ITF called John Primeau to relate his conversation with Daly on the pending Bridge Financing. He stated that the main deal with AT&T failed, and that Daly

discussed other potential parties which included Earthlink, the Clarity Group, Nextwave, IPCOM, TELMEX and Nextel. No mention was made of the McCaw Group. Primeau Aff. ¶ 43. Thereafter, In August 2003, Primeau followed up with his own telephone call to James Kirkland, attorney for Clearwire, to obtain additional information regarding the "C Round" Preemptive Rights Offer. Kirkland reiterated to Primeau what was generally related to him by John Schwartz, namely that the failed AT&T deal was referenced in some detail as was some potential smaller entities as Earthlink, the Clarity Group, Nextwave, IPCOM, TELMEX and Nextel. The critical discussions with the McCaw Group were not disclosed. Primeau Aff. ¶ 44. The list of the disclosures actually served to further the Defendants' fraudulent concealment of the McCaw Group as the extensive list left the impression that any efforts to obtain financing or investment with an entity that was at all noteworthy had been disclosed.

Furthermore, the materiality of the information that was not disclosed is a question of fact that cannot be resolved on a motion to dismiss. *See Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308, 318 (D.R.I. 2004).

Consequently, this Court's conclusions regarding jurisdiction over the bridge financing claims are based upon a mistake of fact which should be reconsidered and vacated by this Court.

### B. The Court Erred as a Matter of Law in Determining the Bridge Financing Letter Did Not Permit the Exercise of Personal Jurisdiction over the Defendants.

The Court made a manifest error of law in concluding that the Investor Update and Bridge Financing offer letters did not permit the exercise of jurisdiction over the Individual Defendants, as not constituting "purposeful availment" under the jurisdictional analysis. Decision, pp. 24-25.

The touchstones of purposeful availment are voluntariness and forseeability. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

The fact that the Individual Defendants at all times knew they were communicating misrepresentations to a party located in Rhode Island meets the purposeful availment test. *Digital Equipment Corp. v. Altavista Technology, Inc.*, 960 F. Supp. 456 (D.Mass. 1997) (a defendant allegedly causing harm in a state has acted purposefully because it has targeted the forum state and its residents). Since the Individual Defendants specifically intended their fraudulent misstatements to affect NACEPF in the Rhode Island forum, by inducing NACEPF not to take part in the bridge financing by failing to disclose the negotiations with McCaw, the injurious effects sustained by the intended Rhode Island victim are sufficient to meet the jurisdictional test for purposeful availment. *Hahn v. Vermont Law School,* 698 F.2d 48 (1st Cir. 1983) (mailing of application and acceptance letter to Massachusetts resident was purposeful action sufficient for exercise of jurisdiction); *New Life Brokerage Services, Inc. v. Cal-Surance Associates, Inc*., 222 F.Supp.2d 94 (D.Me. 2002) (failure to provide critical information in materials sent to forum resident with whom broker had contract sufficient to confer personal jurisdiction over breach of fiduciary duty, misrepresentation and fraud claims); *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972). This factual predicate clearly meets the foreseeability test.

Likewise, the Defendants were not coerced or deceived into dealing with a Rhode Island corporation involuntarily. *See Levinger v. Matthew Stuart & Co., Inc.*, 676 F. Supp. 437, 440 (D.R.I. 1988) (course of dealing supported finding that defendants' conduct was purposefully directed toward Rhode Island). Directing the bridge financing letters to NACEPF in Rhode

Island were voluntary acts intending to induce inaction on the part of a Rhode Island entity, to its eventual detriment.

The facts alleged in this case comport cases from other jurisdictions that have exercised jurisdiction based upon fraudulent misrepresentations contained in mailings to the forum state, where those very representations were intended to induce some action or inaction. *See Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp. 2d 539 (N.D. Ohio 2003) (representations in telephone conversations, mail and e-mail directed to forum regarding capacity and intentions to perform contract were sufficient to confer personal jurisdiction over non resident shareholder); *Agsco Corp. v. Scheer*, 1999 WL 1285867 (N.D.Ill. 1999) (distinguishing *Young v. Colgate-Palmolive*, and finding that mailings and telephone calls by non resident into forum with intent to effect forum resident was a sufficient basis for jurisdiction).

In this regard, the cases cited by the Court in its Decision are readily distinguishable. First, both cases address jurisdiction under the Illinois long arm statute which permits the exercise of jurisdiction where the tortious actions occurred within the state. In *W.Va Laborer's Pension Trust Fund v. Caspersen*, 829 N.E. 2d 843 (Ill. App. 2005), the Court would not exercise personal jurisdiction over a class action against Board members which had sent merger materials into the forum. The Court's holding rested on the finding that since the actions related to the merger occurred outside the forum - failure to undertake proper due diligence - the dissemination of merger materials in and of themselves did not constitute tortious acts occurring within the forum to confer jurisdiction under the Illinois statute. *Id.* at 847-848. Likewise, in *Young v. Colgate Palmolive Co.*, 790 F.2d 567 (7th Cir. 1986), personal jurisdiction over directors was denied where the adoption of the allegedly fraudulent poison pill takeover plan occurred in New York, and mailings describing said plan were sent to shareholders in Illinois. In

both cases, the mailings to shareholders were insufficient because the primary basis for asserting jurisdiction was that the effects of acts outside of the jurisdiction were sustained within the forum.

Here, in contrast, the tortious acts were the misrepresentations and non-disclosures contained in the letters themselves, which constituted both fraud and breach of fiduciary duty, intentionally directed to NACEPF in Rhode Island as a principle investor. Moreover, these communications arose out of a long term business relationship with NACEPF, a Rhode Island entity, which is sufficient to confer jurisdiction under First Circuit precedent. *See Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 25-26 (1st Cir. 2005).

**CONCLUSION**

For the forgoing reasons, Plaintiff requests that its motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure be granted in all respects and that this Court reconsider and vacate its entry of Judgment in favor of the Defendants as set forth herein.

North American Catholic Educational
Programming Foundation, Inc.
By its Attorneys,

/s/ Matthew T. Oliverio

Matthew T. Oliverio (#3372)
Christine M. Curley (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

**CERTIFICATION**

I hereby certify that the foregoing *PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT AND FOR RECONSIDERATION* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorneys received service by electronic means on this 19th day of March, 2008.

Brian J. Lamoureux, Esquire
bjl@brownrudnick.com

William J. Dolan, III, Esquire
wdolan@brownrudnick.com

Wayne F. Dennison, Esquire
wdennison@brownrudnick.com

Douglas H. Flaum, Esquire
flaumdo@friedfrank.com

Lara Turcik, Esquire
turcila@friedfrank.com

/s/ Matthew T. Oliverio