UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                                     )
NORTH AMERICAN CATHOLIC              )
EDUCATIONAL PROGRAMMING              )
FOUNDATION, INC.,                    )
          Plaintiff,                 )
                                     )
     v.                              )   C.A. No. 06-492-S
                                     )
GERRY CARDINALE, ROB GHEEWALLA,      )
JACK DALY, GOLDMAN SACHS             )
GROUP, INC., GS CAPITAL PARTNERS     )
III, L.P., GS CAPITAL PARTNERS       )
III OFFSHORE, L.P. and GOLDMAN       )
SACHS & CO. VERWALTUNGS GmbH,        )
          Defendants.                )
_____)
```

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This matter comes before the Court on Plaintiff North American Catholic Educational Programming Foundation, Inc.'s ("Plaintiff" or "NACEPF") Motion to Alter or Amend Judgment and for Reconsideration ("Motion"). On March 5, 2008, the Court dismissed Plaintiff's complaint on the basis of Federal Rule of Civil Procedure 12(b)(2). See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 536 F. Supp. 2d 181 (D.R.I. 2008) ("NACEPF"). For the reasons stated herein, the Motion is denied.

I. <u>Standard of Review</u>

Federal Rule of Civil Procedure 59(e) provides for alteration or amendment of a previously entered judgment.[1] Fed. R. Civ. P. 59(e). Reconsideration under Rule 59 is proper in four circumstances: (1) if the initial ruling was based on an inadequate record; (2) if there has been a material change in controlling law; (3) if there is newly discovered evidence that bears on the question; or (4) if the earlier decision is clearly erroneous and would work a manifest injustice. <u>Ellis v. United States</u>, 313 F.3d 636, 647-48 (1st Cir. 2002), <u>cert.</u> <u>denied</u>, 540 U.S. 839 (2003). However, "a motion for reconsideration cannot be used as a vehicle to relitigate and/or rehash matters already litigated and decided by the Court." <u>Horizon Lines of Puerto Rico, Inc. v. Local 1575 Int'l Longshoremen's Assoc.</u>, No. Civ. 06-1262, 2006 WL 1451530, *2 (D.P.R. May 19, 2006); <u>see</u> <u>also</u> <u>Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.</u>, 899 F.2d 119, 123 (1st Cir. 1990). Therefore, a motion to reconsider is not a vehicle for a

---

[1] Strictly speaking, there is no motion for "reconsideration" in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 59(e). A motion filed after judgment requesting that the court reconsider its decision constitutes either a motion to "alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b), depending on the time at which it is filed. <u>See</u> <u>Perez-Perez v. Popular Leasing Rental, Inc.</u>, 993 F.2d 281, 284 (1st Cir. 1993); <u>Horizon Lines of Puerto Rico, Inc. v. Local 1575 Int'l Lonshoremen's Assoc.</u>, No. Civ. 06-1262, 2006 WL 1451530, *2 (D.P.R. May 19, 2006). Plaintiff filed its motion within ten days after the entry of the Court's order granting Defendants' motions to dismiss, so the Court treats it as a motion to alter or amend under Rule 59(e).

losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." Nat'l Metal, 899 F.2d at 123.

II. Discussion

Plaintiff's Motion challenges only the Court's decisions to grant the motion to dismiss filed by the Goldman Sachs Group, Inc. ("GS Group") and to grant the motion to dismiss filed by Gerry Cardinale, Rob Gheewalla, and Jack Daly ("Individual Defendants") as to Plaintiff's so-called Bridge Financing claims. Plaintiff's Motion does not challenge the dismissal of counts I-IV against the Individual Defendants, nor does it challenge the dismissal of its claims against GS Capital Partners III, L.P., GS Capital Partners III Offshore, L.P., or Goldman Sachs & Co. Verwaltungs Gmbh ("Goldman Shareholder Defendants").

A. GS Group's Motion To Dismiss

Plaintiff first argues that the Court "committed a manifest error of law in failing to exercise jurisdiction over GS Group because it failed to provide a sufficient legal or factual basis for its decision to decline jurisdiction." Pl.'s Mot. at 5. Before addressing Plaintiff's argument, however, the Court will clarify what it will not consider.

First, the Court declines to consider the GS Group press releases submitted by Plaintiff as purported evidence that the Individual Defendants "were more than mere employees, but were

integral parts of the GS Group's management team." Pl.'s Mot. at 4. As Plaintiff readily acknowledges, these press releases are "public records found on Goldman Sachs' website." Id. But Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005) (quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)).

Second, the Court will not consider Plaintiff's assertion that declining jurisdiction over GS Group "could effectively deprive Plaintiff of its day in court," because the New York statute of limitations governing certain of Plaintiff's claims may have lapsed. Pl.'s Mot. at 5. The First Circuit has unequivocally rejected the argument that the expiration of a limitations period in an appropriate forum militates in favor of the exercise of jurisdiction by an otherwise inappropriate forum. See Harlow v. Children's Hosp., 432 F.3d 50, 68 (1st Cir. 2005) ("The fact that [the plaintiff] missed the statute of limitations in Massachusetts does not add to her argument at all. To hold otherwise would encourage plaintiffs to deliberately miss a statute of limitations for purposes of forum manipulation."). Further, the very prejudice Plaintiff complains of was completely avoidable (not to mention the

delay, expense, and burden to the Court associated with filing in the wrong district). But, for reasons known only to it, Plaintiff chose to bring this action in the District of Rhode Island rather than the Southern District of New York.

Turning, then, to Plaintiff's colorable arguments, it is apparent that Plaintiff is explicitly using its Rule 59(e) motion to "repeat old arguments previously considered and rejected." Nat'l Metal, 899 F.2d at 123. For example, with respect to the argument that the Court should exercise jurisdiction over GS Group, Plaintiff's motion "incorporates by reference pages 21-24 of its Memorandum in Support of its Objection to the Motion to Dismiss the Complaint Pursuant to Rules 12(b)(2) and 12(b)(5), previously filed with this Court." Pl.'s Mot. at 5.

In any event, the Court is content that it provided sufficient justification in its earlier order for declining to exercise jurisdiction over GS Group. Plaintiff did not make any allegations of wrongful conduct by GS Group, and personal jurisdiction over the other defendants was lacking. This being the situation, the Court concluded that it would be unreasonable to exercise jurisdiction over GS Group. NACEPF, 536 F. Supp. 2d at 187 n.3. It was not the Court's conclusion that it actually lacks jurisdiction over GS Group, but that the exercise of this jurisdiction would not be reasonable. Obviously, Plaintiff disagrees with the Court's

5

resolution of this issue, and that is its right. But the Court need not belabor its analysis on this point.

    B.    Bridge Financing Claims

Plaintiff contends that the Court "improperly made findings of fact with respect to the undisclosed McCaw deal, finding that Plaintiff's claim rests on mere conclusory allegations that the McCaw negotiations were underway prior to the August bridge offering letters and were not disclosed to Plaintiff and other non-insiders." Pl.'s Mot. at 6-7.

More specifically, Plaintiff argues first that the Court should have accepted as true those allegations that were not contradicted by the defendants. Id. at 7. Second, Plaintiff argues that the Court overlooked certain facts that should have been viewed in the light most favorable to Plaintiff. Id.

As to the first contention, that the Court should have accepted as true Plaintiff's uncontroverted allegations, Plaintiff misstates the law. "The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 681 (1st Cir. 1992) (citation omitted). In order to survive a motion to dismiss on jurisdictional grounds, even a prima facie showing must be based on specific facts set forth in the record. Id. at 680 (citation omitted). Plaintiff "cannot rely on unsupported allegations in [its] pleadings. [It] must produce evidence to support [its] jurisdictional allegation[s]

because [it has] the burden of showing that the court may exercise in personam jurisdiction over [the defendants]." Id. Put simply, Plaintiff's description of its burden with respect to establishing jurisdiction (and therefore its claim of error) is flat wrong.

Plaintiff further argues that the Court overlooked jurisdictionally relevant facts, specifically, allegations made by John Primeau in his affidavit concerning, among other things, a books and records request made by NACEPF to Clearwire, and a conversation between Primeau and James Kirkland, an attorney for Clearwire. See Affidavit of John Primeau ("Primeau Aff.") ¶¶ 40-45. While it is probably true that the Court overstated its conclusion that Plaintiff "apparently made no effort to accept Clearwire's invitation to learn about any such meetings or plans for any such meetings," NACEPF, 536 F. Supp. 2d at 192, Primeau's testimony does not alter the conclusion that the Individual Defendants did not purposefully avail themselves of the laws of Rhode Island. Primeau's books and records request was made under Delaware law and directed to Clearwire, not the Individual Defendants, and the records produced were sent by Clearwire to NACEPF in Rhode Island pursuant to the latter's request. Primeau Aff. ¶ 40; see also Pl.'s Mot. at 8. Furthermore, Primeau's telephone conversation with James Kirkland was initiated by Primeau and, in any event, Kirkland was counsel for Clearwire, not the

7

Individual Defendants. Id. ¶ 44. These are weak reeds, far too inconsequential to support a claim of purposeful availment.

Plaintiff also argues that the Court erred in finding that the mailing of the Investor Update and Bridge Financing letters did not constitute "purposeful availment" by the Individual Defendants. Pl.'s Mot. at 9; see also Primeau Aff. ¶¶ 41-42. In doing so, Plaintiff seems to ignore the Court's observation that "the mailings were official corporate communications from Clearwire, not the Individual Defendants (or any Defendants)." NACEPF, 536 F. Supp. 2d at 195 (emphasis added). But even if the Court accepts as true Plaintiff's unsupported allegation that Clearwire was only a facade designed to mask the predations of the Individual Defendants, the alleged contacts that Plaintiff would attribute to the Individual Defendants are insufficient to establish specific jurisdiction in Rhode Island. As the Court wrote in its original decision, the Bridge Financing and Investor Update mailings were sent to all of Clearwire's shareholders. Id. The materials made their way to Rhode Island simply because that is where Plaintiff resides. Id. It is possible that the materials were sent to all fifty states, plus any number of foreign destinations. This does not mean that Clearwire, or the Individual Defendants, purposefully availed themselves of the laws of all fifty states, or lands even more distant.

The cases cited by Plaintiff do nothing to change the outcome. The jurisdictional contacts established in those cases were much more significant than those here and, moreover, could be attributed directly to the defendant. For example, in <u>Digital Equip. Corp. v. AltaVista Tech., Inc.</u>, 960 F. Supp. 456 (D. Mass. 1997), the district court found that the defendant had sufficient contacts with Massachusetts not only because the claim arose directly from a contract entered into with the forum-based plaintiff, but also because the contract, which was governed by Massachusetts law, was part of a strategy by the defendant to market its products to other Massachusetts residents. <u>Id.</u> at 465.

In <u>Hahn v. Vermont Law Sch.</u>, 698 F.2d 48 (1st Cir. 1983), the First Circuit found that Vermont Law School purposefully availed itself of the laws of Massachusetts by mailing an application and acceptance letter to a Massachusetts resident. Pl.'s Mot. at 10. However, recognizing that at least one district court had disclaimed jurisdiction on similar grounds, the Court found that the school's activities with respect to the Massachusetts resident were "not simply isolated occurrences; instead, they were part of [the school's] efforts to serve the market for legal education in Massachusetts." <u>Hahn</u>, 698 F.2d at 52. The Court pointed to the high percentage ("close to ten percent") of Massachusetts residents that regularly comprised the school's first-year class, several recruiting visits to Massachusetts made by faculty members, and

advertisements placed by the school in Boston-area newspapers. Id. Under all the circumstances, the First Circuit concluded that "the assertion of jurisdiction over [Vermont Law School] in Massachusetts does not offend traditional notions of fair play or substantial justice." Id.

Likewise, the finding of purposeful availment in New Life Brokerage Servs., Inc. v. Cal-Surance Assocs., Inc., 222 F. Supp. 2d 94 (D. Me. 2002), was based on extensive and deliberate contacts by the defendant with the disputed forum. The defendant, a California-based insurance broker, entered into a contract with a Maine-based securities broker which "created a continuing obligation to inform and advise [the plaintiff] of the appropriate coverage for its needs and to design and procure such appropriate coverage." Id. at 107. It was this "continuing obligation" that tipped the scale: "When a defendant has established a continuing obligation between itself and the forum the exercise of jurisdiction is foreseeable." Id. But more than that, the California-based defendant held a license to do business in Maine, directed various telephonic and mailed communications to Maine, maintained several other Maine customers and, on at least one occasion, had a representative physically present in Maine at a seminar for the plaintiff's personnel. Id. The totality of these contacts was sufficient to establish purposeful availment. Id.

Although <u>Murphy v. Erwin-Wasey, Inc.</u>, 460 F.2d 661 (1st Cir. 1972), is somewhat more favorable to Plaintiff's argument, in that there the First Circuit premised specific jurisdiction on the mailing to the forum of a false statement intended to be relied upon to the injury of a resident of that state, <u>see</u> <u>id.</u> at 664, it, like the other cases cited by Plaintiff, involved actions taken by a defendant. As already noted, Clearwire, the party that sent the Bridge Financing and Investor Update letters, is not a defendant here. Given that specific jurisdiction cannot exist in the absence of purposeful availment, <u>Phillips Exeter Acad. v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 288 (1st Cir. 1999) ("An affirmative finding on each of the three elements of the [jurisdictional] test is required to support a finding of specific jurisdiction."), the Court concludes that its original holding should not be altered or amended.

III. <u>Conclusion</u>

For the foregoing reasons, Plaintiff North American Catholic Educational Programming Foundation, Inc.'s Motion to Alter or Amend Judgment and for Reconsideration is DENIED.

IT IS SO ORDERED.

_/s/ WESmith_
William E. Smith
United States District Judge
Date: 8/8/08

11